# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

VIRGIL HARRIS,
     Plaintiff,

v.

LINCOLN LIFE ASSURANCE
COMPANY OF BOSTON,
     Defendant.

CIVIL ACTION NO.:
1:19-cv-4257-CC

## MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD

# Table of Contents

Table of Authorities ................................................................. iii

Introduction ........................................................................ 1

Argument ........................................................................... 2

I.      Under ERISA, this case is a review proceeding in which the
        Court evaluates the administrator's determination on the basis
        of the record compiled below and in light of Plaintiff's burden
        to prove his claim by a preponderance of the evidence. .......................... 2

II.     Under the terms of the plan, Plaintiff at all times bore the
        burden of proving a continuous disability in order to maintain
        benefits. ..................................................................... 5

III.    Lincoln's determination that Plaintiff failed to prove his claim
        beyond April 23, 2019, was legally correct. ................................... 8

        A.      Plaintiff stopped work following a motor vehicle accident
                which purportedly aggravated his existing back pain. ................... 8

        B.      Lincoln continued to pay benefits for two years while
                regularly seeking updated information on Plaintiff's
                condition. ............................................................ 11

        C.      Following a full and fair review at the time of the Group
                Policy's change to an "any occupation" standard, Lincoln
                determined that Plaintiff failed to meet his continuing
                burden to prove entitlement to benefits. ............................. 14

        D.      Plaintiff appealed Lincoln's determination, but the
                additional medical evidence he submitted did not show
                that he was disabled from "any occupation." .......................... 18

i

E.    After a full and fair review, including peer reviews by
two additional board-certified physicians, Lincoln upheld
its prior determination that Plaintiff failed to meet his
burden to prove entitlement to continued LTD benefits. ............. 20

IV.   The Administrative Record overwhelmingly supports Lincoln's
determination, and Plaintiff's attacks on Lincoln's determination
are meritless. ....................................................... 25

Conclusion   ....................................................... 35

# Table of Authorities

**Cases**

Acree v. Hartford Life & Accident Ins. Co., 917 F. Supp. 2d 1296
(M.D. Ga. 2013) ................................................................. 4

Aetna Health Inc. v. Davila, 542 U.S. 200 (2004) .............................................. 3

Beltman v. Sun Life Assurance Co., 2019 WL 1614584 (W.D. Mich.
March 29, 2019) ................................................................. 32

Black & Decker Disability Plan v. Nord, 538 U.S. 822 (2003) ............. 3, 31, 32

Blankenship v. Metropolitan Life Ins. Co., 644 F.3d 1350 (11th
Cir. 2011) ......................................................................... 3, 4, 7

Bumpas v. Unum Life Ins. Co., 2005 WL 2428537 (M.D. Fla.
Sept. 30, 2005) ................................................................. 30

Coffman v. Metropolitan Life Ins. Co., 217 F. Supp. 2d 715 (S.D.
W. Va. 2002), *aff'd*, 77 Fed. App'x 174 (4th Cir. 2003) ........................ 34

Conkright v. Frommert, 559 U.S. 506 (2010) .................................................. 7

Curran v. Kemper Nat'l Servs., Inc., 2005 WL 894840 (11th Cir.
March 16, 2005) ................................................................. 4

Doyle v. Liberty Life Assurance Co. of Boston, 542 F.3d 1352
(11th Cir. 2008) ................................................................. 3

Etkin v. Merk & Co., 2001 WL 1346368 (E.D. Pa. Oct. 30, 2001) ................. 32

Fick v. Metropolitan Life Ins. Co., 347 F. Supp. 2d 1271 (S.D.
Fla. 2004) ......................................................................... 33, 34

Glazer v. Reliance Life Ins. Co., 524 F.3d 1241 (11th Cir. 2008) ................. 4, 7

Heimeshoff v. Hartford Life & Accident Ins. Co., 571 U.S. 99 (2013) ............................................................................................... 3

Howard v. Hartford Life & Accident Ins. Co., 929 F. Supp. 2d 1264 (M.D. Fla. 2013), *aff'd*, 563 Fed. App'x 658 (11th Cir. 2014) .............. 26

Hufford v. Harris Corp., 322 F. Supp. 2d 1345 (M.D. Fla. 2004) ............. 34, 35

Lann v. Metropolitan Life Ins. Co., 371 F. Supp. 3d 1185 (N.D. Ga. 2019) ..................................................................................... 4

Leahy v. Raytheon Co., 315 F.3d 11 (1st Cir. 2002) ........................................ 4

Lucas v. General Motors LLC, 2017 WL 4883567 (N.D. Ga. Sept. 27, 2017) .................................................................................. 5

Maleszewski v. Liberty Life Assurance Co., 2010 WL 1416995 (E.D. Mich. April 8, 2010) ...................................................... 30

Maniatty v. Unumprovident Corp., 218 F. Supp. 2d 500 (S.D.N.Y. 2002), *aff'd*, 62 Fed. App'x 413 (2d. Cir. 2003), *cert. denied*, 540 U.S. 966 (2003) ........................................................ 31, 33

Melech v. Life Ins. Co. of N. America, 739 F.3d 663 (11th Cir. 2014) ................................................................................... 7

Nance v. Sun Life Assurance Co., 294 F.3d 1263 (10th Cir. 2002) .................. 6

Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41 (1987) ........................................ 3

Richey v. Hartford Life & Accident Ins. Co., 608 F. Supp. 2d 1306 (M.D. Fla. 2009) ......................................................... 26

Smith v. Cox Enters., Inc., 81 F. Supp. 3d 1366 (N.D. Ga. 2015) ................. 5

Sobh v. Hartford Life & Accident Ins. Co., 658 Fed. App'x 459 (11th Cir. 2016) .......................................................... 6

Taylor v. Broadspire Servicing, Ltd., 314 Fed. App'x 187 (11th Cir. 2008) ........................................................................................ 26

Varity Corp. v. Howe, 516 U.S. 489 (1996) ...................................................... 7

Vaughn v. Aetna Life Ins. Co., 2018 WL 2266909 (N.D. Ga. May 17, 2018) ................................................................................... 4

Wangenstein v. Equifax, Inc., 191 Fed. App'x 905 (11th Cir. 2006) ................................................................................................. 31, 32

Watts v. BellSouth Telecom., Inc., 218 Fed. App'x 854 (11th Cir. 2007) ........................................................................................ 33

Williams v. BellSouth Telecomms., Inc., 373 F.3d 1132 (11th Cir. 2004) .......................................................................................... 3

Williams v. UNUM Life Ins. Co., 250 F. Supp. 2d 641 (E.D. Va. 2003) ......................................................................................... 34

**Statutes and Regulations**

Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.* ................................................. *passim*

29 C.F.R. §§ 2560.503-1(h) ........................................................................... 7

Defendant Lincoln Life Assurance Company of Boston ("Lincoln")[1] moves for Judgment on the Administrative Record.

**Introduction**

This case is a dispute over allegedly-due long-term disability ("LTD") benefits governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.*

Lincoln paid Plaintiff long-tern disability ("LTD") benefits for two years based on his claim of chronic back and neck pain aggravated by a motor vehicle accident. While Plaintiff reported subjective pain levels of "10/10," the examination evidence leading up to the time of Lincoln's decision to deny further benefits consistently showed that Plaintiff was in "no acute distress," that his breathing was "unlabored," his strength remained "5/5" in all extremities, and that he had no neurological deficits. *See*, *e.g.*, LIB0433–34; LIB0387–88; LIB0348–85.[2] Imaging studies of Plaintiff's spine showed some disc degeneration, but no evidence of fracture, compression deformity, or significant listhesis. *See*, *e.g.*,

---

[1] The original Defendant was incorrectly named in the Complaint. By joint motion and this Court's order (*see* ECF Doc. #31), the correct defendant-in-interest has been joined and the incorrectly-named party dismissed.

[2] In this memo, Lincoln has cited directly to the pages of the Administrative Record, bates numbered LIB0001 through LIB1577.

1

LIB1424; LIB0489.  On examination, Plaintiff's own treating physician documented that Plaintiff's range of motion, reflexes, muscle tone, and coordination were all "normal."  *See*, *e.g*., LIB0264.  No less than three board-certified consulting physicians who considered such evidence—along with other medical records Plaintiff submitted—concluded that while Plaintiff does have some functional limitations, none of his medical conditions functionally preclude him from full-time sedentary-level work.  *See*, *e.g.*, LIB0360–69; LIB116–19; LIB134–45.  Lincoln gave Plaintiff a full and fair review, including an administrative appeal and the opportunity to review and rebut the consulting physician reports prior to Lincoln's rendering a decision.  *See*, *e.g*., LIB114.

Plaintiff at all times had the burden to prove his claim and his continuing entitlement to LTD benefits.  Lincoln, as an ERISA claim administrator charged with a duty to enforce the plan's strict proof requirements, found that Plaintiff failed to meet that burden.  Viewed in light of the Administrative Record before Lincoln at the time, Lincoln's determination was correct.  To preserve the overarching policy goals of ERISA and adhere to the written terms of the plan, this Court must affirm.

**Argument**

**I.     Under ERISA, this case is a review proceeding in which the Court evaluates the administrator's determination on the basis of the record compiled below and in light of Plaintiff's burden to prove his claim by a preponderance of the evidence.**

ERISA represents "a careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans." Aetna Health Inc. v. Davila, 542 U.S. 200, 208 (2004) (quoting Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 54 (1987)).  In keeping with this purpose, ERISA gives employers "large leeway to design disability and other welfare plans as they see fit." Heimeshoff v. Hartford Life & Accident Ins. Co., 571 U.S. 99, 108 (2013) (quoting Black & Decker Disability Plan v. Nord, 538 U.S. 822, 833 (2003)).  "And once a plan is established, the administrator's duty is to see that the plan is 'maintained pursuant to [that] written instrument.'" *Id.* (quoting 29 U.S.C. § 1102(a)(1)).

The Eleventh Circuit has articulated a six-step analytical framework to guide reviewing courts.  *See* Blankenship v. Metropolitan Life Ins. Co., 644 F.3d 1350, 1355 (11th Cir. 2011); *see also*, *e.g.*, Williams v. BellSouth Telecomms., Inc., 373 F.3d 1132, 1137–38 (11th Cir. 2004), *overruled in part on other grounds by* Doyle v. Liberty Life Assurance Co. of Boston, 542 F.3d 1352 (11th Cir. 2008).  As the

Group Policy at issue here does not contain a discretionary grant, this case will be decided under the first-step of the <u>Blankenship</u> framework, which provides:

> Apply the *de novo* standard to determine whether the claim administrator's benefits-denial decision is "wrong" (*i.e.*, the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.

<u>Id.</u>, 644 F.3d at 1355; *see also*, *e.g.*, <u>Glazer v. Reliance Life Ins. Co.</u>, 524 F.3d 1241, 1246 (11th Cir. 2008).

Under this *de novo* standard, the Court stands in the shoes of the administrator, examines the record that was before the administrator, and applies the terms of the plan to determine whether the denial of benefits was "wrong." *See* <u>Glazer</u>, 524 F.3d at 1246; <u>Lann v. Metropolitan Life Ins. Co.</u>, 371 F. Supp. 3d 1185, 1192 (N.D. Ga. 2019); <u>Acree v. Hartford Life & Accident Ins. Co.</u>, 917 F. Supp. 2d 1296, 1306 (M.D. Ga. 2013). In this regard, "the district court sits more as an appellate tribunal than as a trial court." <u>Curran v. Kemper Nat'l Servs., Inc.</u>, 2005 WL 894840 at *7 (11th Cir. March 16, 2005) (quoting <u>Leahy v. Raytheon Co.</u>, 315 F.3d 11, 17–18 (1st Cir. 2002)).

To establish that an administrator's determination was "wrong," the claimant must prove that the determination was contrary to "the preponderance of the evidence" contained in the Administrative Record. *See* <u>Vaughn v. Aetna Life Ins. Co.</u>, 2018 WL 2266909 at *8 (N.D. Ga. May 17, 2018) ("When the court reviews a

4

plan administrator's decision under the *de novo* standard of review, the burden of proof is placed on the claimant to show, by a preponderance of the evidence, that he was entitled to the benefits he sought under the plan.") (internal quotations omitted); Lucas v. General Motors LLC, 2017 WL 4883567 at *16 (N.D. Ga. Sept. 27, 2017) ("If a court finds that an administrator's decision is contradicted by a preponderance of the evidence, the decision is *de novo* wrong."); Smith v. Cox Enters., Inc., 81 F. Supp. 3d 1366, 1379 (N.D. Ga. 2015) (denial of benefits was not *de novo* wrong where "the preponderance of the medical records and statements from [claimant's] health care providers do not support the conclusion that her medical conditions are severe enough to support a finding of total disability").

**II.     Under the terms of the plan, Plaintiff at all times bore the burden of proving a continuous disability in order to maintain benefits.**

Under the Group Policy, no LTD benefits are payable unless a claimant first proves a continuous disability throughout a 180-day Elimination Period.  *See* LIB1461; LIB1465; LIB1466.  Even if a claimant initially proves such a disability, LTD benefits continue only so long as the claimant continues to prove that his absence from work remains due to the same disability.  *See*, *e.g*., LIB1490.

During the Elimination Period and the next 24 months, the Group Policy defines "Disability" to mean that "the [claimant], as a result of Injury or Sickness,

is unable to perform the Material Acts necessary to pursue his Own Occupation in the usual and customary way." LIB1465. After the first 24 months, the Group Policy's definition of "Disability" changes to mean that the claimant must prove that he "is unable to perform, with reasonable continuity, the Substantial and Material Acts of any occupation" in order to maintain benefits. LIB1465.

At all times, however, the claimant must give proof of continuing disability at his own expense. LIB1481. For purposes of the Group Policy, "Proof" means "written proof covering the occurrence, the character and the extent of the loss for which the claim is made." LIB1471. The Group Policy explicitly provides that LTD benefits will cease "the date the [claimant] is no longer Disabled according to this policy." LIB1490.

Thus, absent proof of continuous disability, a claimant's coverage simply comes to an end once he is no longer actively working a regular schedule of at least 30 hours a week. *See* LIB1459 (eligibility requirements); LIB1463 (defining "Active Employment"); *see also*, *e.g.*, Sobh v. Hartford Life & Accident Ins. Co., 658 Fed. App'x 459, 466 (11th Cir. 2016) ("And because Sobh's benefits were properly terminated in 2014, he was not eligible under the Plan in January 2015, when he became disabled again, since he was no longer employed by [the Plan's sponsor]."); Nance v. Sun Life Assurance Co., 294 F.3d 1263, 1272 (10th Cir.

6

2002) ("[O]nce one leaves employment, one is no longer covered for a new disability that arises.").[3]

In assessing whether Plaintiff met his burden, the Court must also keep in mind that Lincoln had a contractual and regulatory duty, in connection with its "full and fair review," to adhere to and strictly enforce the terms of the Group Policy, including its explicit proof of claim requirements. *See* 29 C.F.R. §§ 2560.503-1(h) (outlining procedures designed to ensure that administrator determinations are made in accordance with the written terms of the plan). This duty does not "favor payment over nonpayment," but rather compels an "impartial account of the interest of all beneficiaries" and "recognizes the need to preserve assets to satisfy future, as well as present, claims." Varity Corp. v. Howe, 516 U.S. 489, 514 (1996); *see also*, *e.g.*, Conkright v. Frommert, 559 U.S. 506, 520 (2010) (holding that ERISA administrators "have a duty to all beneficiaries to preserve limited plan assets").

---

[3] Apart from the Group Policy's language, Eleventh Circuit law is also clear that the burden of proof remains at all times on ERISA benefit claimants such as the Plaintiff here. *See*, *e.g.*, Melech v. Life Ins. Co. of N. America, 739 F.3d 663, 673 (11th Cir. 2014); Blankenship, 644 F.3d at 1356; Glazer, 524 F. 3d at 1247.

**III. Lincoln's determination that Plaintiff failed to prove his claim beyond April 23, 2019, was legally correct.**

    **A.    Plaintiff stopped work following a motor vehicle accident which purportedly aggravated his existing back pain.**

Plaintiff worked for years with a variety of medical conditions, including hidradenitis suppurativa (an inflammatory skin condition that leads to abscesses), degenerative disc disease, and obesity. For instance, he had surgery to excise hidradenitis abscesses on August 21, 2014. LIB0272. A February 17, 2015, MRI of Plaintiff's cervical spine shows that his C5–6 disc was "severely degenerated and collapsed," that his C6–7 disc was "degenerated [and] compressed" with a "minor bulge," and that he generally suffered from multi-level spondylosis from C4–5 through C6–7. LIB0491. In July 2016, Plaintiff injured his back while golfing, and, although he continued working, he was still seeking medical treatment for the resulting back pain at least six weeks later. *See*, *e.g*., LIB0864, LIB1156. Progress notes from a routine visit to Dr. Victor Blake, his primary care physician, on the morning of October 4, 2016, show that Plaintiff's body-mass index ("BMI") was 39.37, "which qualifies as obese." LIB0852; LIB0856.

In the late afternoon of October 4, 2016, Plaintiff was involved in a motor vehicle accident. His car was struck from behind. According to the police report, Plaintiff's vehicle sustained "[m]oderate" damage in the collision. LIB1436. At

the scene, Plaintiff "complained of back pain but refused medical treatment." LIB1435.

Later that week, on October 7, 2016, Plaintiff had an MRI of his lumbar spine, which again showed "moderate degenerative spondylosis at all levels . . . most prominently at L5–S1." LIB1424. However, the MRI also confirmed,

> There is no evidence of fracture or bone destruction. There is a normal degree of lordosis. Signal intensity from the intervertebral discs appears normal. I see no evidence of a pars defect. I see no evidence of injury to the interspinous ligaments or the supraspinous ligaments.

LIB1424.

Plaintiff stopped work on October 14, 2016, and applied for short-term disability ("STD") benefits, which Lincoln approved on November 4, 2016. LIB1451. On November 7, 2016, Plaintiff visited gastroenterologist Dr. Clarence Clark to evaluate an anal fistula. LIB0849. Dr. Clark scheduled a colonoscopy and surgery to remove the fistula for November 28, 2016. LIB0851. The surgery was successful, and on the next day, Physician Assistant Chantel Lee wrote Plaintiff a work excusal note indicating he should stay off work until December 31, 2016, because he "was referred for surgery." LIB1440.

Plaintiff next visited Dr. Blake on December 6, 2016, again complaining of back pain.  On examination, Dr. Blake recorded that Plaintiff was "well-appearing" and "ambulating without difficulty."  LIB0844.  Dr. Blake described Plaintiff's symptoms as the result of "a benign musculoskeletal back injury" with a "favorable prognosis."  LIB0844.  But in a work excusal note Dr. Blake wrote the same day, he described Plaintiff as having "severe back problems" which required him to be off work until March 1, 2017.  LIB1426.

Plaintiff visited Dr. Erik Bendiks, an orthopedist, on December 22, 2016.  His exam showed: the ability "to ambulate without difficulty"; "[p]ainless passive, full range of motion of bilateral hips"; and muscle strength of "5/5."  LIB0823.  Dr. Bendik recommended steroid injections for back pain and also recommended a referral to Dr. Mark Feeman, a physiatrist, "as [Plaintiff] wishes to explore disability evaluation."  LIB0823.

Plaintiff visited Dr. Feeman on January 23, 2017.  According to the progress note, Plaintiff "complained of neck pain but denied back pain."  LIB0251.  Dr. Feeman obtained another MRI of Plaintiff's cervical spine which showed "moderate degeneration" and noted it was "possible" that one apparent herniation might be "a recent and post-traumatic deformity."  LIB0492.  Dr. Feeman then completed a one-page, check-the-box Capacities Evaluation form, in which he

10

opined that during an eight-hour work day, Plaintiff would be able to sit, stand, or walk for less than one hour each. LIB0254. According to the form, Plaintiff would "never" be able to lift "[u]p to 10 lbs." LIB0254. In addition to the form, Dr. Feeman also wrote a three-sentence advocacy letter in which he said, based on this one visit that Plaintiff sought out for that very purpose, Plaintiff was "totally and permanently disabled due to his intervertebral disc disorders as a result of MVA." LIB0255.

On May 26, 2017, Lincoln's Disability Case Manager Danielle Alford approved LTD benefits and wrote to notify Plaintiff of that decision. LIB0765. In her letter, she wrote, "Please notify our office immediately if your condition changes or your physicians alter your treatment plan." LIB0766.

**B.    Lincoln continued to pay benefits for two years while regularly seeking updated information on Plaintiff's condition.**

In accordance with Plaintiff's burden to prove his continuing eligibility for LTD benefits, Lincoln periodically requested updated medical evidence and made other investigations of the Plaintiff's condition.

On July 12, 2017, Plaintiff again visited Dr. Bendik complaining of back and neck pain. LIB0257. On exam, Plaintiff was "[a]ble to ambulate without difficulty," but demonstrated "[g]uarding" with respect to his neck and back and reported "pain at terminal ranges of motion." LIB0257. Plaintiff showed "[n]o

evidence of shoulder impingement," and his strength was "5/5 and equal symmetrically." LIB0257. Dr. Bendik recommended Plaintiff for cervical fusion surgery and referred him to pain management pending approval of surgery. LIB0258.

In response to Lincoln's inquiries as to his treatment plan, Plaintiff told Lincoln on July 17, 2017, that his medical insurer refused to approve payment for the recommended back surgery. LIB0738. In the meantime, Plaintiff began visiting Dr. Jose Mathew, and various physician assistants and nurse practitioners in his office, for pain management and the prescription of opioid drugs. *See*, *e.g*., LIB0673; LIB0671; LIB0 668; LIB0645.

On September 1, 2017, Plaintiff visited Nurse Practitioner Dina Patel in Dr. Mathew's office for a refill of opioid pain medication. LIB0668. At that time, Plaintiff self-reported his pain as "10/10" and "worse with sitting and standing for prolonged periods." LIB0668. Yet on physical examination, Nurse Patel's note shows that Plaintiff was "in no acute distress" and "conversant." LIB0668. His breathing was "unlabored," and his thoracic range of motion was "WNL," meaning within normal limits. LIB0668–69.

When Plaintiff returned to Dr. Blake on September 5, 2017, he reported low back pain, but he also reported exercising regularly—specifically, "4 to 5 x weekly

12

x 45 mins to 1 hour." LIB0692.  On exam, Dr. Blake found Plaintiff to be "[w]ell appearing, well nourished [and] in no distress."  LIB0693.

To evaluate Plaintiff's evolving condition, Ms. Alford asked a third-party vendor to select an independent physician to review the record.  The vendor selected Dr. Arthur Kalman, who is board certified in physical medicine and rehabilitation, and he issued a report dated October 13, 2017.  LIB0659.  Dr. Kalman opined that the medical evidence supported the diagnoses of lumbar spondylosis and cervical radiculopathy, among others, and he opined that in light of the recommended back surgery, Plaintiff was likely to be functionally impaired. LIB0664.  In an addendum report, Dr. Kalman opined that Plaintiff's impairment should not be re-evaluated for at least three months—enough time "to see if the [Plaintiff] has surgery and how he progresses."  LIB0657.

Deferring to Dr. Kalman's assessment, Lincoln continued paying LTD benefits for the next eighteen months while collecting updated medical evidence. During that time, Plaintiff continued to seek regular refills of opioid pain medications, *see*, *e.g*., LIB0642; LIB0639; LIB0615; LIB0612; LIB0609; LIB0602; LIB0558, and he also began treatment with a chiropractor.  *See* LIB0277–302.  However, he never had the back surgery recommended by his treating orthopedist.

13

**C.** **Following a full and fair review at time the of the Group Policy's change to an "any occupation" standard, Lincoln determined that Plaintiff failed to meet his continuing burden to prove entitlement to benefits.**

Under the terms of the Group Policy, the definition of disability changed from an "own occupation" standard to an "any occupation" standard on April 13, 2019. In the months leading up to that change, Lincoln continued to request and review medical evidence from Plaintiff's treating practitioners.

Plaintiff had an MRI of his lumbar spine in June 11, 2018. LIB0489. According to the diagnostic report, there was "moderate advanced disc degeneration" at L5–S1 and "mild disc degeneration at the remaining lumbar levels," but "[n]o vertebral compression deformity or significant listhesis [was] seen at any level." LIB0489. "No paraspinal soft tissue pathology [was] appreciated in the lumbar region." LIB0489.

Approximately monthly, Plaintiff visited Dr. Mathew, and others in his office, for refills of opioid pain medication. The progress notes from these visits show that Plaintiff consistently self-reported pain of "10/10," but he also consistently presented at his appointments "in no acute distress" and consistently denied any side effects from the medication. *See*, *e.g*., LIB0552; LIB0486; LIB0480; LIB0469; LIB0433. When examined on January 29, 2019, for example, Nurse Practitioner Stephanie Bridges noted that Plaintiff's breathing was

14

"unlabored," his strength was "5/5" in upper and lower muscle groups, and his neurological sensations and deep tendon reflexes were "grossly intact." LIB0433–34. Although Nurse Bridges observed decreased range of motion and "tenderness to palpation" along Plaintiff's cervical and lumbosacral spine, she also noted that Plaintiff's thoracic range of motion was "WNL," or within normal limits, and that his thoracic region was "NTTP," or non-tender to palpitation. LIB0434.

Subsequent examination findings by other treating practitioners in Dr. Mathew's office—including a March 1, 2019 examination by Nurse Practitioner Deborah Wilkins and a March 27, 2019 examination by Registered Nurse Dalandra Belcher—were essentially identical, again showing no acute distress, "grossly intact" strength in all extremities, and no neurological deficits. *See* LIB0387–88; LIB0384–85.

On April 9, 2019, Plaintiff visited dermatologist Lauren Orenstein complaining of a new hidradenitis flare-up in his right armpit. LIB0327. She prescribed a topical ointment. LIB0329.

In connection with Lincoln's "any occupation" review, Ms. Alford asked a third-party vendor to select an independent, qualified physician to review all of the medical evidence in the file. The vendor selected Dr. Howard Grattan, who is board certified in pain medicine and physical medicine and rehabilitation. *See*

15

LIB0360–69.  In his report, dated April 17, 2019, Dr. Grattan summarized

Plaintiff's medical records and attempted to contact Plaintiff's treating providers,

but they did not return his calls.  *See* LIB0363.  Commenting on the medical

evidence, Dr. Grattan noted diagnoses of lumbar spondylosis, cervical

radiculopathy, and degenerative disc disease.  LIB0363.  He observed that Plaintiff

did not have the fusion surgery.  LIB0364.  Instead, Plaintiff "remained under the

care of pain management" and "had an ongoing limited range of motion in the

cervical and lumbosacral regions."  LIB0364.  Taking into consideration "the

entire clinical picture," Dr. Grattan explained that while the Plaintiff's medically

supported limitations were "significant," they "would not preclude all level of

function."  LIB0364.

Specifically, Dr. Grattan found that Plaintiff's medically necessary

restrictions throughout a normal 40-hour work week would include:

> lifting, carrying, pushing and pulling up to 10 pounds occasionally
> (up to 1/3 of the day) and up to 5 pounds frequently (1/3 to 2/3 of
> the day).  Sitting up to 40 minutes continually for a total of up to
> eight hours per day with the ability to alter the position.  Walking
> and standing combined up to 20 minutes continually for a total of
> up to 3 hours out of an 8 hour day. . . .  No crawling or balancing.
> Occasionally perform reaching below the waist. Occasionally,
> perform reaching overhead.  No restrictions with reaching at waist
> level.  Fingering, handling, feeling, and grasping is unrestricted.

LIB0364.  In sum, he concluded that Plaintiff would "at least have the capacity to function at a sedentary level," provided he also had the opportunity to change position for comfort.  LIB0364.

Ms. Alford next asked Rehabilitation Counselor Alicia Powell to prepare a Transferable Skills Analysis ("TSA") to identify—in light of Plaintiff's education, training, and employment background—occupations that Plaintiff could perform within the medical limitations determined by Dr. Grattan.  Ms. Powell's report, dated April 22, 2019, identified six "sedentary" occupations, including Plaintiff's own occupation of accountancy, that met all search criteria.  LIB0354.

Based on Dr. Grattan's medical opinion and the results of Ms. Powell's vocational assessment, Ms. Alford determined that Plaintiff had failed to meet his burden to prove ongoing entitlement to LTD benefits under the Group Policy.  She wrote to notify him of her decision on April 30, 2019.  *See* LIB0347–52.  In her letter, she recited the applicable Group Policy language, identified the medical evidence considered, and quoted at length from Dr. Grattan's report and from Ms. Powell's analysis.  After explaining the decision, Ms. Alford concluded, "Benefits will be paid through April 22, 2019, and your claim is closed as of April 23, 2019." LIB0350.

**D. Plaintiff appealed Lincoln's determination, but the additional medical evidence he submitted did not show that he was disabled from "any occupation."**

As permitted by the Group Policy, Plaintiff requested an administrative appeal of Lincoln's determination by letter dated May 15, 2019. LIB0339. In support of his appeal, Plaintiff submitted updated medical records and advised Lincoln that he was scheduled for hidradenitis surgery on June 24, 2019. LIB0340; *see also*, *e.g.*, LIB0209; LIB0221; LIB0170; LIB0172.

The additional medical records showed that Plaintiff visited Dr. Blake, his primary care physician, on May 14, 2019. LIB0262. Dr. Blake's progress note described Plaintiff's "chronic" neck and back pain, but on physical exam, Dr. Blake wrote: "Neck: Normal range of motion. Neck supple." LIB0264. "Pulmonary/Chest: Effort normal and breath sounds normal. No respiratory distress." LIB0264. "Musculoskeletal: Normal range of motion. He exhibits no edema, tenderness or deformity." LIB0264. "Neurological: He is alert and oriented to person, place, and time. He has normal reflexes. . . . No cranial nerve deficit. He exhibits normal muscle tone. Coordination is normal." LIB0264. Despite such unremarkable exam findings, however, Dr. Blake also wrote, without any supporting rationale, "In my clinical opinion, this patient is unable to return to work at this time given his current diagnoses and comorbid conditions." LIB0265.

Plaintiff also submitted a report from chiropractor Dr. Donald Capoferri, dated May 21, 2019, which was apparently prepared in connection with Plaintiff's personal injury claims against the other driver in the October 2016 motor vehicle accident. LIB0175–82. While Dr. Capoferri's report contains narrative descriptions of certain neck and spine imaging results, the report appears to be more geared towards establishing causation—*i.e.*, attributing Plaintiff's symptoms to the accident—rather evaluating the degree or extent of Plaintiff's alleged functional limitations. The report concludes that Plaintiff's injuries "have caused permanent and consequential limitations," but Dr. Capoferri did not describe what those limitations were or what functional capacity the Plaintiff might retain.[4] *See* LIB0182.

Finally, Plaintiff also submitted records pertaining to his surgery on June 24, 2019, to remove a hidradenitis lesion from his right armpit. *See*, *e.g*., LIB0171. Post-operative records from Plaintiff's dermatologist, later submitted, showed the "surgical site healing well" and "good arm mobility." LIB0062.

---

[4] Instead, Dr. Capoferri purported to calculate a so-called "whole person impairment" rating of 39%. *See* LIB0181.

**E.** **After a full and fair review, including peer reviews by two additional board-certified physicians, Lincoln upheld its prior determination that Plaintiff failed to meet his burden to prove entitlement to continued LTD benefits.**

Lincoln assigned the appeal to Appeals Consultant Courtney Grygiel. Ms. Grygiel first asked medical consultant Dr. Sheila Natarajan, who is board-certified in physical medicine and rehabilitation, to review all of the medical evidence in the record.

In her report, dated July 9, 2019, Dr. Natarajan discussed the Plaintiff's lumbar and cervical diagnoses as well as his skin condition. She concluded that the medical records "reasonably support" a number of "significant" activity restrictions but were nevertheless "insufficient to support an inability to sustain full-time capacity" within those restrictions. LIB0116–17.

In explaining her conclusion, Dr. Natarjaran noted that the MRIs closer in time to the motor vehicle accident evidenced disc herniation, however, "given the amount of time that has passed . . . , it is possible for disc resorption and remodeling to occur around the previous herniations." LIB0117. She cited the absence of "any electrodiagnostic studies to evaluate and confirm ongoing radiculopathy." LIB0117 Noting the consistent findings of "normal strength," she said, radiculopathy, "too, can improve over time and appears to have done so with no further neuromotor findings found on recent physical exams." LIB0117. Next,

Dr. Natarjaran discussed "discrepanc[ies] within the different providers' notes." LIB0117. She contrasted, for example, Dr. Blake's "relatively benign" examination results on May 14, 2019, with his opinion the Plaintiff would be completely unable to work. LIB0117. "Lastly," she concluded, "the treatment plan . . . included a recommendation for surgical intervention in 2017 which has not yet occurred." LIB0117. "In the absence of surgery, there does not appear to be any current escalation of medication or alternative pain management recommendations which does not correlate with the severity of claimed impairment of 'no workability.'" LIB0118.

Upon receipt of the report, Ms. Grygiel asked Rehabilitation Counselor Lori Ashworth to prepare a new vocational assessment using the restrictions identified by Dr. Natarjaran. Ms. Ashworth concluded, "Based on these updated capacities, the previously identified occupations of Accountant, Budget Accountant, Cost Accountant, Budget Analyst and Tax Preparer remain viable." LIB0147.

To have the benefit of a second opinion as to the medical evidence, Ms. Grygiel also asked medical consultant Dr. David Houghton, who is board-certified in internal medicine, to review the entire record and evaluate Plaintiff's functional capacity. Dr. Houghton's report, dated July 24, 2019, contains a lengthy and detailed review of Plaintiff's medical and treatment history, both before and after

his October 2016 motor vehicle accident.  He concluded that the following

functional limitations were reasonably supported:

> No sitting longer than 1 hour without opportunity to stand.  No standing or walking longer than 15 minutes without opportunity to sit.  No more than occasional bending/twisting at the waist or neck.  No exertion of more than 20 pounds of force.

LIB0134.  But Dr. Houghton also concluded that the evidence did not support

Plaintiff's alleged inability to perform sedentary work.  LIB0134.  He continued,

> There is no medical basis on which to restrict a patient's participation in sedentary productive activity because of chronic neck and back pain.  This is an issue of personal tolerance, and not one of objective medical science.  There is no medical risk involved.  There is much published evidence that restricting light activity in patients with chronic back pain is harmful rather than helpful. . . .  The claimant's self-documented recreational activity suggests that his condition is not as severe as he has indicated to his clinicians.
>
> <div align="center">* * *</div>
>
> [T]he claimant has had chronic neck and back pain for years, with degenerative changes in the cervical and lumbar spine, including L5-S1 disc herniation.  It was apparently aggravated by a motor vehicle collision in 2013.  Despite this, the claimant continued working at his full-time sedentary job.  In the summer of 2016 he reported 10/10 low back pain after golfing (the maximum pain a person is capable of experiencing).  Nevertheless he continued working.  He was in another moderate motor vehicle collision in October 2016, at which time he declined medical attention.  Since then he has continued to complain of 10/10 back pain, as well as a lesser degree of neck pain. . . .  His clinicians have said that the collision exacerbated his chronic back pain, but objective abnormalities on exam have been mild and inconsistent.  In many instances the exam findings and pain intensity have been sharply at

<div align="center">22</div>

odds with demonstrated functional capacity.  Treatment has remained the same for over 2 years, consisting of a low potency opioid, a muscle relaxer, and low dose gabapentin. . . .  There is no objective support for the opinion of his clinicians that he is totally disabled, and there is substantial evidence that his functional capacity is sufficient for sedentary full-time productive activity.  A large number of studies show that patients involved in litigation or disability disputes or at-fault injury are much more likely to remain out of work.  Unfortunately in this case it appears that the treating clinicians have contributed to this resistance rather than helping to overcome it.

LIB0135–40.

To provide Plaintiff an opportunity to review and comment on Dr. Natarajan's and Dr. Houghton's reports and Ms. Ashworth's vocational assessment, Ms. Grygiel sent copies of those materials to Plaintiff on July 24, 2019.  LIB0114.  Plaintiff responded on August 2, 2019, by calling Dr. Houghton's report a "diatribe of insults, insinuations, and defamations" and accusing Dr. Natarajan of overlooking 2018 MRI evidence contained in the file.  LIB0081. Plaintiff subsequently submitted the additional dermatology records mentioned above, which showed that his armpit lesion surgery was "healing well."  LIB0062. In a separate letter, Plaintiff's dermatologist, Dr. Tova Rogers, said that hidradenitis suppurativa is a "chronic disease" and lamented that patients with the condition "suffer throughout their lives with episodes of these debilitating skin lesions."  LIB0061.  She did not identify any specific restrictions on Plaintiff's

activities due to the disease or offer any opinion that he was unable to work. LIB0061.

After reviewing Plaintiff's reply, Dr. Houghton provided an addendum report on August 16, 2019, which contained a detailed response. LIB0074. Dr. Houghton again emphasized that the records show that Plaintiff reported "the same severity level of pain"—10/10—both before and after his last day of work. LIB0074. Thus, "[t]here is no objective evidence in the available records that [Plaintiff's] lumbar condition has substantially worsened since he was working full-time." LIB0074. Similarly, Dr. Houghton explained, "The available MRI results have not substantially changed since before [Plaintiff] stopped working." LIB0074. Dr. Houghton also observed that the records do not show consistent neurological deficits and that Plaintiff's treatment regime has been stable for more than two years. LIB0076.

Dr. Natarajan also prepared an addendum, dated August 22, 2019, in which she specifically addressed Plaintiff's most recent 2018 MRI and explained that "there is no information from that scan that would change my conclusions" or otherwise indicate restrictions or limitations more extensive than those identified in her prior report. LIB0056.

On the basis of the peer review reports and addendums, the vocational assessment, and the entirety of the record before Lincoln, Ms. Grygiel concluded on August 23, 2019, that Plaintiff had again failed to prove his entitlement to LTD benefits under the Group Policy. LIB0047. In her letter notifying Plaintiff of the decision, she explained that "the existence of a medical condition/diagnosis in and of itself does not equate to eligibility for long term disability benefits." LIB0053. Rather, the "focus" of the assessment is "whether or not [an] impairment exists that would preclude you from performing the duties of your own occupation or any occupation." LIB0053. After discussing the medical peer reviews at length, Ms. Grygiel acknowledged that the medical evidence reasonably supported certain physical restrictions and limitations. But despite such restrictions and limitations, as she explained, the evidence submitted failed to prove that Plaintiff would be unable to perform the duties of his own sedentary occupation, let alone the duties of other sedentary occupations also identified by Ms. Ashworth's analysis. LIB0053.

## IV. The Administrative Record overwhelmingly supports Lincoln's determination, and Plaintiff's attacks on Lincoln's determination are meritless.

Plaintiff did not establish his entitlement to LTD benefits below, and he cannot satisfy his burden of proof here. The Administrative Record simply does

not prove by a preponderance of the evidence that Plaintiff was continuously disabled from his sedentary occupation beyond April 22, 2019.  Indeed, the objective evidence that he submitted—for example, the MRIs and physical examination results from both before and after his accident—shows that he was likely never entitled to disability benefits in the first place.

Absent proof of functional limitation, mere subjective reports of pain cannot establish a claim for disability benefits.  *See* Taylor v. Broadspire Servicing, Ltd., 314 Fed. App'x 187, 192 (11th Cir. 2008) (holding that administrator was correct in denying chronic pain claim where medical records submitted did not contain "the kind of qualitative or quantitative medical information needed to determine [claimant's] functional limitations on her ability to work"); Richey v. Hartford Life & Accident Ins. Co., 608 F. Supp. 2d 1306, 1310 (M.D. Fla. 2009) ("ERISA disability is not established merely by the existence of pain, even chronic pain, in the absence of proof that the claimant's pain actually precludes him or her from working."); *see also*, *e.g.*, Howard v. Hartford Life & Accident Ins. Co., 929 F. Supp. 2d 1264, 1295 (M.D. Fla. 2013), *aff'd*, 563 Fed. App'x 658 (11th Cir. 2014) ("Even for subjective conditions like fibromyalgia, it is reasonable to expect medical evidence of an inability to work.") (internal quotation omitted).

Here, Plaintiff wholly failed to provide any evidence, as was his burden, to support his claim of continuing total functional impairment. For instance, the report Plaintiff submitted by Dr. Capoferri asserts that Plaintiff's October 2016 car accident "caused permanent and consequential limitations," LIB0182, but Dr. Capoferri's conclusory analysis, such as it is, appears to focus narrowly on the question of causation. He does not, for example, describe any specific functional limitations or restrictions, and he certainly does not provide any objective or empirical evidence purporting to measure or document the extent of Plaintiff's alleged limitations. Similarly, the contemporaneous examination records only inconsistently show mild and indefinite limitations on neck and lower back range of motion. While Nurse Bridges noted a decreased range of neck motion and "tenderness to palpation" in January 2019, Dr. Blake wrote that Plaintiff's neck was "supple" and had a "normal range of motion" by May 14, 2019. *Compare* LIB0434 *with* LIB0264. For months leading up to the change-of-definition review, Plaintiff's treating practitioners repeatedly recorded a normal range of motion and no tenderness to palpation with respect to Plaintiff's thoracic spine. *See*, *e.g.*, LIB0433–34; LIB0387–88; LIB0384–85.

Moreover, the objective examination evidence in the record is contrary to Plaintiff's subjective self-report of debilitating pain and thus actually undercuts

27

any contention that Plaintiff was continuously disabled from sedentary work. While Plaintiff consistently self-reported pain of "10/10," the contemporaneous examination evidence consistently showed that he presented in "no acute distress," contrary to what one might expect if he was truly experiencing the most severe pain possible. *See*, *e.g.*, LIB0552; LIB0486; LIB0480; LIB0469; LIB0433; LIB387; LIB384. Plaintiff's breathing was consistently "unlabored," which is also inconsistent with debilitating levels of pain. *See*, *e.g.*, LIB0552; LIB0486; LIB0480; LIB0470; LIB0433; LIB0387; LIB0384. At all times, Plaintiff retained full "5/5" strength in all extremities. *See*, *e.g.*, LIB0553; LIB0486; LIB0481; LIB0470; LIB0434. Thus, his muscle strength did not atrophy over time, as one would expect if pain truly precluded him from all functional activities. Moreover, the contemporaneous examinations consistently documented an absence of any significant neurological deficits, *see*, *e.g.*, LIB0553; LIB0470; LIB0434; LIB0388, and as even Dr. Blake observed shortly after benefits were terminated, Plaintiff's reflexes and coordination continued to be entirely "normal." *See* LIB0264. Finally, as to Plaintiff's mental status, examinations showed repeatedly that he "responds to commands, converses appropriately, [is] alert, aware, oriented to person, place and time," and presents with "non-pressured speech and appropriate affect." *See* LIB0434; LIB0388; LIB0385; *see also*, *e.g.*, LIB0552; LIB0486;

28

LIB481; LIB470.  Such observations show that Plaintiff's ability to concentrate and interact with coworkers would not have been impaired by his reported pain or otherwise.

The degenerative changes to Plaintiff's spine, as demonstrated by multiple MRI imaging studies, did not significantly worsen between February 17, 2015, when Plaintiff was actively working full time, and October 7, 2016, three days after his car accident.  *Compare* LIB0491 *with* LIB1424.  Moreover, the October 7, 2016 MRI showed "no evidence" of any "fracture or bone destruction," any "pars defect," or any injury to interspinous or supraspinous ligaments.  LIB1424.  Plaintiff's June 11, 2018 MRI described Plaintiff's disc degeneration as "mild" to "moderate," but found "[n]o vertebral compression deformity or significant listhesis . . . at any level."  LIB0489.  Compression and listhesis—conditions which result in pinched nerves—commonly cause pain, but here, Plaintiff's most recent MRI confirms the absence of such conditions.

Following Lincoln's termination of benefits, none of Plaintiff's many treating physicians, other than Dr. Blake, offered an opinion that Plaintiff's symptoms were of such severity as to preclude all work activity.  The absence of such treating physician support speaks volumes.

Lincoln was correct to discount the advocacy of Dr. Blake, who did offer conclusory opinions of disability, and this Court should discount his advocacy as well. From the outset, Dr. Blake's opinion as to disability was at odds with his own contemporaneous progress notes. For example, on December 6, 2016, Dr. Blake found Plaintiff to be "well-appearing" and "ambulating without difficulty," *see* LIB0844, but the same day, Dr. Blake nevertheless told Plaintiff's employer that Plaintiff could not perform his sedentary occupation due to "severe back problems." LIB1426. The opinion Dr. Blake offered at the time of Plaintiff's administrative appeal is no different. Dr. Blake's May 14, 2019 examination findings were essentially normal—"[n]ormal range of motion," "normal" breathing, "normal reflexes," "normal muscle tone," "normal" coordination—but contrary to such findings, Dr. Blake also wrote that Plaintiff was "unable to return to work." LIB0264–65 Dr. Blake's own "normal" examination findings stand in marked contrast to his conclusory and wholly unreasonable assertion of complete disability. *See*, *e.g.*, Bumpas v. Unum Life Ins. Co., 2005 WL 2428537 at *5 (M.D. Fla. Sept. 30, 2005) (finding administrator was correct "to rely on contemporaneous treatment notes of [claimant's] physicians, rather than [their] *post hoc* certification of disability."); Maleszewski v. Liberty Life Assurance Co., 2010 WL 1416995 at *10 (E.D. Mich. April 8, 2010) ("[A]n opinion by a treating

30

physician that a patient is disabled without an explanation of how the physician arrived at that determination is entitled to little weight.").

Dr. Blake's advocacy may be understandable from a treatment perspective, in which a physician must credit his patient's subjective complaints, but Lincoln, as an ERISA administrator, must look to reliable medical evidence to assure that it only pays eligible claimants consistent with its duty to preserve fund assets for the benefit of all future claimants. As the Supreme Court has long recognized, a "treating physician, in a close case, may favor a finding of 'disabled,'" and thus "courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician." Black & Decker Disability Plan v. Nord, 538 U.S. 822, 833–34 (2003); *see also*, *e.g.*, Wangenstein v. Equifax, Inc., 191 Fed. App'x 905, 914 (11th Cir. 2006) (holding that administrator properly considered objective evidence of disability and properly credited the opinions of peer reviewers over the conclusory statements of claimant's treating physicians); Maniatty v. Unumprovident Corp., 218 F. Supp. 2d 500, 504 (S.D.N.Y. 2002), *aff'd*, 62 Fed. App'x 413 (2d. Cir. 2003), *cert. denied*, 540 U.S. 966 (2003) ("In these circumstances, it was not unreasonable for the administrator to conclude that the only material reason the treating physicians were reaching their diagnoses was based on their acceptance of plaintiff's subjective complaints: an acceptance more

or less required of treating physicians, but by no means required of the administrator.").

Apart from the contemporaneous examination reports and imaging studies—all of which refute Plaintiff's claim—the record also contains detailed and well-reasoned opinions from no less than three board-certified consulting physicians, each of whom separately reviewed all of the medical evidence in the file and independently concluded that Plaintiff was at least capable of sedentary-level work. The Court should properly credit those reliable reports. *See*, *e.g*., <u>Nord</u>, 538 U.S. at 833–34 (2003); <u>Wangenstein</u>, 191 Fed. App'x at 914. The rationale and supporting evidence for the opinions of Drs. Grattan, Natarajan, and Houghton are set forth at length in their respective reports, and these consulting physicians—unlike Dr. Blake—are the only doctors in the case to have reviewed the entirety of the available medical evidence. *See*, *e.g*., <u>Beltman v. Sun Life Assurance Co.</u>, 2019 WL 1614584 at *8 (W.D. Mich. March 29, 2019) ("The Court also gives greater weight to [the administrator's] experts as they are the only practitioners in the case to have reviewed the whole of [claimant's] medical records before offering their assessments."); <u>Etkin v. Merk & Co.</u>, 2001 WL 1346368 at *6 (E.D. Pa. Oct. 30, 2001) ("[I]t is not improper to rely on the opinions of non-examining physicians who had before them the entire record of medical evidence, more

evidence than was available to any one doctor who saw the [claimant] previously.").[5]

The only remaining opinion concerning Plaintiff's ability to work comes from the Plaintiff himself, but Plaintiff's own subjective self-assessment of an alleged inability to work, without more, simply cannot satisfy the Group Policy's strict proof requirements. In the Eleventh Circuit, the law is clear that "[w]here the plan puts the burden on the claimant to prove that [he] is disabled, it is implicit in the requirement of proof that the evidence be objective." Watts v. BellSouth Telecom., Inc., 218 Fed. App'x 854, 856 (11th Cir. 2007). "Where a plan requires proof of continued disability, 'the very concept of proof connotes objectivity.'" Fick v. Metropolitan Life Ins. Co., 347 F. Supp. 2d 1271, 1286 (S.D. Fla. 2004) (quoting Maniatty, 218 F. Supp. 2d at 504). "Were an opposite rule to apply, LTD benefits would be payable to any participant with subjective and effervescent symptomology simply because the symptoms were first passed through the intermediate step of self-reporting to a medical professional." Id. (quoting

---

[5] At an early stage of the review process, Lincoln reasonably credited the peer review of Dr. Kalman, even though the claim, at that point, was only weakly supported, if at all. The unanimous opinions of Drs. Grattan, Natarajan, and Houghton supersede Dr. Kalman's, as the three later reviewers all had the benefit of nearly two years' worth of updated medical evidence that was not available to Dr. Kalman at the time of his review.

Coffman v. Metropolitan Life Ins. Co., 217 F. Supp. 2d 715, 732 (S.D. W. Va. 2002), *aff'd*, 77 Fed. App'x 174 (4th Cir. 2003)). If administrators were to rely solely on subjective complaints alone to constitute the requisite proof of disability, "the review of claims for long-term disability benefits would be 'meaningless because a plan administrator would have to accept all subjective claims of the participant without question.'" Id. at 1286–87 (quoting Williams v. UNUM Life Ins. Co., 250 F. Supp. 2d 641, 648 (E.D. Va. 2003)). "Furthermore, the fiduciary role of the plan administrator of scrutinizing claims, protecting the assets of a plan, and paying legitimate claims would be seriously compromised." Id. at 1287 (citing Coffman, 217 F. Supp. 2d at 732).

The case of Hufford v. Harris Corp., 322 F. Supp. 2d 1345 (M.D. Fla. 2004), is instructive. There, an ERISA benefits claimant similarly attempted to prove her claim on the basis of her own subjective complaints but without objective evidence of functional impairment. Rejecting her argument, the Court explained,

> It is difficult to understand how a long term-disability plan would survive if Plaintiff's assessment of what is required in the way of proof was correct. The Plan would be open to fraudulent abuse if all that was required for receipt of LTD benefits was the subjective complaints of a claimant. A plan administrator would be prohibited from denying any claim by a claimant who insisted that her conditions were severe enough to prevent her from working. Claims of those who exaggerate or even fabricate their claims of disability would be treated the same as those who present valid medical corroboration of medical deficits. Under such a system,

no claims could be denied.  For these reasons alone, it is reasonable for a Plan to require "objective medical information" in support of a claim for long-term disability as [the administrator] did in deciding Plaintiff's claim.

*Id*. at 1355.

Based on this record, Lincoln made the only determination it could have made.  Plaintiff did not meet his burden of proving—by a preponderance of the evidence—that any disability functionally precluded his ability to work in "any occupation" beyond April 23, 2019.  Having failed to prove any continuing disability within the terms of the Group Policy, Plaintiff is not entitled to any further LTD benefits.  Lincoln made the only determination possible based on the evidence, and this Court must affirm.

## Conclusion

For the foregoing reasons, this Court should grant judgment in favor of Lincoln and dismiss Plaintiff's claims with prejudice.

<div style="margin-left: 50%">

Respectfully Submitted,
LINCOLN LIFE ASSURANCE
COMPANY OF BOSTON,
By its Attorneys,

/s/  Scott K. Pomeroy
Scott K. Pomeroy
Georgia Bar No. 583296
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
One Boston Place, Suite 3500

</div>

35

Boston, MA 02108
207-387-2961 direct
207-387-2986 fax
Email: scott.pomeroy@ogletree.com

/s/  Amy E. Jensen

Amy E. Jensen
Georgia Bar No. 874759
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
191 Peachtree Street, N.E., Ste. 4800
Atlanta, Georgia 30303
404-870-1796 direct
404-870-1732 fax
Email: amy.jensen@ogletree.com

Dated: November 13, 2020

36

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

VIRGIL HARRIS,
     Plaintiff,

v.

LINCOLN LIFE ASSURANCE
COMPANY OF BOSTON,
     Defendant.

CIVIL ACTION NO.:
1:19-cv-4257-CC

## CERTIFICATE OF SERVICE

I hereby certify that on this the 13th day of November 2020, the foregoing **Memorandum in Support of Defendant's Motion for Judgment on the Administrative Record** was filed electronically with the Clerk of Court using the CM/ECF system, which will automatically serve an electronic copy on the following attorney(s) of record:

Heather K. Karrh
Rogers, Hofrichter & Karrh, LLC
225 South Glynn Street, Suite A
Fayetteville, GA 30214
hkarrh@rhkpc.com

/s/ Scott K. Pomeroy
Scott K. Pomeroy
Georgia Bar No. 583296

44599639.2