# EXHIBIT A

# Administrative Record

## Claim Coversheet Report

| Find | Clear | Print | Save | New | Help |
|------|-------|-------|------|-----|------|

Admin Notes  Claim  Class  Correspond  Doc List  Medical  SPELL Letters

Claim Number 7223420    Claim Last Updated 08/29/2019    Printed On 10/3/2019

### Claimant Information

| | | | | |
|---|---|---|---|---|
| Name | VIRGIL A HARRIS | SSN | XXX-XX-9973 | Birth Date 01/16/1962 |
| Address | 1604 PINE TREE TRAIL | Salary Amount $ | 4333.33 | Mode M |
| | | Date of Hire | 12/08/2015 | |
| | | Last Work Date | 10/14/2016 | |
| | COLLEGE PARK, GA 30349-0000 | Federal Tax | None | State Tax Yes |
| Phone | (404) 781-5494 | Phys Demands | Sedentary | |

JobDesc  SALARIED PROFESSIONAL- ACCOUNTING CONSULTANT

| | | | | | |
|---|---|---|---|---|---|
| Claim Status | Closed | Status Reason | Not TD Any Occ | Received Date | 02/20/2017 |
| Disability Date | 10/15/2016 | Close Date | 04/23/2019 | Reopen Date | 05/26/2017 |
| Sick Days Left | | Max Ben Date | 01/15/2029 | RTW FT / PT | |
| Ben Begin Date | 04/13/2017 | Apprv Thru Date | 04/22/2019 | Gross Ben $ | |

Diagnosis 1 Code/Desc  M54.5    Low back pain

Diagnosis 2 Code/Desc  M54.12    Radiculopathy, cervical region

### Policyholder Information

Customer ID 06 - 066675    ROBERT HALF INTERNATIONAL INC.

Subsidiary OSPS    SPS

Location 00000000    ROBERT HALF INTERNATIONAL INC.

Symb GF    Numeral 01    Product LTD    Funding CON    Bank Y    Calcs Y    Cntr Eff 01/01/2015

Class 04    ALL ACTIVE, ELIGIBLE ROBERT HALF SPS EMPLOYEES PARTICIPATING IN THE BU

Waiting Period: New/Mode-Current/Mode  30  Day  30  Day    Days in WRKWK    Pre-X 3-1

Elimination Period: Days/Type  180  Injury    COLA: Mode/Duration

Successive Period: Period/Mode  6  Month    SS Integration:Type/Value  FSS

Partial Disability Type/Pct  QRP+  7.00    Survivor Ben Months/Wait Period  3  180

Non-Verifiable Symptoms Limit    Own Occupation Definition Limit  24    M/N Limit  24

Benefit %    Max Benefit $    Min Benefit $    Employer Contr %    Subro Ind N

### Selected Benefits

| Symbol | Numeral | Product Type | Class | Eligibility Date | |
|--------|---------|--------------|-------|------------------|---|
| GF | 01 | LTD | 04 | 02/01/2016 | |
| PD | 01 | STD | 01 | 02/01/2016 | |

Additional Information:

**LIB000001**

**Claim Coversheet Report**

| Find | Clear | Print | Save | New | Help |
|------|-------|-------|------|-----|------|

Admin Notes  Claim  Class  Correspond  Doc List  Medical  SPELL Letters

Claim Number 7037643    Claim Last Updated 02/20/2017    Printed On 10/3/2019

### Claimant Information

| | | | | |
|---|---|---|---|---|
| Name | VIRGIL A HARRIS | SSN | XXX-XX-9973 | Birth Date 01/16/1962 |
| Address | 1604 PINE TREE TRAIL | Salary Amount $ | 1000.00 | Mode W |
| | | Date of Hire | 12/08/2015 | |
| | | Last Work Date | 10/14/2016 | |
| | COLLEGE PARK, GA 30349-0000 | Federal Tax | Table | State Tax Yes |
| Phone | (404) 781-5494 | Phys Demands | Sedentary | |

JobDesc  SALARIED PROFESSIONAL- ACCOUNTING CONSULTANT

| | | | | | |
|---|---|---|---|---|---|
| Claim Status | Closed | Status Reason | Max Dur/To LTD | Received Date | 11/01/2016 |
| Disability Date | 10/15/2016 | Close Date | 04/13/2017 | Reopen Date | |
| Sick Days Left | | Max Ben Date | 04/12/2017 | RTW FT / PT | |
| Ben Begin Date | 10/22/2016 | Apprv Thru Date | 04/12/2017 | Gross Ben $ | |

Diagnosis 1 Code/Desc  M54.5    Low back pain

Diagnosis 2 Code/Desc

### Policyholder Information

Customer ID  06 - 066675    ROBERT HALF INTERNATIONAL INC.

Subsidiary  OSPS    SPS

Location  00000000    ROBERT HALF INTERNATIONAL INC.

Symb PD    Numeral 01    Product STD    Funding ASO    Bank Y    Calcs Y    Cntr Eff 01/01/2015

Class  01    ALL ACTIVE, ELIGIBLE EMPLOYEES EXCLUDING ROBERT HALF SALARIED PROFES

Waiting Period: New/Mode-Current/Mode  0    0    Days in WRKWK 7    Pre-X NO

Elimination Period: Days/Type  7    Injury    COLA: Mode/Duration

Successive Period: Period/Mode  14    SS Integration:Type/Value

Partial Disability Type/Pct    Survivor Ben Months/Wait Period

Non-Verifiable Symptoms Limit    Own Occupation Definition Limit    M/N Limit

Benefit %    Max Benefit $    Min Benefit $    Employer Contr %    Subro Ind N

### Selected Benefits

| Symbol | Numeral | Product Type | Class | Eligibility Date |
|--------|---------|--------------|-------|------------------|
| GF | 01 | LTD | 04 | 02/01/2016 |
| PD | 01 | STD | 01 | 02/01/2016 |

### Additional Information:

LIB000002

## Note Report

| Report | Clear | Print | Help |
|---|---|---|---|

AS Accom  AS Event  Add Note  Appeal  Claim  Coord Claim Note  Correspond  Doc List  Employee  Leave  Life Claim  Lve Addtl Info

Lve Correspondence  Lve Program  Lve Work Sched  Medical  Medical History  Note  SPELL Letters  Scheduled Pmt  Task Print  Task Rpt

Tasks

**Claim**

*Claim/Event/Leave Number 7223420          Accommodation Number

Note type:

**Primary Sort Order**
Note Type
Note Number
● Note Date/Time
Accm. No.

Sec
●

---

**09/30/2019 10:49 AM - CLAIM Note 194**
Claim/Event/Leave: 7223420
NoteSubject : Legal
Other Subject : LAWSUIT FILED
Text: [09/30/2019 - ODGAARD, EDITH]CLAIMANT HAS FILED A LAWSUIT. PLEASE DIRECT ANY FURTHER INQUIRY ON THIS CLAIM TO THE LITIGATION MANAGER.

**09/05/2019 10:57 AM - CLAIM Note 193**
Claim/Event/Leave: 7223420
NoteSubject : Other
Other Subject : ATTY
Text: [09/05/2019 - ALFORD, DANIELLE]RECVD LTR DATED 8/26/19 FROM ATTORNEY ROGERS HOFRICHTER & KARRH, LLC STATING ALL FUTURE CONTACT AND COMMUNICATIONS SHOULD BE SENT TO THEIR OFFICE ; EE SIGNED AUTHOR. TO RELEASE INFORMATION

**08/29/2019 3:34 PM - CLAIM Note 192**
Claim/Event/Leave: 7223420
NoteSubject : Other
Other Subject : COPY SHIPPED
Text: [08/29/2019 - BOWMAN, CASEY]THUMB DRIVE COPY OF CORRESPONDENCE, DOC LIST, CLAIM NOTES, COVERSHEET, AND LTD POLICY SHIPPED TO CLAIMANT; 1604 PINE TREE TRAIL, COLLEGE PARK, GA 30349 VIA 2ND DAY AIR

**08/27/2019 5:09 PM - CLAIM Note 191**
Claim/Event/Leave: 7223420
NoteSubject : Other
Other Subject :
Text: [08/27/2019 - GRYGIEL, COURTNEY]REQUESTED ADMIN SEND COMPLETE COPY OF CLAIM FILE, POLICY AND COVER LETTER TO MR. HARRIS

**08/26/2019 2:18 PM - PHONE Note 70**
Claim/Event/Leave: 7223420
NoteSubject : Called EE
Other Subject :
Text: [08/26/2019 - GRYGIEL, COURTNEY]CALLED AND S/W MR. HARRIS. INDICATED I WAS RETURNING HIS PHONE CALLS THAT HE HAS MADE REGARDING HIS APPEAL STATUS. ADVISED HIM THAT HIS A FINAL APPEAL DETERMINATION WAS RENDERED ON 8/23/19 AND HE WAS SENT A DETAILED LETTER. HE ASKED IF THE DENIAL WAS BASED ON WHAT DAVID WROTE IN HIS REPORT. I ASKED IF HE WAS REFERRING TO DAVID MEANING DR. HOUGHTON WHO IS A MEDICAL DOCTOR. HE SAID YES DAVID.I INDICATING THAT I ADDRESS HIM AS DR. HOUGHTON AND THE APPEAL OUTCOMEWAS BASED ON THE TOTALITY OF THE MEDICAL CONTAINED IN HIS FILE AND THE MEDICAL REVIEWS PERFORMED BY BOARD CERTIFIED PHYSICIANS. HE SAID THAT HE DID NOT FEEL IT WAS FAIR THAT HE WAS NOT PROVIDED THE OPPORTUNITY TO AGAIN PROVIDE A REBUTTAL TO THE ADDENDUMS GENERATED ON APPEAL. MR. HARRIS NOTED THAT I TOLD HIM HE WOULD BE ABLE TO PROVIDED WITH ANOTHER OPPORTUNITY TO REVIEW THE ADDENDUMS AND PROVIDE A RESPONSE. I TOLD HIM THAT I DID NOT TELL HIM THAT. I INDICATED CORRESPONDENCE HE SUBMITTED STATED HE WAS ANXIOUS TO HAVE AN APPEAL DETERMINATION RENDERED. HE SAID IS THAT WHY THE CLAIM WAS DENIED. I TOLD HIM NO THAT THE DECISION WAS BASED ON THE TOTALITY OF THE FILE THAT DID NOT SUPPORT HE REMAINED DISABLED FROM HIS OWN OR ANY OCCUPATION.I TOLD HIM THAT I WOULD PROVIDE HIM WITH A COMPLETE COPY OF CLAIM FILE AND THE POLICY SO HE WOULD BE ABLE TO SEE THE COMPLETE REPORTS AND ADDENDUMS. THE CALL ENDED.

**08/23/2019 4:40 PM - CLAIM Note 190**
Claim/Event/Leave: 7223420
NoteSubject : Appeal
Other Subject : OUT/UPHOLD
Text: [08/23/2019 - GRYGIEL, COURTNEY]THE DETERMINATION TO DENY BENEFITS IS MAINTAINED. THE INFORMATION RECEIVED AND REVIEWED ON APPEAL DOES NOT OFFER FINDINGS TO ALTER THE PRIOR DECISION TO DENY BENEFITS. DETAILED UPHOLD LETTER SENT TO CLAIMANT.

LIB000003

DETAILED UPHOLD LETTER SENT TO CLAIMANT.

**08/22/2019 11:26 AM - PHONE Note 69**
Claim/Event/Leave: 7223420
NoteSubject : EE Called
Other Subject : APPEAL STATUS
Text: [08/22/2019 - COTE, SHANA]ADV FILE STILL UNDER REVIEW, NO ADDNL UPDATE SINCE HE S/W MANAGER A FEW DAYS AGO. CONFIRMED WE DID RECEIVE HIS OFFICE NOTES FROM HIS VISIT ON 8/19/19. HE ASKED IF AA COULD OVERRIDE HIS FILE AND SEND HIM A CHECK. ADV NO I CANNOT DO THAT. HE SAID HE FIGURED HE'D ASK. HE STATED THAT WE ARE OVER 90 DAYS,ADV WE ARE ON DAY 70. HE STATES BC HE FILED AN APPEAL ON 5/15/19 AND WE ARE RETALIATING HIM BC HE CONTCATED THE CA DOI. ADV I AM NOT FAMILIAR WITH HIS CLAIM FILE AT THIS TIME BUT PENDING THE ADDENDUM. HE DOESNT UNDERSTAND WHY ITS TAKING SO LONG. OFFERED FOR HIM TO LEAVE MESSAGE FOR M1 OR ARC FOR FURTHER DISCUSSION. HE DECLINED AND STATES HE WILL CALL KARILANN TOMORROW.

**08/20/2019 4:22 PM - PHONE Note 68**
Claim/Event/Leave: 7223420
NoteSubject : Called EE
Other Subject :
Text: [08/20/2019 - SNEIRSON, KARILANN]LATE ENTRY FROM FRIDAY 8/16. RETURNED CLAIMANT'S CALL TO DISCUSS STATUS. EXPLAINED RTR PROCESS. CLAIMANT CONTINUES TO EXPRESS FRUSTRATION WITH PROCESS.

**08/15/2019 1:12 PM - PHONE Note 67**
Claim/Event/Leave: 7223420
NoteSubject : EE Called
Other Subject : VMM
Text: [08/15/2019 - GRYGIEL, COURTNEY]VMM REC'D FROM MR. HARRIS INDICATING THAT HE LEFT A MESSAGE FOR MY MANAGER AND REQUESTED SHE RETURN TELEPHONE CALL. EMAIL SENT TO MGR ADVISING OF HIS REQUEST FOR RETURN CALL.

**08/14/2019 6:34 PM - CLAIM Note 189**
Claim/Event/Leave: 7223420
NoteSubject : LTR to EE
Other Subject :
Text: [08/14/2019 - GRYGIEL, COURTNEY]STATUS LETTER SENT TO EE REGARDING RECEIPT OF INFORMATION ON 8/6 AND 8/7 AND INFORMATION REFERRED TO ICP'S FOR ADDENDUM.

**08/13/2019 11:13 AM - PHONE Note 66**
Claim/Event/Leave: 7223420
NoteSubject : Called EE
Other Subject :
Text: [08/13/2019 - GRYGIEL, COURTNEY]CALLED MR. HARRIS CONFIRMED THAT WE RECEIVED THE INFORMATION HE FAXED IN RESPONSE TO THE REPORTS CONDUCTED ON APPEAL. INFORMATION HAS BEEN SUBMITTED BACK TO THE ICP REVIEWER. HE INDICATED THAT WE HAVE NOW MOVED THE GOAL POST AGAIN AND ARE CAUSING FURTHER DELAYS. HE ASKED FOR MY MANAGERS EXTENSION. I PROVIDED MANAGER'S EXTENSION. TOLD HIM THAT AT THIS TIME WE WERE AFFORDING THE REVIEWER THE OPPORTUNITY TO RESPOND TO HIS CONCERNS. HE SAID THAT KARILANN TOLD HIM THAT THE I WOULD BE SENDING THE FILE BACK TO DANIELLE TO HAVE HIS PAYMENT PROCESSED WHICH WOULD TAKE A FEW DAY. HE SAID HIS PAYMENT IS GOING TO BE DELAYED AGAIN NOW. HE INDICATED THAT HE DID NOT UNDERSTAND WHY HIS RESPONSE HE PROVIDED WAS SENT BACK TO THE DOCTOR. HE SAID IT WAS NOT MEDICAL INFORMATION IT HIS RESPONSE POINTING OUT FLAWS IN THE MEDICAL REVIEWS. I INDICATED THAT WE WERE PROVIDING THIS CLAIM EVERY OPPORTUNITY FOR FAIR AND FULL REVIEW. HE NOTED THAT THE POLICY HE PURCHASED JUST NOTED THAT HE NEEDS TO PROVIDE EVIDENCE THAT HE IS DISABLED AND HE HAS DONE THAT. I INDICATED THE CURRENT INFORMATION AND MEDICAL REVIEWS WE HAVE CONDUCTED DO SUPPORT R/L'S BUT THEY WOULD NOT PRECLUDE HIS OWN OR ANY OCC. HE DISAGREED AND ASKED HOW LONG IT WILL TAKE NOW FOR REVIEW TO BE COMPLETED. I TOLD HIM I COULD NOT GIVE HIM AN EXACT DATE BUT WOULD ASSUME ADDENDUM SHOULD BE DONE WITHIN A FEW DAYS.

**08/09/2019 10:57 AM - CLAIM Note 188**
Claim/Event/Leave: 7223420
NoteSubject : Other
Other Subject : INFO REC'D
Text: [08/09/2019 - GRYGIEL, COURTNEY]RECEIVED FAX LETTERS FROM MR. HARRIS AS HE WAS PROVIDED OPPORTUNITY TO REVIEW AND RESPOND TO INFORMATION. FORWARDED INFORMATION RECEIVED TO MANAGER FOR REVIEW AND NEXT STEPS.

**08/09/2019 10:51 AM - PHONE Note 65**
Claim/Event/Leave: 7223420
NoteSubject : EE Called
Other Subject :
Text: [08/09/2019 - BURKE, MANDI]EE CLD FOR STATUS OF HIS APPEAL AND HE STATED HE SHOULD HAVE HAD AN ANSWER THIS PAST MONDAY. ADVSD OF THE APPEALS CM WHO IS HANDLING HIS CLAIM AND SHE WOULD BE THE BEST PERSON TO SW ABOUT IT. HE HAS LEFT A VM ALREADY EARLIER TODAY, ADVSD IT APPEARS THERE IS INFORMATION THEY WERE REVIEWING TOGETHER AND HE WILL WAIT FOR ADCM TO CB.

**07/26/2019 12:02 PM - PHONE Note 64**
Claim/Event/Leave: 7223420
NoteSubject : Called EE
Other Subject :
Text: [07/26/2019 - GRYGIEL, COURTNEY]REC'D 2 VMM MESSAGE FROM MR. HARRIS. RTC ADVISED HIM THAT COPIES OF

BOTH MEDICAL REPORTS AND OA WERE SENT TO HIM 2ND DAY AIR AFFORDING HIM THE OPPORTUNITY TO REVIEW AND RESPOND TO THE FINDINGS. HE ASKED DOES THAT MEAN THAT HIS BENEFITS ARE NOT BEING OVERTURNED. I TOLD HIM THAT WE ARE AFFORDING HIM THE OPPORTUNITY TO REVIEW AND PROVIDE ANY ADD'T INFO. FOR CONSIDERATION PRIOR TO RENDERING THE APPEAL DETERMINATION. I INDICATED THAT A RESPONSE TO HIS DOI INQUIRY WASALSO SENT 2ND DAY AIR TO HIM AS WELL WHICH HE SHOULD RECEIVE TODAY. HE SAID THAT HE DID NOT MEAN TO UPSET US BY FILING A COMPLAINT. I TOLD HIM IT WAS HIS RIGHT TO FILE A COMPLAINT AND THAT THE COMPLAINT WOULD HAVE NO NEGATIVE BEARING ON HIS APPEALREVIEW. WE CONDUCT A FAIR AND FULL REVIEW OF HIS APPEAL BASED ON THE INFORMATION CONTAINED IN HIS FILE IN CONJUNCTION WITH THE POLICY. HE ASKED IF HE JUST HAS TO FILE SUIT NOW. I TOLD HIM THAT I WOULD SUGGEST THAT HE READS THE REVIEW GENERATED ONAPPEAL CAREFULLY TO DETERMINE IF THERE IS INFORMATION THAT IS MISSING FROM HIS FILE OR INFO HE WOULD LIKE CONSIDERED. I TOLD HIM THAT HIS APPEAL IS STILL UNDER REVIEW AND THAT I WILL NOT PROCEED WITH THE APPEAL REVIEW UNTIL I HEAR BACK FROM HIM IFINFO. IS GOING TO BE SUBMITTED. TOLD HIM TO CALL IF HE HAD ANY OTHER QUESTIONS. CALL ENDED.

**07/25/2019 8:22 AM - CLAIM Note 187**
Claim/Event/Leave: 7223420
NoteSubject : LTR to EE
Other Subject : SENT 2ND DAY
Text: [07/25/2019 - HOWARD, HOLLY]TRACKING 1Z24896X0296701694

**07/24/2019 3:14 PM - CLAIM Note 186**
Claim/Event/Leave: 7223420
NoteSubject : LTR to EE
Other Subject : SENT 2ND DAY
Text: [07/24/2019 - HOWARD, HOLLY]TRACKING 1Z24896X0298314331

**07/24/2019 2:26 PM - CLAIM Note 185**
Claim/Event/Leave: 7223420
NoteSubject : LTR to EE
Other Subject :
Text: [07/24/2019 - GRYGIEL, COURTNEY]SENT RIGHT TO REVIEW AND RESPOND TO MR. HARRIS. SENT PMR AND IM ICP REPOTS AND UPDATED TSA 2ND DAY AIR. DUE DATE OF RESPONSE 8/14/19.

**07/23/2019 1:55 PM - PHONE Note 63**
Claim/Event/Leave: 7223420
NoteSubject : Called EE
Other Subject :
Text: [07/23/2019 - SNEIRSON, KARILANN]LATE ENTRY. RETURNED CALL FRIDAY 7/19. ACK'D CONCERNS AND EXPLAINED PROCESS/TIMEFRAMES AND RTR. CLAIMANT INTERESTED IN REC'ING INFO ON RTR PRIOR TO FINAL DECISION.

**07/23/2019 9:39 AM - CLAIM Note 184**
Claim/Event/Leave: 7223420
NoteSubject : Voc Rehab
Other Subject : TSA
Text: [07/23/2019 - ASHWORTH, LORI]TSA REFERRAL COMPLETED AND CLOSED. REPORT DROPPED IN DOC LIST. VCM RECEIVED THIS FILE FOR A TSA UPDATE TO ONE PREVIOUSLY PERFORMED BY ALICIA POWELL, MA, CRC ON 4/22/2018. PLEASE SEE THAT REPORT FOR COMPLETE DETAILS REGARDING DEMOGRAPHICS, CAPACITIES UTILIZED, EDUCATION, WORK HISTORY, TRANSFERABLE SKILLS AND ALTERNATIVE OCCUPATIONS WITH ACCOMPANYING WAGES. THE FOLLOWING OCCUPATIONS WERE IDENTIFIED IN THAT TSA: ACCOUNTANT, BUDGET ACCOUNTANT, COST ACCOUNTANT, BUDGET ANALYST, DISC JOCKEY AND TAX PREPARER. BY WAY OF SUMMARY, EE IS A 57-YEAR-OLD ACCOUNTANT WITH A BACHELOR S DEGREE IN ACCOUNTING. THE FOLLOWING WORK HISTORY: ACCOUNTANT SINCE 1985 AND ALSO WORKED AS A DISC JOCKEY FOR 9 YEARS. I HAVE BEEN ASKED TO UTILIZERESTRICTIONS AND LIMITATIONS FROM A PEER REVIEW COMPLETED BY SHEILA NATARAJAN, MD (PHYSICAL MEDICINE & REHABILITATION) DATED 7/11/2019. BASED ON THESE UPDATED CAPACITIES, THE PREVIOUSLY IDENTIFIED OCCUPATIONS OF ACCOUNTANT, BUDGET ACCOUNTANT, COST ACCOUNTANT, BUDGET ANALYST AND TAX PREPARER REMAIN VIABLE. IN THE CURRENT EMPLOYMENT ENVIRONMENT, AND AS A RESULT OF TECHNOLOGICAL ADVANCEMENT, EMPLOYERS ARE PROVIDING A VARIETY OF WORKSTATION TYPES AND ASSOCIATED EQUIPMENT THAT ALLOW INDIVIDUALS OPPORTUNITY TO EXPERIENCE AND SUSTAIN COMFORT IN THEIR RESPECTIVE WORK SETTINGS WITHIN THE OCCUPATION(S). DISC JOCKEY WAS PRECLUDED GIVEN UPDATED RESTRICTIONS. THIS INFORMATION HAS BEEN PROVIDED TO THE ARC. THIS MEMORANDUM WILL SERVE IN LIEU OF A FORMALWRITTEN REPORT GIVEN NO CHANGE FROM THE PRIOR REVIEW.

**07/23/2019 2:30 AM - CLAIM Note 183**
Claim/Event/Leave: 7223420
NoteSubject : Voc Rehab
Other Subject : CLAIM/EVENT TO VCM
Text: 7/21/2019-REFERRAL RECEIVED BY VCM AND ASSIGNED TO ASHWORTH, LORI. CLAIM/AS EVENT IS PENDING REVIEW.

**07/19/2019 2:29 AM - CLAIM Note 182**
Claim/Event/Leave: 7223420
NoteSubject : Ref to Voc Rehab
Other Subject : SCORE REFERRAL
Text: 7/18/2019 - REFERRED TO THE VOC UNIT FOR TRANSFERABLE SKILLS ANALYSIS.

**07/18/2019 11:43 AM - CLAIM Note 181**
Claim/Event/Leave: 7223420
NoteSubject : Ref to Other
Other Subject : TSA
Text: [07/18/2019 - TOOMASI, YASMINE]SCORED FILE FOR TSA BASED ON PM&R REVIEW COMPLTED 07/11

LIB000005

Text: [07/18/2019 - TOOMASI, YASMINE]SCORED FILE FOR TSA BASED ON PM&R REVIEW COMPLETED 07/11

**07/18/2019 11:15 AM - PHONE Note 62**
Claim/Event/Leave: 7223420
NoteSubject : EE Called
Other Subject :
Text: [07/18/2019 - MUNDY, TANYA]S/W EE AND HE ADVISED HE JUST S/W M.SOEUN AND TRANSFERRED TO A VM BUT HE WANTS TO S/W A MANAGER. HE ADVISED THAT HE WAS TOLD DECISION ON APPEAL SHOULD BE MADE WITHIN 45 DAYS AND IT'S BEEN THAT LONG. HE ADVISED HE HAS LEFTMESSAGE FOR DCM HANDLING HIS APPEAL BUT NO RESPONSE. ADVISED DCM HANDLING APPEAL IS CURRENTLY OUT OF THE OFFICE. OFFERED TRANSFERRING HIM TO BACK UP. HE ADVISED HE WANTED TO S/W MANAGER. PROVIDED STATUS ON CLAIM AND EXPLAINED DISABILITY TO HIM.ADVISED UNDER MED REVIEW ON APPEAL. EE THANKED ME FOR EXPLANATION AND ADVISED THAT HE WAS NOT AWARE ADD'L MED REVIEWS WOULD BE DONE SINCE ONE ALREADY DONE. HE STILL WANTED TO S/W MANAGER. ADVISED M1 KARILANN SNEIRSON IS ON ANOTHER CALL AND OFFEREDHER VM. HE AGREED TO LEAVE MESSAGE ON VM AND CALL TRANSFERRED.

**07/18/2019 9:31 AM - CLAIM Note 180**
Claim/Event/Leave: 7223420
NoteSubject : Other
Other Subject : LETTER/EMAIL
Text: [07/18/2019 - COLLETT, BONNIE]RECEIVED LETTER FROM EE EXPRESSING DISAGREEMENT WITH APPEAL RECD DATE AND REQUESTING IMMEDIATE DECISION, RECEIVED EMAIL FROM EE REQUESTING A CHECK BE SENT IMMEDIATELY

**07/17/2019 11:52 AM - CLAIM Note 179**
Claim/Event/Leave: 7223420
NoteSubject : Other
Other Subject : VENDOR PAYMENT
Text: [07/17/2019 - MUELLER, JACQUELINE]INVOICE RECEIVED ON 07/17/2019 AND DATED 04/17/2019 FROM RELIABLE REVIEW SERVICES INV # 363881 , IN THE AMOUNT OF $#1417.50 FOR PEER REVIEW INVOICE PAID IN FULL

**07/15/2019 5:09 PM - PHONE Note 61**
Claim/Event/Leave: 7223420
NoteSubject : Called EE
Other Subject :
Text: [07/15/2019 - GRYGIEL, COURTNEY]RTC TO EE. LEFT MESSAGE WITH MY DIRECT FAX NUMBER AND ADVISED THAT HIS APPEAL IS STILL UNDER MEDICAL REVIEW. LEFT MY NAME AND NUMBER FOR RTC.

**07/15/2019 1:45 PM - PHONE Note 60**
Claim/Event/Leave: 7223420
NoteSubject : EE Called
Other Subject :
Text: [07/15/2019 - PORTER, KATHRYN]EE CALLED TO CHECK STATUS OF HIS APPEAL - WANTED TO TALK TO ARC OR HER SUPERVISOR - ADVISED IT REMAINS THE SAME AS THE UPDATE PROVIDED ON 7/10/19 - EE UNDERSTOOD- PROVIDED SPELLING OF ARC CASE MANAGERS NAME- AND THE GENERAL FAX NUMBER- EE STATED WAS READING THE POLICY AND WONDERED WHY IT'S TAKING 45 DAYS- BUT SHE SAID 90 - EE TALKED ABOUT PROVIDERS AND WHY IT GO THERE- ADVISED EE THAT HIS QUESTIONS ABOUT HIS APPEAL IS BEST DIRECTED TO HIS ARC- EE STATED THAT HE NEEDS TO SPEAK WITH HER AND BEGAN ASKING ADDITIONAL QUESTIONS ABOUT THE POLICY AND WHERE TO PROVIDE INFORMATION- ADVISED EE THE BEST PERSON TO SPEAK TO WOULD BE HIS APPEAL CONSULTANT AND DCM WILL EMAIL HER TO RTC- EE ADVISED THAT WOULD BE PERFECT- JUSTNEEDS A RTC FROM C GRYGIEL TO REVIEW A FEW QUESTIONS- THANKED EE AND AGREED TO EMAIL - CALL ENDED

**07/12/2019 7:43 PM - CLAIM Note 178**
Claim/Event/Leave: 7223420
NoteSubject : Peer Review
Other Subject :
Text: [07/12/2019 - GRYGIEL, COURTNEY]FILE ASSIGNED TO ICP DR. HOUGHTON

**07/10/2019 12:53 PM - CLAIM Note 177**
Claim/Event/Leave: 7223420
NoteSubject : Other
Other Subject :
Text: [07/10/2019 - GRYGIEL, COURTNEY]REFERRAL MADE THROUGH CRT FOR IM REVIEW

**07/10/2019 12:28 PM - PHONE Note 59**
Claim/Event/Leave: 7223420
NoteSubject : EE Called
Other Subject :
Text: [07/10/2019 - GRYGIEL, COURTNEY]REC'D PHONE CALL FROM EE. ADVISED HIS FILE IS STILL UNDER MEDICAL REVIEW. STATED REPORT HAS NOT YET BEEN REC'D. I ASKED HIM IF HE WOULD LIKE THE ADDITIONAL INFORMATION FROM HIS RECENT SURGERY TO BE REQUESTED AND CONSIDERED WITH HIS APPEAL. HE STATED HE THOUGHT WE ALREADY ESTABLISHED THAT THIS INFORMATION WAS NOT NEEDED AS HE DID NOT WANT TO HAVE THE REVIEW AND DETERMINATION DELAYED. I EXPLAINED TO HIM THAT DURING THE APPEAL REVIEW IT IS BENEFICIAL TO HIM TO HAVE ANY AND ALL MEDICAL INFORMATION THAT INCLUDES ANY OF HIS CO-MORBID CONDITIONS CONSIDERED AS PART OF THE APPEAL REVIEW. HE STATED THAT WE HAVE ALREADY RECEIVED ENOUGH INFORMATION HIS OPINION TO HAVE HIS CLAIM RE-OPENED. HE STATED THAT HE NEEDS HISCHECK TO BE ABLE TO PAY FOR SUPPLIES-BANDGAGES FOR HIS HIDRADENTITIS SURGERY. I TOLD HIM THAT WE DO NOT HAVE ANY RECORDS FROM THE RECENT SURGERY. I ASKED FOR THE DRS NAME WHO DID HIS SX. HE DID NOT GIVE ME THE DRS NAME. HE SAID IT WAS DONE AT GRADY. I ASKED IF

LIB000006

THERE WAS A SPECIFIC DR THAT I COULD FAX A REQUEST FOR THE RECORDS PERTAINING TO THIS SURGERY. HE STATED THAT WE ALREADY ESTABLISHED THAT THESE RECORDS WERE NOT NEEDED. HE STATED THAT THERE WAS A PICTURE SUBMITTED AND THAT IS THE SURGERY THAT HE WENT THROUGH AGAIN UNDER HIS ARM. HE ASKED ME IF I HAS SENT A LETTER WITH MY CONTACT INFORMATION TO HIM YET. I TOLD HIM I WOULD SEND A LETTER OUT TO HIS TODAY.

**07/01/2019 9:57 AM - PHONE Note 58**
Claim/Event/Leave: 7223420
NoteSubject : Called EE
Other Subject :
Text: [07/01/2019 - GRYGIEL, COURTNEY]REC'D VMM FROM MR. HARRIS --RETURNED TELEPHONE CALL AND ADVISED THAT HIS FILE HAS BEEN REFERRED FOR MEDICAL REVIEW AND CURRENTLY WAITING ON THE REPORT.

**06/28/2019 8:07 AM - CLAIM Note 176**
Claim/Event/Leave: 7223420
NoteSubject : Peer Review
Other Subject :
Text: [06/28/2019 - GRYGIEL, COURTNEY]FILE ASSIGNMENT TO ICP DR. NATARAJAN.

**06/25/2019 2:32 PM - CLAIM Note 175**
Claim/Event/Leave: 7223420
NoteSubject : Other
Other Subject :
Text: [06/25/2019 - GRYGIEL, COURTNEY]REFERRAL MADE THROUGH CRT FOR PMR PEER

**06/25/2019 1:52 PM - PHONE Note 57**
Claim/Event/Leave: 7223420
NoteSubject : Called EE
Other Subject :
Text: [06/25/2019 - GRYGIEL, COURTNEY]S/W EE. HE WAS LOOKING FOR UPDATE ON APPEAL. EXPLAINED THE APPEAL WAS ASSIGNED TO ME ON 6/14/19. HE DISAGREED WITH THE APPEAL DATE STATING HE APPEALED ON 5/13/19. HE SAID HE WAS IN CONTACT WITH THE AA AND WAS TOLDIT WOULD BE BENEFICIAL FOR HIM TO SUBMIT UPDATED RECORDS. HE HAD AN IME ON 5/20/19 AND FELT THAT WE HAD ALL WE NEEDED FOR HIS APPEAL. I EXPLAINED THAT UNDER ERISA HE IS AFFORDED ONE OPPORTUNITY TO APPEAL AND THIS IS HIS OPPORTUNITY TO SUBMIT ANYTIHNG THAT HE WANTED CONDISERED FOR REVIEW. EXPLAINED THAT WE CONTINUED TO RECEIVE UPDATED MEDICAL RECORDS FROM HIM AND CONFIRMED HIS APPEAL WAS COMPLETE ON 6/14/19. HE VOICED DISAGREEMENT WITH THE DATE OF HIS APPEAL LETTER. HE FELT THAT THE APPEAL PROCESS SHOULD HAVE BEGAN ON 5/13/19. I TOLD HIM THAT AT THIS TIME I WOULD CONDUCT A FULL AND FAIR REVIEW OF THE INFORMTAION CONTAINED IN HIS FILE AND IT WAS HIS RIGHT TO SEND IN THE INFORMATION FROM YESTERDAY IF HE WANTED THE INFO. CONSIDERED WITH HIS APPEAL. HE ASKED IF HE SENT INFO. FROM HIS APPT. YESTERDAY WHETHER THAT WOULD CHANGE THE APPEAL REC'D DATE. I INDICATED NO IT WOULD NOT CHANGE THE DATE. WE ARE OBLIGATED TO REVIEW ANY NEW INFO. HE SUBMITS WITH HIS APPEAL AS AN APPEAL DETERMINATION HAD NOT YET BEEN RENDERED AND NEW INFO. WOULD NOT CHANGE THE DATE OF THE APPEAL REC'D DATE. I TOLD HIM THAT I WOULD REVIEW HIS FILE AND PROVIDE HIM WITH AN UPDATE. THE MEDICAL REVIEWS CAN TAKE A COUPLE OF WEEKS TO GET REPORTS BACK.

**06/24/2019 10:11 AM - PHONE Note 56**
Claim/Event/Leave: 7223420
NoteSubject : Called EE
Other Subject :
Text: [06/24/2019 - GRYGIEL, COURTNEY]RTC TO EE --VM MESSAGE REC;D 6/21/19 WHEN I WAS OUT OF THE OFFICE. EE ANSWERED INDICATING THAT HE WAS IN SURGERY BUT WANTED TO KNOW THE STATUS OF HIS APPEAL. EXPLAINED HIS FILE RECENTLY WAS ASSIGNED TO ME AND THAT IWOULD BE REVIEWING HIS APPEAL. INDICATED THAT I HAD NOT YET HAD THE OPPORTUNITY TO CONDUCT A FULL REVIEW OF HIS FILE BUT I UNDERSTOOD HIS URGENCY TO HAVE REVIEW EXPEDITED AS HE VOICED IN HIS VMM. ADVISED THAT WE HAVE UP TO 45 DAYS IN WHICH TO COMPLETE OUR APPEAL REVIEW AND ANY MEDICAL REVIEWS AND IF NECESSARY COULD REQUEST AN ADDITIONAL 45 DAYS. I TOLD HIM I WOULD DO WHATEVER I COULD FOR HIM TO HAVE REVIEW CONDUCTED TIMELY. HE SAID HE DID NOT KNOW WHY THEY CLOSED HIS FILE IN THE FIRST PLACEIF THIS WAS SOMETHING THAT WE ROUTINELY DO. THEN HE SAID HE HAD TO GO THEY WERE READY FOR HIM. CALL ENDED.

**06/20/2019 8:09 PM - CLAIM Note 174**
Claim/Event/Leave: 7223420
NoteSubject : Other
Other Subject : VNDR PMT
Text: [06/20/2019 - THEOFRASTOU, ELIZABETH]INVOICE RECEIVED ON 6/10/19 FROM RELEASEPOINT. INV #709893-273, IN THE AMOUNT OF $20 FOR MEDICAL RECORDS. INVOICE PAID IN FULL.

**06/20/2019 3:32 PM - PHONE Note 55**
Claim/Event/Leave: 7223420
NoteSubject : EE Called
Other Subject :
Text: [06/20/2019 - COTE, SHANA]HAS SX ON MONDAY, HASNT HAD A CHECK SINCE MAY. HE NEEDS MEDICAL SUPPLIES AFER SX. HE THINKS IT'LL BE OT BASED ON WHAT HIS DR' SAID. HE NEEDS TO EXPEDITE SO HE CAN HAVE HIS SX ON MONDAY. HE ASKED WHO ARC WAS, PROVIDED ARC CONTACT INFO. HE ASKED IF ARC WAS IN OFFICE, ADV ARC HAS LEFT FOR THE DAY, HE AGREED TO LEAVE VM FOR ARC TO R/C. WARM TX TO ARC VM.

**06/20/2019 12:18 PM - CLAIM Note 173**
Claim/Event/Leave: 7223420

LIB000007

NoteSubject : Med Records Rcvd
Other Subject :
Text: [06/20/2019 - PRESTON, SHERRY]XRAY REPORTS-PARTIAL INFORMATION

**06/17/2019 3:36 PM - CLAIM Note 172**
Claim/Event/Leave: 7223420
NoteSubject : Appeal
Other Subject : ARC ASSIGNMENT
Text: [06/17/2019 - BEAUPAIN, LOIS]CONFIRMED COMPLETE APPEAL ON 6/17/19. DOCUMENTS REC'D 5/15/19 - 6/14/19.
ASSIGNED TO COURTNEY GRYGIEL. SENT ACK LETTER

**06/17/2019 2:48 PM - PHONE Note 54**
Claim/Event/Leave: 7223420
NoteSubject : EE Called
Other Subject : APPEAL
Text: [06/17/2019 - BEAUPAIN, LOIS]TO CONFIRM REC'T OF FAXES REC'D ON 6/14/19. CONFIRMED THAT WE REC'D THEM AND
REVIEWED FILE WITH CLMT. HE CONFIRMED THAT WE HAVE EVERYTHING AND HE IS SUPPOSED TO HAVE SURGERY ON
MONDAY BUT HE THINK HE WILL POSTPONE IT BECAUSE HE CAN'T AFFORD THE SURGICAL DRESSING THAT HE NEEDS TO
BUY. WENT OVER 45 DAY REVIEW PERIOD AND CLMT INDICATES HIS COMPLETE APPEAL DATE IS 5/14 BECAUSE THAT IS
WHEN HE SENT IN HIS APPEAL LETTER. ADV ADDITIONAL INFO REC'D AFTER ON 5/17, 5/29,6/14.ADV THE ARC WILL
DETERMINE THE APPROPRIATE COMPLETE CLAIM DATE BUT A THOROUGH REVIEW WILL BE PERFORMED. CLMT TO CALL
BACK AND SPEAK TO ARC ONCE ASSIGNED,

**06/14/2019 4:42 PM - PHONE Note 53**
Claim/Event/Leave: 7223420
NoteSubject : EE Called
Other Subject :
Text: [06/14/2019 - ALFORD, DANIELLE]EE CALLED, LEFT VM FOR DCM, REQ. R/CALL TO CONFIRM WE RECVD HIS IME
REPORT HE FAXED

**06/14/2019 1:22 PM - CLAIM Note 171**
Claim/Event/Leave: 7223420
NoteSubject : Other
Other Subject :
Text: [06/14/2019 - ALFORD, DANIELLE]LTR FROM EE AND MEDICAL DOCUMENTATION RECVD

**06/14/2019 9:24 AM - CLAIM Note 170**
Claim/Event/Leave: 7223420
NoteSubject : Appeal
Other Subject : PENDING APPEAL
Text: [06/14/2019 - BEAUPAIN, LOIS]PRESCREEN COMPLETED. APPEAL SCREEN CODING IS ACCURATE. FI LTD ERISA. CLAIM
FILE DATE 11/1/2016 AUTH IN DOC LIST. JD IN DOC LIST. CLAIM CLOSED NOT TD. CLOSURE LETTER DATED 4/30/19. APPEAL
TIMEFRAME IS 180 APPEAL DEADLINE 10/26/19 LETTER OF APPEAL REC'D 5/15/19 WITH ADDITIONAL INFO REC'D 5/17-5/28.
AA CALLED CLMT AND ADV IF NO RESPONSE WE WILL PRESUME APPEAL IS COMPLETE AND ASSIGN FOR REVIEW 6/18.

**06/14/2019 9:17 AM - PHONE Note 52**
Claim/Event/Leave: 7223420
NoteSubject : Called EE
Other Subject : INTAKE
Text: [06/14/2019 - BEAUPAIN, LOIS]CALLED CLMT TO CONFIRM REC'T OF APPEAL. ADV AA TO ASSIGN ASSIGN FOR REVIEW
END OF DAY 6/18 IF NO RESPONSE WE WILL PRESUME THAT IT IS A FULL APPEAL. PROVIDED PHONE AND FAX

**06/11/2019 4:35 PM - PHONE Note 51**
Claim/Event/Leave: 7223420
NoteSubject : EE Called
Other Subject :
Text: [06/11/2019 - ALFORD, DANIELLE]EE CALLED,LEFT VM FOR DCM REQ. R/CALL FOR APPEAL STATUS. R/CALL TO
404.781.5494

**06/07/2019 7:13 AM - CLAIM Note 169**
Claim/Event/Leave: 7223420
NoteSubject : Appeal
Other Subject : REFERRAL RECD
Text: [06/07/2019 - PRESTON, SHERRY]ASSIGNED TO LOIS BEAUPAIN

**06/07/2019 2:31 AM - CLAIM Note 168**
Claim/Event/Leave: 7223420
NoteSubject : Ref to Appeals
Other Subject : SCORE REFERRAL
Text: 6/6/2019 - REFERRED TO APPEALS UNIT FOR CLAIM REVIEW AND DETERMINATION.

**06/06/2019 4:15 PM - CLAIM Note 167**
Claim/Event/Leave: 7223420
NoteSubject : LTR to EE
Other Subject :
Text: [06/06/2019 - ALFORD, DANIELLE]APPEAL ACKNOW. LTR MAILED TO EE

**LIB000008**

**06/06/2019 3:40 PM - CLAIM Note 166**
Claim/Event/Leave: 7223420
NoteSubject : Ref to Appeals
Other Subject :
Text: [06/06/2019 - ALFORD, DANIELLE]CLAIM REF TO ARU

**06/06/2019 3:30 PM - CLAIM Note 165**
Claim/Event/Leave: 7223420
NoteSubject : Other
Other Subject : MGR REVIEW
Text: [06/06/2019 - SULLIVAN, BRIAN]RECOMMEND REVIEW BY APPEAL UNIT. CLAIM ASSESSED AT CID TO HAVE SED CAPACITY AND SED OCCS IDENTIFIED. PENDING PROCEDURE IN JUNE 2019 IS A DERMATOLOGY PROCEDURE.

**06/04/2019 2:45 PM - CLAIM Note 164**
Claim/Event/Leave: 7223420
NoteSubject : Other
Other Subject : REF TO MGR
Text: [06/04/2019 - ALFORD, DANIELLE]EE IS A 54YOM; SALARIED PROFESSIONAL ACCOUNTING CONSULTANT, SEDENTARY JD; LDW 10.14.2016; DOD 10.15.2016; EE STATED THAT HE WAS REAR-ENDED 10.4.2016 AFTER WORK AT 5:30PM, EE STATED THAT THERE WAS A POLICE REPORT FILED;THE REPORT NUMBER IS #162782459 CITY OF ATLANTA; EE WENT TO THE EMERGENCY ROOM 10.4.2016; EE WENT TO SEE CHIROPRACTOR 10.5.2016; EE WAS ADVISED NOT TO WORK AT THAT TIME; EE WENT AGAINST THE PHYSICIANS ORDERS AND RETURNED TO WORK; EE HAS SINCE BEEN OOW AND TREATING WITH PHYSICAL THERAPY. CLAIM REVIEWED BY MDS ON 5/17/17, OPINED THAT CLMT. C/O BACK PAIN AND MEDICAL EVIDENCE DOES NOT SUPPORT EE RECVD TXMT FOR BACK PAIN DURING PREX PERIOD, AND R/LS OF NO LIFTING, CARRYING, PUSHING, PULLING OVER 5 LBS AND NO MORE THAN OCCAS. STANDING, WALKING, NO CLIMBING,SQUATTING, CROUCHING, KNEELING OR BENDING ARE SUPPORTED FROM 10/15/16 THRU SURGERY ADN LESS THAN SED. R/LS SUPPORT FOR APPROX. 6 WEEKS POST OP. . SURVIELLANCE ORDERED, NOACTIVITY OBSERVED.- FFRCOMPLETED, R/LS IDENTIFIED, TSA COMPLETED 4/22/19 AND ALT. OCCS IDENTIFIED. RECOMM. LTD THRU 4/22/19, CLAIM CLOSED EFF 4/23/19.- EE PROVIDED AN APPEAL W/ NEW MEDICAL RECORDS THRU 5/2019 AND REPORTS WILL HAVE SX ON 6/14/19. OVN 5/14/19 (DR. BENDIKS)INDICATES EE W/ RESTRICTED RANGE OF MOTION, EE REMAINS IN CHIOPRACTIC CARE AND REPORTS UNABLE TO WORK.- DCM RECOMM. CLAIM REOPENED AND LTD BENEFITS CONTINUED/ APPROVED FOR ANY OCC BASED ON PENDING SX. IF NO SX, DCM RECOMM. REFER CLAIM FOR ADDTL PM&RFFR OF NEW MEDICAL DOCUMENTATION.

**06/04/2019 2:39 PM - PHONE Note 50**
Claim/Event/Leave: 7223420
NoteSubject : Called EE
Other Subject :
Text: [06/04/2019 - ALFORD, DANIELLE]CALLED EE, READ OUT THE LIST OFMEDICAL RECS RECVD. EE SAID WE CAN PROCEED W/ HIS APPEAL, AND SAID HE IS CONFIDENT WE WILL SEE HE IS DISABLED. DCM EXPL. APPEAL TURN AROUND OF UP 45 DAYS FROM 5/29 INFORMATION RECVD. EE ASKED IF WE WILL USE THE SAME DOCTOR WHO REVIEWED HIS CLAIM, DCM ADVISED WE WILL NOT DURING THE APPEAL DETERMINATION. - NO ADDTL QUESTIONS

**05/29/2019 11:43 AM - CLAIM Note 163**
Claim/Event/Leave: 7223420
NoteSubject : Appeal
Other Subject : W/ MEDICAL RECS
Text: [05/29/2019 - ALFORD, DANIELLE]RECVD 62 PGS. VIA MAIL FORM EE: LTR OF APPEAL, MED RECS FROM REHAB. PHYSICIANS OF GA; OVNS FROM 2017 THRU PRES. FORM DR. ERIK BENDIKS; DERMATOLOGY OVN 4/9/19; OVN 8/21/14 FROM DR. MARIA RUSSELL FOR LEFT AXILLARY HIDRADENITIS; NEW PATIENT APPT. REMINDER FOR FOV 8/14/19 W/ DR. A. MEHTA; OVN 5/16/18 THRU 4/22/19 FROM L. OKUN, D.C.[06/04/2019 - ALFORD, DANIELLE]L. OKUN (FAMILY CHIROPRACTIC)

**05/23/2019 5:08 PM - PHONE Note 49**
Claim/Event/Leave: 7223420
NoteSubject : EE Called
Other Subject :
Text: [05/23/2019 - ALFORD, DANIELLE]EE CALLED, ASKED IF WE GOT RECS FOR HIS APPEAL. - DCM EXPLAINED YES, WE RECVD RECS HOWEVER ONLY THRU MAY 2018 W/ FAMILY CHIROPRACTIC. EE SAID HE WAS SEEN BEYOND MAY 2018, HAS ALSO MAILED THESE RECS. ASKED EE IF HE WANTSUS TO WAIT FOR THESE MEDICAL RECS FOR HIS APPEAL. EE SAID YES. DCM EXPL. I WILL CALL HIM ONCE RECVD.

**05/21/2019 1:45 PM - CLAIM Note 162**
Claim/Event/Leave: 7223420
NoteSubject : Med Records Rcvd
Other Subject : FAM CHIROPR
Text: [05/21/2019 - ALFORD, DANIELLE]OVN 5/16/18 , 5/14/18, 5/11/18, 5/9/18, 6/9/18,

**05/21/2019 1:43 PM - CLAIM Note 161**
Claim/Event/Leave: 7223420
NoteSubject : Med Records Rcvd
Other Subject :
Text: [05/21/2019 - ALFORD, DANIELLE]RECVD RADIOLOGY PROCEDURE REQUEST FROM DEPT. OF INTERN. MEDICINE AT MOREHOUSE HEALTHCARE

**05/17/2019 3:58 PM - PHONE Note 48**
Claim/Event/Leave: 7223420

**LIB000009**

NoteSubject : EE Called
Other Subject :
Text: [05/17/2019 - ALFORD, DANIELLE]EE CALLED. DISCUSSED CLAIM CLOSURE, RATIONALE AND APPEAL PROCESS. EE SAID HE WAS PLACED OOW AND REMAINS OOW UNABLE TO RTW. HE IWLL HAVE SX ON 6/14/19, SAW DR. BLAKE ON 5/14/19, AND HAS FAXED IN HIS APPEAL W/ ADDTL MED RECS FROM DR. BLAKE AND ORTHO ATLANTA. EE SAID HE HAS SEEN HIS TX CHIRO. AT FAMILY CHIROPRACTOR, HAS NOT SEEN DR. FEEMAN/REHABILITATION SINCE 9/18/18 OR DR. BENDIKS SINCE 9/6/18.- DCM EXPL. I WAS OUT OF OFFICE YESTERDAY, WILL REVIEW INCOMING FAXES AND CONTACT HIM MONDAY TO REVIEW HIS APPEAL INFORMATION. ADVISED EE TO HAVE FAMILY CHIROPRACTIC FAX IN ALL MEDICAL RECORDS FROM HIS FOV TO THE PRESENT AS WELL. EE SAID OKAY, NO ADDTL QUESTIONS

**04/30/2019 2:24 PM - CLAIM Note 160**
Claim/Event/Leave: 7223420
NoteSubject : Other
Other Subject : MGR REVIEW
Text: [04/30/2019 - SULLIVAN, BRIAN]AGREE WITH RECOMMENDATION BASED UPON MEDICAL AND VOCATIONAL REVIEWS COMPLETED.

**04/29/2019 4:38 PM - CLAIM Note 159**
Claim/Event/Leave: 7223420
NoteSubject : Ref to Other
Other Subject :
Text: [04/29/2019 - ALFORD, DANIELLE]EE IS A 54YOM; SALARIED PROFESSIONAL ACCOUNTING CONSULTANT, SEDENTARY JD; LDW 10.14.2016; DOD 10.15.2016; EE STATED THAT HE WAS REAR-ENDED 10.4.2016 AFTER WORK AT 5:30PM, EE STATED THAT THERE WAS A POLICE REPORT FILED;THE REPORT NUMBER IS #162782459 CITY OF ATLANTA; EE WENT TO THE EMERGENCY ROOM 10.4.2016; EE WENT TO SEE CHIROPRACTOR 10.5.2016; EE WAS ADVISED NOT TO WORK AT THAT TIME; EE WENT AGAINST THE PHYSICIANS ORDERS AND RETURNED TO WORK; EE HAS SINCE BEEN OOW AND TREATING WITH PHYSICAL THERAPY. CLAIM REVIEWED BY MDS ON 5/17/17, OPINED THAT CLMT. C/O BACK PAIN AND MEDICAL EVIDENCE DOES NOT SUPPORT EE RECVD TXMT FOR BACK PAIN DURING PREX PERIOD, AND R/LS OF NO LIFTING, CARRYING, PUSHING, PULLING OVER 5 LBS AND NO MORE THAN OCCAS. STANDING, WALKING, NO CLIMBING,SQUATTING, CROUCHING, KNEELING OR BENDING ARE SUPPORTED FROM 10/15/16 THRU SURGERY ADN LESS THAN SED. R/LS SUPPORT FOR APPROX. 6 WEEKS POST OP. . SURVIELLANCE ORDERED, NOACTIVITY OBSERVED.- FFRCOMPLETED, R/LS IDENTIFIED, TSA COMPLETED 4/22/19 AND ALT. OCCS IDENTIFIED. RECOMM. LTD THRU 4/22/19, CLAIM CLOSED EFF 4/23/19

**04/22/2019 12:57 PM - CLAIM Note 158**
Claim/Event/Leave: 7223420
NoteSubject : Voc Rehab
Other Subject : TSA
Text: [04/22/2019 - POWELL, ALICIA]TSA COMPLETED AND PLACED IN S1 WITH NOTIFICATION TO DCM.

**04/19/2019 2:30 AM - CLAIM Note 157**
Claim/Event/Leave: 7223420
NoteSubject : Voc Rehab
Other Subject : CLAIM/EVENT TO VCM
Text: 4/18/2019-REFERRAL RECEIVED BY VCM AND ASSIGNED TO POWELL, ALICIA. CLAIM/AS EVENT IS PENDING REVIEW.

**04/17/2019 3:50 PM - CLAIM Note 156**
Claim/Event/Leave: 7223420
NoteSubject : Ref to Voc Rehab
Other Subject :
Text: [04/17/2019 - ALFORD, DANIELLE]FOR TSA

**04/17/2019 3:48 PM - CLAIM Note 155**
Claim/Event/Leave: 7223420
NoteSubject : Peer Review
Other Subject :
Text: [04/17/2019 - ALFORD, DANIELLE]RECVD FROM RELIABLERS

**04/10/2019 2:28 AM - CLAIM Note 154**
Claim/Event/Leave: 7223420
NoteSubject : Ref to Other
Other Subject : PMNT
Text: THE SCORE REFERRAL FOR PAYMENT SERVICES REFERRAL AND PAYMENT ADJUSTMENT AND A REASON OF ROR HAS BEEN RECEIVED AND ASSIGNED TO JESSICA KEEFER.

**04/10/2019 2:28 AM - CLAIM Note 153**
Claim/Event/Leave: 7223420
NoteSubject : Ref to Other
Other Subject : PMT SVC
Text: FOR ROR. COMMENTS: APPROVED FOR A/O UNDER ROR. UPDATE PAID THRU DATE TO 6/10/19

**04/10/2019 2:27 AM - CLAIM Note 152**
Claim/Event/Leave: 7223420
NoteSubject : Ref to Other
Other Subject : SCORE REFERRAL
Text: 4/9/2019 - REFERRED TO RELIABLE REVIEW SERVICES FOR PEER REVIEW.

04/08/2019 3:57 PM - CLAIM Note 151

LIB000010

**04/09/2019 3:57 PM - CLAIM Note 151**
Claim/Event/Leave: 7223420
NoteSubject : Ref to Other
Other Subject : FINANCIAL SERVICES
Text: [04/09/2019 - KEEFER, JESSICA]REFERRAL RECEIVED AND BENEFITS SCHEDULED THRU 6/12/19 UNDER ROR AS REQUESTED BY DCM.

**04/09/2019 2:55 PM - CLAIM Note 150**
Claim/Event/Leave: 7223420
NoteSubject : Ref to Other
Other Subject :
Text: [04/09/2019 - ALFORD, DANIELLE]TO PSU TO UPDATE BENEF. END DATE

**04/09/2019 2:45 PM - CLAIM Note 149**
Claim/Event/Leave: 7223420
NoteSubject : Other
Other Subject : MGR ROR REVIEW
Text: [04/09/2019 - SULLIVAN, BRIAN]AGREE WITH EXTENSION TO COMPLETE NECESSARY REVIEWS.

**04/09/2019 2:22 PM - CLAIM Note 148**
Claim/Event/Leave: 7223420
NoteSubject : Other
Other Subject : REF TO MGR
Text: [04/09/2019 - ALFORD, DANIELLE]EE IS A 54YOM; SALARIED PROFESSIONAL ACCOUNTING CONSULTANT, SEDENTARY JD; LDW 10.14.2016; DOD 10.15.2016; EE STATED THAT HE WAS REAR-ENDED 10.4.2016 AFTER WORK AT 5:30PM, EE STATED THAT THERE WAS A POLICE REPORT FILED;THE REPORT NUMBER IS #162782459 CITY OF ATLANTA; EE WENT TO THE EMERGENCY ROOM 10.4.2016; EE WENT TO SEE CHIROPRACTOR 10.5.2016; EE WAS ADVISED NOT TO WORK AT THAT TIME; EE WENT AGAINST THE PHYSICIANS ORDERS AND RETURNED TO WORK; EE HAS SINCE BEEN OOW AND TREATING WITH PHYSICAL THERAPY. CLAIM REVIEWED BY MDS ON 5/17/17, OPINED THAT CLMT. C/O BACK PAIN AND MEDICAL EVIDENCE DOES NOT SUPPORT EE RECVD TXMT FOR BACK PAIN DURING PREX PERIOD, AND R/LS OF NO LIFTING, CARRYING, PUSHING, PULLING OVER 5 LBS AND NO MORE THAN OCCAS. STANDING, WALKING, NO CLIMBING,SQUATTING, CROUCHING, KNEELING OR BENDING ARE SUPPORTED FROM 10/15/16 THRU SURGERY ADN LESS THAN SED. R/LS SUPPORT FOR APPROX. 6 WEEKS POST OP. GOAL: RTW AO APR 2019. SURVIELLANCE ORDERED, NOACTIVITY OBSERVED.- CLAIM REF FOR PM&R PEER REVIEW OF UPDATED RECS THRU 3/27/19. AS CID 4/12/19 RECOMM. CLAIM APPROVED FOR ANY OCC UNDER ROR WHILE CLINICAL REVIEW UNDERWAY

**04/09/2019 2:19 PM - CLAIM Note 147**
Claim/Event/Leave: 7223420
NoteSubject : Med Records Rcvd
Other Subject : GA PAIN& WELLNESS
Text: [04/09/2019 - ALFORD, DANIELLE]OVNS THRU 3/27/19

**04/04/2019 5:12 PM - CLAIM Note 146**
Claim/Event/Leave: 7223420
NoteSubject : Ref to Other
Other Subject :
Text: [04/04/2019 - ALFORD, DANIELLE]REF FOR PM&R/PAIN MGMT.FFR

**04/02/2019 11:18 AM - CLAIM Note 145**
Claim/Event/Leave: 7223420
NoteSubject : Med Records Rcvd
Other Subject : GA PAIN
Text: [04/02/2019 - ALFORD, DANIELLE]OVN 1/29/19 THRU 3/1/19

**04/02/2019 10:47 AM - CLAIM Note 144**
Claim/Event/Leave: 7223420
NoteSubject : Other
Other Subject : BLANK AUTH
Text: [04/02/2019 - ALFORD, DANIELLE]RECVD BLANK AUTH. FROM DR. BLAKE, MAILED TO EE

**03/28/2019 3:51 PM - PHONE Note 47**
Claim/Event/Leave: 7223420
NoteSubject : EE Called
Other Subject :
Text: [03/28/2019 - ALFORD, DANIELLE]EE CALLED. ASKED IF WE GOT RECS NEEDED. EXPL. YES. EE CONFIRMED HE SAW DR MATTHEW AT GA PAIN AND WELLNESS YESTERDAY AND PCP DR. BLAKE LAST WEEK. NOV IS 4/26/19. EXPL. WILL REVIEW CLAIM FOR A/O AND CONTACT HIM W/ UPDATE

**03/28/2019 12:31 PM - CLAIM Note 143**
Claim/Event/Leave: 7223420
NoteSubject : Ref to Other
Other Subject : RELEASE POINT
Text: [03/28/2019 - ALFORD, DANIELLE]FAXED REQ TO GA PAIN AND WELLNESS, ALL RECS 1/30/19 TO PRESENT

**03/28/2019 12:27 PM - CLAIM Note 142**
Claim/Event/Leave: 7223420
NoteSubject : Med Records Rcvd

LIB000011

Other Subject : GA PAIN & WELLNESS
Text: [03/28/2019 - ALFORD, DANIELLE]OVN 1/29/19

**03/15/2019 5:12 PM - CLAIM Note 141**
Claim/Event/Leave: 7223420
NoteSubject : Other
Other Subject : FORMS
Text: [03/15/2019 - ALFORD, DANIELLE]CSS, CIF

**03/13/2019 8:41 AM - CLAIM Note 140**
Claim/Event/Leave: 7223420
NoteSubject : Other
Other Subject : SIGNED AUTHOR
Text: [03/13/2019 - ALFORD, DANIELLE]RECVD EE SIGNED REHAB. PHYSIC. OF GA AUTHORIZATION

**03/06/2019 4:47 PM - CLAIM Note 139**
Claim/Event/Leave: 7223420
NoteSubject : LTR to EE
Other Subject :
Text: [03/06/2019 - ALFORD, DANIELLE]MAILED REQ FOR CIF, CSS TO EE

**03/06/2019 10:39 AM - CLAIM Note 138**
Claim/Event/Leave: 7223420
NoteSubject : Other
Other Subject : SIGNED AUTHOR
Text: [03/06/2019 - ALFORD, DANIELLE]RECVD SIGNED AUTHOR. FROM EE AND LTR STATING DATES OF TXMT. NOV IS 3/27/19

**02/22/2019 10:16 AM - CLAIM Note 137**
Claim/Event/Leave: 7223420
NoteSubject : LTR to EE
Other Subject :
Text: [02/22/2019 - ALFORD, DANIELLE]RECVD AUTHOR. FROM REHAB. OF GA. MAILED TO EE FOR COMPLETION

**02/15/2019 3:36 PM - CLAIM Note 136**
Claim/Event/Leave: 7223420
NoteSubject : Ref to Other
Other Subject : RELEASE POINT
Text: [02/15/2019 - ALFORD, DANIELLE]FAXED REQ. TO GA PAIN AND WELLNESS CENTER, ALL RECS 12/28/18 TO PRESENT. AND DR. MARK FEEMAN

**02/15/2019 3:27 PM - PHONE Note 46**
Claim/Event/Leave: 7223420
NoteSubject : EE Called
Other Subject :
Text: [02/15/2019 - ALFORD, DANIELLE]EE CALLED, HE HAS SEEN DR. MATTHEW, DR. FEGMAN SINCE DEC 2018. NO CHANGE IN HIS CONDITION.- DISCUSSED CID OCCURRING 4/12/19, WILL F/U W/ HIM ABOUT THE A/O DETERMINATION PRIOR TO THAT DATE.- EE HAD A ROUTINE COLONOSCOPY.NO OTHER TXMT. EXPL. WILL REQ. UPDATED RECS. EE HAD NO ADDTL QUESTIONS

**02/14/2019 4:27 PM - PHONE Note 45**
Claim/Event/Leave: 7223420
NoteSubject : Called EE
Other Subject :
Text: [02/14/2019 - ALFORD, DANIELLE]CALLED EE, ASKED IF WAS A GOOD TIME TO TALK. EE SAID NOT AT THIS TIME. EE WILL CALL DCM WHEN CAN DISCUSS CLAIM

**12/31/2018 10:53 AM - CLAIM Note 135**
Claim/Event/Leave: 7223420
NoteSubject : Med Records Rcvd
Other Subject : MATTHEW
Text: [12/31/2018 - LE GRAND, CHRISTOPHER]1/2017-12/26/2018 OVNS RCVD FROM AP MATTHEW

**12/19/2018 1:15 PM - CLAIM Note 134**
Claim/Event/Leave: 7223420
NoteSubject : LTR to AP
Other Subject :
Text: [12/19/2018 - ALFORD, DANIELLE]FAXED REQ TO DR. MATHEWS, ALL RECS 8/1/18 TO PRES

**12/12/2018 11:40 AM - CLAIM Note 133**
Claim/Event/Leave: 7223420
NoteSubject : Med Records Rcvd
Other Subject :
Text: [12/12/2018 - ALFORD, DANIELLE]REHABILITATION PHYSICIANS OF GA, OVN 1/23/17 AND TOTAL PERMANENT DISABLED LTR

**12/12/2018 11:31 AM - CLAIM Note 132**

**LIB000012**

**12/12/2018 11:31 AM - CLAIM Note 132**
Claim/Event/Leave: 7223420
NoteSubject : Other
Other Subject : LTD FORMS
Text: [12/12/2018 - ALFORD, DANIELLE]CSS, TEE

**12/12/2018 11:30 AM - CLAIM Note 131**
Claim/Event/Leave: 7223420
NoteSubject : Med Records Rcvd
Other Subject :
Text: [12/12/2018 - ALFORD, DANIELLE]RECVD CERTIFICATION OF HEALTHCARE PROVIDER FORM

**12/04/2018 12:05 PM - CLAIM Note 130**
Claim/Event/Leave: 7223420
NoteSubject : Other
Other Subject : FORMS
Text: [12/04/2018 - ALFORD, DANIELLE]CSS, TEE

**12/04/2018 12:04 PM - CLAIM Note 129**
Claim/Event/Leave: 7223420
NoteSubject : Med Records Rcvd
Other Subject : DR FEEMAN
Text: [12/04/2018 - ALFORD, DANIELLE]OVN 1/23/17, DISABILITY NOTE,

**11/30/2018 1:00 PM - PHONE Note 44**
Claim/Event/Leave: 7223420
NoteSubject : Called EE
Other Subject :
Text: [11/30/2018 - ALFORD, DANIELLE]CALLED EE. EXPLAINED CID INVESTIGATION WE WILL COMPLETE. EE SAID HE GOT UPDATED FORMS, WILL MAIL THESE BACK TO US ; HYDRONITIS IS CHRONIC- HE TAKES MEDICATION WHEN IT FLARES UP.- HE SEES DR. BLAKE (PCP FOR THIS CONDITION). EE SAID THE HYRDRONITIS CONDITION CAUSES ABSCESSES AND FISTULAS FOR HIM AND THERE IS A SMELL ASSOCIATED W/ THIS CONDITION THAT WOULD MAKE IT DIFFICULT FOR HIM TO BE IN AN OFFICE ENVIROMENT. HE HAS A DORMANT HEPATITIS B CONDITION THAT HE DOES NOTHAVE ANY TXMT. HE HAS HIGH BP DUE TO THE PAIN FROM HIS BACK, HE TAKES MEDICATION FOR THAT CONDITION. EE DENIED HAVING ANY OTHER MEDICAL ISSUES. - EXPL. WILL CONTINUE TO REQ. ONGOING MED. INFORMATION AND UDPATES FROM HIM AND WILL RENDER A/O DETERMINATION IN 2019. CALL ENDED

**11/15/2018 4:36 PM - CLAIM Note 128**
Claim/Event/Leave: 7223420
NoteSubject : LTR to AP
Other Subject :
Text: [11/15/2018 - ALFORD, DANIELLE]FAXED REQ TO AP MATHEW/ GA PAIN AND WELLNESS, ALL RECS 8/1/18 TO PRES

**11/15/2018 4:34 PM - CLAIM Note 127**
Claim/Event/Leave: 7223420
NoteSubject : LTR to EE
Other Subject :
Text: [11/15/2018 - ALFORD, DANIELLE]MAILED CID LTR TO EE AND CLAIM FORMS- DUE 12/29/18

**10/26/2018 4:46 PM - CLAIM Note 126**
Claim/Event/Leave: 7223420
NoteSubject : Other
Other Subject : AO RVW
Text: [10/26/2018 - MARTIN, CHARLES]LDW 10/14/16. DOD 10/15/18. CID 4/13/19. EE IS OOW DUE TO BACK PAIN AND AWAITING A SX. RECOMMEND SENDING CID LETTER TO EE AND CALL TO DISCUSS CID AS WELL AS SEE WHICH AP'S ARE KEEPING HIM OOW AND FOR WHAT CX'S.

**10/22/2018 3:49 PM - PHONE Note 43**
Claim/Event/Leave: 7223420
NoteSubject : Called EE
Other Subject :
Text: [10/22/2018 - ALFORD, DANIELLE]CALLED EE, NOV 10/29/18 W/ DR MATTHEW.- NO CHANGES IN TXMT OR CONDITION. - ADVISED GOT RECS FROM DR. BENDIK. WILL CONTINUE TO F/U W/ HIM ONGOING. EE SAID HE IS STILL WAITING ON THEM TO APPROVE HIS SURGERY.

**10/22/2018 8:30 AM - CLAIM Note 125**
Claim/Event/Leave: 7223420
NoteSubject : Other
Other Subject : VENDOR PAYMENT
Text: [10/22/2018 - MITCHELL, CATHERINE]INVOICE RECEIVED ON 10/03/2018 FROM RELEASEPOINT. INV #708767, IN THE AMOUNT OF $8.00 FOR MEDICAL RECORDS. INVOICE PAID IN FULL.

**09/27/2018 12:12 PM - CLAIM Note 124**
Claim/Event/Leave: 7223420
NoteSubject : Med Records Rcvd
Other Subject : BENDIKS
Text: [09/27/2018 - ALFORD, DANIELLE]OVN 9/5/18

LIB000013

**09/21/2018 11:22 AM - CLAIM Note 123**
Claim/Event/Leave: 7223420
NoteSubject : Other
Other Subject : VENDOR PAYMENT
Text: [09/21/2018 - MITCHELL, CATHERINE]INVOICE RECEIVED ON 09/07/2018 FROM RELEASEPOINT. INV #708628, IN THE AMOUNT OF $ 8.00 FOR MEDICAL RECORDS. INVOICE PAID IN FULL.

**09/20/2018 12:03 PM - CLAIM Note 122**
Claim/Event/Leave: 7223420
NoteSubject : Ref to Other
Other Subject : RELEASE POINT
Text: [09/20/2018 - ALFORD, DANIELLE]FAXED REQ TO AP BENDIKS, ALL RECS 1/1/18 TO PRES.

**09/20/2018 11:57 AM - CLAIM Note 121**
Claim/Event/Leave: 7223420
NoteSubject : Med Records Rcvd
Other Subject : DR FREEMAN
Text: [09/20/2018 - ALFORD, DANIELLE]OVN 9/17/18

**08/09/2018 11:25 AM - CLAIM Note 120**
Claim/Event/Leave: 7223420
NoteSubject : Med Records Rcvd
Other Subject : DR MATHEW
Text: [08/09/2018 - ALFORD, DANIELLE]OVNS 7/30/18, 6/29/18, 5/30/18, 5/1/18, MRI LUMBAR SPINE 6/21/18, 2/17/15, MRI CERVICAL SPINE 1/24/17, MRI 10/28/16

**07/20/2018 3:46 PM - CLAIM Note 119**
Claim/Event/Leave: 7223420
NoteSubject : Notice/Proof Review
Other Subject :
Text: [07/20/2018 - ALFORD, DANIELLE]N/P LTR TO EE, ALL RECS 5/31/18 TO PRES. FROM GA PAIN AND WELLNESS

**07/20/2018 3:21 PM - PHONE Note 42**
Claim/Event/Leave: 7223420
NoteSubject : Called EE
Other Subject :
Text: [07/20/2018 - ALFORD, DANIELLE]CALLED EE FOR TXMT UPDATE. HE SEES GA PAIN AND WELLNESS, NOV 7/29/18. NOV SEPT 2018 W/ DR. BENDICKSON. EE THINKS HIS BACK IS GETTING WORSE. DCM EXPLAINED WE WILL REQ. UPDATED MED RECS FROM HIS TX APS. - EE HAD NO QUESTIONS

**07/06/2018 2:13 PM - CLAIM Note 118**
Claim/Event/Leave: 7223420
NoteSubject : LTR to AP
Other Subject :
Text: [07/06/2018 - ALFORD, DANIELLE]FAXED REQ TO GEORGIA PAIN AND WELLNESS, ALL RECS 5/31/18 TO PRESENT W/ LM. AUTHORIZATION

**06/07/2018 10:23 AM - CLAIM Note 117**
Claim/Event/Leave: 7223420
NoteSubject : Med Records Rcvd
Other Subject : MATHEW
Text: [06/07/2018 - ALFORD, DANIELLE]OVN 5/30/18, 5/1/18,

**06/04/2018 3:51 PM - CLAIM Note 116**
Claim/Event/Leave: 7223420
NoteSubject : Notice/Proof Review
Other Subject :
Text: [06/04/2018 - ALFORD, DANIELLE]N/P LTR TO EE, ALL RECS FROM 4/4/18 TO PRES. AND R/LS FROM GA PAIN & WELLNESS

**06/04/2018 3:49 PM - CLAIM Note 115**
Claim/Event/Leave: 7223420
NoteSubject : LTR to AP
Other Subject :
Text: [06/04/2018 - ALFORD, DANIELLE]FAXED REQ TO GA PAIN AND WELLNESS, ALL RECS 4/4/18 TO PRES. AND R/LS FORM

**04/16/2018 10:02 AM - CLAIM Note 114**
Claim/Event/Leave: 7223420
NoteSubject : Medical Status
Other Subject : GA PAIN & WELLNESS
Text: [04/16/2018 - ALFORD, DANIELLE]OVN 4/3/18

**04/11/2018 3:25 PM - CLAIM Note 113**
Claim/Event/Leave: 7223420
NoteSubject : LTR to AP
Other Subject :

LIB000014

Other Subject :
Text: [04/11/2018 - ALFORD, DANIELLE]FAXED REQ TO GA PAIN AND WELLNESS, ALL RECS 3/3/18 TO PRESENT

**04/11/2018 3:25 PM - PHONE Note 41**
Claim/Event/Leave: 7223420
NoteSubject : Called EE
Other Subject :
Text: [04/11/2018 - ALFORD, DANIELLE]CALLED EE FOR TXMT UPDATE. - HE IS STILL HAVING SAME TREATMENT W/ DR. MATHEWS, GIVEN MEDICATIONS. EE IS HAVING APPTS. W/ GEORGIA PAIN AND WELLNESS. NO OTHER TX APS. -EE HAS AN ATTORNEY, THEY ARE STILL WORKING ON TRYINGTO GET TO SEE IF HE CAN HAVE SURGERY. -DC M EXPL. WE WILL CONTINUE TO REQ. UPDATED RECS FROM GEORGIA PAIN AND WELLNESS CENTER.

**03/13/2018 10:42 AM - CLAIM Note 112**
Claim/Event/Leave: 7223420
NoteSubject : Med Records Rcvd
Other Subject : GA PAIN & WELLNESS
Text: [03/13/2018 - ALFORD, DANIELLE]OVN 3/2/18, 1/31/18, 12/26/17, LUMBAR MRI

**03/12/2018 1:12 PM - CLAIM Note 111**
Claim/Event/Leave: 7223420
NoteSubject : Social Security
Other Subject :
Text: [03/12/2018 - ALFORD, DANIELLE]DENIAL: LACK OF SSA COVERAGE

**02/23/2018 2:40 PM - CLAIM Note 110**
Claim/Event/Leave: 7223420
NoteSubject : Action Plan
Other Subject : RTW AO APR 2019
Text: [02/23/2018 - ALFORD, DANIELLE]EE IS A 54YOM; SALARIED PROFESSIONAL ACCOUNTING CONSULTANT, SEDENTARY JD; LDW 10.14.2016; DOD 10.15.2016; EE STATED THAT HE WAS REAR-ENDED 10.4.2016 AFTER WORK AT 5:30PM, EE STATED THAT THERE WAS A POLICE REPORT FILED;THE REPORT NUMBER IS #162782459 CITY OF ATLANTA; EE WENT TO THE EMERGENCY ROOM 10.4.2016; EE WENT TO SEE CHIROPRACTOR 10.5.2016; EE WAS ADVISED NOT TO WORK AT THAT TIME; EE WENT AGAINST THE PHYSICIANS ORDERS AND RETURNED TO WORK; EE HAS SINCE BEEN OOW AND TREATING WITH PHYSICAL THERAPY. CLAIM REVIEWED BY MDS ON 5/17/17, OPINED THAT CLMT. C/O BACK PAIN AND MEDICAL EVIDENCE DOES NOT SUPPORT EE RECVD TXMT FOR BACK PAIN DURING PREX PERIOD, AND R/LS OF NO LIFTING, CARRYING, PUSHING, PULLING OVER 5 LBS AND NO MORE THAN OCCAS. STANDING, WALKING, NO CLIMBING,SQUATTING, CROUCHING, KNEELING OR BENDING ARE SUPPORTED FROM 10/15/16 THRU SURGERY ADN LESS THAN SED. R/LS SUPPORT FOR APPROX. 6 WEEKS POST OP. GOAL: RTW AO APR 2019. SURVEILLANCE ORDERED, NOACTIVITY OBSERVED.-PM&R PEER REV. COMPLETED, EE REMAINS IMPAIRED FROM ALL WORK. -DCM WILL F/U FOR 60 DAY F/US.

**02/20/2018 5:49 PM - CLAIM Note 109**
Claim/Event/Leave: 7223420
NoteSubject : Other
Other Subject : VNDR PMT
Text: [02/20/2018 - THEOFRASTOU, ELIZABETH]REC'D INVOICE #LIBMTL012018- 203 ON 2/5/18 AND DATED 2/5/18 FROM RELEASEPOINT FOR MEDICAL RECORDS. PAID INVOICE IN FULL ON 2/16/18 FOR $8.00 TO TAX ID 95-2843455[02/21/2018 - THEOFRASTOU, ELIZABETH]EDIT - PAID 2/20

**02/05/2018 4:23 PM - CLAIM Note 108**
Claim/Event/Leave: 7223420
NoteSubject : LTR to AP
Other Subject :
Text: [02/05/2018 - ALFORD, DANIELLE]FAXED REQ. TO GEORGIA PAIN AND WELLNESS, ALL RECS 12/27/17 TO PRESENT

**02/05/2018 4:14 PM - PHONE Note 40**
Claim/Event/Leave: 7223420
NoteSubject : Called EE
Other Subject :
Text: [02/05/2018 - ALFORD, DANIELLE]CALLED EE FOR TXMT UPDATE. HE HAS A NEW ATTORNEY FOR HIS LTD CLAIM: MORGAN MEADORS W/ CALVIN SMITH LAW FIRM, PH 404.842.0999 FOR THE MVA. EE LOV WAS 1/31/18 W/ GA PAIN AND WELLNESS . - EXPL. WE WILL F/U HIM EVERY 60 DAYS FOR TXMT UPDATES AND REQ. THE UPDATED RECS. - EE SAID SOMEONE FROM ANOTHER DEPT. OF OURS ALREADY CALLED HIS NEW ATTORNEY. EE HAD NO QUESTIONS

**02/05/2018 12:51 PM - CLAIM Note 107**
Claim/Event/Leave: 7223420
NoteSubject : Other
Other Subject : CLAIM REVIEW
Text: [02/05/2018 - THOMAS, BRETT]AGREE WITH ONGOING CASE MANAGEMENT AND FU TASK SCHEDULED TO OBTAIN UPDATE FROM EE. EE IS TD FROM OO AT THIS TIME AND IS POTENTIALLY GOING TO HAVE OR HAS HAD SX AND IS IMPAIRED UNTIL SX AND SUPPORTS FOR 6 WEEKS LESS THAN SEDENTARY AFTER SX. SS APP COMPLETED AND WORKING WITH DCK. FORMS ON FILE AND BEING MANAGED APPROPRIATELY

**01/23/2018 10:07 AM - CLAIM Note 106**
Claim/Event/Leave: 7223420
NoteSubject : Med Records Rcvd
Other Subject : GA PAIN & WELLNESS
Text: [01/23/2018 - ALFORD, DANIELLE]OVN 10/2/17 THRU 12/26/17

LIB000015

**01/10/2018 2:35 PM - CLAIM Note 105**
Claim/Event/Leave: 7223420
NoteSubject : Notice/Proof Review
Other Subject :
Text: [01/10/2018 - ALFORD, DANIELLE]N/P LTR TO EE FOR ALL RECS 9/2/17 TO PRES. FROM GA PAIN AND WELLNESS CENTER, REQ. VIA RELEASE POINT, DUE 2/23/18

**12/15/2017 2:28 AM - CLAIM Note 104**
Claim/Event/Leave: 7223420
NoteSubject : Ref to Other
Other Subject : LIEN
Text: THE SCORE REFERRAL FOR LIEN REFERRAL AND SUBROGATION LIEN HAS BEEN REASSIGNED TO TGA.

**11/21/2017 2:28 AM - CLAIM Note 103**
Claim/Event/Leave: 7223420
NoteSubject : Ref to SS Vendor
Other Subject : SCORE REFERRAL
Text: 11/17/2017 - REFERRED TO DOHERTY AND ASSOCIATES AS SS ADVOCATE.

**11/17/2017 4:27 PM - PHONE Note 39**
Claim/Event/Leave: 7223420
NoteSubject : Called EE
Other Subject :
Text: [11/17/2017 - ALFORD, DANIELLE]CALLED EE FOR TXMT UPDATE, SAID THE ATTORNEYS ARE IN SHAMBLES, AND DR. BENDIKS IS WAITING FOR AN UPDATE ABOUT THE ATTORNEY'S BEING ABLE TO ALLOW HIM TO HAVE SURGERY; EE NOV IS 12/1/17 W/ PAIN MANAGEMENT TX AP AT GEORGIA PAIN AND WELLNESS. NO OTHER APPTS. AT THIS TIME. EE SAID HE HOPES TO HAVE SURGERY HOWEVER HE IS ABOUT 300 LBS AT THIS TIME.; EE ASKED ABOUT HIS BASE MONTHLY SALARY CALCULATION, DCM READ THE DEFINITION AS NOTED IN THE POLICY ( BASIC MONTHLY EARNINGS MEANS THE GREATER OF (A) THE COVERED PERSON S ANNUAL BASE SALARY, BONUSES, COMMISSIONS, TIME OFF PAY, OVERTIME PAY, ON CALL PAY, AND SHIFT PAY, AVERAGED OVER THE CALENDAR YEAR BEGINNING OCTOBER 1ST AND ENDING SEPTEMBER 30TH IMMEDIATELY PRIOR TOTHE DATE DISABILITY OR PARTIAL DISABILITY BEGINS OR (B) THE COVERED PERSON S ANNUAL BASE SALARY AS OF THE OCTOBER 1ST OF THE PRIOR CALENDAR YEAR AVERAGED OVER THE PREVIOUS 12 MONTHS. FOR COVERED PERSONS WITH LESS THAN 12 MONTHS OF SERVICE AT THE DATE DISABILITY OR PARTIAL DISABILITY BEGINS, EARNINGS WILL BE AVERAGED OVER THE PERIOD OF EMPLOYMENT) AND CONFIRMED HIS FULL TIME RTW DATE WAS 12/8/15. EE SAID HE IS TRYING TO LOSE WEIGHT AS HE MET W/ A NUTRITIONIST THRU HIS PCP. DCM EXPL. WE WILL CONTIN. TO F/U W/ HIM. EE SAID HE HAS APPLIED FOR SSDB, DENIED. DCM OFFERED SS ATTORNEY, EE ACCEPTED

**11/03/2017 1:02 PM - CLAIM Note 102**
Claim/Event/Leave: 7223420
NoteSubject : Other
Other Subject : VENDOR PAYMENT
Text: [11/03/2017 - BEST III, JAMES]REC'D INVOICE# N129127 ON 11/02/2017 AND DATED 10/31/2017 FROM MEDICAL CONSULTING NETWORK, LLC - 1301 5TH AVENUE, SUITE 2900, SEATTLE, WA 98101 FOR PEER REVIEW DONE BY DR. ARTHUR KALMAN WITH A SPECIALTY IN PM&R. PAID INVOICE IN FULL ON 11/03/2017 FOR $690.00 TO TAX ID 27-1944238

**10/24/2017 4:31 PM - CLAIM Note 101**
Claim/Event/Leave: 7223420
NoteSubject : Subrogation
Other Subject : REFERRAL
Text: [10/24/2017 - NEBESKY, CONNOR]FOR SUBROGATION UNIT - REFERRED TO VENDOR: TGA. CONTACT THE VENDOR THOMAS GEORGE AND ASSOCIATES TGA AT (800) 443-8338 OR SUBROGATION MAILBOX GMSUBROGATION FOR INQUIRIES RELATED TO SUBROGATION FOR THIS CLAIM.

**10/24/2017 10:25 AM - CLAIM Note 100**
Claim/Event/Leave: 7223420
NoteSubject : Peer Review
Other Subject : ADDENDUM
Text: [10/24/2017 - ALFORD, DANIELLE]RECVD PEER REVIEW ADDENDUM DATED 10/20/17 STATING R/LS ARE IN PLACE FOR 3 MONTHS

**10/23/2017 2:33 PM - CLAIM Note 99**
Claim/Event/Leave: 7223420
NoteSubject : Other
Other Subject : VENDOR PAYMENT
Text: [10/23/2017 - BEST III, JAMES]REC'D INVOICE# LIBMTL92017-209 ON 10/03/2017 AND DATED 10/03/2017 FROM RELEASEPOINT FOR MEDICAL RECORDS. PAID INVOICE IN FULL ON 10/23/2017 FOR $8.00 TO TAX ID 95-2843455

**10/16/2017 4:46 PM - CLAIM Note 98**
Claim/Event/Leave: 7223420
NoteSubject : Action Plan
Other Subject : RTW OO FEB 2018
Text: [10/16/2017 - ALFORD, DANIELLE]EE IS A 54YOM; SALARIED PROFESSIONAL ACCOUNTING CONSULTANT, SEDENTARY JD; LDW 10.14.2016; DOD 10.15.2016; EE STATED THAT HE WAS REAR-ENDED 10.4.2016 AFTER WORK AT 5:30PM, EE STATED THAT THERE WAS A POLICE REPORT FILED;THE REPORT NUMBER IS #162782459 CITY OF ATLANTA; EE WENT TO THE EMERGENCY ROOM 10.4.2016; EE WENT TO SEE CHIROPRACTOR 10.5.2016; EE WAS ADVISED NOT TO WORK AT THAT

LIB000016

EMERGENCY ROOM 10.1.2016; EE WENT TO SEE CHIROPRACTOR 10.5.2016; EE WAS ADVISED NOT TO WORK AT THAT TIME; EE WENT AGAINST THE PHYSICIANS ORDERS AND RETURNED TO WORK; EE HAS SINCE BEEN OOW AND TREATING WITH PHYSICAL THERAPY. CLAIM REVIEWED BY MDS ON 5/17/17, OPINED THAT CLMT. C/O BACK PAIN AND MEDICAL EVIDENCE DOES NOT SUPPORT EE RECVD TXMT FOR BACK PAIN DURING PREX PERIOD, AND R/LS OF NO LIFTING, CARRYING, PUSHING, PULLING OVER 5 LBS AND NO MORE THAN OCCAS. STANDING, WALKING, NO CLIMBING,SQUATTING, CROUCHING, KNEELING OR BENDING ARE SUPPORTED FROM 10/15/16 THRU SURGERY ADN LESS THAN SED. R/LS SUPPORT FOR APPROX. 6 WEEKS POST OP. GOAL: RTW OO FEB. 2018. SURVEILLANCE ORDERED, NOACTIVITY OBSERVED.- PM&R PEER REV. COMPLETED, EE REMAINS IMPAIRED FROM ALL WORK. - DCM REQUESTED COMPLETE ANSWER FOR DURATION OF IMPAIRMENT FOR PM&R PEER REVIEW W/ MCN

**10/16/2017 10:24 AM - CLAIM Note 97**
Claim/Event/Leave: 7223420
NoteSubject : Peer Review
Other Subject : MCN
Text: [10/16/2017 - ALFORD, DANIELLE]RECVD PEER REVIEW FROM MCN- PM&R DATED 10/13/17

**10/05/2017 12:18 PM - CLAIM Note 96**
Claim/Event/Leave: 7223420
NoteSubject : Action Plan
Other Subject : RTW OO OCT 2017
Text: [10/05/2017 - ALFORD, DANIELLE]EE IS A 54YOM; SALARIED PROFESSIONAL ACCOUNTING CONSULTANT, SEDENTARY JD; LDW 10.14.2016; DOD 10.15.2016; EE STATED THAT HE WAS REAR-ENDED 10.4.2016 AFTER WORK AT 5:30PM, EE STATED THAT THERE WAS A POLICE REPORT FILED;THE REPORT NUMBER IS #162782459 CITY OF ATLANTA; EE WENT TO THE EMERGENCY ROOM 10.4.2016; EE WENT TO SEE CHIROPRACTOR 10.5.2016; EE WAS ADVISED NOT TO WORK AT THAT TIME; EE WENT AGAINST THE PHYSICIANS ORDERS AND RETURNED TO WORK; EE HAS SINCE BEEN OOW AND TREATING WITH PHYSICAL THERAPY. CLAIM REVIEWED BY MDS ON 5/17/17, OPINED THAT CLMT. C/O BACK PAIN AND MEDICAL EVIDENCE DOES NOT SUPPORT EE RECVD TXMT FOR BACK PAIN DURING PREX PERIOD, AND R/LS OF NO LIFTING, CARRYING, PUSHING, PULLING OVER 5 LBS AND NO MORE THAN OCCAS. STANDING, WALKING, NO CLIMBING,SQUATTING, CROUCHING, KNEELING OR BENDING ARE SUPPORTED FROM 10/15/16 THRU SURGERY ADN LESS THAN SED. R/LS SUPPORT FOR APPROX. 6 WEEKS POST OP. GOAL: RTW OO OCT.. SURVIELLANCE ORDERED, NO ACTIVITY OBSERVED. CLAIM REF FOR PEER REV. BY MCN, PENDING, UPON RECEIPT WILL EVALUATE CONTINUED DISABILITY

**09/22/2017 1:18 PM - CLAIM Note 95**
Claim/Event/Leave: 7223420
NoteSubject : Med Records Rcvd
Other Subject : GA PAIN & WELLNESS
Text: [09/22/2017 - ALFORD, DANIELLE]OVNS FROM 2/28/17 TO 9/1/17

**09/22/2017 2:30 AM - CLAIM Note 94**
Claim/Event/Leave: 7223420
NoteSubject : Ref to Other
Other Subject : SCORE REFERRAL
Text: 9/21/2017 - REFERRED TO MEDICAL CONSULTANT NETWORK FOR PEER REVIEW.

**09/21/2017 2:05 PM - CLAIM Note 93**
Claim/Event/Leave: 7223420
NoteSubject : Other
Other Subject :
Text: [09/21/2017 - ALFORD, DANIELLE]REF CLAIM FOR PEER REVIEW TO MCN

**09/20/2017 12:47 PM - CLAIM Note 92**
Claim/Event/Leave: 7223420
NoteSubject : Other
Other Subject : VENDOR PAYMENT
Text: [09/20/2017 - SKOFIELD, DIANE]REC'D INVOICE #LIBMTL82017-228 ON 09/01/2017 AND DATED 09/01/2017 FROM RELEASEPOINT FOR MEDICAL RECORDS. PAID INVOICE IN FULL ON 9/20/2017 FOR $8.00 TO TAX ID 95-2843455

**09/07/2017 9:20 AM - CLAIM Note 91**
Claim/Event/Leave: 7223420
NoteSubject : Med Records Rcvd
Other Subject : PCP
Text: [09/07/2017 - ALFORD, DANIELLE]OVN 9/5/17- F/U FOR BACK PAIN

**08/23/2017 10:04 AM - CLAIM Note 90**
Claim/Event/Leave: 7223420
NoteSubject : Other
Other Subject : VENDOR PMT
Text: [08/23/2017 - WADE, CATHERINE]REC'D INVOICE# CBR475288 DATED 8/18/17 FROM COVENTBRIDGE IN THE AMT OF $370.50 FOR SURVEILLANCE SERVICES. PAID IN FULL 8/23/17.

**08/22/2017 5:18 PM - PHONE Note 38**
Claim/Event/Leave: 7223420
NoteSubject : Called EE
Other Subject :
Text: [08/22/2017 - ALFORD, DANIELLE]CALLED EE, EXPL. WE GOT UPDATED RECS FROM AP BENDIKS, EE SAID NOV IS PENDING. - EE SAID NOV IS 9/1/17 W/ PAIN MGMT. TX AP.- DCM EXPL. I WILL REQ. UPDATED RECS FROM NOV AND ASKED EE TO CALL W/ DATE FO NOV W/ DR. BENDIKS.- EE SAID HE WILL NOT HAVE ANY APPTS. AND DID NOT AT EMORY

**08/22/2017 5:16 PM - PHONE Note 37**
Claim/Event/Leave: 7223420
NoteSubject : EE Called
Other Subject :
Text: [08/22/2017 - ALFORD, DANIELLE]EE CALLED, LEFT VM REQ. A R/CALL

**08/22/2017 10:42 AM - CLAIM Note 89**
Claim/Event/Leave: 7223420
NoteSubject : Surveillance
Other Subject :
Text: [08/22/2017 - ALFORD, DANIELLE]RECVD REPORT FROM COVENT BRIDGE

**08/16/2017 11:44 AM - CLAIM Note 88**
Claim/Event/Leave: 7223420
NoteSubject : Other
Other Subject : FAX FROM EE
Text: [08/16/2017 - ALFORD, DANIELLE]RECVD FAX FROM EE

**08/08/2017 5:46 PM - CLAIM Note 87**
Claim/Event/Leave: 7223420
NoteSubject : Med Records Rcvd
Other Subject : BENDIKS
Text: [08/08/2017 - CARTER, KAYLA]MR RECEIVED FROM AP BENDIKS OFFICE. DOS: 4/26/17-7/12/17

**08/04/2017 10:44 AM - CLAIM Note 86**
Claim/Event/Leave: 7223420
NoteSubject : Med Records Rcvd
Other Subject : BENDIKS
Text: [08/04/2017 - ALFORD, DANIELLE]OVN 7/12/17

**08/03/2017 2:54 PM - CLAIM Note 85**
Claim/Event/Leave: 7223420
NoteSubject : Action Plan
Other Subject : RTW OO SEPT 2017
Text: [08/03/2017 - ALFORD, DANIELLE]EE IS A 54YOM; SALARIED PROFESSIONAL ACCOUNTING CONSULTANT, SEDENTARY JD; LDW 10.14.2016; DOD 10.15.2016; EE STATED THAT HE WAS REAR-ENDED 10.4.2016 AFTER WORK AT 5:30PM, EE STATED THAT THERE WAS A POLICE REPORT FILED;THE REPORT NUMBER IS #162782459 CITY OF ATLANTA; EE WENT TO THE EMERGENCY ROOM 10.4.2016; EE WENT TO SEE CHIROPRACTOR 10.5.2016; EE WAS ADVISED NOT TO WORK AT THAT TIME; EE WENT AGAINST THE PHYSICIANS ORDERS AND RETURNED TO WORK; EE HAS SINCE BEEN OOW AND TREATING WITH PHYSICAL THERAPY. CLAIM REVIEWED BY MDS ON 5/17/17, OPINED THAT CLMT. C/O BACK PAIN AND MEDICAL EVIDENCE DOES NOT SUPPORT EE RECVD TXMT FOR BACK PAIN DURING PREX PERIOD, AND R/LS OF NO LIFTING, CARRYING, PUSHING, PULLING OVER 5 LBS AND NO MORE THAN OCCAS. STANDING, WALKING, NO CLIMBING,SQUATTING, CROUCHING, KNEELING OR BENDING ARE SUPPORTED FROM 10/15/16 THRU SURGERY ADN LESS THAN SED. R/LS SUPPORT FOR APPROX. 6 WEEKS POST OP. GOAL: RTW OO SEPT. 2017. SURVIELLANCE ORDERED, UPON RECIEPT WILL REF. CLAIM FOR FFR

**08/03/2017 2:30 AM - CLAIM Note 84**
Claim/Event/Leave: 7223420
NoteSubject : Ref to Special Invest
Other Subject : SCORE REFERRAL
Text: 8/2/2017 - REFERRED TO COVENTBRIDGE FOR SIU VENDOR SERVICES.

**08/02/2017 1:58 PM - CLAIM Note 83**
Claim/Event/Leave: 7223420
NoteSubject : Notice/Proof Review
Other Subject :
Text: [08/02/2017 - ALFORD, DANIELLE]N/P LTR TO EE FOR ALL RECS 4/25/17 TO THE PRES. FROM DR. BENDIKS. REQ. FAXED VIA RELEASE POINT W/ EE AUTHORIZATION, DUE 9/15/17

**08/02/2017 1:53 PM - CLAIM Note 82**
Claim/Event/Leave: 7223420
NoteSubject : Surveillance
Other Subject : REFERRAL
Text: [08/02/2017 - ALFORD, DANIELLE]REFERRED CLAIM TO COVENTBRIDGE FOR SURVEILLANCE

**07/27/2017 2:29 AM - CLAIM Note 81**
Claim/Event/Leave: 7223420
NoteSubject : Ref to Other
Other Subject : LIENS
Text: FOR SUBROGATION LIEN. COMMENTS: SEE POLICE REPORT, SUBROGATION FORMS, CLMT.SUPPLEMENTARY STATEMENT W/ THE ATTORNEY CONTACT INFORMATION ON IT.

**07/27/2017 2:29 AM - CLAIM Note 80**
Claim/Event/Leave: 7223420
NoteSubject : Ref to Other
Other Subject : LIEN

**LIB000018**

Text: THE'SCORE REFERRAL FOR LIEN REFERRAL AND SUBROGATION LIEN HAS BEEN RECEIVED AND ASSIGNED TO FIRST RECOVERY.

**07/25/2017 11:56 AM - CLAIM Note 79**
Claim/Event/Leave: 7223420
NoteSubject : Other
Other Subject : SIU
Text: [07/25/2017 - MOORE, CURTIS]SIU REVIEW: BASED ON SOCIAL MEDIA REPORT AND ACIDITY POSTED CLAIM COULD BENEFIT FROM FURTHER OBSERVATION OF CLAIMANT ACTIVITY LEVEL. AGREE THAT SURVEILLANCE SHOULD BE ASSIGNED TIER 2 UP TO 3 DAYS TO INCLUDE A WEEKEND DAY.

**07/18/2017 10:09 AM - CLAIM Note 78**
Claim/Event/Leave: 7223420
NoteSubject : Other
Other Subject : FAX FROM EE
Text: [07/18/2017 - ALFORD, DANIELLE]RECVD FAX FROM EE; RX NOTE, REFERRAL NOTE FOR CHRONIC PAIN MANAGEMENT

**07/18/2017 2:30 AM - CLAIM Note 77**
Claim/Event/Leave: 7223420
NoteSubject : Ref to Special Invest
Other Subject : SCORE REFERRAL
Text: 7/17/2017 - REFERRED TO SIU FOR DATABASE SEARCH. TYPE OF SERVICE(S) REQUESTED: - SOCIAL MEDIA.

**07/17/2017 4:21 PM - CLAIM Note 76**
Claim/Event/Leave: 7223420
NoteSubject : Other
Other Subject : SIU
Text: [07/17/2017 - MOORE, CURTIS]COVENTBRIDGE WILL PERFORM INTERNET/DATABASE SOCIAL MEDIA SEARCH/REPORT AND WILL BE UPLOADED TO EDM UPON COMPLETION.

**07/17/2017 2:11 PM - CLAIM Note 75**
Claim/Event/Leave: 7223420
NoteSubject : Ref to Other
Other Subject :
Text: [07/17/2017 - ALFORD, DANIELLE]CLAIM REF FOR SOCIAL MEDIA SEARCH

**07/17/2017 2:11 PM - PHONE Note 36**
Claim/Event/Leave: 7223420
NoteSubject : Called EE
Other Subject :
Text: [07/17/2017 - ALFORD, DANIELLE]CALLED EE FOR TXMT UPDATE. ASKED IF HE SAW ANY TX APS RECENTLY. EE SAW DR. BENDIKS AND DR. MATTHEWS, AND THEY ARE TRYING TO SCHEDULE HIS SURGERY. DCM ASKED EE TO CALL US W/ THE DATE OF THE SURGERY. EE SAID HE WILL DO SO

**06/09/2017 8:10 AM - CLAIM Note 74**
Claim/Event/Leave: 7223420
NoteSubject : Other
Other Subject :
Text: [06/09/2017 - MIDDLETON, MARCIE]DD (SHARED W/ PATRICIA WRIGHT), AUTH

**06/06/2017 4:31 PM - CLAIM Note 73**
Claim/Event/Leave: 7223420
NoteSubject : Other
Other Subject : ADD DD
Text: [06/06/2017 - HOLTZ, JORDAN]ACCT 7034811831 ROUTING 061000227

**06/05/2017 9:01 AM - CLAIM Note 72**
Claim/Event/Leave: 7223420
NoteSubject : Other
Other Subject : DD, SSRA
Text: [06/05/2017 - ALFORD, DANIELLE]RECVD DD APPLICATION AND SSRA

**06/01/2017 12:16 PM - CLAIM Note 71**
Claim/Event/Leave: 7223420
NoteSubject : Med Records Rcvd
Other Subject : MIN. CLINIC
Text: [06/01/2017 - ALFORD, DANIELLE]RECVD FAX STATING NO RECS FROM 8/1/15 TO PRES

**05/31/2017 3:44 PM - CLAIM Note 70**
Claim/Event/Leave: 7223420
NoteSubject : Other
Other Subject : JOB
Text: [05/31/2017 - ALFORD, DANIELLE]EMAIL FROM ER W/ JOB INFORMATION: HI DANIELLE, THIS IS WHAT I RECEIVED FROM BRANCH. IS THIS SUFFICIENT? THANK YOU, DONA MARIE L. RIVERA BENEFITS OPERATIONS

**05/31/2017 2:35 AM - CLAIM Note 69**
Claim/Event/Leave: 7223420

LIB000019

Claim/Event/Leave: 7223420
NoteSubject : Ref to Other
Other Subject : PMNT
Text: THE SCORE REFERRAL FOR PAYMENT SERVICES REFERRAL AND PAYMENT ADJUSTMENT AND A REASON OF REOPEN CLAIM (SUCCESSIVE/EXTENSION) HAS BEEN RECEIVED AND ASSIGNED TO NICOLE WILLRICH.

**05/30/2017 11:10 AM - CLAIM Note 68**
Claim/Event/Leave: 7223420
NoteSubject : Ref to Other
Other Subject : PAYMENT SERVICES
Text: [05/30/2017 - WILLRICH, NICOLE]REFERRAL RECEIVED AND SCHEDULED PAYMENT END DATE CHANGED TO 4/12/19 AS REQUESTED BY DCM.

**05/30/2017 1:51 AM - CLAIM Note 67**
Claim/Event/Leave: 7223420
NoteSubject : Ref to Other
Other Subject : PMT SVC
Text: FOR REOPEN CLAIM (SUCCESSIVE/EXTENSION). BEN BEG:4/13/2017 BEN END:4/12/2019 COMMENTS: CLAIM REOPENED, SET UP SCHEDULE PAYMENT

**05/26/2017 5:37 PM - CLAIM Note 66**
Claim/Event/Leave: 7223420
NoteSubject : LTR to EE
Other Subject :
Text: [05/26/2017 - ALFORD, DANIELLE]APPROVAL LTR TO EE

**05/26/2017 5:36 PM - PHONE Note 35**
Claim/Event/Leave: 7223420
NoteSubject : Called EE
Other Subject :
Text: [05/26/2017 - ALFORD, DANIELLE]CALLED EE, EXPL. CLAIM APPROVED, LTD PAID MONTHLY, WILL GET AN APPROVAL LTR AND DCM WILL F/U W/ HIM EVERY 60 DAYS

**05/26/2017 2:35 PM - CLAIM Note 65**
Claim/Event/Leave: 7223420
NoteSubject : Other
Other Subject : MGR REVIEW
Text: [05/26/2017 - BOBO, KRISTIN]AGREE W/ PRE-EX R/O FOR BACK PAIN AND APPROVAL.

**05/26/2017 12:12 PM - CLAIM Note 64**
Claim/Event/Leave: 7223420
NoteSubject : Reopen
Other Subject : REF TO MGR
Text: [05/26/2017 - ALFORD, DANIELLE]DCM REF FOR CLAIM REOPEN AND APPROVAL. - EE IS A 54YOM; SALARIED PROFESSIONAL ACCOUNTING CONSULTANT, SEDENTARY JD; LDW 10.14.2016; DOD 10.15.2016; EE STATED THAT HE WAS REAR-ENDED 10.4.2016 AFTER WORK AT 5:30PM, EE STATED THAT THERE WAS A POLICE REPORT FILED; THE REPORT NUMBER IS #162782459 CITY OF ATLANTA; EE WENT TO THE EMERGENCY ROOM 10.4.2016; EE WENT TO SEE CHIROPRACTOR 10.5.2016; EE WAS ADVISED NOT TO WORK AT THAT TIME; EE WENT AGAINST THE PHYSICIANS ORDERS AND RETURNED TO WORK; EE HAS SINCE BEEN OOW AND TREATING WITH PHYSICAL THERAPY. CLAIM REVIEWED BY MDS ON 5/17/17, OPINED THAT CLMT. C/O BACK PAIN AND MEDICAL EVIDENCE DOES NOT SUPPORT EE RECVD TXMT FOR BACK PAIN DURING PREX PERIOD, AND R/LS OF NO LIFTING, CARRYING, PUSHING, PULLING OVER 5 LBS AND NO MORE THAN OCCAS. STANDING, WALKING, NO CLIMBING,SQUATTING, CROUCHING, KNEELING OR BENDING ARE SUPPORTED FROM 10/15/16 THRU SURGERY AND LESS THAN SED. R/LS SUPPORT FOR APPROX. 6 WEEKS POST OP. - CLAIM SUBJ. TO PREX CONDITION INVESTIGATION FOR TXMT W/PREX PERIOD 11/1/15 TO 1/31/16 FOR THE BUY UP PLAN AND FOR PREX FOR THE CORE PLAN W/ PREX 10/1/15 TO 12/31/15. BASED ON MEDICAL RECORDS, EOBS, HOSPITAL RECORDS, PHARMACY RECORDS, AND MDS REVIEW, EEDID NOT RECEIVE TXMT FOR HIS DISABLING BACK PAIN DURING PREX PERIOD.

**05/26/2017 12:08 PM - CLAIM Note 63**
Claim/Event/Leave: 7223420
NoteSubject : Med Records Rcvd
Other Subject : FAMILY MED CLINIC
Text: [05/26/2017 - ALFORD, DANIELLE]FAXED REQ DATED 5/26/17 FROM FAMILY MEDICINE CENTER OF GA STATING EE HAS NEVER BEEN SEEN IN THIS CLINIC

**05/24/2017 5:10 PM - PHONE Note 34**
Claim/Event/Leave: 7223420
NoteSubject : EE Called
Other Subject :
Text: [05/24/2017 - ALFORD, DANIELLE]EE CALLED, ASKED WHAT INFORMATION IS NEEDED FOR HIS CLAIM. DCM EXPL. THE REPLY FROM FAMILY MEDICAL CLINIC OF GA. EE SAID HE HAS NEVER BEEN SEEN THERE. DCM EXPL. ATTEMPTED TO OBTAIN THIS INFORMATION VIA PHONE FROM OFFICEMANAGER TODAY, HOWEVER NOT ABLE TO DO SO. EE SAID HE WILL GO THERE TOMORROW TO GET IT IN WRITING THAT HE HAS NEVER BEEN SEEN BEFORE AND WILL FAX IT TO US. EE ASKED IF THIS IS ALL INFORMATION NEEDED FOR HIS CLAIM, DCM EXPL. YES, UNLESS THE MEDICAL INFORMATION INDICATES EE HAD TXMT W/ ANY OTHER PROVIDERS AT THE CLINIC.

**05/24/2017 5:08 PM - PHONE Note 33**
Claim/Event/Leave: 7223420

LIB000020

NoteSubject : Called AP
Other Subject :
Text: [05/24/2017 - ALFORD, DANIELLE]CALLED FAMILY MEDICINE CLINIC OF GA. S/W THE OFFICE MANAGER (MALE). ASKED IF WE USED THE CORRECT FAX # FOR HIS OFFICE, HE SAID YES. ASKED IF HE HAS ACCESS TO APPTS. IN COMPUTER, HE SAID YES, HOWEVER HE CANNOT RELEASE ANY INFORMATION OVER PHONE. DCM EXPL. WE FAXED A REQ TO THE OFFICE W/ AUTHORIZATION FORM. HE SAID HE WILL LOOK OVER IT AND REPLY WHEN HE RETURNS TO THE OFFICE ON FRIDAY, AND WILL REPLY TO US.

**05/24/2017 3:06 PM - PHONE Note 32**
Claim/Event/Leave: 7223420
NoteSubject : EE Called
Other Subject :
Text: [05/24/2017 - CARTER, KAYLA]EE CALLED BACK AND ASKED TO SPEAK TO ADCM. DCM ADVISED ADCM IS IN A MEETING AND UNABLE TO SPEAK AT THIS TIME. DCM ADVISED ADCM CAN GIVE A CALL TO AP OFFICE OR EE BY EOB TODAY. EE UNDERSTOOD AND THANKED.

**05/24/2017 3:05 PM - PHONE Note 31**
Claim/Event/Leave: 7223420
NoteSubject : EE Called
Other Subject :
Text: [05/24/2017 - CARTER, KAYLA]EE CALLED IN AND ADVISED HE PRESSED 0 AS ADCM UNAVAILABLE. DCM ACK AND ASKED HOW COULD HELP. EE ADVISED HE WAS WANTING TO GET THE STATUS OF HIS CLAIM. DCM ADVISED CLAIM WAS RECOMMENDED FOR REOPEN AND M1 ADVISED EE NEEDED TO DISCUSS WITH HUMANA DOS DURING PRE-EX TIME FRAME, CLARIFY IF SEEN AT EMORY, AND CX TREATMENT DATES AT FAMILY MED CLINIC OF GA. EE ADVISED HE SPOKE WITH ADCM YESTERDAY AND THEY CX DOS DURING PRE-EX TIMEFRAME, EE PLACED DCM ON HOLD AS EMORY WAS BEEPING IN. JOHN FROM EMORY JOINED THE CALL AND ADVISED EE WAS NEVER SEEN, DCM CX WE HAVE INFORMATION CX EE WAS NEVER TREATED AT THE FACILITY, JOHN DROPPED THE CALL. EE ADVISED ADCM HAS THE INFORMATION ON FILE FROM FAMILY GA CLINIC AND HE WAS ONLY SEEN IN7/2016. DCM CX 7/2016 NOTE ON FILE BUT UNCLEAR IF ANY OTHER DOS. DCM ADVISED ADCM HAS CALLED FAM MED CLINIC OF GA AND WAS TOLD TO FAX HER REQUEST AND IS WAITING ON A RTC FROM OFFICE MANAGER TO CX TREATMENT DATES. EE EXPRESSED FRUSTRATION WITH THE PROCESS AND BELIEVES THAT WE ARE STRINGING HIM ALONG. DCM ADVISED EE WE ARE NOT TRYING TO STRING HIM ALONG AND ONLY FOLLOWING ER POLICY AND RECOMMENDATIONS FROM M1 TO MAKE DETERMINATION. EE ADVISED THE PREMIUMS HE PAYS FOR LTD BENEFITS PAYS OUR SALARIES AND HE MAKING THE SICK RUN AROUND TO GET ALL OF THIS INFORMATION SEEMS UNFAIR AND HE MUST BE MISSING SOMETHING. DCM EXPRESSED UNDERSTANDING WITH FRUSTRATION AND ADVISED ADCM IS WAITING ON A CALL BACK AND WILL FOLLOW UP. EE UNDERSTOOD AND THANKED.

**05/24/2017 2:03 PM - PHONE Note 30**
Claim/Event/Leave: 7223420
NoteSubject : Called AP
Other Subject :
Text: [05/24/2017 - ALFORD, DANIELLE]CALLED FAMILY MEDICAL CLINIC OF GA TO REQ. TXMT DATES. OFFICE MANAGER WILL RETURN IN 30 MINS. LEFT MESSAGE W/ FRONT DESK, REQ. A R/CALL

**05/24/2017 12:24 PM - CLAIM Note 62**
Claim/Event/Leave: 7223420
NoteSubject : Other
Other Subject :
Text: [05/24/2017 - ALFORD, DANIELLE]RECVD FAX FROM EE[05/24/2017 - ALFORD, DANIELLE]& OVN 5/19/17 FROM DR D. PATEL

**05/23/2017 11:37 AM - CLAIM Note 61**
Claim/Event/Leave: 7223420
NoteSubject : LTR to AP
Other Subject :
Text: [05/23/2017 - ALFORD, DANIELLE]FAXED REQ TO FAMILY MEDICINE CLINIC OF GA

**05/23/2017 11:33 AM - PHONE Note 29**
Claim/Event/Leave: 7223420
NoteSubject : Called AP
Other Subject : FAMILY MEDICINE
Text: [05/23/2017 - ALFORD, DANIELLE]CALLED FAMILY MEDICINE CLINIC OF GA, PH 770.997.0047. S/W WOMAN WHO SAID WE MUST FAX REQUEST TO # IS 770.997.0390

**05/23/2017 11:29 AM - CLAIM Note 60**
Claim/Event/Leave: 7223420
NoteSubject : Other
Other Subject : EMORY ADVENTIST
Text: [05/23/2017 - ALFORD, DANIELLE]EMAIL RECVD STATING: MR. HARRIS, THIS MESSAGE SERVES AS CONFIRMATION THAT YOU HAVE NEVER BEEN SEEN AT EMORY UNIVERSITY HOSPITAL. I HAVE ATTACHED BOTH NOTICES FOR EMORY UNIVERSITY AND EMORY UNIVERSITY MIDTOWN. YOUALSO WROTE IN EMORY ADVENTIST HOSPITAL, BUT WE ARE NOT AFFILIATED WITH THAT FACILITY; ADDITIONALLY THAT LOCATION HAS BEEN CLOSED SINCE 2014 AND AGAIN WE HAD NO AFFILIATION WITH THEM AT ANY TIME THEY WERE OPEN THEN. PLEASE LET ME KNOW IF I CAN HELP WITH ANYTHING ELSE. HAVE A GREAT DAY TANISHA HANNAH MEDICAL RECORDS 404-686-2908 TANISHA.HANNAH@EMORYHEALTHCARE.ORG 235 PEACHTREE ST. NE SUITE 500 5TH FLOOR ATLANTA, GA 30303

**05/23/2017 11:29 AM - PHONE Note 28**
Claim/Event/Leave: 7223420

LIB000021

Claim/Event/Leave: 7223420
NoteSubject : EE Called
Other Subject :
Text: [05/23/2017 - ALFORD, DANIELLE]EE CALLED, ASKED FOR CLAIM STATUS. DCM EXPLAINED WE NEED TO CONFIRM IF ANY EOBS FROM HUMANA AND THE EMORY ADVENTIST HOSPITAL INFORMATION. DCM CALLED HUMANA VIA CONF. CALL W/ EE ON THE PHONE AT PH 800.448.6262 TO REQUESTIF ANY EOBS DURING PRE-X PERIODS. S/W TOREY WHO SAID EE BECAME EFFECTIVE AS OF 3/1/15 AND END DATE WAS 12/31/15, EE HAD 1 CLAIM FILED ON 11/12/15. EE EMAILED OVER PROOF FROM EMORY ADVENTIST HOSPITAL OF NO TXMT DURING PREX PERIOD AS HOSPTIAL WAS CLOSED 2014. DCM EXPL WE WILL F/U W/ HIM ABOUT CLAIM DETERMINATION

**05/23/2017 7:49 AM - CLAIM Note 59**
Claim/Event/Leave: 7223420
NoteSubject : Other
Other Subject : MGR REVIEW
Text: [05/23/2017 - BELL, CHE]EOB FROM HUMANA IS BLURRED/HARD TO READ AND THEREFORE UNCLEAR WHO THE PROVIDERS WERE AND THE DOS. RECOMMEND COMPLETING A CONFERENCE CALL WITH THE CLMT AND HUMANA TO CLARIFY FINDINGS ON THIS EOB. IF DOS DURING THE CORE OR BUY-UP PRE-X TIMEFRAME, WILL NEED THE RECORDS. ALSO RECOMMEND CALLING EMORY ADVENTIST HOSPITAL AS PER PRIOR MGR REVIEW RECOMMENDATIONS NOTED ON 5/1/17- APPEARS RECORDS REQUESTED AND A SPECIFIC AUTH FOR THIS PROVIDER WAS SUBMITTED; HOWEVER, THIS FORM ISALSO BLURRED/HARD TO READ AND LIKELY WOULD BE REJECTED BY THE PROVIDER. ADDITIONALLY, UNCLEAR IF THERE WERE ANY DOS DURING CORE AND/OR BUY-UP PRE-X TIMEFRAMES FROM FAMILY MEDICINE CLINIC OF GA.

**05/19/2017 5:27 PM - CLAIM Note 58**
Claim/Event/Leave: 7223420
NoteSubject : Action Plan
Other Subject : RTW OO AUG 2017
Text: [05/19/2017 - ALFORD, DANIELLE]EE IS A 54YOM; SALARIED PROFESSIONAL ACCOUNTING CONSULTANT, SEDENTARY JD; LDW 10.14.2016; DOD 10.15.2016; EE STATED THAT HE WAS REAR-ENDED 10.4.2016 AFTER WORK AT 5:30PM, EE STATED THAT THERE WAS A POLICE REPORT FILED;THE REPORT NUMBER IS #162782459 CITY OF ATLANTA; EE WENT TO THE EMERGENCY ROOM 10.4.2016; EE WENT TO SEE CHIROPRACTOR 10.5.2016; EE WAS ADVISED NOT TO WORK AT THAT TIME; EE WENT AGAINST THE PHYSICIANS ORDERS AND RETURNED TO WORK; EE HAS SINCE BEEN OOW AND TREATING WITH PHYSICAL THERAPY. CLAIM REVIEWED BY MDS ON 5/17/17, OPINED THAT CLMT. C/O BACK PAIN AND MEDICAL EVIDENCE DOES NOT SUPPORT EE RECVD TXMT FOR BACK PAIN DURING PREX PERIOD, AND R/LS OF NO LIFTING, CARRYING, PUSHING, PULLING OVER 5 LBS AND NO MORE THAN OCCAS. STANDING, WALKING, NO CLIMBING,SQUATTING, CROUCHING, KNEELING OR BENDING ARE SUPPORTED FROM 10/15/16 THRU SURGERY ADN LESS THAN SED. R/LS SUPPORT FOR APPROX. 6 WEEKS POST OP. GOAL: RTW OO AUG 2017. DCM WILL REQ. SURGERY ANDPOST OP INFORMATION, RTW STATUS. IF R/LS UNCLEAR, WILL REF. CLAIM FOR FFR

**05/19/2017 5:25 PM - CLAIM Note 57**
Claim/Event/Leave: 7223420
NoteSubject : Other
Other Subject : EMAIL TO ER
Text: [05/19/2017 - ALFORD, DANIELLE]EMAILED REQ FOR JOB DESCRIPTION TO ER

**05/19/2017 5:24 PM - CLAIM Note 56**
Claim/Event/Leave: 7223420
NoteSubject : Reopen
Other Subject : REF TO MGR
Text: [05/19/2017 - ALFORD, DANIELLE]DCM REF FOR CLAIM REOPEN AND APPROVAL. - EE IS A 54YOM; SALARIED PROFESSIONAL ACCOUNTING CONSULTANT, SEDENTARY JD; LDW 10.14.2016; DOD 10.15.2016; EE STATED THAT HE WAS REAR-ENDED 10.4.2016 AFTER WORK AT 5:30PM, EE STATED THAT THERE WAS A POLICE REPORT FILED; THE REPORT NUMBER IS #162782459 CITY OF ATLANTA; EE WENT TO THE EMERGENCY ROOM 10.4.2016; EE WENT TO SEE CHIROPRACTOR 10.5.2016; EE WAS ADVISED NOT TO WORK AT THAT TIME; EE WENT AGAINST THE PHYSICIANS ORDERS AND RETURNED TO WORK; EE HAS SINCE BEEN OOW AND TREATING WITH PHYSICAL THERAPY. CLAIM REVIEWED BY MDS ON 5/17/17, OPINED THAT CLMT. C/O BACK PAIN AND MEDICAL EVIDENCE DOES NOT SUPPORT EE RECVD TXMT FOR BACK PAIN DURING PREX PERIOD, AND R/LS OF NO LIFTING, CARRYING, PUSHING, PULLING OVER 5 LBS AND NO MORE THAN OCCAS. STANDING, WALKING, NO CLIMBING,SQUATTING, CROUCHING, KNEELING OR BENDING ARE SUPPORTED FROM 10/15/16 THRU SURGERY ADN LESS THAN SED. R/LS SUPPORT FOR APPROX. 6 WEEKS POST OP.

**05/19/2017 3:49 PM - PHONE Note 27**
Claim/Event/Leave: 7223420
NoteSubject : EE Called
Other Subject :
Text: [05/19/2017 - WHITE, KHYA]EE CALLED AND SAID THAT HE WANTS A STATUS - ADV THAT MDS REVIEW WAS JUST COMPLETED -- AND CLAIM WILL BE RE-OPENED. ADV THAT ONCE DCM REVIEWS CLAIM FOR REOPEN SHE WILL CONTACT FOR PAYMENT... EE UNDERSTOOD, THANKED AND EC.

**05/17/2017 7:24 PM - MDS Note**
Claim/Leave: 7223420
Episode #: 3
Nurse Name: LONG, TIFFANY
Service #: 16410134
Service Date: 05/17/2017
Activity: NURSE REVIEW, FILE REVIEW
Contact Information: CLAIMS, DANIELLE, ALFORD
Note Type: ASSESSMENT DESCRIPTION
Text: CONTINUED (2)...DOING WELL. REPORTED DRAINAGE TO UPPER BUTTOCKS WITH ODOR. EXAM REVEALED WOUNDS

LIB000022

HEALED; EXCORIATED SKIN TO UPPER BUTTOCKS. AP RECOMMENDED REPEAT COLONOSCOPY IN 5 YEARS, FOLLOW-UP WITH COLORECTAL SURGEON IN 3 MONTHS FOR ROUTINE CHECK AND MEDICATION PRESCRIBED FOR EXCORIATED SKIN. OVN DATED 2/21/17 BY DR. KAKATI (GI) NOTED THE CLMT WAS RECENTLY DIAGNOSED WITH CHRONIC HEPATITIS B OR HBV. NORMAL EXAM FINDINGS NOTED. ULTRASOUND SHOWED STEATOSIS (BUILDUP OF FAT IN LIVER). AP NOTED NO TREATMENT REQUIRED FOR HBV. MRI SCHEDULED TO RULE OUT CIRRHOSIS. OVN DATED 3/13/17 BY DR. BONCHAK (DERMATOLOGY) NOTED EXAM FINDINGS OF FLESHY PAPULE ON LEFT THIGH; GLUTEAL FOLD FISSURE; GREEN SCALY PLAQUES BETWEEN LEFT TOES. THE CLMT WAS PRESCRIBED OINTMENT FOR TOES, REFERRED TO GENERAL SURGEON FOR RECTAL LESION. ABDOMEN MRI (3/14/17) WAS NORMAL. OVN DATED 4/26/17 BY DR. BENDIKS NOTED THE CLMT HAD TREATED WITH DR. FREEMAN AND DR. PATEL. ONE SET OF EPIDURAL INJECTIONS WERE RECOMMENDED AS WELL AS LUMBAR FUSION. AP NOTED THE CLMT WILL REMAIN IN CARE OF CHRONIC PAIN MANAGEMENT FOR ONGOING PAIN PRIOR TO COMPLETION OF INJECTIONS AND SURGERY. REMAIN OOW. BASED ON THE MEDICAL RECORDS THE CLMT DID NOT TREAT FOR BACK PAIN DURING THE PRE-X PERIOD. BASED ON THE MEDICAL RECORDSR/LS OF NO LIFTING, CARRYING, PUSHING OR PULLING OVER 5 POUNDS, NO MORE THAN OCCASIONAL STANDING AND WALKING, NO CLIMBING, SQUATTING, CROUCHING, KNEELING OR BENDING ARE SUPPORTED 10/15/16 THROUGH DATE OF SURGERY. THE CLMT HAS CHRONIC BACK PAIN RECEIVING MULTIPLE STEROID INJECTIONS WITH REFERRAL TO PAIN AND RECOMMENDATION FOR SURGERY. ONCE DATE OF SURGERY IS CONFIRMED IT IS REASONABLE TO SUPPORT R/LS OF LESS THAN SEDENTARY THROUGH AT LEAST 6 WEEKS TO ALLOW FOR RECOVERY AND HEALING AFTER SURGERY. RECOMMENDDCM OBTAIN OVN FROM ALL TREATING PROVIDERS INCLUDING DR. FREEMAN (PAIN MANAGEMENT), DR. BLAKE (PCP), DR. BENDIKS (ORTHOPEDIC), THERAPY NOTES IF INDICATED AS WELL AS ANY DIAGNOSTIC TEST RESULTS. DCM UPDATED. MDS ASSIGNMENT COMPLETE.

**05/17/2017 7:24 PM - MDS Note**
Claim/Leave: 7223420
Episode #: 3
Nurse Name: LONG, TIFFANY
Service #: 16410134
Service Date: 05/17/2017
Activity: NURSE REVIEW, FILE REVIEW
Contact Information: CLAIMS, DANIELLE, ALFORD
Note Type: INFORMATION OBTAINED DESC
Text: PLEASE SEE PREVIOUS MDS REVIEW DATED 4/19/17 FOR DETAILED CLINICAL HISTORY. THE CLMT HAS A HISTORY OF HIDRADENITIS (705.83) AND BACK PAIN. OVN DATED 11/12/15 NOTED THE CLMT RECEIVED HEPATITIS B VACCINATION. OVN DATED 11/7/16 BY DR. BONCHAK/KINI (DERMATOLOGY) NOTED A FOLLOW-UP VISIT FOR HIDRADENITIS. EXAM REVEALED WELL HEALED SCARS AND SKIN GRAFTS; MULTIPLE RED NODULES BETWEEN BUTTOCKS AND POSTERIOR THIGHS; NON HEALING ULCER ON SCROTUM. AP NOTED AWAITING HEP B WORK-UP, ULTRASOUND, GI APPOINTMENT PENDING, CONTINUE ANTIBIOTIC AND PAIN MEDICATION WAS PRESCRIBED. OVN DATED 11/7/16 BY DR. CLARK NOTED THE CLMT TREATED FOR COLON SCREENING AND EVALUATION OF ANAL FISSURE. REPORTED PUS AND MUCOUS FROM ANUS AND RECTAL BLEEDING. AP NOTED A PLAN FOR COLONOSCOPY, FISTULOTOMY VS ADVANCEMENT FLAP AND EXCISION OF LEFT BUTTOCK CYST FOR 11/28/16. OVN DATED 12/6/16 BY DR. BLAKE (PCP) NOTED THE CLMT WAS SEEN TO ESTABLISH CARE. THE CLMT REPORTED CHRONIC HISTORY OF BACK MADE WORSE SINCE MVA IN 10/2016. THE CLMT WAS PRESCRIBED MUSCLE RELAXANT FOR BACK AND INSTRUCTED TO FOLLOW-UP IN 2 MONTHS. OVN DATED 12/20/16 BY DR. BENDIKS (SPINE & ORTHOPEDICS) NOTED THE CLMT WAS SEEN FOR NECK AND LOW BACK PAIN SUSTAINED AFTER MVA ON 10/4/16. IT WAS NOTED THE CLMT COMPLETED 30-40 SESSIONS OF CHIROPRACTIC CARE AND PHYSICAL THERAPY WITH NO RELIEF. THE CLMT COMPLETED LUMBAR EPIDURAL INJECTION ON 11/8/16 WITHOUT RELIEF. EXAM REVEALED GUARDING NECK RANGE OF MOTION, DIMINISHED SENSATION. LUMBAR EXAM REVEALED GUARDING WITH RANGE OF MOTION AND PAIN; POSITIVE BILATERAL STRAIGHT LEG RAISE. CERVICAL/LUMBAR SPINE X-RAY SHOWED DECREASED HEIGHT. AP NOTED THE CLMT S CURRENT PAIN IS DIRECT RESULT OF MVA AND IS CONSISTENT WITH MECHANISM OF INJURY. CERVICAL SPINE MRI WAS RECOMMENDED. LUMBAR EPIDURAL STEROID INJECTIONS WERE RECOMMENDED AND REFERRAL TO PAIN MANAGEMENT (DR. FREEMAN). CERVICAL SPINE MRI (1/24/17) SHOWED DISC HERNIATION AND DISC PROTRUSION. OVN DATED 2/13/17 BY DR. BLAKE (PCP) NOTED A FOLLOW-UP AFTER COLONOSCOPY. CLMT REPORTED BACK PAIN BUT OTHERWISE

**05/17/2017 1:51 PM - CLAIM Note 55**
Claim/Event/Leave: 7223420
NoteSubject : Med Records Rcvd
Other Subject : FREEMAN
Text: [05/17/2017 - ALFORD, DANIELLE]A CERTIFICATION OF HEALTHCARE PROVIDER

**05/16/2017 5:04 PM - PHONE Note 26**
Claim/Event/Leave: 7223420
NoteSubject : EE Called
Other Subject :
Text: [05/16/2017 - ALFORD, DANIELLE]EE CALLED, REQ. CLAIM STATUS. DCM EXPLAINED HIS CLAIM IS UNDER REVIEW. EE SAID HE HAD AN APPT. TODAY W/ AP FRIEDMAN AND WILL HAVE THIS INFORMATION FAXED OVER. DCM EXPL. I WILL F/U W/ HIM ABOUT CLAIM DETERMINATION

**05/11/2017 5:00 PM - CLAIM Note 54**
Claim/Event/Leave: 7223420
NoteSubject : Ref to Managed Care
Other Subject :
Text: [05/11/2017 - ALFORD, DANIELLE]BASED ON MED RECS, WHAT IS PRIMARY DISABLING CONDITION AS OF 4/13/17 TO THE PRESENT? WHAT R/LS AND DURATION ARE SUPPORTED? DID CLMT. HAVE TXMT FOR DISABLING CONDITION OR A CONDITION THAT CAUSED OR CONTRIBUTED TO HIS DISABLING CONDITION FROM 11/1/15 TO 1/31/16 AND FROM 10/1/15 TO 12/31/15? (PREX CONDITION DEFINITION: PRE-EXISTING CONDITION EXCLUSION THIS POLICY WILL NOT COVER ANY DISABILITY OR PARTIAL DISABILITY: 1. WHICH IS CAUSED OR SUBSTANTIALLY CONTRIBUTED TO BY A PRE-EXISTING CONDITIONOR MEDICAL OR SURGICAL TREATMENT OF A PRE-EXISTING CONDITION; AND 2. WHICH BEGINS IN THE FIRST 12 MONTHS IMMEDIATELY AFTER THE COVERED PERSON'S EFFECTIVE DATE OF COVERAGE. PRE-EXISTING CONDITION

LIB000023

MEANS A PHYSICAL OR MENTAL CONDITION, WHETHER DIAGNOSED OR UNDIAGNOSED, RESULTING FROM AN INJURY OR SICKNESS FOR WHICH THE COVERED PERSON RECEIVED PHYSICIAN S ADVICE OR TREATMENT WITHIN THREE MONTHS PRIOR TO THE COVERED PERSON'S EFFECTIVE DATE OF COVERAGE. TREATMENT MEANS RECEIVING CARE OR SERVICES PROVIDED BY OR UNDER THE DIRECTION OF A PHYSICIAN INCLUDING DIAGNOSTIC MEASURES RESULTING IN A POSITIVE DIAGNOSIS, BEING PRESCRIBED DRUGS AND/OR MEDICINES, WHETHER THE COVERED PERSON CHOOSES TO TAKE THEM OR NOT, AND TAKING DRUGS AND/OR MEDICINES.)

**05/11/2017 9:21 AM - CLAIM Note 53**
Claim/Event/Leave: 7223420
NoteSubject : Med Records Rcvd
Other Subject : EMORY
Text: [05/11/2017 - ALFORD, DANIELLE]RECVD FAX FROM EE - AUTHORIZATION FROM EMORY MIDTOWN, EMORY ADVENTIST HOSPITAL

**05/09/2017 4:16 PM - PHONE Note 25**
Claim/Event/Leave: 7223420
NoteSubject : EE Called
Other Subject :
Text: [05/09/2017 - ALFORD, DANIELLE]EE CALLED, ASKED FOR CLAIM STATUS. EXPL. WE RECVD ALL RECS FROM HIM VIA FAX THIS WEEK, WILL REVIEW FOR PREX DETERMINATION. EXPLAINED EXPECTATION TO EE THAT WE MUST REVIEW ALL MED RECS ON FILE, AND MAY TAKE MORE THAN A FEW DAYS. EXPL. WE GOT MED RCS FROM TX APS THAT WE DID NOT KNOW ABOUT. EE SAID HIS CONDITION IS NOT PREX. DCM EXPL. WILL REV. CLAIM AND F/U W/ HIM ABOUT DETERMINATION

**05/09/2017 3:02 PM - CLAIM Note 52**
Claim/Event/Leave: 7223420
NoteSubject : Med Records Rcvd
Other Subject : DR RASH
Text: [05/09/2017 - ALFORD, DANIELLE]OVN 4/28/16

**05/09/2017 2:13 PM - CLAIM Note 51**
Claim/Event/Leave: 7223420
NoteSubject : Med Records Rcvd
Other Subject : BENDIKS
Text: [05/09/2017 - ALFORD, DANIELLE]MRI CERVICAL SPINE 1/24/17[05/09/2017 - ALFORD, DANIELLE]AND OVNS 4/26/17 [05/09/2017 - ALFORD, DANIELLE]OVN 12/22/16 AND 12/20/16

**05/09/2017 2:12 PM - CLAIM Note 50**
Claim/Event/Leave: 7223420
NoteSubject : Med Records Rcvd
Other Subject : DENTE
Text: [05/09/2017 - ALFORD, DANIELLE]RTW NOTE DATED 6/20/16

**05/08/2017 11:15 AM - CLAIM Note 49**
Claim/Event/Leave: 7223420
NoteSubject : Other
Other Subject : LTR FROM EE
Text: [05/08/2017 - ALFORD, DANIELLE]RECVD LTR FROM EE DATED 5/5/17

**05/08/2017 10:49 AM - CLAIM Note 48**
Claim/Event/Leave: 7223420
NoteSubject : Med Records Rcvd
Other Subject : DR BLAKE
Text: [05/08/2017 - ALFORD, DANIELLE]OVN 8/11/16 THRU 2/13/17

**05/04/2017 3:04 PM - CLAIM Note 47**
Claim/Event/Leave: 7223420
NoteSubject : Med Records Rcvd
Other Subject : MINUTE CLINIC
Text: [05/04/2017 - ALFORD, DANIELLE]FAX FROM MINUTE CLINIC STATING NO RECS ON FILE

**05/04/2017 10:53 AM - PHONE Note 24**
Claim/Event/Leave: 7223420
NoteSubject : EE Called
Other Subject :
Text: [05/04/2017 - CARTER, KAYLA]EE CALLED TO ADVISE THAT HE FAXED IN OUTSTANDING INFORMATION FROM MINUTE CLINIC. DCM CX RECEIVED AND IN RIGHTFAX FOLDER TO BE REVIEWED BY DCM. EE THANKED.

**05/02/2017 2:00 PM - CLAIM Note 46**
Claim/Event/Leave: 7223420
NoteSubject : Other
Other Subject : VENDOR PAYMENT
Text: [05/02/2017 - BEST III, JAMES]REC'D INVOICE# 0215431822 ON 05/01/2017 AND DATED 04/24/2017 FROM CIOXHEALTH - P.O. BOX 409875 ATLANTA, GA 30384 FOR 42 PAGES OF MEDICAL RECORDS FROM MOREHOUSE MEDICAL ASSOCIATES. PAID INVOICE IN FULL ON 05/02/2017 FOR$65.54 TO TAX ID 58-2659941

**05/02/2017 1:31 PM - PHONE Note 23**
Claim/Event/Leave: 7223420

LIB000024

Claim/Event/Leave: 7223420
NoteSubject : EE Called
Other Subject :
Text: [05/02/2017 - FITZGERALD, JOEL]EE HAS LEFT A FEW MESSAGES FOR ADCM AND WANTS A RTC TO DISCUSS CLAIM STATUS & TALK ABOUT MINUTE CLINIC ISSUES: EE IS NOT ABLE TO GET INFO FROM MINUTE CLINIC BECAUSE THEY ADVISED HE IS NOT A PATIENT OF THEIRS, NO RECORDSFOUND. EE UNABLE TO REACH ADCM AND WANTS TO CONFIRM INFO HE SUBMITTED TO ADCM HAS BEEN RCVD. CONFIRMED RECEIPT OF EOBS / CLAIM RECEIPTS FROM HUMANA, LTR FROM AP HAMNER/EE & EOBS FROM AMBETTER.

**05/02/2017 11:17 AM - CLAIM Note 45**
Claim/Event/Leave: 7223420
NoteSubject : Med Records Rcvd
Other Subject : EOBS
Text: [05/02/2017 - ALFORD, DANIELLE]EOBS FROM 5/1/15 TO 5/1/17 FROM AMBETTER

**05/02/2017 11:02 AM - CLAIM Note 44**
Claim/Event/Leave: 7223420
NoteSubject : Other
Other Subject : MED INSURANCE
Text: [05/02/2017 - ALFORD, DANIELLE]EOBS FROM HUMANA- CLAIM RECEIPTS FROM 11/12/15;

**05/02/2017 11:00 AM - CLAIM Note 43**
Claim/Event/Leave: 7223420
NoteSubject : Med Records Rcvd
Other Subject : HAMNER, LTR FROM EE
Text: [05/02/2017 - ALFORD, DANIELLE]LTR DATED 5/1/17; LTR DATED 5/1/17[05/02/2017 - ALFORD, DANIELLE].

**05/01/2017 2:44 PM - PHONE Note 22**
Claim/Event/Leave: 7223420
NoteSubject : EE Called
Other Subject :
Text: [05/01/2017 - ALFORD, DANIELLE]EE CALLED, DCM EXPL. NEED TO KNOW FOR WHAT CONDITION THE NORCO 5MG WAS PRESCRIBED, EE SAID THE NORCO RX WAS FOR HYDRONITIS, SKIN REMOVAL SURGERY. SURGERES WERE FROM 2012, 2015 AND 2016. EE SAID THE HYDRONITIS IS A CHRONIC CONDITION THAT HE HAS. EE SAID THE MEDICAL RECORDS ARE ON FILE FROM GRADY HOSPITAL FOR THE HYDRONITIS CONDITION. DCM EXPL. WE WILL NEED TO OBTAIN RECS FROM WHO PRESCRIBED THE NORCO MEDICATION, EE SAID THERE WERE NO RECS FROM 2015. DCM EXPLAINEDWE NEED TO KNOW WHAT TX AP PRESCRIBED THE NORCO MEDICATION & FOR WHAT CONDITION; DCM ALSO EXPLAINED WE NEED MED. RECS AS REQUESTED FROM MINUTE CLINIC, DR. HAMNER AND PEACHSTATE MEDICAL INSURANCE. EE SAID EMORY-ADVENTIST HOSPITAL IS AFFLIATED W/ GRADYMEMORIAL HOSPITAL AND IT IS A CLINIC W/IN THE GRADY MEMORIAL HOSPITAL, EE SAID HE HAS NEVER BEEN TREATED W/ EMORY ADVENTIST HOSPITAL. - DCM RECAPPED THAT WE NEED ALL RECS FROM 8/1/15 TO PRES. FROM MINUTE CLINIC; ALL EOBS FROM PEACHSTATE INSURANCE; AND DX FOR WHICH NORCO WAS PRESCRIBED. EE SAID HE WILL SEND THIS INFORMATION TO US

**05/01/2017 2:42 PM - CLAIM Note 42**
Claim/Event/Leave: 7223420
NoteSubject : LTR to EE
Other Subject :
Text: [05/01/2017 - ALFORD, DANIELLE]MAILED DENIAL LTR TO EE

**05/01/2017 1:21 PM - PHONE Note 21**
Claim/Event/Leave: 7223420
NoteSubject : Called Other
Other Subject :
Text: [05/01/2017 - ALFORD, DANIELLE]CALLED MINUTE CLINIC, WAS ON HOLD FOR SEVERAL MINS.

**05/01/2017 1:20 PM - CLAIM Note 41**
Claim/Event/Leave: 7223420
NoteSubject : LTR to EE
Other Subject :
Text: [05/01/2017 - ALFORD, DANIELLE]MAILED DENIAL LTR TO EE

**05/01/2017 1:11 PM - CLAIM Note 40**
Claim/Event/Leave: 7223420
NoteSubject : LTR to AP
Other Subject :
Text: [05/01/2017 - ALFORD, DANIELLE]MAILED REQ EMORY ADVENTIST HOSPITAL, ALL RECS 8/1/15 TO PRESENT

**05/01/2017 12:12 PM - CLAIM Note 39**
Claim/Event/Leave: 7223420
NoteSubject : Other
Other Subject : MGR REVIEW
Text: [05/01/2017 - BELL, CHE]AGREE WITH DENIAL FOR FTPP/UNABLE TO COMPLETE PRE-X INVESTIGATION. CLMT IS SUBJECT TO PRE-X FOR BOTH CORE AND BUY-UP BENEFITS. CORE EDOC IS 1/1/16 (PRE-X TIMEFRAME THEREFORE 10/1/15-12/31/15) AND BUY-UP EDOC 2/1/16 (PRE-X TIMEFRAME THEREFORE 11/1/15-1/31/16). CLMT WAS PLACED ON NP FOR ALL INFO 8/2015-PRES. PAGES 5 AND 9 OF THE MASTERTRACE CANVASS ALSO REVEALED 3 PROVIDERS (EMORY-ADVENTIST HOSPITAL, FAMILY MEDICINE CLINIC OF GA AND MINUTE CLINIC) AS POSSIBLE PROVIDERSDURING PRE-X; HOWEVER. ALL CLINICS NEEDED AN AUTH. RECOMMEND DCM CALL ALL 3 PROVIDERS TO CONFIRM IF ANY DOS DURING

LIB000025

HOWEVER, ALL CLAIMS NEEDED AN AUTH. RECOMMEND DCM CALL ALL 3 PROVIDERS TO CONFIRM IF ANY DOC DURING PRE-X. IF SO, REQUEST RECORDS ON THE CLMT'S BEHALF WITH AUTH ATTACHED. IF NO VERBALS, WOULD ALSO REQUEST IN WRITING WITH AUTH ATTACHED.

**05/01/2017 10:42 AM - CLAIM Note 38**
Claim/Event/Leave: 7223420
NoteSubject : Med Records Rcvd
Other Subject : GRADY MEMORIAL HOSP
Text: [05/01/2017 - ALFORD, DANIELLE]PROGRESS NOTES FROM 3/16/16 TO 11/22/16

**05/01/2017 10:39 AM - CLAIM Note 37**
Claim/Event/Leave: 7223420
NoteSubject : Other
Other Subject : REF TO MGR
Text: [05/01/2017 - ALFORD, DANIELLE]DCM REF CLAIM TO MGR FOR DENIAL FOR FTPP; CLAIM SUBJ. TO PREX COND. INVESTIGATION FROM 11/1/5 TO 1/31/16. TO DATE, WE HAVE NOT RECVD EXPLANATION OF BENEFITS FROM MEDICAL INSUR. FROM 8/1/15 TO THE PRESENT AS REQUESTED. IN ADDITION, OVN ON FILE FROM DR. HAMNER STATING EE RX NORCO 5 MG, THUS DX FOR WHICH NORCO WAS PRESCRIBED IS NEEDED. TO DATE, N/P DEADLINE HAS EXPIRED.

**05/01/2017 8:57 AM - MDS Note**
Claim/Leave: 7223420
Episode #: 2
Nurse Name: BIETERU, DANIEL
Service #: 16402045
Service Date: 05/01/2017
Activity: NURSE REVIEW, FILE REVIEW
Contact Information: CLAIMS, DANIELLE, ALFORD
Note Type: INFORMATION OBTAINED DESC
Text: PER REQUEST FROM DCM, NCM TO DOCUMENT THAT THERE IS A POLICE REPORT OF THE MVA ON FILE. POLICE REPORT OF FILE SHOWS THAT CLMNT WAS INVOLVED IN AN MVA WITH A VEHICLE THAT REAR-ENDED HIS VEHICLE. WILL NOTIFY DCM.

**04/28/2017 5:28 PM - CLAIM Note 36**
Claim/Event/Leave: 7223420
NoteSubject : Other
Other Subject : REF TO MGR
Text: [04/28/2017 - ALFORD, DANIELLE]REF FOR DENIAL FOR FTPP. CLAIM SUBJ. TO PREX FROM 11/1/15 TO 1/31/16. EE HAD MVA ON 10/4/16. POLICE REPORT ON FILE. OOW DUE TO BACK PAIN. LDW 10/14/16, DOD 10/15/16, BBD 4/13/17. MDS REVIEWED CLAIM AND DETERMINED NEED MED RECS FROM ORTHOP. DR BENDIKS AND EOBS. TO DATE, HAVE NOT RECVD REQUESTED EOBS FROM EE. HAVE RECVD MED RECS FROM OTHER TX APS INCLUDING PHARMACY RECORDS. PER RECS FROM AP HAMNER, EE SEEN DURING PREX PERIOD (11/12/15) AND HAD RX OF NORCO LISTED AS MEDICATIONS.- TO DATE, THE DX FOR WHICH NORCO WAS PRESCRIBED IS NEEDED AS WELL AS EOBS FROM EE MEDICAL INSURANCE CARRIERS.

**04/28/2017 3:21 PM - PHONE Note 20**
Claim/Event/Leave: 7223420
NoteSubject : Called AP
Other Subject : BENDIKS
Text: [04/28/2017 - ALFORD, DANIELLE]CALLED DR BENDIKS, S/W MICHELLE WHO SAID EE FOV WAS 12/20/16, THEN 12/22/16 AND 4/26/17. PRIOR TO DEC 2016, FOV WAS 2013

**04/26/2017 12:08 PM - CLAIM Note 35**
Claim/Event/Leave: 7223420
NoteSubject : Med Records Rcvd
Other Subject : GRADY
Text: [04/26/2017 - ALFORD, DANIELLE]RECVD EE SIGNED GRADY MEMORIAL HOSPITAL AUTHORIZATION

**04/26/2017 11:27 AM - CLAIM Note 34**
Claim/Event/Leave: 7223420
NoteSubject : Med Records Rcvd
Other Subject : HAMNER
Text: [04/26/2017 - ALFORD, DANIELLE]OVNS 5/12/15 THRU 11/12/15; CHEST XRAY, LABS FROM 5/12/15

**04/25/2017 5:29 PM - CLAIM Note 33**
Claim/Event/Leave: 7223420
NoteSubject : Ref to Special Invest
Other Subject :
Text: [04/25/2017 - ALFORD, DANIELLE]FOR POLICE REPORT

**04/25/2017 4:19 PM - PHONE Note 19**
Claim/Event/Leave: 7223420
NoteSubject : EE Called
Other Subject :
Text: [04/25/2017 - FITZGERALD, JOEL]EE WANTED UPDATE AND HASN'T BEEN ABLE TO REACH ADCM. ADV CLAIM REFERRED FOR MGR REVIEW AND ASKED CLMT TO ALLOW 3 BUSINESS DAYS FOR MGR RVW TO BE COMPLETED AND THEN ALLOW A FEW ADDITIONAL BDS FOR ADCM TO PROVIDE CLMT WITH UPDATE ON CLAIM DECISION. EE ACK, STATES HE PLANS TO CALL BACK IF HE HASN'T HEARD FROM ADCM BY FRIDAY THIS WEEK. ACK, THANKED, PC ENDED.

LIB000026

**04/25/2017 11:08 AM - CLAIM Note 32**
Claim/Event/Leave: 7223420
NoteSubject : Med Records Rcvd
Other Subject : FAMILY MEDICAL CTR
Text: [04/25/2017 - ALFORD, DANIELLE]OVN 7/13/16

**04/25/2017 11:08 AM - PHONE Note 18**
Claim/Event/Leave: 7223420
NoteSubject : EE Called
Other Subject :
Text: [04/25/2017 - WHITE, KHYA]WANTS TO KNOW STATUS OD CLAIM --- ADV THAT MDS REVIEW WAS COMPLETED AND THERE WERE NO RECORDS FROM.. PRE- EX TIME FRAME AND NO EOB TO REVIEW... EE SAID THAT HE HAS SENT ALL INFO TO ADCM --- DCM ADV THAT EARLIEST RECORDS AREFROM 7/2016.. NOTHING FROM 11/2015... EE SAID THAT HE ONLY TREATED WITH GRADY HX IN 2015 AND HAS A LETTER THAT NOTES: ALL RECORDS REQ'D 10/2015 - 10/2016 .... AND WILL FAX THAT TO ADCM TODAY.

**04/21/2017 11:00 AM - CLAIM Note 31**
Claim/Event/Leave: 7223420
NoteSubject : Other
Other Subject : VENDOR PAYMENT
Text: [04/21/2017 - BEST III, JAMES]REC'D INVOICE# 0214280379 ON 04/20/2017 AND DATED 04/14/2017 FROM CIOXHEALTH - P.O. BOX 409875 ATLANTA, GA 30384 FOR 98 PAGES OF MEDICAL RECORDS FROM GRADY MEMORIAL HOSPITAL. PAID INVOICE IN FULL ON 04/21/2017 FOR $112.02 TO TAX ID 58-2659941

**04/19/2017 9:08 AM - MDS Note**
Claim/Leave: 7223420
Episode #: 1
Nurse Name: BIETERU, DANIEL
Service #: 16396938
Service Date: 04/18/2017
Activity: NURSE REVIEW, FILE REVIEW
Contact Information: CLAIMS, DANIELLE, ALFORD
Note Type: INFORMATION OBTAINED DESC
Text: **CONTINUE**OVN FROM DR FREEMAN 1/23/17 INDICATES THAT CLMNT WAS SEEN FOR HIS BACK PAIN, CLMNT HAS COMPLETED PT/INJECTIONS{NO RECORDS ON FILE} WITH NO RELIEF AND WAS SEEN BY DR BENDIKS {ORTHO} WHO RECOMMENDED LUMBAR SURGERY L5-S1{THERE ARE NO RECORDS FROMAP ON FILE}. EXAM FINDING NOTED CLMNT IN DISTRESS/ANTALGIC GAIT/DECREASED ROM/TENDERNESS AND POSITIVE STRAIGHT LEG TEST. AP NOTED THAT CLMNT IS TOTALLY DISABLED FROM ALL OCCUPATION AND THAT HE CANNOT SIT MORE THAN 30 MINUTES AT A TIME AND HAS TO LIE DOWNFOR 30 MINUTES 4 TIMES A DAY. IN REVIEW OF RECORDS, THERE ARE NO EOB ON FILE, NO POLICE REPORT/ED REPORT FROM REPORTED MVA. THERE ARE ALSO NO RECORDS ON FILE CONSISTENT WITH THE PRE-EX PERIOD IN QUESTION. PHARMACY RECORD SHOWS THAT CLMNT WAS PRESCRIBED ANTIBIOTIC OINTMENT FOR HIS CHRONIC SKIN CONDITION {HYDRADENITIS} DURING THE DCM DEFINED PRE-EX PERIOD. HOWEVER, THERE ARE NO RECORDS DURING THE PRE-EX PERIOD TO REVIEW, NO ACCIDENT REPORT/ED REPORT AND NO EOB AS WELL. CLMNT IS NOTED TO HAVE CHRONIC BACK PAIN PRIOR TO MVA. TREATMENT FOR BACK PAIN DURING THE PRE-EX PERIOD CANNOT BE DETERMINED BY NCM WITHOUT THE NEEDED RECORDS OUTLINED ABOVE. DCM WILL BE ADVISED TO SECURE THE RECORDS OUTLINED ABOVE AND ONCE SECURED MAY REFER BACK TO MDS FOR REVIEW. WILL UPDATE DCM.

**04/19/2017 9:07 AM - MDS Note**
Claim/Leave: 7223420
Episode #: 1
Nurse Name: BIETERU, DANIEL
Service #: 16396937
Service Date: 04/18/2017
Activity: NURSE REVIEW, FILE REVIEW
Contact Information: CLAIMS, DANIELLE, ALFORD
Note Type: INFORMATION OBTAINED DESC
Text: CLAIM IS BEEN REVIEWED FOR PRE-EX INVESTIGATION FOR THE PERIOD OF 11/1/15 TO 1/31/16. RECORDS NOTE THAT CLMNT HAS HX OF MORBID OBESITY, HYDRADENITIS AND A SMOKER. THERE ARE NO RECORDS ON FILE THAT ARE CONSISTENT WITH THE PERIOD IN QUESTION. PHARMACY RECORD REVIEWED SHOW THAT CLMNT WAS PRESCRIBED TOPICAL CLINDAMYCIN GEL {MEDICATION FOR TREATING VARIOUS INFECTIONS} ON 11/23/15, 12/19/15 AND 1/9/16 BY DR HAMNER {IM}{NO RECORDS FROM PROVIDER ON FILE}. CLMNT IS SEPARATED FROM WORK DUE TO REPORTS OF LOW BACK PAIN AFTER SUSTAINING AN MVA {THERE IS NO ACCIDENT REPORT OR ED REPORT ON FILE TO REVIEW}. RECORDS REVIEWED OUT OF PERIOD IN QUESTION SPAN FROM 3/16/16 TO 9/19/16 WHEN CLMNT WAS SEEN FOR HIS HYDRADENITIS { A CHRONIC SKIN CONDITION FEATURING LUMPS IN PLACESSUCH AS THE ARMPITS OR GROIN} AND HAD A SURGICAL PROCEDURE ON 4/19/16 TO EXCISE SOME LUMPS IN HIS BILATERAL GROIN AND THIGH. RECORDS SHOW THAT CLMNT WAS SEEN ON 7/13/16 BY NP MR. AMUKAMARA {FAMILY MEDICINE} FOR BACK PAIN, 7/19/16 AND 8/8/16 AT URGENT CAREFOR BACK PAIN. RECORD SHOW THAT CLMNT WAS SEEN ON 10/4/16 FOR F/U ON LABS AND WITH NO COMPLAINS AND TO ESTABLISH CARE WITH PCP DR BLAKE. CLMNT WAS SEEN ON 11/7/16 FOR COLON SCREENING. CLMNT WAS SEEN ON 12/5/16 FOR F/U ON COLONOSCOPY AND FISTULOTOMY PERFORMED ON 11/28/16{THERE ARE NO RECORDS ON FILE FROM PROCEDURE}. CLMNT WAS SEEN ON 12/6/16 WITH REPORTS OF HAVING CHRONIC BACK PAIN WITH RADIATION INTO HIS BUTTOCKS THAT HAVE BEEN MADE WORSE SINCE MVA IN OCTOBER 2016. CLMNT WAS PRESCRIBED NERVE PAIN MEDICATION/MUSCLE RELAXANTS/STEROID. MRI REPORT FROM 10/7/16 SHOWS THAT CLMNT HAS DEGENERATIVE CHANGES, SMALL DISC PROTRUSIONS, SMALL DISC HERNIATION AND AN ANNULAR TEAR. A NOTE FROM DR BLAKE OUTLINES THAT CLMNT HAS SEVERE BACK PAIN AND IS OOW FROM 12/6/16 TO 3/1/17. A LETTER FROM DR FREEMAN {PMR} DATED 1/24/17 NOTES THAT CLMNT TOTALLY DISABLED DUE TO HIS SPINE AS A RESULT OF MVA**CONTINUE**

LIB000027

**04/13/2017 6:03 PM - CLAIM Note 30**
Claim/Event/Leave: 7223420
NoteSubject : Ref to Managed Care
Other Subject :
Text: [04/13/2017 - ALFORD, DANIELLE]REF TO MDS; BASED ON MED RECS, WHAT IS PRIMARY DISABLING CONDITION AS OF DOD TO THE PRESENT TIME? DID CLMT. HAVE TXMT FOR DISABLING CONDITION OR A CONDITION THAT CAUSED OR CONTRIBUTED TO HIS DISABLING CONDITION FROM 11/1/15 TO 1/31/16 BASED ON MEDICAL RECORDS? (PREX CONDITION DEFINITION: PRE-EXISTING CONDITION EXCLUSION THIS POLICY WILL NOT COVER ANY DISABILITY OR PARTIAL DISABILITY: 1. WHICH IS CAUSED OR SUBSTANTIALLY CONTRIBUTED TO BY A PRE-EXISTING CONDITIONOR MEDICAL OR SURGICAL TREATMENT OF A PRE-EXISTING CONDITION; AND 2. WHICH BEGINS IN THE FIRST 12 MONTHS IMMEDIATELY AFTER THE COVERED PERSON'S EFFECTIVE DATE OF COVERAGE. PRE-EXISTING CONDITION MEANS A PHYSICAL OR MENTAL CONDITION, WHETHER DIAGNOSED OR UNDIAGNOSED, RESULTING FROM AN INJURY OR SICKNESS FOR WHICH THE COVERED PERSON RECEIVED PHYSICIAN S ADVICE OR TREATMENT WITHIN THREE MONTHS PRIOR TO THE COVERED PERSON'S EFFECTIVE DATE OF COVERAGE. TREATMENT MEANS RECEIVING CARE OR SERVICES PROVIDED BY OR UNDER THE DIRECTION OF A PHYSICIAN INCLUDING DIAGNOSTIC MEASURES RESULTING IN A POSITIVE DIAGNOSIS, BEING PRESCRIBED DRUGS AND/OR MEDICINES, WHETHER THE COVERED PERSON CHOOSES TO TAKE THEM OR NOT, AND TAKING DRUGS AND/OR MEDICINES.)

**04/13/2017 2:48 PM - PHONE Note 17**
Claim/Event/Leave: 7223420
NoteSubject : EE Called
Other Subject :
Text: [04/13/2017 - CARTER, KAYLA]EE CALLED TO CHECK ON CLAIM AS HE ADVISED HIS STD CLAIM ENDED. DCM ADVISED CLAIM IS PENDED FOR PRE-EX INVESTIGATION AND ADCM WILL BE REVIEWING RECORDS FOR PRE-EX AND IF ANY THING NEEDED EE WILL BE UPDATED. EE UNDERSTOOD AND THANKED.

**04/13/2017 11:25 AM - CLAIM Note 29**
Claim/Event/Leave: 7223420
NoteSubject : Other
Other Subject : BENEFIT CALCULATION
Text: [04/13/2017 - WILLRICH, NICOLE]SET UP SCHEDULED PAYMENT BASED ON PER SCREENSHOT FROM ER IN DOC LIST - $52,000.00 ANNUAL / 12 = $4,333.33 MONTHLY. THE BENEFIT IS 66.67% OR $2889.03. THE INITIAL PAYMENT WORKSHEET HAS BEEN SAVED TO THE DOC LIST.

**04/13/2017 11:14 AM - CLAIM Note 28**
Claim/Event/Leave: 7223420
NoteSubject : Other
Other Subject : SALARY VERIFICATION
Text: [04/13/2017 - WILLRICH, NICOLE]RECEIVED EMAIL FROM ER WITH SCREENSHOT FOR SALARY VERIFICATION. SAVED TO DOC LIST.

**04/13/2017 2:31 AM - CLAIM Note 27**
Claim/Event/Leave: 7223420
NoteSubject : Ref to Other
Other Subject : PMNT
Text: THE SCORE REFERRAL FOR PAYMENT SERVICES REFERRAL AND INITIAL PAYMENT CALCULATION HAS BEEN REASSIGNED TO NICOLE WILLRICH.

**04/12/2017 11:10 AM - CLAIM Note 26**
Claim/Event/Leave: 7223420
NoteSubject : Other
Other Subject : SALARY VERIFICATION
Text: [04/12/2017 - WILLRICH, NICOLE]EMAILED ER FOR SALARY VERIFICATION. EMAIL IN DOC LIST.

**04/11/2017 9:19 AM - CLAIM Note 25**
Claim/Event/Leave: 7223420
NoteSubject : LTR to AP
Other Subject : BLAKE
Text: [04/11/2017 - ALFORD, DANIELLE]FAXED REQ TO DR BLAKE, ALL RECS 11/1/15 TO PRESENT

**04/11/2017 9:15 AM - CLAIM Note 24**
Claim/Event/Leave: 7223420
NoteSubject : Med Records Rcvd
Other Subject : BLAKE
Text: [04/11/2017 - ALFORD, DANIELLE]FAX RECVD STATING INADEQUATE AUTHORIZATION

**04/07/2017 11:36 AM - PHONE Note 16**
Claim/Event/Leave: 7223420
NoteSubject : EE Called
Other Subject :
Text: [04/07/2017 - ALFORD, DANIELLE]EE CALLED, ASKED ABOUT THE RECEIPT OF MED RECS. I ADVISED RECEIVED, WILL REVIEW AND F/U W/ HIM. EPXL. WE CANNOT REIMBURSE HIS $15 FOR PAYMENT OF RELEASE OF RECS. EE SAID OKAY, AND HAD NO QUESTIONS

**04/07/2017 11:19 AM - CLAIM Note 23**
Claim/Event/Leave: 7223420
NoteSubject : Med Records Rcvd

LIB000028

NoteSubject : Med Records Rcvd
Other Subject : FAMILY MEDICAL CTR
Text: [04/07/2017 - ALFORD, DANIELLE]FAX RECV FROM EE, W/ MEDICAL RECS FROM FAMILY MEDICAL CENTER: 7/13/16
THRU 9/19/16[04/07/2017 - ALFORD, DANIELLE]& RECS FROM GRADY MEMORIAL HOSPITAL

**04/05/2017 10:36 AM - CLAIM Note 22**
Claim/Event/Leave: 7223420
NoteSubject : LTR to AP
Other Subject :
Text: [04/05/2017 - ALFORD, DANIELLE]FAXED REQ TO FAMILY MEDICAL CLINIC

**04/05/2017 10:26 AM - PHONE Note 15**
Claim/Event/Leave: 7223420
NoteSubject : EE Called
Other Subject :
Text: [04/05/2017 - ALFORD, DANIELLE]EE CALLED, SAID WE SHOULD SEND FAX OUR REQ TO A DIFF. FAX # TO FAMILY
MEDICAL CLINCIA; WE RECVD WALMART PHARM. RECS AND MEDPOST URGENT CARE. EE SAID HE WILL GET GRADY
MEMORIAL HOSPITALS RECS TO SEND.

**04/05/2017 10:09 AM - CLAIM Note 21**
Claim/Event/Leave: 7223420
NoteSubject : Med Records Rcvd
Other Subject : URGENT CARE
Text: [04/05/2017 - ALFORD, DANIELLE]OVN 7/19/16 TO 8/8/16

**04/04/2017 11:23 AM - CLAIM Note 20**
Claim/Event/Leave: 7223420
NoteSubject : Med Records Rcvd
Other Subject : WALMART
Text: [04/04/2017 - ALFORD, DANIELLE]RECVD WALMART RX RECORDS

**04/03/2017 12:32 PM - PHONE Note 14**
Claim/Event/Leave: 7223420
NoteSubject : EE Called
Other Subject :
Text: [04/03/2017 - ALFORD, DANIELLE]EE CALLED, ASKED FOR MY FAX #. DCM PROVIDED FAX #. EE SAID HE WILL HAVE
PHARMACY RECS SENT FROM 8/1/15 TO PRES; EE SAID HE REMEMBERS THE ISSUE W/ GRADY MEMORIAL HOSPITAL
RECORDS PREVIOUSLY. DCM EXPLAINED WE MAILED A REQ. THE HOSPITAL MED RECS AND NEED ANY RECS FROM
11/1/15 TO 2/1/16 TO BE PROVIDED. ASKED EE TO CALL HOSPITAL TO ENSURE INFORMATION IS SENT. EE SAID HE WILL DO
SO

**03/30/2017 1:54 PM - PHONE Note 13**
Claim/Event/Leave: 7223420
NoteSubject : Called EE
Other Subject :
Text: [03/30/2017 - ALFORD, DANIELLE]CALLED EE AT PH (404) 781-5494 TO ADVISE OF THE MISSING INFORMATION FOR HIS
PREX CONDITION INVESTIGATION. ADVISED EE WE NEED REPLIES FROM GRADY MEMORIAL HOSPITAL, WALMART, FAMILY
MEDICINE CLINIC AND MINUTE CLINIC. GAVEEE THE CONTACT PHONE PH # EE SAID HE HAD AN INJURY TO HIS SIDE AND
WENT TO THE FAMILY MEDICINE CLINIC OF GEORGIA. EE SAID HE SAW TX AP AT GEORGIA PAIN AND WELLNESS ON
3/28/17; EE SAID HIS NOVS ARE: 5/22/17 W/ DR. CLARK; 5/23/17 W/ GA PAIN AND WELLNESS. DCM EXPL. N/P DEADLINE, HAVE
MAILED HIM 30 DAY N/P WARNING LETTER AND WILL F/U W/HIM ABOUT CLAIM DETERMINATION

**03/23/2017 5:16 PM - CLAIM Note 19**
Claim/Event/Leave: 7223420
NoteSubject : Notice/Proof Review
Other Subject : ERISA EXT
Text: [03/23/2017 - ALFORD, DANIELLE]MAILED ERISA EXT LTR TO EE, ALL RECS, EOBS DUE 4/7/17

**03/23/2017 5:11 PM - CLAIM Note 18**
Claim/Event/Leave: 7223420
NoteSubject : LTR to AP
Other Subject :
Text: [03/23/2017 - ALFORD, DANIELLE]MAILED REQ TO GRADY MEMORIAL HOSPITAL; FAXED REQS TO WAL-MART; FAXED
REQS TO FAMILY MEDICINE CLINIC OF GA; MAILED REQ TO MINUTE CLINIC FOR ALL RECS 8/1/15 TO THE PRES.

**03/23/2017 5:10 PM - PHONE Note 12**
Claim/Event/Leave: 7223420
NoteSubject : Called Other
Other Subject : HOSPITAL
Text: [03/23/2017 - ALFORD, DANIELLE]CALLED EMORY-ADVENTIST HOSPITAL AT PH 770.434.0710- PH # IS NOT SERVICE

**03/23/2017 2:19 PM - PHONE Note 11**
Claim/Event/Leave: 7223420
NoteSubject : Called AP
Other Subject : GEORGIA PAIN & WELLN
Text: [03/23/2017 - ALFORD, DANIELLE]CALLED GA PAIN AND WELLNESS CENTER, PH 770.962.3642 (FAX # 770.962.3643) , S/W
KIM WHO SAID EE NOV IS 3/28/17, EE FOV WAS 1/10/17 FROM 11/1/5 TO 1/31/16

LIB000029

**03/23/2017 2:03 PM - PHONE Note 10**
Claim/Event/Leave: 7223420
NoteSubject : Called AP
Other Subject : BENDIKS
Text: [03/23/2017 - ALFORD, DANIELLE]CALLED DR BENDIKS, PH 404.596.7967, OFFICE IS CLOSED.

**03/23/2017 2:01 PM - PHONE Note 9**
Claim/Event/Leave: 7223420
NoteSubject : Called Other
Other Subject : INSURANCE COS
Text: [03/23/2017 - ALFORD, DANIELLE]CALLED PEACHSTATE INSURANCE AT 877.687.1100- CANNOT CONTACT THIS FACILITY FROM THE LIBERTY MUTUAL PHONE NUMBER. CALLED CIGNA, PH 855.881.7925- PER COMPUTER SYSTEM, EE BECAME ELIGIBLE FOR MEDICAL INSURANCE AS OF 1/1/17 FOR GROUP # 2498728, AND EE HAS PHARMACY COVERAGE W/ MEDCO AT PH 800.282.2881- ** DCM CALLED MEDCO, S/W NATALIE WHO CONFIRMED EE BECAME EFF. 1/1/17 AND NO RX RECS PRIOR TO THIS DATE.

**03/23/2017 1:42 PM - PHONE Note 8**
Claim/Event/Leave: 7223420
NoteSubject : Called Other
Other Subject : HOSPITAL
Text: [03/23/2017 - ALFORD, DANIELLE]CALLED GRADY MEMORIAL HOSPITAL (SEE MASTERTRACE REP), WAS TOLD CANNOT FAX MED RECS REQS. MUST MAIL

**03/23/2017 1:37 PM - PHONE Note 7**
Claim/Event/Leave: 7223420
NoteSubject : Called Other
Other Subject : HOSPITAL
Text: [03/23/2017 - ALFORD, DANIELLE]CALLED NORTHSIDE HOSPITAL AT PH 404.851.6500, S/W DEBRA, WHO SAID EE WAS SEEN ON 10/4/2016

**03/23/2017 1:37 PM - CLAIM Note 17**
Claim/Event/Leave: 7223420
NoteSubject : Other
Other Subject : INVOICE
Text: [03/23/2017 - ALFORD, DANIELLE]PAID INVOICE FOR $325.00 TO MASTERTRACE FOR INVOICE # 97685

**03/23/2017 1:30 PM - CLAIM Note 16**
Claim/Event/Leave: 7223420
NoteSubject : Med Records Rcvd
Other Subject : MASTERTRACE
Text: [03/23/2017 - ALFORD, DANIELLE]RECVD MASTERTRACE REPORT

**03/23/2017 7:51 AM - CLAIM Note 15**
Claim/Event/Leave: 7223420
NoteSubject : Other
Other Subject : PENDED REVIEW
Text: [03/23/2017 - LE GRAND, CHRISTOPHER]RECOMMENDING SENDING PRE-EX ACK LETTER WITH EE WITH PRE-EX DATES

**03/17/2017 1:14 PM - PHONE Note 6**
Claim/Event/Leave: 7223420
NoteSubject : EE Called
Other Subject :
Text: [03/17/2017 - ALFORD, DANIELLE]EE CALLED, ASKED IF WE RECVD HIS CLAIM FORMS. DCM EXPLAINED YES, HIS CLAIM REMAINS PENDING AND DCM WILL F/U W/ HIM ABOUT CLAIM DECISION. EXPL. STD PAID TO 4/12/17

**03/14/2017 11:05 AM - CLAIM Note 14**
Claim/Event/Leave: 7223420
NoteSubject : Other
Other Subject : ALL LTD FORMS
Text: [03/14/2017 - ALFORD, DANIELLE]AUTHOR., CIF, CSS, FIQ

**03/08/2017 2:11 PM - CLAIM Note 13**
Claim/Event/Leave: 7223420
NoteSubject : Other
Other Subject : FORMS
Text: [03/08/2017 - ALFORD, DANIELLE]AUTHOR., CSS, FIQ[03/08/2017 - ALFORD, DANIELLE]& CIF

**03/06/2017 4:48 PM - PHONE Note 5**
Claim/Event/Leave: 7223420
NoteSubject : Called EE
Other Subject :
Text: [03/06/2017 - ALFORD, DANIELLE](404) 781-5494- CALLED EE, NO ANSWER, LEFT VM STATING I AM RET. CALL

**03/06/2017 4:47 PM - PHONE Note 4**
Claim/Event/Leave: 7223420
NoteSubject : EE Called

LIB000030

NoteSubject : EE Called
Other Subject :
Text: [03/06/2017 - ALFORD, DANIELLE]EE CALLED, LEFT VM STATING HE SAW TX AP

**03/04/2017 1:02 PM - CLAIM Note 12**
Claim/Event/Leave: 7223420
NoteSubject : Med Records Rcvd
Other Subject : AICO
Text: [03/04/2017 - ALFORD, DANIELLE]RECVD FAX FROM AICO ORTHO AND SPINE, NO RECS FROM 11/1/15 TO 2/1/16

**03/01/2017 4:40 PM - CLAIM Note 11**
Claim/Event/Leave: 7223420
NoteSubject : Ref to Other
Other Subject :
Text: [03/01/2017 - ALFORD, DANIELLE]REF TO MASTERTRACE

**03/01/2017 4:40 PM - CLAIM Note 10**
Claim/Event/Leave: 7223420
NoteSubject : LTR to AP
Other Subject :
Text: [03/01/2017 - ALFORD, DANIELLE]FAXED REQS TO AP FEEMAN, BLAKE, LEE, AND SCHAEFFER FOR ALL RECS 11/1/15 TO 2/1/16

**03/01/2017 4:36 PM - PHONE Note 3**
Claim/Event/Leave: 7223420
NoteSubject : Called AP
Other Subject : ORTHO
Text: [03/01/2017 - ALFORD, DANIELLE]CALLED AICA ORTHO AND SPINE, S/W WOMAN WHO SAID WE MUST CALL MEDICAL RECS AT 678.701.2225, EXT 232. CALLED, NO ANSWER, LEFT VM REQ. R/CALL

**03/01/2017 4:22 PM - CLAIM Note 9**
Claim/Event/Leave: 7223420
NoteSubject : Other
Other Subject : EDOC
Text: [03/01/2017 - ALFORD, DANIELLE]DANIELLE, MEMBER ELECTED EFFECTIVE 2/1/16 AND HAS BEEN CONTINUOUSLY COVERED SINCE THEN. THANK YOU! ABBY ROSS, CLIENT SERVICE ANALYST II MERCER 12421 MEREDITH DRIVE, URBANDALE, IOWA 50398 OFFICE +1 515 365 1058 ABBY.ROSS@MERCER.COM WWW.MERCER.COM MERCER (US) INC.

**02/27/2017 8:13 AM - CLAIM Note 8**
Claim/Event/Leave: 7223420
NoteSubject : Med Records Rcvd
Other Subject : FREEMAN
Text: [02/27/2017 - LE GRAND, CHRISTOPHER]1/23/2017 OVN RCVD FROM AP FREEMAN

**02/24/2017 2:33 AM - CLAIM Note 7**
Claim/Event/Leave: 7223420
NoteSubject : Ref to Other
Other Subject : PMNT
Text: THE SCORE REFERRAL FOR PAYMENT SERVICES REFERRAL AND INITIAL PAYMENT CALCULATION HAS BEEN RECEIVED AND ASSIGNED TO KIRSTIE MCGARY.

**02/23/2017 2:36 AM - CLAIM Note 6**
Claim/Event/Leave: 7223420
NoteSubject : Ref to Other
Other Subject : PMT SVC
Text: FOR INITIAL PAYMENT CALCULATION. COMMENTS: INITIAL PAYMENT CALC.

**02/22/2017 4:22 PM - PHONE Note 2**
Claim/Event/Leave: 7223420
NoteSubject : Initial EE Interview
Other Subject :
Text: [02/22/2017 - ALFORD, DANIELLE]EE CALLED, CONFIRMED VIRGL ALLEN HARRIS. HE CONFIRMED DOB, SS#, ADDRESS IS CORRECT. EE IS SINGLE. ONLY JOB, NO OTHER INCOME. LDW WAS 10/14/16. NO RTW STATUS AT THIS TIME. EE SAID HE IS PERMANENTLY DISABLED. EE SAID ALLRESULT OF MVA THAT OCCURRED ON 10/4/16. EE NOV IS 2/28/17 W/ PAIN MANAGEMENT. EE SAID THERE IS NOTHING THEY CAN DO FOR HIM. EE SAID ADLS: CANNOT SLEEP WELL AT NIGHT DUE TO BACK PAIN, WHEN HE STANDS UP THE NUMBNESS KICKS IN. EE SAID HE S/W HIS JOB, HELOVES THE WORK HE DOES. EE SAID HE IS IN A BAD SITUATION, HE HAS HAD INJECTIONS AND HIS SCIATICA NERVE IS STILL PAINFUL. EE TAKES HYDROCODONE AND SOME OTHER PAIN KILLERS. EE ALSO TAKES MUSCLE RELAXERS.- DCM EXPLAINED LTD CLAIM PROCESS, NEED FOR CLAIM FORMS, WILL F/U W/ HIM ABOUT THE LTD CLAIM DETERMINATION.

**02/22/2017 3:54 PM - CLAIM Note 5**
Claim/Event/Leave: 7223420
NoteSubject : Notice/Proof Review
Other Subject :
Text: [02/22/2017 - ALFORD, DANIELLE]N/P LTR & CLAIM FORMS TO EE, DUE 4/7/17

**02/22/2017 3:50 PM - CLAIM Note 4**

LIB000031

Claim/Event/Leave: 7223420
NoteSubject : LTR to AP
Other Subject :
Text: [02/22/2017 - ALFORD, DANIELLE]FAXED REQ TO DR FREEMAN, ALL RECS 1/24/17 TO PRES

**02/22/2017 3:45 PM - PHONE Note 1**
Claim/Event/Leave: 7223420
NoteSubject : Initial EE Interview
Other Subject :
Text: [02/22/2017 - ALFORD, DANIELLE]CALLED EE, NO ANSWER, LEFT VM REQ. A R/CALL

**02/22/2017 3:44 PM - CLAIM Note 3**
Claim/Event/Leave: 7223420
NoteSubject : Other
Other Subject :
Text: [02/22/2017 - ALFORD, DANIELLE]REF TO PSU

**02/22/2017 3:44 PM - CLAIM Note 2**
Claim/Event/Leave: 7223420
NoteSubject : Other
Other Subject : EMAIL TO ER
Text: [02/22/2017 - ALFORD, DANIELLE]2ND EMAIL REQ TO ER FOR CONFIRMATION OF EDOC

**02/20/2017 2:14 PM - CLAIM Note 1**
Claim/Event/Leave: 7223420
NoteSubject : Other
Other Subject : EMAIL TO ER
Text: [02/20/2017 - ALFORD, DANIELLE]EMAIL REQ TO ER FOR LTD BUY UP EFF. DATE

**02/20/2017 2:09 PM - POSSINV Note 2**
Claim/Event/Leave: 7223420
NoteSubject : Possible Pre-Ex
Other Subject :
Text: THIS CLAIM IS SUBJECT TO A PRE-EX INVESTIGATION. THE PRE-EX PROVISION IS 3-12, THE DOD FOR THIS CLAIMANT IS 10/15/2016, THE ELIGIBILITY DATE IS 02/01/2016, AND THE TRANSFER PROVISION IS YES. THEREFORE, MEDICAL MUST BE GATHERED AND REVIEWED FROM 11/01/2015 THROUGH THE PRESENT.[05/01/2017 - ALFORD, DANIELLE]PREX CONDITION INVESTIGATION NOT COMPLETED AS OF 5/1/17.

**02/20/2017 2:09 PM - POSSINV Note 1**
Claim/Event/Leave: 7223420
NoteSubject : Possible Pre-Ex
Other Subject :
Text: THIS CLAIM IS SUBJECT TO A PRE-EX INVESTIGATION. THE PRE-EX PROVISION IS 3-12, THE DOD FOR THIS CLAIMANT IS 10/15/2016, THE ELIGIBILITY DATE IS 02/01/2016, AND THE TRANSFER PROVISION IS YES. THEREFORE, MEDICAL MUST BE GATHERED AND REVIEWED FROM 11/01/2015 THROUGH THE PRESENT.[05/01/2017 - ALFORD, DANIELLE]PREX CONDITION INVESTIGATION IS NOT COMPLETED AS OF 5/1/17.

**LIB000032**

**Note Report**

| Report | Clear | Print | Help |
| --- | --- | --- | --- |

AS Accom  AS Event  Add Note  Appeal  Claim  Coord Claim Note  Correspond  Doc List  Employee  Leave  Life Claim  Lve Addtl Info
Lve Correspondence  Lve Program  Lve Work Sched  Medical  Medical History  Note  SPELL Letters  Scheduled Pmt  Task Print  Task Rpt
Tasks

**Claim**

* Claim/Event/Leave Number 7037643          Accommodation Number

Note type:

**Primary Sort Order**

Note Type
Note Number
● Note Date/Time
Accm. No.

Sec
●

---

**08/29/2019 3:33 PM - CLAIM Note 24**
Claim/Event/Leave: 7037643
NoteSubject : Other
Other Subject : COPY SHIPPED
Text: [08/29/2019 - BOWMAN, CASEY]THUMB DRIVE COPY OF CORRESPONDENCE, DOC LIST, CLAIM NOTES, AND
COVERSHEET SHIPPED TO CLAIMANT; 1604 PINE TREE TRAIL, COLLEGE PARK, GA 30349 VIA 2ND DAY AIR

**05/09/2017 2:10 PM - CLAIM Note 23**
Claim/Event/Leave: 7037643
NoteSubject : Med Records Rcvd
Other Subject : DENTE
Text: [05/09/2017 - ALFORD, DANIELLE]RTW NOTE DATED 6/20/16

**02/20/2017 7:45 AM - CLAIM Note 22**
Claim/Event/Leave: 7037643
NoteSubject : Escalation
Other Subject : TO LTD
Text: [02/20/2017 - STANTON, TIMOTHY]ASSIGNED TO D ALFORD

**02/17/2017 12:50 PM - CLAIM Note 21**
Claim/Event/Leave: 7037643
NoteSubject : Other
Other Subject : MGR REVIEW
Text: [02/17/2017 - KNIGHT, MELISA]AGREE WITH ESCALATION

**02/17/2017 9:00 AM - CLAIM Note 20**
Claim/Event/Leave: 7037643
NoteSubject : Other
Other Subject : EMAIL TO HR;
Text: [02/17/2017 - ABRAMS-WEAVER, COREY]DCM SENT REQUEST FOR JOB DESCRIPTION OF SALARIED PROFESSIONAL
TO HR REP LIBERTY FOX

**02/17/2017 8:31 AM - CLAIM Note 19**
Claim/Event/Leave: 7037643
NoteSubject : Escalation
Other Subject : LTD
Text: [02/17/2017 - ABRAMS-WEAVER, COREY]CLAIM APPROVED THRU STD MAX DATE 4.12.2017; 54YOM; SALARIED
PROFESSIONAL, SEDENTARY JD; LDW 10.14.2016; DOD 10.15.2016; EE STATED THAT HE WAS REAR-ENDED 10.4.2016 AFTER
WORK AT 5:30PM, EE STATED THAT THERE WAS A POLICE REPORT FILED; THE REPORT NUMBER IS #162782459 CITY OF
ATLANTA; EE WENT TO THE EMERGENCY ROOM 10.4.2016; EE WENT TO SEE CHIROPRACTOR 10.5.2016; EE WAS ADVISED
NOT TO WORK AT THAT TIME; EE WENT AGAINST THE PHYSICIANS ORDERS AND RETURNED TO WORK; EE HAS SINCE
BEEN OOW AND TREATING WITH PHYSICAL THERAPY; EE HAS BEEN LISTED AS TOTALLY DISABLE DUE TO INABILITY TO
SIT FOR EXTENDED PERIODS OF TIME; BASED ON NCM REVIEW AND UPDATED RECORDS RECEIVED DCM RECOMMENDS
EXT THRU STD MAX 4.12.2017; DCMWOULD LIKE TO ESCALATE TO LTD AT THIS TIME DUE TO UNCERTAINTY OF RTW PRIOR
TO STD MAX DATE;

**01/31/2017 12:04 PM - PHONE Note 15**
Claim/Event/Leave: 7037643
NoteSubject : Called EE
Other Subject : EXT NOTICE
Text: [01/31/2017 - ABRAMS-WEAVER, COREY]CALLED EE; ADV EXT THRU 4.12.2017; EE THANKED DCM;

**01/30/2017 8:35 AM - CLAIM Note 18**
Claim/Event/Leave: 7037643
NoteSubject : Extended Benefits

---

LIB000033

NoteSubject : Extended Benefits
Other Subject : 4.12.2017
Text: [01/30/2017 - ABRAMS-WEAVER, COREY]54YOM; SALARIED PROFESSIONAL, SEDENTARY JD; LDW 10.14.2016; DOD 10.15.2016; EE STATED THAT HE WAS REAR-ENDED 10.4.2016 AFTER WORK AT 5:30PM, EE STATED THAT THERE WAS A POLICE REPORT FILED; THE REPORT NUMBER IS #162782459 CITY AT ATLANTA; EE STATED THAT HE WENT TO THE EMERGENCY ROOM 10.4.2016; EE WENT TO SEE CHIROPRACTOR 10.5.2016; EE WAS ADVISED NOT TO WORK AT THAT TIME; EE WENT AGAINST THE PHYSICIANS ORDERS AND RETURNED TO WORK; EE HAS SINCE BEEN OOW AND TREATING WITH PHYSICAL THERAPY; EE HAS BEEN LISTED AS TOTALLY DISABLE DUE TO INABILITY TO SIT FOR EXTENDED PERIODS OF TIME; DCM RECOMMENDS EXT THRU STD MAX 4.12.2017;

**01/30/2017 8:33 AM - CLAIM Note 17**
Claim/Event/Leave: 7037643
NoteSubject : Med Records Rcvd
Other Subject : OVN
Text: [01/30/2017 - ABRAMS-WEAVER, COREY]OVN; EXAM FINDINGS; TX PLAN; DOS 1.23.2017 THRU 1.24.2017; REHABILITATION PHYSICIANS OF GEORGIA

**01/26/2017 7:08 AM - CLAIM Note 16**
Claim/Event/Leave: 7037643
NoteSubject : Med Records Rcvd
Other Subject : OOW NOTE
Text: [01/26/2017 - ABRAMS-WEAVER, COREY]OOW NOTE; DOS 1.10.2017; GEORGIA PAIN & WELLNESS CENTER;

**01/24/2017 11:36 AM - CLAIM Note 15**
Claim/Event/Leave: 7037643
NoteSubject : LTR to AP
Other Subject : DR. FEEMAN
Text: [01/24/2017 - ABRAMS-WEAVER, COREY]OFFICE TREATMENT NOTES, DIAGNOSTIC TEST RESULTS, PRESCRIBED MEDICATIONS, PROCEDURE REPORTS, AND SPECIFIC RESTRICTIONS/LIMITATIONS REQUESTED FROM DR. FEEMAN; DOS 12.1.2016 THRU PRESENT;

**01/24/2017 11:35 AM - PHONE Note 14**
Claim/Event/Leave: 7037643
NoteSubject : Called AP
Other Subject : DR. FEEMAN
Text: [01/24/2017 - ABRAMS-WEAVER, COREY]CALLED DR. FEEMAN; INQUIRED CURRENT OOW / DISABILITY CONDITION OF EE; LEFT MSG FOR DR. FEEMAN TO CONTACT DCM;

**01/24/2017 11:29 AM - PHONE Note 13**
Claim/Event/Leave: 7037643
NoteSubject : Called EE
Other Subject : STATUS UPDATE
Text: [01/24/2017 - ABRAMS-WEAVER, COREY]CALLED EE FOR UPDATE; EE STATED THAT HE IS NOW CONSIDERED TO BE TOTALLY DISABLED; EE STATED THAT HIS PROVIDER ADVISED THAT SURGERY WOULD NOT DO HIM ANY GOOD; ADV EE THAT DCM WILL COLLECT UPDATED RECORDS FROM DR. FEEMAN AT REHABILITATION PHYSICIANS OF GEORGIA 404-659-5909; ALT EE ADV TO REACH OUT TO PROVIDER FOR UPDATED RECORDS; EE THANKED DCM;

**01/20/2017 12:54 PM - PHONE Note 12**
Claim/Event/Leave: 7037643
NoteSubject : EE Called
Other Subject :
Text: [01/20/2017 - WELBORN, EMILY]EE CALLED TO REQUEST DISABILITY RATING FORM BE SENT TO AP. ADVISED THAT NO FORMS NEEDED AT THIS TIME. ADCM WILL REQUEST MEDICAL RECORDS ONLY FROM AP. REVIEWED STD PROCESS, MAX DATE, AND BENEFIT PERCENTAGE CHANGE.

**12/28/2016 10:48 AM - CLAIM Note 14**
Claim/Event/Leave: 7037643
NoteSubject : Extended Benefits
Other Subject : THRU 1/27
Text: [12/28/2016 - COOK, MARGARET]BASED ON MDS REVIEW, NOV DATE, REPORTED ADDITIONAL TESTING, OOW NOTE FROM AP, AND DX DCM RECCOMENDS EXT CLAIM THRU 1/27 AND FOLLOWING UP WITH EE FOR SX DATE OR RTW PLAN

**12/28/2016 10:46 AM - PHONE Note 11**
Claim/Event/Leave: 7037643
NoteSubject : Called EE
Other Subject : SX DATE
Text: [12/28/2016 - COOK, MARGARET]CALLED EE TO OBTAIN SX DATE AND SURGEONS NAME, EE STATED THAT HE DOESN'T HAVE A SX DATE YET, OV ON 1/23 FOR ANOTHER MRI WITH DR. BEDNICKS OFFICE. OV ON 2/10 WITH AP BLAKE, 1/10 WITH PAIN MANAGEMENT, ADVISED EE THAT BASEDON THE NOV DATE AND OOW NOTE DCM RECOMMENDS EXT CLAIM THRU 1/27 AND FOLLOWING UP WITH EE FOR SX DATE AFTER 1/23 OV

**12/28/2016 9:30 AM - MDS Note**
Claim/Leave: 7037643
Episode #: 1
Nurse Name: HAGMAN, JENNIFER
Service #: 16342999
Service Date: 12/28/2016

LIB000034

Activity: NURSE REVIEW, FILE REVIEW
Contact Information: CLAIMS, COREY, ABRAMS-WEAVER
Note Type: INFORMATION OBTAINED DESC
Text: MEDICAL RECORDS INDICATE THAT THE CLMNT IS FOLLOWED BY DR. VICTOR BLAKE {NOTES UNAVAILABLE FOR REVIEW} S/P MVA ON 10/4/16 WHEN THE CLMNT WAS REAR ENDED AND C/O BACK PAIN M54.5}. NOTES INDICATE THAT THE CLMNT REFUSED MEDICAL TREATMENT AT THE SCENE. THEREIS A WORK NOTE FROM ORTHO PA CHANTEL LEE INDICATING OOW FROM 11/29*/16 UNTIL 12/31/16 DUE TO REFERRAL FOR SURGERY HOWEVER THERE ARE NO CORRELATING OVNS. THERE IS AN MRI FROM 10/23/16 INDICATING MULTIPLE AREAS OF DEGENERATION {CHRONIC FINDINGS} HOWEVER NOTED THAT ANNULAR TEARS ARE SUGGESTIVE OF AN ACTIVE INFLAMMATORY PROCESS WHICH MAY HAVE BEEN FROM AN INJURY. BASED ON RECORDS REVIEWED ALTHOUGH IT MAY BE REASONABLE TO SUPPORT R/LS OF NO LIFT/CARRY MORE THAN 10 POUNDS, NO OVERHEAD LIFTING, NO TWISTING ORBENDING AT THE WAIST, NO CLIMBING LADDERS, AND NO PROLONGED SITTING OR STANDING WOULD BE SUPPORTED HOWEVER THERE ARE NO OVNS WITH EXAM FINDINGS FROM ANY TREATING PROVIDERS TO CORRELATE WITH DURATION. IF SURGERY IS CONFIRMED AND IMMINENT, THEN LESS THAN SEDENTARY WOULD BE SUPPORTED FOR AN ADDITIONAL 4 WEEKS POST OP. RECOMMEND DCM SECURE UPDATED MEDICAL FROM PCP AND ORTHO SPINE TREATING PROVIDERS AND REFER BACK TO MDS AS NEEDED FOR DURATION WHICH CANNOT BE DETERMINED DUE TO LACK OF MEDICAL. UPDATED DCM.ASSIGNMENT COMPLETE.

**12/27/2016 1:50 PM - CLAIM Note 13**
Claim/Event/Leave: 7037643
NoteSubject : Other
Other Subject : EXCEPTION
Text: [12/27/2016 - COOK, MARGARET]CLAIM TYPE = ACCIDENT WC = NO DATA IN SYSTEMONE ACCIDENT CLAIM SHOULD BE CONSIDERED FOR REFERRAL TO HO SUBRO UNIT, MVA BUT ER DOES NOT SUBRO THEREFORE NO REFERRAL NEEDED

**12/23/2016 8:28 AM - CLAIM Note 12**
Claim/Event/Leave: 7037643
NoteSubject : Med Records Rcvd
Other Subject : DR. BENDIKS
Text: [12/23/2016 - ABRAMS-WEAVER, COREY]OOW NOTE; R/LS THRU 1.27.2017

**12/22/2016 12:14 PM - CLAIM Note 11**
Claim/Event/Leave: 7037643
NoteSubject : Other
Other Subject : EXCEPTION
Text: [12/22/2016 - REED, MEGAN]ASSESS CLINICAL RESOURCE REFERRAL - WILL SEND IF NO RTW PLAN AT NEXT FU

**12/21/2016 2:42 PM - CLAIM Note 10**
Claim/Event/Leave: 7037643
NoteSubject : Ref to Managed Care
Other Subject : LA / APPROVED
Text: [12/21/2016 - ABRAMS-WEAVER, COREY]54YOM; SALARIED PROFESSIONAL, SEDENTARY JD; LDW 10.14.2016; DOD 10.15.2016; EE STATED THAT HE WAS REAR-ENDED 10.4.2016 AFTER WORK AT 5:30PM, EE STATED THAT THERE WAS A POLICE REPORT FILED; THE REPORT NUMBER IS #162782459 CITY OF ATLANTA; EE STATED THAT HE WENT TO THE EMERGENCY ROOM 10.4.2016; EE WENT TO SEE CHIROPRACTOR 10.5.2016; EE WAS ADVISED NOT TO WORK AT THAT TIME; EE WENT AGAINST THE PHYSICIANS ORDERS AND RETURNED TO WORK; EE STATED THAT HE WAS IN TOO MUCH PAIN; EE WILL NEED BACK SURGERY; FOR EPIDURAL PROCEDURE; DCM FINDS IT REASONABLE TO APPROVE THRU 1.1.2017 ; DCM WOULD LIKE TO KNOW IF R/LS ARE SUPPORTIVE THRU MARCH 2017

**12/21/2016 2:36 PM - PHONE Note 10**
Claim/Event/Leave: 7037643
NoteSubject : EE Called
Other Subject : STATUS UPDATE
Text: [12/21/2016 - ABRAMS-WEAVER, COREY]EE CALLED; ADV THAT HE WILL REMAIN OOW THRU AT LEAST MARCH 2017; ADV EE THAT DCM WILL REFER CLAIM TO BE REVIEW BY NCM; EE UNDERSTOOD

**12/19/2016 12:14 PM - CLAIM Note 9**
Claim/Event/Leave: 7037643
NoteSubject : Subrogation
Other Subject :
Text: [12/19/2016 - WELBORN, EMILY]NO SUBRO ON STD OR LTD.

**12/12/2016 8:39 AM - CLAIM Note 8**
Claim/Event/Leave: 7037643
NoteSubject : Med Records Rcvd
Other Subject : DR. BLAKE
Text: [12/12/2016 - ABRAMS-WEAVER, COREY]DR. BLAKE; DOS 10.4.2016 THRU 12.6.2016; OVN; EXAM FINDINGS; TX PLAN;

**12/08/2016 10:48 AM - CLAIM Note 7**
Claim/Event/Leave: 7037643
NoteSubject : LTR to AP
Other Subject : DR. BLAKE
Text: [12/08/2016 - ABRAMS-WEAVER, COREY]OFFICE TREATMENT NOTES, DIAGNOSTIC TEST RESULTS, PRESCRIBED MEDICATIONS, PROCEDURE REPORTS, AND SPECIFIC RESTRICTIONS/LIMITATIONS REQUESTED FROM DR. BLAKE; DOS 10.1.2016 THRU PRESENT;

**12/08/2016 10:15 AM - CLAIM Note 6**

**LIB000035**

**12/08/2016 10:15 AM - CLAIM Note 6**
Claim/Event/Leave: 7037643
NoteSubject : Med Records Rcvd
Other Subject : DR. TUREK
Text: [12/08/2016 - ABRAMS-WEAVER, COREY]OVN; EXAM FINDINGS; TX PLAN; DR. TUREK; DOS 10.7.2016 THRU 12.6.2016

**12/07/2016 4:47 PM - PHONE Note 9**
Claim/Event/Leave: 7037643
NoteSubject : EE Called
Other Subject : STATUS UPDATE
Text: [12/07/2016 - ABRAMS-WEAVER, COREY]EE CALLED; ADV EXT THRU 1.1.2017; ADV EE THAT DCM WILL NEED RECORDS FROM DR. LEE AND DR. BLAKE; EE THANKED DCM;

**12/07/2016 4:46 PM - CLAIM Note 5**
Claim/Event/Leave: 7037643
NoteSubject : Extended Benefits
Other Subject : 1.1.2017
Text: [12/07/2016 - ABRAMS-WEAVER, COREY]54YOM; SALARIED PROFESSIONAL, SEDENTARY JD; LDW 10.14.2016; DOD 10.15.2016; EE STATED THAT HE WAS REAR-ENDED 10.4.2016 AFTER WORK AT 5:30PM, EE STATED THAT THERE WAS A POLICE REPORT FILED; THE REPORT NUMBER IS #162782459 CITY OF ATLANTA; EE STATED THAT HE WENT TO THE EMERGENCY ROOM 10.4.2016; EE WENT TO SEE CHIROPRACTOR 10.5.2016; EE WAS ADVISED NOT TO WORK AT THAT TIME; EE WENT AGAINST THE PHYSICIANS ORDERS AND RETURNED TO WORK; EE STATED THAT HE WAS IN TOO MUCH PAIN; EE WILL NEED BACK SURGERY; FOR EPIDURAL PROCEDURE; DCM FINDS IT REASONABLE TO APPROVE THRU 1.1.2017 BASED ON DISABILITY CERTIFICATE

**12/07/2016 11:36 AM - PHONE Note 8**
Claim/Event/Leave: 7037643
NoteSubject : EE Called
Other Subject :
Text: [12/07/2016 - HITSELBERGER, DANIEL]EE CALLED. EE ASKING IF INFO RECVD? DCM ADV 3RD PARTY., POLICE REPORT AND REIMBURSEMENT ALL RECEIVED. EE ASKED IF ADCM CAN RC. DC ADV WOULD NOTIFY ADCM. EE THANKED

**12/07/2016 9:19 AM - CLAIM Note 4**
Claim/Event/Leave: 7037643
NoteSubject : Other
Other Subject : COPY SHIPPED
Text: [12/07/2016 - BOWMAN, CASEY]THUMB DRIVE COPY OF STD AND LTD POLICIES SHIPPED TO GLASER AND SCHAEFFER, PC ATTN: MARK S. SCHAEFFER ESQ. 56 PERIMETER CENTER EAST, SUITE 450, ATLANTA, GA 30346 VIA 2ND DAY AIR

**12/07/2016 9:13 AM - PHONE Note 7**
Claim/Event/Leave: 7037643
NoteSubject : Called Other
Other Subject : MARK SCHAEFFER ATTNY
Text: [12/07/2016 - ABRAMS-WEAVER, COREY]CALLED MARK SCHAEFER ADV OF POLICY COPY SENT OUT; LEFT MSG FOR MARK TO CONTACT DCM;

**12/01/2016 3:03 PM - PHONE Note 6**
Claim/Event/Leave: 7037643
NoteSubject : Called EE
Other Subject :
Text: [12/01/2016 - LOVETT, RETRINA]INQUIRE WHY CHECK IS LOWER THAN PREV CHECK- ADV ST CHECK FOR 7DAY AND 2ND CHECK FOR 2DAY. EE HAD NFQ

**11/22/2016 2:37 PM - PHONE Note 5**
Claim/Event/Leave: 7037643
NoteSubject : Called EE
Other Subject : SUBRO UPDATE
Text: [11/22/2016 - ABRAMS-WEAVER, COREY]CALLED EE; ADV EE OF THE NEED FOR COMPLETED SUBRO FORMS; EE STATED THAT HIS ATTORNEY NEEDS A COPY OF THE POLICY; ADV HIS ATTORNEY WILL REQUEST A COPY FROM DCM; EE THANKED DCM;

**11/08/2016 1:25 PM - CLAIM Note 3**
Claim/Event/Leave: 7037643
NoteSubject : LTR to AP
Other Subject : LEE
Text: [11/08/2016 - BURNETT, CONTESSA]OFFICE TREATMENT NOTES, TEST RESULTS, PRESCRIPTION HISTORIES, AND TREATMENT PLANS FROM DOS 10/1 TO PRES

**11/08/2016 1:22 PM - CLAIM Note 2**
Claim/Event/Leave: 7037643
NoteSubject : LTR to EE
Other Subject : SUBRO ACK
Text: [11/08/2016 - BURNETT, CONTESSA]MAILED EE SUBRO ACK LTR & FORMS TO EE. FORMS DUE BY 12/8/2016

**11/07/2016 4:22 PM - PHONE Note 4**
Claim/Event/Leave: 7037643
NoteSubject : EE Called

LIB000036

Other Subject :
Text: [11/07/2016 - KELSO, JEANETTE]TO CHECK ON APPROVAL STATUS- ADVISED. ALSO WANTED TO KNOW WHEN CHECKS PROCESSED- ADVISED. EE THANKED ADCM FOR HELP. NFQ'S.

**11/03/2016 3:23 PM - PHONE Note 3**
Claim/Event/Leave: 7037643
NoteSubject : Called EE
Other Subject : APPROVAL NOTICE;
Text: [11/03/2016 - ABRAMS-WEAVER, COREY]CALLED EE; ADV APPROVAL THRU 11.27.2016; ADV PAYMENT; SCHEDULE; EE THANKED DCM;

**11/03/2016 3:15 PM - CLAIM Note 1**
Claim/Event/Leave: 7037643
NoteSubject : Approved
Other Subject : THRU 11.27.2016
Text: [11/03/2016 - ABRAMS-WEAVER, COREY]54YOM; SALARIED PROFESSIONAL, SEDENTARY JD; LDW 10.14.2016; DOD 10.15.2016; EE STATED THAT HE WAS REAR-ENDED 10.4.2016 AFTER WORK AT 5:30PM, EE STATED THAT THERE WAS A POLICE REPORT FILED; THE REPORT NUMBER IS #162782459 CITY OF ATLANTA; EE STATED THAT HE WENT TO THE EMERGENCY ROOM 10.4.2016; EE WENT TO SEE CHIROPRACTOR 10.5.2016; EE WAS ADVISED NOT TO WORK AT THAT TIME; EE WENT AGAINST THE PHYSICIANS ORDERS AND RETURNED TO WORK; EE STATED THAT HE WAS IN TOO MUCH PAIN; CONFIRMED EE HAD LOV 11.1.2016; EE HAS F/U 11.8.2016 FOR EPIDURAL PROCEDURE; DCM FINDS IT REASONABLE TO APPROVE THRU 11.27.2016; DCM WILL F/U WITH EE AND AP;

**11/03/2016 3:13 PM - PHONE Note 2**
Claim/Event/Leave: 7037643
NoteSubject : Called AP
Other Subject : DR. LEE
Text: [11/03/2016 - ABRAMS-WEAVER, COREY]CALLED DR. LEE; SPOKE WITH MASHEKA; INQUIRED CURRENT OOW / DISABILITY CONDITION OF EE; CONFIRMED EE HAD LOV 11.1.2016; EE HAS F/U 11.8.2016 FOR EPIDURAL PROCEDURE; EE HAS BEEN PLACED OOW; AP ADV DCM TO FAX REQUESTFOR RECORDS; AP THANKED DCM FOR

**11/03/2016 3:08 PM - PHONE Note 1**
Claim/Event/Leave: 7037643
NoteSubject : Initial EE Interview
Other Subject : COMPLETE
Text: [11/03/2016 - ABRAMS-WEAVER, COREY]CALLED EE; CONFIRMED DOB; ADDRESS; CONTACT INFO; SALARIED PROFESSIONAL, SEDENTARY JD; LDW 10.15.2016; EE STATED THAT HE WAS REAR-ENDED 10.4.2016 AFTER WORK AT 5:30PM, EE STATED THAT THERE WAS A POLICE REPORT FILED; THE REPORT NUMBER IS #162782459 CITY OF ATLANTA; EE STATED THAT HE WENT TO THE EMERGENCY ROOM 10.4.2016; EE WENT TO SEE CHIROPRACTOR 10.5.2016; EE WAS ADVISED NOT TO WORK AT THAT TIME; EE WENT AGAINST THE PHYSICIANS ORDERS AND RETURNED TO WORK; EE STATED THAT HE WAS IN TOO MUCH PAIN; EE HAD LOV 11.2.2016 WITH DR. CRAWLEY EE STATED THAT HE WILL HAVE AN EPIDURAL 11.8.2016 AT AICA ORTHO AND SPINE; EE HAS BEEN PLACED OOW BY ORTHOPEDIC PHYSICIAN DR. CHANTEL LEE(EE HAS F/U 11/21/2016); EE DOES NOT KNOW HOW LONG TO EXPECT TO BE OOW; EE HAS NO COMORBIDS; EE DOES NOT HAVE ANOTHER JOB OR FORM OF INCOME; EXPLAINED 7 DAY STD EP; EXPLAINED BENEFITS/70% OF WEEKLY PAY; EE UNDERSTOOD.

**11/02/2016 2:16 PM - POSSINV Note 1**
Claim/Event/Leave: 7037643
NoteSubject : Prior Claim
Other Subject :
Text: [11/02/2016 - SANDBERG, MELISSA]PLEASE INVESTIGATE ------ PLEASE VERIFY DOD -- ENTERED DEFAULT DATE
[11/02/2016 - SANDBERG, MELISSA]CLAIM ASSIGNED IN PROCESS AND NO BENES ASSIGNED PER SCU LOADING INSTRUCTIONS

LIB000037

3B246190003



**R O G E R S**
**H O F R I C H T E R**
**& K A R R H** LLC

| Main Office & | 770. 460. 1118 *Tel* | **GREG ROGERS** |
| Mailing Address | 877. 670. 6747 *Toll free* | **MICHAEL HOFRICHTER** |
| 225 S. Glynn St. Ste. A | 770. 460. 1920 *Fax* | **& HEATHER KARRH** |
| Fayetteville, GA 30214 | www.roholaw.com | *Attorneys at Law* |

August 26, 2019

Lincoln Financial Group                                **Sent via certified mail**
Liberty Life Assurance Company of Boston               **Return receipt requested**
of America
Group Benefits Disability Claims
P.O. Box 7207
London, KY 40742-7207

  Re: Vigil Harris
    Claim No.:  7223420

To Whom it May Concern:

  The undersigned and this lawfirm represent Mr. Harris in his disability claim. Enclosed is an authorization form, completed by Mr. Harris entitling us to act on his behalf. **Please direct all future contact and communication to the undersigned. Also, please be advised that if benefits are awarded in this matter then the first check for benefits should be sent directly to the undersigned for disbursement per the Attorney/Client contract Mr. Harris has signed with this lawfirm.**

  In accordance with ERISA regulations, 29 C.F.R. § 2560.503-1, et. seq., we request the complete contents of your claim file in order that we be allowed to review pertinent documents. Because the ERISA statute entitles a claimant to a "full and fair review,' courts have interpreted the above-cited regulations to mean that "core requirements of review intended to be full and fair include knowing the evidence the decision maker relied upon... ." Brown v. Retirement Committee of Briggs and Stratton Retirement Plan, 797 F.2d 521 (7th Cir. 1986), Grosmuller v. Int'l Union, UAW, 715 F.2d 853 (3rd Cir. 1983). Accordingly, please provide us with all of the following:

1. A copy of the summary plan description and/or the policy of insurance, certificate of insurance, and/or booklet certificate showing details of coverage/wrapper along with excerpts from your claims manual or other written criteria that you utilized in your evaluation and denial of this claim; and

2. A copy of the complete contents of your claim file, including all medical records, evaluations and reports.

  This request is comprehensive and requires copying and submission of all written notes, memoranda, forms, and other documents involved in assessing this claim. **The law requires your**

August 26, 2019
Page 2


**reply within 30 days pursuant to 29 U.S.C. 1132 (c ).**

Please contact me if you have any questions regarding this request. We look forward to your response.

Sincerely,

ROGERS, HOFRICHTER & KARRH, LLC

*Heather K. Karrh*

Heather K. Karrh

HKK/klb
Enclosure
cc: Mr. Virgil Harris

## <u>Authorization for Release of Information</u>

I, __Virgil Harris__ , hereby direct __Lincoln Financial Group/Liberty Life Assurance Company of Boston__ to release all information in connection with my claim for short or long term disability benefits to the lawfirm of Rogers, Hofrichter & Karrh, LLC. In accordance with ERISA regulation C.F.R. § 2560.503-1, this information should include, but not be limited to the following:

1.     A copy of the summary plan description and/or the policy of insurance, along with excerpts from your claims manual or other written criteria that you utilized in your evaluation of my claim; and

2.     A copy of the complete contents of your claim file in order that we be allowed to review pertinent documents, including all medical (psychological and physical) records, evaluations and reports.

X _Virgil Harris_
Client

X  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
Social Security Number

X  08/26/2019
Date

3B246190003

LIB000041



**ROGERS, HOFRICHTER & KARRH, LLC**

225 S. Glynn St. Ste. A • Fayetteville, GA 30214

N METRO
GA 301

FM 8 L



UNITED STATES POSTAGE

PITNEY BOWES

02 1P          $006.80⁰
0000764622  AUG 27 2019
MAILED FROM ZIP CODE 30214

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

**CERTIFIED MAIL®**

7018 1830 0001 4452 8178

Lincoln Financial Group
Liberty Life Assurance Company of Boston
 of America
Group Benefits Disability Claims
P.O. Box 7207
London, KY 40742-7207

40742-720707

**UPS CampusShip: View/Print Label**

1. **Ensure there are no other shipping or tracking labels attached to your package.** Select the Print button on the print dialog box that appears. Note: If your browser does not support this function select Print from the File menu to print the label.

2. **Fold the printed label at the solid line below.** Place the label in a UPS Shipping Pouch. If you do not have a pouch, affix the folded label using clear plastic shipping tape over the entire label.

3. **GETTING YOUR SHIPMENT TO UPS**
   **Customers with a Daily Pickup**
   Your driver will pickup your shipment(s) as usual.

   **Customers without a Daily Pickup**
   Take your package to any location of The UPS Store®, UPS Access Point(TM) location, UPS Drop Box, UPS Customer Center, Staples® or Authorized Shipping Outlet near you. Items sent via UPS Return Services(SM) (including via Ground) are also accepted at Drop Boxes. To find the location nearest you, please visit the Resources area of CampusShip and select UPS Locations.
   Schedule a same day or future day Pickup to have a UPS driver pickup all your CampusShip packages.
   Hand the package to any UPS driver in your area.

| UPS Access Point™ | UPS Access Point™ | UPS Access Point™ |
|---|---|---|
| THE UPS STORE | THE UPS STORE | THE UPS STORE |
| 15105 JOHN J DELANEY DR | 8334 PINEVILLE MATTHEWS RD | 16011 LANCASTER HWY |
| CHARLOTTE ,NC 28277 | CHARLOTTE ,NC 28226 | CHARLOTTE ,NC 28277 |

FOLD HERE



**UPS CampusShip: View/Print Label**

1. **Ensure there are no other shipping or tracking labels attached to your package.** Select the Print button on the print dialog box that appears. Note: If your browser does not support this function select Print from the File menu to print the label.

2. **Fold the printed label at the solid line below.** Place the label in a UPS Shipping Pouch. If you do not have a pouch, affix the folded label using clear plastic shipping tape over the entire label.

3. **GETTING YOUR SHIPMENT TO UPS**
   **Customers with a Daily Pickup**
   Your driver will pickup your shipment(s) as usual.

   **Customers without a Daily Pickup**
   Take your package to any location of The UPS Store®, UPS Access Point(TM) location, UPS Drop Box, UPS Customer Center, Staples® or Authorized Shipping Outlet near you. Items sent via UPS Return Services(SM) (including via Ground) are also accepted at Drop Boxes. To find the location nearest you, please visit the Resources area of CampusShip and select UPS Locations.
   Schedule a same day or future day Pickup to have a UPS driver pickup all your CampusShip packages.
   Hand the package to any UPS driver in your area.

| UPS Access Point™ | UPS Access Point™ | UPS Access Point™ |
|---|---|---|
| THE UPS STORE | THE UPS STORE | THE UPS STORE |
| 15105 JOHN J DELANEY DR | 8334 PINEVILLE MATTHEWS RD | 16011 LANCASTER HWY |
| CHARLOTTE ,NC 28277 | CHARLOTTE ,NC 28226 | CHARLOTTE ,NC 28277 |

FOLD HERE



**LIB000043**

Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7213
London, KY 40742-7213




MR. VIRGIL HARRIS
1604 PINE TREE TRAIL
COLLEGE PARK GA 30349

**LIB000044**



Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7213
London, KY 40742-7213
Phone No.: (888) 437-7611
Secure Fax No.: (603) 422-7909

August 27, 2019

Mr. Virgil A. Harris
1604 PINE TREE TRAIL
COLLEGE PARK, GA 30349

RE:     Long Term Disability (LTD) Benefits
        Robert Half International Inc.
        Claim #: 7223420

Dear Mr. Virgil Harris:

This letter responds to your verbal request of August 26, 2019.  As requested, we have enclosed a true and accurate copy of your claim file.  The copy of the file includes any and all communications (including telephone entries), claim forms, electronic eligibility information, medical reviews, and written correspondence as of today's date. The disability insurance records have been compiled and maintained in the normal course of business, within the record keeping procedures of Lincoln Financial Group.

If you have any questions regarding this matter, please contact me.

Sincerely,

Courtney Grygiel
Appeals Consultant
Phone No.: (888) 437-7611 Ext. 13301
Secure Fax No.: (603) 422-7909

LIB000045

Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7213
London, KY 40742-7213


MR. VIRGIL HARRIS
1604 PINE TREE TRAIL
COLLEGE PARK GA 30349

**LIB000046**



Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7213
London, KY 40742-7213
Phone No.: (888) 437-7611
Secure Fax No.: (603) 422-7909

August 23, 2019

Mr. Virgil A. Harris
1604 PINE TREE TRAIL
COLLEGE PARK, GA 30349

RE:    Long Term Disability (LTD) Benefits
         Robert Half International Inc.
         Claim #: 7223420

Dear Mr. Virgil Harris:

We reviewed your appeal request for Long Term Disability ("LTD") benefits and maintained the decision to deny benefits beyond April 22, 2019.

**Initial Claim Decision**

You submitted a claim for your absence from work as of October 15, 2016 due to symptoms associated with low back pain and radiculopathy. LTD benefits were approved from April 13, 2017 through April 22, 2019. Benefits beyond April 22, 2019 were denied as the evaluation concluded you were no longer disabled as defined by the Policy.

The basis for the decision was outlined in a letter dated April 30, 2019. You were provided an opportunity to request an appeal review of the denial, stating the reasons why you felt your claim should not have been denied, and submit additional information to support the claim. Specifically, you were advised to submit the following information: *Any additional office notes, diagnostic test results, hospital records, clinical evaluations, specific restrictions or limitations imposed, medical opinions from your treating physicians, a valid functional capacity evaluation and any other medical documentation you feel will support you are unable to perform any occupation beyond April 22, 2019. You should also provide any additional information that you feel will support your claim.*

**Appeal**

On May 15, 2019 we received your letter in which you indicted you were submitting additional information and asked for reconsideration of your denied LTD claim. In a telephone call with your disability case manager on May 23, 2019 you were notified we received some medical records; however, these records were only through May 2018. You indicated that you had been seen beyond May 2018. When asked if you wanted us to wait for these additional records with your appeal you indicated yes. Additional records were received and a telephone call on June 4, 2019 confirmed receipt of these records and your file was referred to the Appeal Review Unit.

**LIB000047**

In support of your claim, we received the following information, including but not limited to:

- May 14, 2019 office visit note from Victor J. Blake, M.D. (internal medicine)
- Patient Appointment Reminder notice for June 24, 2019 at the Dermatology Center
- Patient Appointment Reminder notice for August 14, 2019 Cardiac Center
- April 9, 2019 Grady Dermatology Clinic Note
- April 27, 2018 office note from Peter J. Symbas, M.D.
- February 11, 2019 Morehouse Healthcare radiology procedure request
- Family Chiropractic Chart Notes May 9, 2018 to May 16, 2018 and April 22, 2019 chiropractic evaluation
- Rehabilitation Physicians of Georgia, P.C. January 23, 2017 evaluation and To Whom It May Concern letter from Mark W. Freeman, D.O.
- Georgia Spine and Orthopedics July 12, 2017, April 26, 2017 follow up notes
- August 21, 2014 OP Note left axillary hidradenitis from Maria C. Russell, M.D.
- May 21, 2019 evaluation by Donald A. Capoferri, D.C. DAAMLP, BCN, FSBT
- Picture undated
- May 20, 2019 studies Precision Spine and Injury Center
- June 18, 2108 After Visit Summary

We were notified of your inquiry and request for assistance to the California Department of Insurance and a written response was provided to you and the CA DOI on July 26, 2019.

**<u>Appeal Evaluation</u>**

In April 2019 during the claim evaluation for ongoing benefits, your claim was reviewed by an independent physician, Howard Grattan, M. D., board certified in physical medicine and rehabilitation and pain management. A review of the medical records show your diagnoses to include with chronic pain syndrome lumbar spondylosis with radiculopathy, cervical radiculopathy and lumbar intervertebral disc degeneration.

Dr. Grattan's report indicated you are a 57-year-old with lower back pain. Mechanism of injury occurred when you were involved in a motor vehicle accident on October 4, 2016. MRI shows C4-C7 disc herniation with a left paracentral at C4- C5, central at C5-C6, and right-sided at C6-C7, neural foraminal stenosis bilateral at C4-C5 and C6-C7 and right-sided at C5-C6, cord compression at C4-C6 as well as aggravation of pre-existing low back pain with disc herniation at L5-S1 and thecal sac impingement. L5-S1 lumbar fusion has been recommended as well as a cervical fusion at C4-C7, however, it appears your insurance did not authorize surgery. You remained under the care of pain management and was treated with ongoing medications. You were taking gabapentin, hydrocodone, and Flexeril. You reported no adverse medication side effects. The physical examination revealed decreased sensation in the right L5 dermatomal distribution. There was a weakness at the right foot extensor rated as 4/5. You had ongoing limited range of motion in the cervical and lumbosacral regions. While these findings are significant and you were pending surgical intervention these findings would not preclude all level of function. It would be medically reasonable that you would at least have the capacity to function at a sedentary level with the ability to positional change.

**LIB000048**

Dr. Grattan opined from a physical medicine and pain perspective, medically necessary restrictions throughout an 8 hour day, and 40 hour week include:

- Lifting, carrying, pushing and pulling up to 10 pounds occasionally and up to 5 pounds frequently

- Sitting up to 40 minutes continually for a total of up to eight hours per day with the ability to alter the position

- Walking and standing combined up to 20 minutes continually for a total of up to 3 hours out of an 8 hour day

- Twisting, bending, kneeling, crouching, squatting, and climbing stairs occasionally

- No climbing ladders or poles, working at heights or operating heavy machinery

- No crawling or balancing

- Reaching below the waist and perform reaching overhead occasionally

The policy under which you were covered has a 24 month own occupation period for which benefits may be payable as long as you continue to meet the definition of disability. Your long term disability benefits were approved and paid for 24 months therefore it must be determined whether you remain disabled from any occupation beyond April 22, 2019.

As your claim was approved and paid through the change in definition of disability from your own occupation to any occupation your file was referred to a Vocational Counselor. A vocational review and transferrable skills analysis was conducted based on your prior work history, educational background, and/or life experience and capacity within the restrictions and limitations outlined by the medical reviews. The Transferable Skills Analysis identified your skills and abilities to include:

**Communication Skills:**
- Ability to organize and reason in a logical manner

- Ability to handle precise work

- Ability to inform and consult with both staff and customers

- Ability to compose communications that are effective

**Clerical Skills:**
- Excellent bookkeeping, recording and computational skills

- Ability to work as a team member and follow directions

- Ability to exercise proper telephone protocol

- Ability to handle money correctly

LIB000049

- Ability to use basic computer skills

**Technical Skills:**
- Skilled at calculating and evaluating data

- Skilled at accounting

- Skilled at Disc Jockeying

Occupations were identified within your physical abilities and within your identified skill level. The following are examples of occupations you could perform; including your own occupation of Accountant, $5779.17, Accountant, Budget $5779.17, Accountant, Cost $5799.17, Budget Analyst $6270.00, Disc jockey $2704.17, and Tax Preparer $3227.50.

The disability case manager then concluded you were not disabled from Any Occupation and that no further benefits were payable.

As part of this appeal review your claim was reviewed by a consulting physician, Sheila Natarajan, MD, FAAPMR, board certified in physical medicine and rehabilitation. Dr. Natarajan indicated the medical record support diagnoses that include lumbar disc disorders with radiculopathy, lumbosacral disc herniation, cervical radiculopathy, cervical disc disorder C4-5, C5-6, C6-7 and hydradenitis axillaris.

Dr. Natarajan noted "the available records support lumbar and cervical diagnoses are associated with impairment from April 22, 2019 to the present based on imaging records and treatment plans. The available medical records support impairment significant enough to require the detailed permanent restrictions and limitations. The medical records; however, do not contain sufficient evidence to support restrictions of "no workability". The available medical records contain MRIs of the C- and L-spine from 2016 and 2017, closer in time to the motor vehicle accident; however, there does not appear to be any updated advanced imaging to evaluate the current state of the canal, discs, or nerve roots. These prior MRIs evidenced cervical and lumbar disc herniations; however, given the amount of time that has passed since the original date of imaging, it is possible for disc resorption and remodeling to occur around the previous herniations. Cervical and lumbar radiculopathy are stated as diagnoses within the available medical records; however, there does not appear to be any electrodiagnostic studies to evaluate and confirm ongoing radiculopathy. This condition, too, can improve over time and appears to have done so with no further neuromotor findings found on recent physical exams (normal strength).

Furthermore, there is discrepancy within the different providers' notes regarding the current physical exam findings. On March 27, 2019 Dalandra Belcher APRN noted strength grossly intact in major muscles of all extremities, decreased sensation to bilateral L4-5 dermatomes, cervical, lumber, and gluteal tenderness to palpation along mid cervical facet joints, positive facet loading, and decreased cervical range of motion. Dr. Blake; however, indicated within his note dated May 14, 2019 the following findings which are relatively benign: normal range of motion, no tenderness or deformity, normal reflexes, normal muscle tone, normal coordination, and normal range of motion of the neck.

Lastly, the treatment plan has included a recommendation for surgical intervention in 2017 which has not yet occurred due to either a claims or insurance approval issue. Currently the treatment plan

**LIB000050**

includes chiropractic treatment along with a stable dose of gabapentin, flexeril, and hydrocodone filled on a monthly basis. In the absence of surgery, there does not appear to be any current escalation of medication or alternative pain management recommendations which does not correlate with the severity of claimed impairment of "no workability".

There was included within the appeals documentation an IME conducted by chiropractor Donald Capoferri dated May 21, 2019. This IME largely bases its recommendation of impairment on imaging results (which is not always reliable as a functional indicator) and history. The physical examination is an inherent part of a well performed independent medical examination and there was no mention of any abnormal physical exam findings that correlate with imagining findings described within this IME. A whole person impairment rating was also provided, however, while impairment percentage ratings are used in Workers Compensation administrative proceedings and legal proceedings they do not lend much information when trying to assess specifics of active functional capacity.

The available medical records also indicate a diagnosis of hidradenitis suppurativa; however, it appears the claimant responded with "dramatic improvement" to previous surgeries. While it appears he has had involved areas including the groin and bilateral axillae in the past, the most recent available dermatology medical records indicate his hidradenitis has overall remained quiescent except for one recurrent tract involving the right axilla. Surgery was planned for this on 6/24/19. There was mention of perineal fold redness consistent with intertrigo (which is simply skin inflammation usually in moist areas such as in between skin folds) for which a steroid and anti-fungal cream was prescribed. While these dermatologic conditions were mentioned within the available medical records, this report has focused primarily on impairment associated strictly with physical medicine diagnoses."

Dr. Natarajan conclude the following restriction and limitations were supported:

- No more than occasional standing or walking, ability to change positions as needed for comfort to accommodate neck and back pain,

- No more than occasional lifting up to 10 pounds

- No more than occasional reaching overhead and no lifting above shoulder level bilaterally

- If stationed at a workstation, ergonomic set up will be required including screens at eye-level and avoidance of static positioning with head or neck in extremes of extension, flexion, or rotation

- No climbing, crawling, crouching, kneeling

In the absence of surgery, these restrictions are reasonably supported permanently.

Your claim was reviewed by a consulting physician, David Carl Houghton, M.D., FACP, board certified in internal medicine. Dr. Houghton indicated the medical record support diagnoses that include cervical disc disorder C4-7 and cervical spondylosis associated with chronic neck pain, lumbosacral disc disorder with radiculopathy, lumbosacral spondylosis with radiculopathy with chronic low back pain and sciatica, class II obesity and hidradenitis suppurativa.

LIB000051

Dr. Houghton noted "the claimant has had chronic neck and back pain for years, with degenerative changes in the cervical and lumbar spine, including L5-S1 disc herniation. It was apparently aggravated by a motor vehicle collision in 2013. Despite this, the claimant continued working at his full-time sedentary job. In the summer of 2016 he reported 10/10 low back pain after golfing (the maximum pain a person is capable of experiencing). Nevertheless he continued working. He was in another moderate motor vehicle collision in October 2016, at which time he declined medical attention. Since then he has continued to complain of 10/10 back pain, as well as a lesser degree of neck pain. There has been some right leg pain as well, suggesting some nerve root irritation. MRI done a few days after the collision again showed the L5-S1 disc herniation seen in 2013. His clinicians have said that the collision exacerbated his chronic back pain, but objective abnormalities on exam have been mild and inconsistent. In many instances the exam findings and pain intensity have been sharply at odds with demonstrated functional capacity. Treatment has remained the same for over 2 years, consisting of a low potency opioid, a muscle relaxer, and low dose gabapentin...

There is no objective support for the opinion of his clinicians that he is totally disabled, and there is substantial evidence that his functional capacity is sufficient for sedentary full-time productive activity."

Dr. Houghton opined the following permanent activity restrictions are supported:

- No friction or pressure applied to axillary skin
- No sitting longer than 1 hour without opportunity to stand
- No standing or walking longer than 15 minutes without opportunity to sit
- No more than occasional bending/twisting at the waist or neck
- No exertion of more than 20 pounds of force

You were sent a copies of Dr. Houghton's and Dr. Natarajan's reports and afforded the opportunity to review and provide a response to us, which we would consider in making our decision on your appeal. We received your written response and referred this back for comment to both providers. A portion of Dr. Houghton's addendum noted: *The claimant's treatment has not changed in more than 2 years. Multiple published guidelines affirm that after standard treatments prove unsuccessful, individuals that continue to report pain that interferes with daily activities should be referred to a multidisciplinary functional restoration program, which addresses pain psychology, pain tolerance, pain avoidance, etc. This has not been done in the claimant's case. The lack of escalation of treatment strongly suggests that either treatment is inadequate and outside the standard of care, or else the claimant's condition is not so severe as to preclude all sustained productive activity.* Dr. Natarajan's addendum noted: *The lumbar MRI from 2018 reveals similar degenerative changes and degenerative disc disease as the lumbar imaging in previous years. There is no information from that scan that would change my conclusions or otherwise indicate the claimant is unable to participate in activity as outlined in the previously recommended restrictions within my report dated 7/11/19. Review of the updated medical also does not contain evidence that would change the recommendations in my previous report.*

Our role in reviewing your file is to determine whether your medical conditions and the medical documentation contained in your file supports you are unable to perform the material and substantial duties of any occupation from which you are qualified based your education, training and physical capacities. We are not required to ensure the availability of this occupation or that you return to

LIB000052

active employment with your former employer in the same or different position.

It is important to clarify that the existence of a medical condition/diagnosis in and of itself does not equate to eligibility for long term disability benefits. The focus of our assessment is not whether or not a condition exists; but rather whether or not impairment exists that would preclude you from performing the duties of your own occupation or any occupation. We take into consideration medical and vocational factors to determine whether or not impairment is supported.

This appeal review and analysis considered all the medical and claim documentation contained in your Long Term Disability administrative record, whether or not specifically referenced in this document. Based on our review which included two additional independent medical reviews and an updated vocational analysis, the totality of information does not support your inability to perform the material and substantial duties of your own or any occupation.

The medical evidence supports physical restrictions and limitations to include no more than occasional standing or walking, ability to change positions, occasional lifting up to 10 pounds, occasional reaching overhead and no lifting above shoulder level bilaterally and no climbing, crawling, crouching, kneeling. Based on these updated capacities, your file was refereed back for an updated TSA and the previously identified occupations of Accountant, Budget Accountant, Cost Accountant, Budget Analyst and Tax Preparer remain viable. In the current employment environment, and as a result of technological advancement, employers are providing a variety of workstation types and associated equipment that allow individuals opportunity to experience and sustain comfort in their respective work settings within the occupation(s). Disc jockey was precluded given updated restrictions. As such, you no longer satisfy the definition of Disability under the LTD Policy.

## Conclusion

We conducted a thorough and independent review of your entire claim. We acknowledge that you continued to experience some symptoms associated with your medical conditions beyond April 22, 2019. However, the available information does not contain exam findings, diagnostic test results or other medical documentation supporting your symptoms from a physical or psychological or cognitive condition were of a severity, that they resulted in restrictions or limitations rendering you unable to perform the duties of the above noted occupations identified as being within your functional capacity and vocational skills after that date.

After a complete evaluation of the claim, including all information submitted with the appeal, all medical reviews completed on the file, and taking into consideration the opinions of your providers as set forth in their written record, we determined the clinical evidence does not support you are precluded from performing Any Occupation continuously beyond April 22, 2019. As such, benefits continue to be denied.

This claim decision reflects an evaluation of the claim facts and Policy provisions.

## Policy Provisions

To continue receiving benefits, you must satisfy the requirements of all Policy provisions that state, in part:

LIB000053

*"**Disability**" or "**Disabled**" means:*

>   *i.  that during the Elimination Period and the next 24 months of Disability the Covered Person, as a result of Injury or Sickness, is unable to perform with reasonable continuity the Substantial and Material Acts necessary to pursue his Own Occupation in the usual and customary way; and*

>   *ii.  thereafter, the Covered Person is unable to perform, with reasonable continuity, the Substantial and Material Acts of any occupation, meaning that as a result of sickness or injury the Covered Person is not able to engage with reasonable continuity in any occupation in which he could reasonably be expected to perform satisfactorily in light of his age, education, training, experience, station in life, and physical and mental capacity.*

*"**Substantial and Material Acts**" means acts that are normally required for the performance of the Covered Person's Own Occupation and cannot be reasonably omitted or modified.*

*"**Discontinuation of the Long Term Disability Benefit**"*
*The Monthly Benefit will cease on the earliest of:*

>   *3.  the date the Covered Person is no longer Disabled according to this policy;*

Under the Employee Retirement Income Security Act (ERISA) appeal guidelines, you were entitled to appeal the decision made by Lincoln Financial Group and to submit any additional information you wished to be considered as part of the appeal. Lincoln has conducted a full and fair review of your appeal and accompanying materials, and has concluded that the denial of benefits will be maintained.

At this time, your administrative right to review has been exhausted; no further review will be conducted by Lincoln and your claim will remain closed. You may request to receive, free of charge, copies of all documents relevant to your claim. You have the right to bring a civil action under section 502(a) of ERISA following an adverse benefit determination on review.

The Robert Half International LTD Policy contains the below provision:

*Legal Actions*
*No action at law or in equity shall be brought to recover on this policy prior to the expiration of 60 days after written proof of loss has been furnished in accordance with the requirements of this policy. No such action shall be brought after the expiration of three years after the time written proof of loss is required to be furnished.*

Your policy is subject to ERISA, and you may have other voluntary alternative dispute resolution options, such as mediation. One way to find out what may be available is to contact your local U.S. Department of Labor Office or your state insurance regulatory agency. In addition, once all required reviews of your claim have been completed, you have the right to bring a civil action under

**LIB000054**

applicable law. The date on which the contractual limitations period expires for this claim is September 22, 2022.

This information is provided for purposes of this claim only, as the time proof of claim is required may differ based on claim specifics and applicable policy language.

Nothing in this letter should be construed as a waiver of any Lincoln Financial Group rights and defenses under the above captioned Policy, and all of these rights and defenses are reserved to the Company, whether or not they are specifically mentioned herein.

Decisions made by Lincoln Financial Group are based on the provisions outlined in Robert Half International ("LTD Policy"). These provisions are not contingent on decisions made by either the Social Security Administration or other disability-determining entities. No internal rules, guidelines, protocols, standard or other similar criteria were relied upon in rendering the claim determination.

If you require language translation assistance, please contact Lincoln to initiate a service provided free of charge to assist with understanding your claim and appeal rights.

如果您需要翻译方面的帮助，请联系我，我会免费为您服务以便了解您的要求和诉求。

Shá ata' hane'go shíká a'doowoł nínízingo saad hosíníłįį' dóó ná'ookąąh nííní'ąągo naaltsoos nííníłtsoozígíí hazho'ó bik'idi'deeshtįįł nínízingo doo bą́ą́h ílínígóó níká a'doowoł éí biniiyé shił hodíílnih áko ákwe'égi níká adeeshwoł.

Si necesita traducción, contácteme para iniciar un servicio gratuito a fin de ayudarle a entender sus derechos de reclamo y apelación.

Kung nangangailangan ka ng tulong sa translation, mangyaring makipag-ugnayan sa akin upang gumamit ng serbisyong ibinigay nang walang bayad upang matulungan kang maunawaan ang iyong mga karapatan sa paghahabol at pag-aapela.

If you have any questions regarding this matter, please contact me.

Sincerely,

Courtney Grygiel
Appeals Consultant
Phone No.: (888) 437-7611 Ext. 13301
Secure Fax No.: (603) 422-7909

LIB000055

# ICP Memo (Addendum)

| Customer Name | Claimant Name | Claim Number |
|---|---|---|
| ROBERT HALF INTERNATIONAL INC. | VIRGIL HARRIS | 7223420 |

| | | | |
|---|---|---|---|
| **Referred By:** | Courtney Grygiel | **Claimant DOB:** | 01/16/1962 |
| **Referral Date:** | 08/13/2019 | **Job Title:** | SALARIED PROFESSIONAL-ACCOUNTING CONSULTANT |
| **Due Date:** | 07/09/2019 | **Medical/ Surgical Condition:** | LBP/radiculopathy |
| **Referral Type:** | Addendum | **Disability Occupational Type:** | |
| **Reason for Priority Handling:** | | **Product Type:** | LTD |
| **Other Considerations** | | **LDW:** | 10/14/2016 |
| **Report Date:** | 8/22/19 | **DOD:** | 10/15/2016 |
| **Physical Demands:** | | **BBD:** | 04/13/2017 |
| **Non-Medical Issue:** | No | **Non-Medical Issue Details:** | |

This is the requested addendum to my previous 7/11/19 report for review of a letter dated 8/2/19 submitted by the claimant. While all available medical records on file were reviewed for my original report, the claimant pointed out that there was an MRI report from 2018 that I may have inadvertently missed given the extensive records on file. The lumbar MRI from 2018 reveals similar degenerative changes and degenerative disc disease as the lumbar imaging in previous years. There is no information from that scan that would change my conclusions or otherwise indicate the claimant is unable to participate in activity as outlined in the previously recommended restrictions within my report dated 7/11/19. Review of the updated medical also does not contain evidence that would change the recommendations in my previous report.

(Electronically Signed)

Sheila Natarajan, M.D.
Consulting Physician
Board Certified in Physical Medicine & Rehabilitation

**LIB000056**



**Liberty Life Assurance Company of Boston**
*A Lincoln Financial Group Company*
*Disability Claims*
*P.O. Box 7213*
*London, KY 40742-7213*
*Fax: 603-422-7909*
*www.LincolnFinacial.com*

August 19, 2019

State Of California
Department of Insurance
Jean Pham
Health Claims Bureau
300 South Street
Los Angeles, CA 90013

**RE: Virgil Harris**
    **HCB- 8213935**
    **Policyholder: Robert Half International/ GF3-860-066675-01**
    **Claim Number: 7223420**
    **N.A.I.C. # 65315 Liberty Life Assurance Company of Boston**

Dear Ms. Pham-

This letter responds to your August 7, 2019 follow up inquiry regarding Virgil Harris.

We have enclosed a copy of our August 14, 2019 response to Mr. Harris.

We will keep you apprised of the status of the appeal.

Sincerely,

Karen M. McKenzie
Claims Shared Services – Complaints
Liberty Life Assurance Company of Boston, a Lincoln Financial Group Company
Karen.McKenzie@lfg.com
603-970-2345

**LIB000057**

**LIB000058**

**Recipient Information**
**To:  Courtney Grygiel Karilann Sneirson**
**Company: Liberty Life Lincoln**
**Fax #: 16034227909**

**Sender Information**

**From: Virgil A Harris**
**Company: Claim 7223420**
**Email address: kwinci@yahoo.com (from 98.192.111.44)**
**Phone #: 4047815494**
**Sent on: Monday, August 19 2019 at 4:44 PM EDT**

faxZERO.com
*send a fax for free*

Virgil Harris Claim #7223420
This is not ongoing good faith exchanges of information nor is it new or additional evidence. These conditions are already addressed in the medical files.
The documents are updates of office visits as instructed to submit separately for consideration on appeal.
Thank you for reviewing and considering these continuing follow-up visits.

Virgil Harris.

This fax was sent using the FaxZero.com fax service. Please send your response directly to the sender, not to FaxZero.

FaxZero.com has a zero tolerance policy for abuse and junk faxes. If this fax is spam or abusive, please e-mail support@faxzero.com or send a fax to 855-330-1238, or phone 707-400-6360. Specify fax #25072673. We will add your fax number to the block list.

LIB000059

August 19, 2019

Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7213
London, KY 40742-7213
Attn: Karilann Sneirson, Karen McKenzie, Courtney Grygiel
From: Virgil Harris Claim #7223420

Dear all,

Thank you for your letter dated August 14, 2019. As with all my communications and requests for status updates on my appeal, I again ask you to please render an appeal decision without further delay.

My response to those reviews should not have triggered a third review, a request for an addendum, or a response to the response of the review, because my response did not include, present, or document any **new** or additional evidence, factual information or rationale. Nor, was it an ongoing good faith exchange of information? It only objected to the opinions of the reviewing physicians and their disregarding documented evidence in their conclusions and analysis. And that their desire to overlook evidence and documentation in the medical files, and their choice instead, to present circumvential evidence, did not allow for a full and fair review of my medical condition of "Totally and Permanently Disabled" based on their conclusions and analysis as documented.

As it relates to the claim procedures, and the opportunity given to respond to the new or additional evidence found in the medical reviews, it is my understanding that these procedures should be confined within the 45-day requirement for an appeal decision. Sufficiently in advance of the applicable deadline to allow me a reasonable time to respond, which includes the 21-day tolling period. That's why I asked you for the 10-day explanation of the delay and to clarify the date the appeal was actually filed and received.

As it relates to the Co-morbid condition, as diagnosed, of Hidradenitis Suppurativa Hurley stage 2-3 (the most severe form), we discussed that **I have submitted my medical documentation** that you say I indicated that I do not wish to submit any additional medical information. You have the medical files related to my condition. As I indicated, Hidradenitis in Chronic, and just like the June 24, 2019 Surgery, they want me to schedule the next surgeries for other active areas mentioned in the medical file. Those areas again, include the armpits, buttocks, groin, and are continuous and never ending.

Nevertheless, if the reviewing physicians are reviewing the response to the review after demonstrating a lack of effort to review the entire file, and a lack of knowledge on Hidradenitis Suppurativa Hurley Stage 2-3, please share with me the purpose or nature of this 3rd review stage and how it extends the 45-day timeframe to render an appeal decision. Also, please find attached the current office visit notes of my providers. Please note, this is not a submission of new or additional information or rationale. These are follow-up visits for the diagnosis and conditions already addressed in the medical files.

Thank You for your assistance with this appeal. Again, please make your appeal decision today.

Virgil Harris,
Claim #7223420

LIB000060

 **Grady**

Dermatology Center
80 Jesse Hill Jr. Drive SE
S. Tower, 1st Floor, A Hallway
Atlanta GA 30303
Phone: 404-616-4239

Date 8/19/2019

Time 12:12 PM

Virgil Harris Is a patient under my care at Grady Dermatology Clinic. He suffers from a disease called hidradenitis suppurativa, hurley stage II-III. This is a disease with waxing and waning painful, draining nodules that affect his axilla. groin, and buttocks. The distinction Hurley stage II-III indicates that he has a severe form of this disease. Mr. Harris has undergone multiple surgeries to remove painful nodules, but in this disease, despite surgical intervention, new nodules come up on sites that were not operated on. Mr. Virgil has active disease and when new lesions come up on his buttocks, it can be very painful to sit, especially for prolonged periods of time. This is a chronic disease without a cure and, unfortunately, patients will suffer throughout their lives with episodes of these debilitating skin lesions.

For further questions, please call 404-616-1000

Thank you,

Tova Rogers, MD
Grady Dermatology

LIB000061

Harris, Virgil (MRN 10347526) DOB: 01/16/1962                    Encounter Date: 08/12/2019

# Harris, Virgil
MRN: 10347526

**Office Visit** 8/12/2019           Provider: Rogers, Tova, MD (Dermatology)
Dermatology Center                Primary diagnosis: Hidradenitis suppurativa
                                  Reason for Visit: Follow-up; Referred by Aspey, Laura Delong, MD

## Progress Notes                      Rogers, Tova, MD (Resident) • Dermatology-Consult

Cosigned by: Orenstein, Lauren, MD at 8/19/2019 7:30 AM

Attestation signed by Orenstein, Lauren, MD at 8/19/2019 7:30 AM

I saw and evaluated the patient, discussed with resident and agree with findings and plan
as documented in the resident's note.

Lauren Orenstein, MD
Assistant Professor
Dermatology

### Dermatology Clinic Note
**Virgil Harris** is a **56 y.o. male** with a history of hidradenitis since 2001 here for f/u

LV- 7/2/19 for wound follow up after right axilla HS excision on 6/24/19

IHx:
- new flare adjacent to surgical scar in right axilla
- new flare in left groin, that is now quieting
- painful
- continue doxycycline BID
- surgical site healing well, good arm mobility

### Hidradenitis Hx:
- h/o hidradenitis s/p skin grafts of left and right groin (2009) and excisions of bilateral axillae
(April and July 2014; April 2016)
- Area in his groin around his buttocks has gotten dry and irritated. He sees blood on the toilet
paper. Denies blood in the stool.
- has previously been treated with ciprofloxacin and doxycycline, clindamycin, and rifampin.
Prednisone works the best.
- hx of hidradenitis wide excision surgery in 2010 (rectal, scrotal, buttocks, medial thighs), 2012
(left axilla), 2014 (right axilla), 2016 (medial thighs)

**Allergies:** Percocet

**ROS:**
General: no recent fevers, chills or sweats, no unintentional weight loss
Skin: no other skin complaints

Past Medical History

Past Medical History:

**LIB000062**

**Recipient Information**

**To:   Courtney Grygiel Karilann**
**Company: Liberty Life Lincoln**
**Fax #: 16034227909**

**Sender Information**

**From: Virgil A Harris**
**Company: Claim 7223420**
**Email address: kwinci@yahoo.com (from 98.192.111.44)**
**Phone #: 4047815494**
**Sent on: Monday, August 19 2019 at 4:46 PM EDT**

Virgil Harris Claim #7223420
This is not ongoing good faith exchanges of information nor is it new or additional evidence. These conditions are already addressed in the medical files.
The documents are updates of office visits as instructed to submit separately for consideration on appeal.
Thank you for reviewing and considering these continuing follow-up visits.

Virgil Harris.

This fax was sent using the FaxZero.com fax service. Please send your response directly to the sender, not to FaxZero.

FaxZero.com has a zero tolerance policy for abuse and junk faxes. If this fax is spam or abusive, please e-mail support@faxzero.com or send a fax to 855-330-1238, or phone 707-400-6360. Specify fax #25072696. We will add your fax number to the block list.

LIB000063

Harris, Virgil (MRN 10347526) DOB: 01/16/1962 Encounter Date: 08/12/2019

Diagnosis                    Date
- Arthritis
- Back pain
- Hidradenitis suppurativa
  *s/p multiple surgeries*
- Sciatica
- Tobacco abuse

Past Surgical History

Past Surgical History:

| Procedure | Laterality | Date |
|---|---|---|
| ACHILLES TENDON SURGERY | | 90s |
| COLONOSCOPY, RIGID OR FLEXIBLE | N/A | 7/1/2014 |

*Procedure: COLONOSCOPY; Surgeon: Qayed. Emad S., MD; Location: GHS GI; Service: Gastroenterology*

| EXCISION OF SKIN AND SUBCUTANEOUS TISSUE FOR HYDRADENITIS, AXILLARY | | 7/31/2014 |

*Procedure: EXCISION OF SKIN AND SUBCUTANEOUS TISSUE FOR HYDRADENITIS, AXILLARY; Surgeon: Russell, Maria C., MD; Location: GHS MAIN OR; Service:*

| EXCISION OF SKIN AND SUBCUTANEOUS TISSUE FOR HYDRADENITIS, INGUINAL | Bilateral | 4/19/2016 |

*Procedure: EXCISION OF SKIN AND SUBCUTANEOUS TISSUE FOR HYDRADENITIS, INGUINAL; Surgeon: Gelbard, Rondi B., MD; Location: GHS MAIN OR; Service:*

| right hemiscrotectemy | | 2010 |

*multiple surgeries, including skin grafts for hidradenitits (~6)*

Family History
No family history on file.

Social History


Tobacco Use
- Smoking status:  Former Smoker
   Packs/day:      1.00
   Years:          40.00
   Pack years:     40.00

LIB000064

|  Types: | Cigarettes |
|---|---|
| Last attempt to quit: | 5/1/2015 |
| Years since quitting: | 4.1 |

- Smokeless tobacco:     Never Used
- Tobacco comment: for 30 yrs

Substance Use Topics
- Alcohol use:      No
  Alcohol/week: 0.0 oz
  *Comment: occ 4x /yr.last drink was last night - 1 shot of gin and glass of champagne*
- Drug use:        No

## Objective:
Vitals:

|  | 08/12/19 1029 |
|---|---|
| BP: | 133/82 |
| Pulse: | 67 |
| Temp: | 36 2 °C (97.2 °F) |

## Physical Exam
General - WDWN male, NAD
Skin - FT V; focused skin exam of R-upper ext/axilla, apocrine/eccrine glands
- right axilla with well healing open surgical site with small area granulation tissue
- tender qub-q nodules adjacent to surgical scar in right axilla and in left groin
- multiple scars (axilla, buttocks, groin) from prior HS surgery

## Assessment/Plan:
**57 yo AA male** with:

### 1. Hidradenitis suppurativa-- stage 2-3
-- recent surgical site right axilla healing well
-- continue doxycycline
-- continue arm exercises


RTC 3 months gen derm


Attending- Orenstein

Tova Rogers, MD, MFA
Emory Dermatology | PGY-3
PIC 28720


## Other Notes

All notes

LIB000065

Harris, Virgil (MRN 10347526) DOB: 01/16/1962                    Encounter Date: 08/12/2019

Addendum Note from Orenstein, Lauren, MD (Dermatology)

## Instructions

Return in about 3 months (around 11/12/2019) for GENERAL DERMATOLOGY CLINIC.

Continue doxycycline 100mg BID
Continue dilute bleach baths
Call if would like referral to urology surgeon for surgery on lesions on lower buttocks OR if would like to schedule into dermatology clinic for surgery of lesions in left axilla
Make appointment at front desk for 3 month dermatology follow up
Printed Avs given, discharge instructions explained with Rx, Patient knowledged with no concern voiced. Please follow up with Dermatology at the front desk for your appointment. For questions or concerns regarding today's visit you may contact the Dermatology Clinic at **(404) 616-1000. Nurse advice line is 404-616-0600.**

### Thank you for choosing Grady!

You may receive a **"Patient Satisfaction Survey"** in the mail asking about your experience you received while you were in the Dermatology Clinic. The survey will list the doctor who you were seen by. Please let us no your thoughts about are service.

We are working diligently to improve the service we provide in are clinic. Your feedback is very important to us. We ask that you take the time to complete the survey and return it as instructed.

### Thank You !!! Helen Fiseha, CMA

After Visit Summary (Printed 8/12/2019)

## Additional Documentation

|  |  |
|---|---|
| | BP 133/82 (Patient Position: Sitting) Pulse 67 Temp 36.2 °C (97.2 °F) (Oral) |
| Flowsheet | Vitals Reassessment |
| Encounter Info | Billing Info, History, Allergies, Detailed Report |

## Media

Scan on 8/12/2019 10:46 AM by Rogers, Tova, MD

## Good To Go!

This visit is ready to be signed.

## Facility Charge Ranges

## Facility Charge Rules

## Addendum Routing History

Orenstein, Lauren, MD routed to Tova Rogers, MD on 8/19/2019

## Previous Visit

**LIB000066**

**Recipient Information**

**To: Courtney Grygiel Karilann**
**Company: Liberty Life Lincoln**
**Fax #: 16034227909**

**Sender Information**

**faxZERO**.com
*send a fax for free*

**From: Virgil A Harris**
**Company: Claim 7223420**
**Email address: kwinci@yahoo.com (from 98.192.111.44)**
**Phone #: 4047815494**
**Sent on: Monday, August 19 2019 at 4:48 PM EDT**

Virgil Harris Claim #7223420

This is not ongoing good faith exchanges of information nor is it new or additional evidence. These conditions are already addressed in the medical files.

The documents are updates of office visits as instructed to submit separately for consideration on appeal.

Thank you for reviewing and considering these continuing follow-up visits.

Virgil Harris.

This fax was sent using the FaxZero.com fax service. Please send your response directly to the sender, not to FaxZero.

FaxZero.com has a zero tolerance policy for abuse and junk faxes. If this fax is spam or abusive, please e-mail support@faxzero.com or send a fax to 855-330-1238, or phone 707-400-6360. Specify fax #25072718. We will add your fax number to the block list.

LIB000067

Harris, Virgil (MRN 10347526) DOB: 01/16/1962        Encounter Date: 08/12/2019

| Date & Time | Provider | Department | Encounter # |
| --- | --- | --- | --- |
| 7/23/2019 12:45 PM | Riepe, Stanley P., MD | GI Center (Gastroenterology-Emory) | 1028793591 |

## Orders Placed

None

## Medication Changes

As of 8/12/2019 10:50 AM

None

## Visit Diagnoses

Hidradenitis suppurativa L73.2
Hidradenitis axillaris L73.2

LIB000068

Harris, Virgil (MRN 10347526) DOB: 01/16/1962                    Encounter Date: 08/19/2019

# Harris, Virgil

MRN: 10347526

**Office Visit** 8/19/2019        Provider: Blake, Victor J., MD (Internal Medicine)
Morehouse HM Internal      Primary diagnosis: Hydradenitis
Medicine Clinic                Reason for Visit: Hypertension

## Progress Notes                              Blake, Victor J., MD (Physician) • General Medicine

### Subjective:

**Patient ID:** Virgil Harris is a 57 y.o. male here for follow up.

Patient has has neck and back pain ever since being hit by a vehicle in October 2016.
He experiences 8-10/10 constant sharp and throbbing pain in the back and neck. The
pain is worse when turning his neck to the side, especially to the left. Pain is also
worse with sitting for long periods, standing up straight, walking for long periods, and
raising his left arm. Pain is worse with turning head to either side, especially the left.
The pain is made better with pain medication, leaning forward and maintaining motion.
The pain shoots down the neck and back all the way down to both feet, especially the
right foot. Patient has had surgery for his hydratinitis on the right arm since his last
visit. He says that he still experiences an 8-10/10  Pinching pain in both axillary areas
of the arm.

### Back Pain
This is a chronic problem. The current episode started more than 1 year ago. The
problem occurs constantly. The problem is unchanged. The pain is present in
the thoracic spine, sacro-iliac, lumbar spine and gluteal. The quality of the pain is
described as shooting and stabbing. The pain radiates to the right foot, right thigh and
right knee. The pain is severe. The pain is the same all the time. The symptoms are
aggravated by bending and twisting. Stiffness is present all day. Associated symptoms
include numbness, paresthesias and tingling. Risk factors include history of
osteoporosis. He has tried chiropractic manipulation and analgesics for the symptoms.

### Neck Pain
This is a chronic problem. The current episode started more than 1 year ago. The
problem occurs constantly. The problem has been unchanged. The pain is associated
with an MVA. The pain is present in the left side and midline. The quality of the pain is
described as cramping, stabbing, burning, aching and shooting. The pain is severe.
The symptoms are aggravated by bending, position and twisting. The pain is same all
the time. Stiffness is present all day. Associated symptoms include numbness and
tingling. He has tried chiropractic manipulation, acetaminophen, oral narcotics and
muscle relaxants for the symptoms. The treatment provided mild relief.

Review of Systems
Constitutional: Negative for chills and fever.
HENT: Negative for congestion.
Respiratory: Negative for chest tightness and shortness of breath.
Cardiovascular: Negative for chest pain, palpitations and leg swelling.
Gastrointestinal: Negative for abdominal pain.

LIB000069

Harris, Virgil (MRN 10347526) DOB: 01/16/1962          Encounter Date: 08/19/2019

Endocrine: Negative for polyphagia.
Genitourinary: Negative for dysuria.
Musculoskeletal: Positive for back pain.
Neurological: Negative for dizziness and headaches.
Psychiatric/Behavioral: Negative for agitation.


## Objective:
### Vitals:

|  | 08/19/19 0922 |
|---|---|
| BP: | 111/75 |
| Pulse: | 69 |
| Resp: | 17 |
| Temp: | 36.4 °C (97.6 °F) |

<u>Physical Exam</u>
Constitutional: He is oriented to person, place, and time. He appears well-developed and well-nourished.
HENT:
Head: Normocephalic.
Eyes: Pupils are equal, round, and reactive to light. Conjunctivae are normal.
Neck: Muscular tenderness present. Neck rigidity **(Reduced range of motion bilaterally secondary to pain)** present.



1: Tenderness to palpation along the neck and back at the spinous process and paraspinous towards the left.

Cardiovascular: Normal rate and regular rhythm. Exam reveals no gallop and no friction rub. No murmur heard.
Pulmonary/Chest: Effort normal. No respiratory distress. He has no wheezes. He has no rales.
Abdominal: Soft. Bowel sounds are normal. There is no tenderness.
**Obese abdomen**
Musculoskeletal: He exhibits no edema.
Neurological: He is alert and oriented to person, place, and time. Gait **(Abnormal crouched gait with small footsteps)** abnormal.
Skin: Skin is warm and dry. Lesion **(Incision on the right axilla is clean dry and intact with no clearr drainage. The left axilla shows contracture and at least two nodules.)** noted.

LIB000070

**Recipient Information**

**To:   Courtney Grygiel Karilann**
**Company: Liberty Life Lincoln**
**Fax #: 16034227909**

**Sender Information**

**From: Virgil A Harris**
**Company: Claim 7223420**
**Email address: kwinci@yahoo.com (from 98.192.111.44)**
**Phone #: 4047815494**
**Sent on: Monday, August 19 2019 at 4:50 PM EDT**

faxZERO.com
*send a fax for free*

Virgil Harris Claim #7223420
This is not ongoing good faith exchanges of information nor is it new or additional evidence. These conditions are already addressed in the medical files.
The documents are updates of office visits as instructed to submit separately for consideration on appeal.
Thank you for reviewing and considering these continuing follow-up visits.

Virgil Harris.

This fax was sent using the FaxZero.com fax service. Please send your response directly to the sender, not to FaxZero.

FaxZero.com has a zero tolerance policy for abuse and junk faxes. If this fax is spam or abusive, please e-mail support@faxzero.com or send a fax to 855-330-1238, or phone 707-400-6360. Specify fax #25072737. We will add your fax number to the block list.

**LIB000071**

Harris, Virgil (MRN 10347526) DOB: 01/16/1962                    Encounter Date: 08/19/2019

**Assessment:**
1. Essential HTN-controlled
2. Hyperlipidemia
3. Hydradenitis
4. Neck and Back pain

**Plan:**
1. Continue with diet and exercise as patient does not want to be on any medications
2. Patient is educated on taking 1,000mg Omega 3 as he does not want to take a statin
3. Continue doxycycline prescribed by Dermatologist
4. Continue to see Orthopedics


VICTOR J. BLAKE, MD


## Instructions

   Return in about 3 months (around 11/19/2019).

ADULT After Visit Summary (Printed 8/19/2019)

## Additional Documentation

| | |
|---|---|
| Vitals: | BP 111/75 Pulse 69 Temp 36.4 °C (97.6 °F) Resp 17 Ht 1.854 m (6' 1") |
| | Wt 127.9 kg (282 lb) ❗ (Abnormal) BMI 37.21 kg/m² BSA 2.57 m² |
| Flowsheets: | Vitals Reassessment, Anthropometrics |
| Encounter Info: | Billing Info, History, Allergies, Detailed Report |

## Good To Go!

This visit is ready to be signed.

## Facility Charge Ranges ⌄

## Facility Charge Rules

## Addendum Routing History

None

## Previous Visit

| Date & Time | Provider | Department | Encounter # |
|---|---|---|---|
| 8/14/2019  1:00 PM | Cassimatis, Dimitri C., MD | Cardiac Center (Adult) | 1030744877 |

Orders Placed

LIB000072

None

## Medication Changes
As of 8/19/2019  9:23 AM

None

## Visit Diagnoses

Hydradenitis L73.2
Chronic low back pain with sciatica, sciatica laterality unspecified, unspecified back pain laterality M54.40, G89.29
Cervical radiculopathy M54.12

LIB000073

# ICP Memo

| Customer Name | Claimant Name | Claim Number |
|---|---|---|
| ROBERT HALF INTERNATIONAL INC. | VIRGIL HARRIS | 7223420 |

| | | | |
|---|---|---|---|
| **Referred By:** | Courtney Grygiel | **Claimant DOB:** | 01/16/1962 |
| **Referral Date:** | 08/14/2019 | **Job Title:** | SALARIED PROFESSIONAL-ACCOUNTING CONSULTANT |
| **Due Date:** | 08/23/2019 | **Medical/ Surgical Condition:** | Chronic musculoskeletal pain |
| **Referral Type:** | Addendum | **Disability Occupational Type:** | |
| **Reason for Priority Handling:** | | **Product Type:** | LTD |
| **Other Considerations** | | **LDW:** | 10/14/2016 |
| **Report Date:** | 08/16/2019 | **DOD:** | 10/15/2016 |
| **Physical Demands:** | | **BBD:** | 04/13/2017 |
| **Non-Medical Issue:** | No | **Non-Medical Issue Details:** | |

  This is an addendum to the review submitted on 7/23/19, to address concerns raised about diagnostic tests and the question of whether a functional capacity evaluation or independent medical evaluation would be helpful in clarifying functional status. The claimant has submitted several typewritten pages in which he disagrees with statements in the review, without providing any clear evidence to disprove the validity of the statements. The claimant's appeal repeatedly references the fact that his physicians have said he is disabled, but doesn't address the facts in the review that call those opinions into serious question. The claimant's statement repeatedly says that he cannot sit longer than 30 minutes without excruciating pain, and cannot remain in one position for longer than 10 minutes without severe pain. The claimant's self-made video of his recent outpatient axillary skin surgery shows him sitting still and smiling, semi-recumbent, a position he remained in for far longer than 10 minutes. There is no objective evidence in the available records that his lumbar condition has substantially worsened since he was working full-time. The claimant reported 10/10 low back pain during the summer of 2016 after golfing, which continued for more than a month. And the claimant continued to work. This is the same severity of pain he has reported since the motor vehicle collision in October 2016. His physical exams have been largely the same since the collision as they were before, with the exception of some inconsistent findings of lower extremity sensory changes and inconsistent findings of pain with hip flexion/knee extension. These minor and questionable changes do not represent a fundamental deterioration that should be expected to render an individual totally disabled.

  The available MRI results have not substantially changed since before he stopped working. The chiropractic IME emphasized that the 2016 MRI showed 8mm more herniation of the L5-S1 disc than what was seen on an MRI done in 2012. However, as noted in the review, disc herniations are common in the general population, and are often asymptomatic. An MRI finding alone does not constitute clinical evidence of impairment. The available records do not show a consistent and clinically important neurologic deficit, and the claimant's self-reported golfing further demonstrates the absence of such a deficit. As noted in the review, annular tears of the intervertebral discs have been shown to be present in up to 80% of the population. They are not, by themselves, any sort of proof of disability. The radiologist that read the 10/7/16 MRI stated in the results that the annular

**LIB000074**

tears seen may have been aggravated by the reported injury, and may cause pain. These are not objective results, but rather conjecture on the part of the radiologist, in an apparent attempt to tie the finding to the claimant's history. But published medical literature shows these findings are common and usually asymptomatic. Therefore the radiologist's statement represents a possible connection that research shows is unlikely. The claimant's statement questions whether or not an MRI of the cervical spine was done in 2015, but review of the records showed that one was done on 2/17/15, showing degenerative changes. Multiple published medical guidelines definitively state that the MRI studies obtained after the claimant's collision should not have been done, because their findings typically lead to harmful misconceptions and treatments. Therefore disability arguments based on such inappropriate studies are fundamentally unsound. Some of these guidelines are cited in the review.

The claimant's statement asks what objective information forms the basis for the review's recommendation of sitting for no longer than 1 hour without an opportunity to stand. The purpose of a peer review is to provide reasonable recommendations based upon available evidence. Individual tolerance of subjective symptoms is not an objective, scientific matter, as clearly pointed out by the American College of Occupational and Environmental Medicine (ACOEM) in the 2017 position statement referenced in the review. The same organization published a position statement in 2006 that outlined the process of developing recommendations for mandatory activity restrictions and reasonable functional limitations in this setting. It explains that a physician "observes the worker's behavior…performs a physical examination and then mentally projects those answers and observations into likely workplace activities. Physician uses his or her own knowledge of workplaces and jobs, then thinks about potential situations that might pose a risk to the health/safety of the worker or others and writes medical restrictions to avoid them… The physician makes a suggestion based on his or her previous life and practice experience." An example of such a suggestion is that if an individual finds it hard to sit for prolonged periods, then one solution is a desk that can be raised or lowered to allow one to stand rather than sit as needed (similar to the changes in position that occur during a game of golf). In a peer review, documented observations of patient behavior and physical exams are used in conjunction with diagnostic test results to determine whether sufficient evidence has been presented to justify specific restrictions and limitations, and then suggest what restrictions and limitations are reasonable based on the available objective information. The same 2006 position statement defines "medically unnecessary" disability determinations as those in which "absence from work is 'excused' and benefits are generally awarded based on a physician's decision confirming that a medical condition exists. This implies that a diagnosis creates disability. However, from a strictly medical point of view, people can generally work at something productive as soon as there is no specific medical condition [within which] work is medically contraindicated (poses a specific hazard to the public, coworkers, or to the worker personally, ie, risks damage to tissues or delays healing." (American College of Occupational and Environmental Medicine. Preventing Needless Work Disability by Helping People Stay Employed. Journal of Occupational and Environmental Medicine 48:9, September 2006, 972-987.)

The claimant's appeal repeatedly points out that his physicians have said he should not work. However, in the 2017 guideline cited in the review, ACOEM states that "60% to 80% of lost workdays attributed to medical conditions in the United States involve time off from work that was not really required by the condition itself," and so the simple existence of physician notes excusing a patient from work does not mean the rationale is valid, and most of the time, it is not. It further states that "patient self-reporting is not a reliable method of making [a] determination of…limitations due to pain. …It is more common for patients to underestimate than overestimate their capabilities... Some patients overlimit themselves based on excessive caution, clinically insignificant symptoms, inaccurate beliefs, or a desire for secondary gain. Thus, limitations should not necessarily reflect what patients are actually doing, but should guide them and their employers toward what they can safely be doing… Restrictions for [chronic] pain, numbness, and fatigue…are often not medically appropriate… It can be helpful to educate patients about the distinction

**LIB000075**

between hurt and harm. [Activity] tolerance is often less than capacity or current ability, making it the limiting factor in return to work in many situations. However, tolerance is not scientifically verifiable or measureable. …Millions of Americans work with some degree of discomfort, as it is part of everyday life, especially aging. …People who must live with chronic pain often report that exercise, distraction, and staying busy improve their quality of life. …Resumption of activity sometimes means that patients will return to work while they still have some symptoms… Many patients will need education and reassurance if they are to overcome the common misconception that rest and avoidance of activity are beneficial. …Resuming usual activities while symptoms continue to resolve is an important part of the rehabilitation process."

The value of a functional capacity evaluation or independent medical evaluation is questionable. Published research has shown that patients whose physicians returned them to work despite reservations expressed in a functional capacity evaluation actually had better outcomes than those whose physicians restricted their activity based on the findings of the FCE. This is understandable since often the limitations outlined in an FCE are based on subjective tolerance expressed by the patient, and don't necessarily reflect what the patient can safely do. The same pitfalls can be seen with an IME, particularly since the IME doesn't usually conduct as thorough a review of the medical records as can be accomplished in a peer review. However, if an IME is obtained, an occupational medicine specialist would be preferred in cases involving symptoms that are said to interfere with specific occupational duties. Multiple published medical guidelines affirm that continuing to remain occupationally productive should be expected of those that have low back disorders, such as the following:

Talmage JB, Melhorn JM, Hyman MH, Eds. AMA Guides to the Evaluation of Work Ability and Return to Work, 2nd ed. Chicago: AMA Press, 2011. 162-176.

Reed P, The Medical Disability Advisor, Workplace Guidelines for Disability Duration, 5th Edition, 2005.

American College of Occupational and Environmental Medicine practice guideline "Low Back Disorders" updated 3/7/19. https://new.mdguidelines.com/acoem/disorders/low-back-disorders

UpToDate monograph "Occupational low back pain: Evaluation and management" updated 11/3/18. https://www.uptodate.com/contents/occupational-low-back-pain-evaluation-and-management


The claimant's treatment has not changed in more than 2 years. Multiple published guidelines affirm that after standard treatments prove unsuccessful, individuals that continue to report pain that interferes with daily activities should be referred to a multidisciplinary functional restoration program, which addresses pain psychology, pain tolerance, pain avoidance, etc. This has not been done in the claimant's case. The lack of escalation of treatment strongly suggests that either treatment is inadequate and outside the standard of care, or else the claimant's condition is not so severe as to preclude all sustained productive activity.


David Carl Houghton, MD, FACP
Consulting physician, Lincoln Financial
602-626-6022 (direct voice)

**LIB000076**

Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7213
London, KY 40742-7213


MR. VIRGIL HARRIS
1604 PINE TREE TRAIL
COLLEGE PARK GA 30349

**LIB000077**



Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7213
London, KY 40742-7213
Phone No.: (888) 437-7611
Secure Fax No.: (603) 422-7909

August 14, 2019

Mr. Virgil A. Harris
1604 PINE TREE TRAIL
COLLEGE PARK, GA 30349

RE:     Long Term Disability (LTD) Benefits
        Robert Half International Inc.
        Claim #: 7223420

Dear Mr. Virgil Harris:

This letter is to acknowledge our receipt of your August 2, 2019 letter and to advise you of the status of your LTD appeal.

<u>Appeal status:</u>

I spoke with you on July 10, 2019 regarding the status of your appeal. In the July 10, 2019 phone call you were advised that you have one opportunity to appeal the denial of your benefits and given the opportunity to submit any additional medical information consideration with your appeal review. More specifically, records pertaining to your hidradentitis surgery on June 24, 2019 and any other pertinent medical records. You indicated that you do not wish to submit any additional medical information.

We notified you by our letter dated July 10, 2019 that under the Employee Retirement Income Security Act of 1974 (ERISA), an appeal determination should be rendered within 45 days of receipt of the appeal, unless there are special circumstances which require a delay in making an appeal determination. If additional time is needed, ERISA allows for a 45-day extension to evaluate and render an appeal decision. In the July 10, 2019 letter you were advised that your file had been referred for further medical reviews.

We notified you by our letter dated July 24, 2019 we required additional time to render a determination on this LTD appeal. Under the Employee Retirement Income Security Act of 1974 (ERISA), an appeal determination should be rendered within 45 days of receipt of the appeal, unless there are special circumstances which require a delay in making an appeal determination. If additional time is needed, ERISA allows for a 45-day extension to evaluate and render an appeal decision. We advised you of your opportunity to review and comment on new/additional evidence that has been received during our appeal review.

**LIB000078**

I spoke with you on July 26, 2019 and explained to you that during the appeal review we had conducted an additional peer medical reviews and vocational review. We provided you with copies of the peer medical reviews and the vocational report.

On August 6, 2019 we received your written response in which you state you were providing a summary of your position and response to the independent reviews. A portion of your response note that you have provided overwhelming medical evidence and proof that you are disabled from all occupations, including sedentary work based on the policy definitions, appellate court rulings, and judicial scrutiny, confirmed in substance by all of your own independent reviewers.

I spoke with you on August 13, 2019 and advised you that your August 2, 2019 letter (received on August 6, 2019) was being reviewed and that your comments and opinion regarding the peer reports had been remitted to Dr. Houghton and Dr. Natarajan to review and comment an addendum to the original reports.

Upon a response from Dr. Houghton and Dr. Natarajan, we will advise you of the status of your appeal.

Definition of Disability:

The Robert Half International Inc. Group Disability Income policy defines disability as:

> "*Disability*" or "*Disabled*" *means:*
>
> i. *that during the Elimination Period and the next 24 months of Disability the Covered Person, as a result of Injury or Sickness, is unable to perform with reasonable continuity the Substantial and Material Acts necessary to pursue his Own Occupation in the usual and customary way; and*
>
> ii. *thereafter, the Covered Person is unable to perform, with reasonable continuity, the Substantial and Material Acts of any occupation, meaning that as a result of sickness or injury the Covered Person is not able to engage with reasonable continuity in any occupation in which he could reasonably be expected to perform satisfactorily in light of his age, education, training, experience, station in life, and physical and mental capacity.*

If you have any questions regarding this matter, please contact me.

Sincerely,

Courtney Grygiel
Appeals Consultant
Phone No.: (888) 437-7611 Ext. 13301
Secure Fax No.: (603) 422-7909

LIB000079

**Nolan, Sandra**

| | |
|---|---|
| **From:** | LifeCompliance |
| **Sent:** | Thursday, August 08, 2019 12:05 PM |
| **To:** | gpcomplaints |
| **Subject:** | FW: Existing CDI Complaint HCB-8213935  LIBERTY LIFE ASSURANCE COMPANY OF BOSTON CRM:0001381 |

The following is a follow up notification from the CA DOI on Virgil Harris, T/C #2019006239.

LifeCompliance

**From:** CCS-donotreply, ccs <CCS-donotreply@insurance.ca.gov>
**Sent:** Wednesday, August 07, 2019 5:52 PM
**To:** LifeCompliance <LifeCompliance@lfg.com>
**Subject:** Existing CDI Complaint HCB-8213935  LIBERTY LIFE ASSURANCE COMPANY OF BOSTON CRM:0001381

***This email is from an external source. Only open links and attachments from a Trusted Sender.***

A new document is available for review on an open complaint.

Please log in to access the documents at
'>https://cdiapps.insurance.ca.gov/LP/complaintdetails/?id=b76da985-a3ac-e911-81ac-9f783e96fa01

If you have any questions or need assistance, please call the compliance officer assigned to the case.

Thank you,

Consumer Services Division
California Department of Insurance

*CONFIDENTIALITY NOTICE: This communication may contain confidential and/or legally privileged information. It is solely for the use of the intended recipient(s). Unauthorized interception, review, use, or disclosure is prohibited and may violate applicable laws including the Electronic Communications Privacy Act. If you are not the intended recipient, please contact the sender and destroy all copies of the communication.*

**LIB000080**

August 2, 2019

Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7213
London, KY 40742-7213
Attn: Karilann Sneirson, Karen McKenzie, Courtney Grygiel
From: Virgil Harris Claim #7223420

Dear all,

Thank you for your letter dated July 26, 2019 and July 24, 2019, and the copies of the independent medical reviews. Your letter indicates I can provide a response to these reviews, which you will consider in "making a decision", on my appeal. Therefore, this is my response!
Although I have read the reviews, and provided a multiple-page response to the independent reviews, (attached as notes for your careful review), It is my contention to provide a summary of my position and response to those independent reviews, here, as a cover letter for those notes.

But first, I would like to again, ask that you please put my check in the mail today. As we discussed several times, I had hidradenitis surgery on June 24, 2019 and your delays have created a hardship to my serious medical needs. Which makes me prepare this response in haste, rather than timely. You have no legitimate basis for the delay. I have provided overwhelming medical evidence and proof, that I am disabled from all occupations, including sedentary work based on the policy definitions, appellate court rulings, and judicial scrutiny, confirmed in substance by all of your own independent reviewers.

In direct response to the independent reviews.
As a basis for concluding; "the medical records however do not contain sufficient evidence to support restrictions of "no workability" … Your reviewer Sheila only reviewed the 2016 and 2017 MRIs and did not review the May 2018 MRI or other relative medical records that were evidently available in the medical files and thereby admits, since 2017, she didn't review any
"updated advanced imaging to evaluate the current state of the canal, discs, or nerve roots."
Her oversight led her to incorrectly assess that these conditions can improve over time and "appears to have done so" with no further neuromotor findings found on recent physical exams."
(Contrary to the 2nd reviewer David's note that "in May 2018… another MRI was done which showed no significant changes compared to October 2016" … and the actual MRI Report in the medical file.)
Because she based her conclusions on these desired updates. And did not review the medical records available to her, her review should rightfully be dismissed as unreliable in the appeal review process.

David's diatribe of insults, insinuations, and defamations should be reduced to reflect his "relative" contradictory (to the medical evidence) and unsubstantiated conclusion that the qualifying listed permanent restriction should be modified to "No Sitting longer than 1 hour without opportunity to stand". As opposed to… "Unable to Sit for more than 30 minutes or sit still for more than 10 minutes without severe back, neck, leg, knee, and hidradenitis pain". And, David presents this conclusion without any medical evidence or documentation to support it. Yet he states… "and there is substantial evidence to support such ability". Then he points to his review conclusion in the 3rd paragraph; "There is no medical basis on which to restrict a patient's participation in sedentary productive activity because of chronic neck and back pain. This is an issue of personal tolerance and not one of objective medical science."

LIB000081

Notably, the initial reviewer Howard April 2019 defined their modified restriction as "sitting up to 40 minutes continually for a total of up to 8 hours per day with the ability to alter the position." And, "at least have the capacity to function at a sedentary level with the ability to position change". To which, I appealed and was expecting the appeal review to address. Instead, the appeal review attempts to introduce and elicit an entirely new set of appeal criteria for which unexpected consideration must be given. And these reviews neglect to address the issue on appeal... any medical evidence to support their position of capacity to function at a sedentary level with positional change. Or support their modified change of sitting restrictions from factual 10-30 minutes, to an unexplained threshold of 40-60 minutes.

My diminished capacity and functional impairment have independently been verified by every physician, including the reviewers. The only discord seems to be How I can Sit and How long can I sit before the pain becomes unbearable.

How long I can sit is apparently the criteria used to determine whether sedentary work is possible as guided by authoritative pronouncements and rulings. And the concept of positional change becomes secondary to the qualifier of meeting that criteria. To defeat this criterion is to avoid the policy obligations entirely or to a substantial degree. The facts are; medical evidence demonstrates that I can't do sedentary work because it requires sitting, with reasonable continuity, for periods longer than I can withstand, as documented in the medical files. Considering the time required to sit, focus, and produce reports, schedules, documents, analysis and other Accounting/Budget/Business Intelligence and other occupational related Sedentary Job duties. While experiencing the severe back, leg, neck, and knee pain. I tried this sitting during those 10days I returned to the job in 2016. I was and still am today, in pain within 10 minutes of sitting, with positional change. I could not return to work due to the pains.

In conclusion, the restrictions listed by my attending physicians were factually based on actual results of documented medical examinations, medical evaluations, personal tolerance and experience, direct observations, tests of functional capacity, and direct testimony, and it is supported by direct medical evidence gathered through MRI's, X-Rays, I.R.E. and F.C.E. It's not conjectures or subjective information.

The medical evidence demonstrates, supports and confirms with medical certainty, that permanently; "I cannot sit for longer than 30 minutes at a time (or...) sit still, with "positional change" (Squirming in pain), for longer than 10 minutes at a time, without experiencing severe back pain, numbness in the hips, neck, thighs, legs and toes, and sharp sciatica pain. And sitting more than 10 minutes causes my Osteoarthritis in my right knee to flare in pain. When I do sit, I am compelled to sitting gingerly most of the time because of my Hidradenitis Suppurativa flareups and cannot twist around or squirm on my buttocks for "positional change" due to the pains associated with nodules and constant abscesses." The courts have upheld that claimants who can't sit for 30 minutes are disabled from all occupations.

There has been no "identified medical evidence" to support, or respond to, from any 1 of your reviewer's assumption that I can sit up to 40 minutes or 1 hour, with position change, with the capacity to function, with reasonable continuity, to perform the substantial and material duties of any occupation, including sedentary jobs. But there is overwhelming evidence to the contrary, that I cannot sit more than 30 minutes or sit still for 10 minutes with positional change without severe pain.

**LIB000082**

The reviewer attempts to use as hearsay evidence, what he describes as a result of a field investigation; A Facebook page shows a very active social life that includes going to restaurants, clubs, Still DJing, dancing and being morbidly obese and recreational golfing activities. He also attempts to use hearsay evidence in a medical dispute about an agreed surgical outcome, as evidence that there is a Tendency to overestimate the severity of his medical condition. None of which, provides medical evidence to support sitting up to 1 hour. Or demonstrates a capacity to function at a sedentary level with positional change. With reasonable continuity or performing the material and substantial acts of any occupation. For the record, I don't dance, I haven't DJ'd or worked as a DJ for years, anywhere. And my active social life is down over 80% since the accident. (I used to close the clubs, being the last customer to leave for 40+ yrs. Since the accident I can't tolerate social life more than a few minutes at a time.)

Your July 26, 2019 letter reveals another modification to the dynamics of this direct appeal. It states...

The policy states:
...
*"Material and Substantial Duties", with respect to Long Term Disability, means responsibilities that are normally required to perform the Covered Person's Own Occupation, or any other occupation, and cannot be reasonably eliminated or modified."*

Vs.

*"Substantial and Material Acts of any occupation, meaning that as a result of sickness or injury the covered Person is not able to engage with reasonable continuity in any occupation in which he could reasonably be expected to perform satisfactorily in light of his age, education, training, experience, station in life, and physical and mental capacity."*

This is a different standard and definition from the policy documents I received from my employer and currently possess, which are consistent with the language used in your previous letters throughout every correspondence including the denial letter dated April 30, 2019 from which this appeal is filed.

Already, you've gone from... You meet the definition of disabled to You are not disabled. From sitting 40 minutes to sitting 1 hour to just "change positions as needed for comfort to accommodate neck and back pain. From being morbidly obese to no longer obese. From a "minor automobile collision" to a "Moderate motor vehicle collision". From "improving" without surgery to "back pain that had been present for 2-4 yrs." From sitting comfortable with no signs of distress, to hunched over and shuffling in his gait due to pain. From having no concerns about hidradenitis and wanting no more treatments to having extensive Surgery. From failure of comprehensive rehab to active social life. From restricting light activity in patients with chronic back pain is harmful, to the claimant's self-documented recreational activity suggests that his condition is not as severe as he has indicated. And opioid use coincided with leaving a sedentary desk job. When the opioid use began several months after the work stopped. Please stop moving the goal posts or trying to have "ahh-ha" moments against medical evidence

The standard and obligation of providing "Proof of Disability" has been met. Please pay the claim and put the check in the mail after overturning this denial of benefits on appeal, without further delay.

Sufferingly yours,

Virgil Harris Claim #7223420

I don't want to spend hours getting into a rebuttal of a seemingly biased diatribe, rant, or medical declamation fraught with and full of contradictions, overlooked evidence, and meritless personal attacks that conflicts with the facts, in the conclusions made by the 2nd Reviewers.

Except that this language, in each of the reviewer's report, is designed to defeat approval of the benefits entitled to me under the policy provisions. Please expand, explain or define the following;

The 1st reviewer indicated their review was not a complete review... citing:

"The medical records; however, do not contain sufficient evidence to support restrictions of "no workability". The available medical records contain MRIs of the C- and L-spine from 2016 and 2017 closer in time to the motor vehicle accident; however, there does not appear to be any updated advanced imaging to evaluate the current state of the canal, discs, or nerve roots. These prior MRIs evidenced cervical and lumbar disc herniations; however, given the amount of time that has passed since the original date of imaging, it is possible for disc resorption and remodeling to occur around the previous herniations. Cervical and lumbar radiculopathy are stated as diagnoses within the available medical records; however, there does not appear to be any electrodiagnostic studies to evaluate and confirm ongoing radiculopathy. This condition, too, can improve over time and appears to have done so with no further neuromotor findings found on recent physical exams (normal strength)."

However, the 2nd reviewer documents;
"In May 2018 the pain management physician found decreased subjective sensation on the right in the L4-S1 dermatomes, along with pain when the right hip was flexed and the knee extended (the same position used for driving). So, another MRI was done which showed no significant changes compared to October 2016."

AND, Even the "footnotes" to your review report indicates;
"5/30/2018 Jose Mathew, MD..., ... Get new MRI"
"6/11/18 MRI L spine: Diffuse central canal narrowing but no significant stenosis. Moderate foraminal stenosis L5-S1 bilateral. Disc herniation may irritate S1 nerve root R>L, L4-5 L foraminal stenosis due to disc protrusion and bony changes, L4 nerve root may be irritated"

Therefore, the opinion, analysis, review report, and conclusions cannot be used to make a decision on the appeal of my denial. There were subsequent adequate medical imaging records available.

1st reviewer's restriction notes of;

"ability to change positions as needed for comfort to accommodate neck and back pain" and, "If stationed at a workstation, ergonomic set up will be required including screens at eye-level and avoidance of static positioning with head or neck in extremes of extension, flexion, or rotation"

(In particular, whether this restriction is an unconscionable directive/expectation to stand at an ergonomic workstation set up for 10 minutes, then sit for 10 minutes, then stand back up for 10 minutes, then sit back down for 10 minutes, repetitively throughout an 8-hour day for 5 days a week....)

Notably; Dr Feeman documented that I also need to lie down for 30 minutes 4 times a day. Currently, due to the pains and relief sought, I lie down for about 17 to 18 hours most days because of the relief given. Then, on most days, I force myself to get up and get active for weight loss and functional capacity

LIB000084

increase through recreational, leisure, passive exercise activity for about 2-3 hours (no more than the equivalence of just being awoke and needing to move), recognizing I am "Morbidly Obese" and was advised to lose weight for any future surgical relief options, despite having an very reduced active social life, frequently going to restaurants and music clubs (primarily to eat as I am obese) passively and leisurely golfing to improve functional capacity and range of motion (although swimming was also medically recommended but I don't swim), and dancing by nodding my head in a yes motion in a video or, taking a 13 second video to post on social media of my less than 1 hour surgery after the doctors had to place several pillows under my back for support and assist me on and off the table due to severe back pain. (pillows not shown on the 13 second video.)

the 2nd reviewer's note of;

"no sitting longer than 1 hour without opportunity to stand"

(Considering the 2nd reviewer's statement in his review report;
"There is no medical basis on which to restrict a patient's participation in sedentary productive activity because of chronic neck and back pain. This is an issue of personal tolerance, and not one of objective medical science."
Please refer to any relied upon objective medical science, note, document, file, evidence, field investigation, exam, or any reviewed support for Your listed restriction of;
            "no sitting longer than 1 hour without opportunity to stand"
and how your conclusion defeats the medical certainty demonstrated and documented in the reviewed files that I cannot sit for more than 30 minutes or sit still for more than 10 minutes without severe back, leg and knee pain, or if there is any other direct evidence that demonstrates with medical certainty that I can sit for an entire hour at a time, without severe back, leg, neck, knee and hidradenitis pain.)

In summary, the restrictions listed by my attending physicians were factually based on actual results of documented medical examinations, medical evaluations, personal tolerance, direct observations, tests of functional capacity, and direct testimony, and supported by direct medical evidence gathered through MRI's, X-Rays, I.R.E. and F.C.E. It's not conjectures or subjective information. The evidence demonstrates, supports and confirms with medical certainty the restrictions that

"I cannot sit for longer than 30 minutes at a time (or...) sit still, with "positional change" (Squirming in pain), for longer than 10 minutes at a time, without experiencing severe back pain, numbness in the hips, thighs, legs and toes, and sharp sciatica pain. And sitting more than 10 minutes causes my Osteoarthritis in my right knee to flare in pain.
When I do sit, I am compelled to sitting gingerly because of my Hidradenitis Suppurativa flareups and cannot twist around or squirm on my buttocks for "positional change" due to the pains associated with nodules and constant abscesses."

Therefore, I cannot sit for more than 10 minutes with the ability to change positions, or more than 30 minutes at a time without experiencing severe back, neck, leg, knee, and hidradenitis pain. Even while driving. Though I don't drive 8 hours a day / 5 days a week, or drive 1 hour at a time, with reasonable or daily continuity.

These actual results are based on direct personal efforts and experiences. You say (the opposite was true in this case: opioid use coincided with leaving a sedentary job) then you say "the claimant stopped

LIB000085

participating in his sedentary job 10 days after the collision" Yet, opioid medication wasn't prescribed until months later than the accident, long after physical therapy, steroid injections, and functional capacity exercises failed to improve the pain.

During those 10 days, Jack Geiss, Controller, Ballard Designs, witnessed, commented, and thanked me for trying to return to work, despite being hunched over, unable to sit still for 10 minutes with positional change at a work desk in a secluded office, or get to work on time as previously done, constantly moaning in pain throughout those 10 days, and showing obvious signs of distress and pain that were not present during my working months/years, prior to the accident, in an effort to complete the Monthly Accounting/Budgeting Closing process as we did in previous months. Your field investigation should have revealed or focused on this. Nothing in my condition has changed since this experience.

I couldn't work because of the time required to sit, focus, and produce reports, schedules, documents, analysis and other Accounting/Budget/Business Intelligence and other occupational related duties. While experiencing the severe back, leg, neck, and knee pain. Although I tried during those 10 days.

It was also reported to and observed by the managers of Robert Half on several occasions thereafter with commentary. My managers at Robert Half considered my work skills to be above average with occupational dedication. Never one of trying to get out of work.

Please provide your medical evidence leading to your listed restriction of "sitting no longer than 1 hour..." so I can review and respond substantively

I am requesting clarification from the 2nd reviewer on several of these contradictions and oversights in his report, so I may properly submit my timely response.

What Cervical MRI in 2015 is he referring to? Who ordered it? Who conducted it?

It appears from the language, that this reviewer is attempting to force-fit a determined, criteria. Again, the medical files and my direct testimony, subjective or objective, is:

"I cannot sit for longer than 30 minutes at a time (or...) sit still, with "positional change" (Squirming in pain), for longer than 10 minutes at a time, without experiencing severe back pain, numbness in the hips, thighs, legs and toes, and sharp sciatica pain. And sitting more than 10 minutes causes my Osteoarthritis in my right knee to flare in pain.
When I do sit, I am compelled to sitting gingerly because of my Hidradenitis Suppurativa flareups and cannot twist around or squirm on my buttocks for "positional change" due to the pains associated with nodules and constant abscesses."

The claimant had been working successfully full-time for years despite chronic neck and back pain then after a minor automobile collision was deemed totally disabled. Then you say Nevertheless he continued working. He was in another moderate motor vehicle collision in October 2016. Then you say in July 2016 he also continued to work despite the pain he rated as 10/10 and you say "in May 2017, stated that the claimant was unable to perform any of his sedentary job duties due to back pain" and you injected from the files; "THAT HAD BEEN PRESENT FOR 2-4 YEARS.... Contrary to reality and therefore the physiatrist's opinion that the claimant is disabled for any occupation is not supported by objective fact. THEN, you say in April 2017 "Despite the FACT that the claimant had improved without surgery after the disc herniation identified by the surgeon in 2013." The surgeon again recommended lumbar fusion.

LIB000086

You say there is much published evidence that restricting light activity in patients with chronic back pain is harmful rather than helpful. You say what is known from medical research avoiding light work does not improve quality of life for people with chronic back pain or other musculoskeletal pain. Rather it worsens it. Likely because he was staying home from work and therefore had greater access to excess calories, and less physical activity. Then you say the claimant's self -documented recreational activity suggests that his condition is not as severe as he has indicated to his clinicians. Then you say the claimant's symptoms and use of medical treatments have steadily increased since he stopped working.

You say the nature and degree of degenerative spinal abnormalities cannot predict the nature or degree of symptoms. You state the medical basis of chronic neck and back pain that restrict a patient's participation in sedentary productive activity is an issue of personal tolerance, and not one of objective medical science…. Yet "you" concluded on your own, without examination or medical evidence to support your position, that I can "sit no longer than 1 hour without the opportunity to stand". And you say even though the MRI findings were greater in the cervical spine, it's the low back that has been consistently more symptomatic and neck pain is not much affected by obesity. (Note; it is the patient's responsibility if he is hurt to seek a disability evaluation or functional capacity exam to support his documentation to his employer as to why he is not at work, if it is due to injury… Not an issue or "ah-ha" moment)

You say in September 2016 at a dermatology visit (1 month before the Accident) he was also noted to appear comfortable sitting in a chair with no visible signs of distress after having hidradenitis surgery to remove some more painful abscesses in the groin. Recognizing that the disease is always active, chronic, painfully requiring surgery and incurable. You say after Oct 2016 accident the pain averaged 10/10 maximum despite walking and sitting without any visible difficulty (I'm guessing in Sept 2016 at the dermatology visit before the accident.) and driving to multiple appointments. But the surgeon, 2 months after the accident Dec 2016, noted on exam documented guarded movement of the neck and lower back with pain. You say when the claimant saw the physiatrist, he appeared distressed and walked with a limp. Are you confirming by agreeing that the records demonstrate in September 2016 he was not in pain until after the accident of October 2016?

You say in Oct 2016 the claimant endorsed back pain at the scene. But refused medical attention. You recognize that the annular tears were present and can cause pain. You say inexplicably 2 months after the collision which required no immediate medical attention. But you don't mention Northside Hospital that night with X-Rays and exams.

You say aggravation of pre-existing disc herniation which had been present for at least 3 years and despite which the claimant successfully worked full-time and claimant had worked full time for years.

Even though you've cherry picked medical evidence throughout my files to facilitate your determination to deny my rights to benefits under this plan, you have still managed to acknowledge with medically reasonable certainty, that my injuries as a result of the 2016 accident are significant, well documented, fully substantiated and supported by the medical evidence.

As it relates to the discrepancies relative to the 2013 auto accident injuries, you should have in your possession the IME report from Dr. Kelly of Peachtree Orthopedics where he evaluated my impairment rating at a mere 10% total impairment at that time as a result of the injuries sustained in the 2013

LIB000087

accident. That impairment rating is at 39% post 2016 accident. And you agree with his assessment that surgical relief would benefit my painful condition

You say I thought the doctor should be arrested because I thought the abscesses were still present. And I did.
5 minutes before he put me to sleep, I circled the painful abscesses and he agreed that I would not have stitches but, heal via wet to dry wound care, as I did in the 2012 and 2014 surgeries. When I woke up, the abscesses were still very visible and I had "staple" between my thighs and even penetrating the painful nodules left unremoved, as documented with photos and reviews such as the one mentioned in your 5/16/16 Bryant McIver note; "Presents today with a letter…" when I sought outside medical correction. I was walking with hard surgical staples between my morbidly obese thighs and as they fell off, I was in more pain than before the surgery.

And, your footnotes on 6/6/16 Bryant McIver MD, shows 2 months after surgery… Bilateral groin hidradenitis "Flare". Bilateral tender groin nodules quarter size residual wound f/u 2wks reassess for skin grafting. And, 7/18/16 Seema P, still with active axillary and gluteal draining nodules and sinus tracts. Long discussion that there is no cure for hidradenitis but that our goal is control.
8/31/16 open areas of hidradenitis in perineum. Also, it was the dermatologist that informed me, hidradenitis is probably caused by environmental sources, such as the foods we eat, the water we drink, and other factors, while explaining that contributors to outbreaks include weather, smoking, etc.

You talk extensively about the April 19, 2016 hidradenitis surgery removing diseased skin in the groin and the disagreements we had about the expected vs actual outcomes. And you concluded as plaintiff, judge and jury that "this episode suggests that the claimant has a tendency to overestimate the severity of his medical condition." Which to me rises to the level of defamation of character because you report this in an appeal document. And it is not fact based or a true reflection of what the medical documents show, actually happened in 2016. But that is an argument for another setting.

However, you never mentioned the successful, uneventful hidradenitis surgical experiences in 2010, 2012, 2014, 2019 as character references. Or any other evidence to reflect or support a tendency to overestimate the severity of my medical condition. Nor did you mention the non-relative medical events with any other provider regarding any other existing condition. Nothing to support your "Tendency" reference. Neither does your review reveal that these same doctors prescribed Prednisone, Cipro, and a host of other retracted medicines and treatments over these same years. To include in 2016 a request to start me on Humira. But at this 2019 Surgery, they said it doesn't work and when I researched it online, it had awful reviews. So please don't lend too much attention to discussions between Dr's and Patients.

**LIB000088**

## DEPARTMENT OF INSURANCE
CONSUMER SERVICES AND MARKET CONDUCT BRANCH
HEALTH CLAIMS BUREAU
300 SOUTH SPRING STREET
LOS ANGELES, CA 90013
www.insurance.ca.gov

August 07, 2019


Eileen Sandelli
Director, Compliance
Liberty Life Assurance Company of Boston
P.O. Box 21008
Greensboro, NC 27420-1008



Our File Number: HCB-8213935


Regarding:      Virgil Harris
                1604 Pine Tree Trail
                College Park, GA 30349

Claim Number: 7223420
Date of Loss: 10/03/2016

Dear Eileen Sandelli:

We understand the insured has responded to your letter dated July 26, 2019.  Please review the attached letter and provide the Department with a copy of your written response to the insured addressing <u>all</u> of his concerns.

Your response is anticipated within twenty one (21) days from receipt of this notice.

Sincerely,

*Jean Pham*

Senior Insurance Compliance Officer
Phone:  213-346-6628
Email:  Jean.Pham@insurance.ca.gov


Please refer to our file number when responding.

**LIB000089**

August 2, 2019

Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7213
London, KY 40742-7213
Attn: Karilann Sneirson, Karen McKenzie, Courtney Grygiel
From: Virgil Harris Claim #7223420

Dear all,

Thank you for your letter dated July 26, 2019 and July 24, 2019, and the copies of the independent medical reviews. Your letter indicates I can provide a response to these reviews, which you will consider in "making a decision", on my appeal. Therefore, this is my response!
Although I have read the reviews, and provided a multiple-page response to the independent reviews, (attached as notes for your careful review), It is my contention to provide a summary of my position and response to those independent reviews, here, as a cover letter for those notes.

But first, I would like to again, ask that you please put my check in the mail today. As we discussed several times, I had hidradenitis surgery on June 24, 2019 and your delays have created a hardship to my serious medical needs. Which makes me prepare this response in haste, rather than timely. You have no legitimate basis for the delay. I have provided overwhelming medical evidence and proof, that I am disabled from all occupations, including sedentary work based on the policy definitions, appellate court rulings, and judicial scrutiny, confirmed in substance by all of your own independent reviewers.

In direct response to the independent reviews.
As a basis for concluding; "the medical records however do not contain sufficient evidence to support restrictions of "no workability" ... Your reviewer Sheila only reviewed the 2016 and 2017 MRIs and did not review the May 2018 MRI or other relative medical records that were evidently available in the medical files and thereby admits, since 2017, she didn't review any
"updated advanced imaging to evaluate the current state of the canal, discs, or nerve roots."
Her oversight led her to incorrectly assess that these conditions can improve over time and "appears to have done so" with no further neuromotor findings found on recent physical exams."
(Contrary to the 2nd reviewer David's note that "in May 2018... another MRI was done which showed no significant changes compared to October 2016" ... and the actual MRI Report in the medical file.)
Because she based her conclusions on these desired updates. And did not review the medical records available to her, her review should rightfully be dismissed as unreliable in the appeal review process.
Whats more Troubling is the fact the The people in charge of making this decision didn't catch This error
responsible
David's diatribe of insults, insinuations, and defamations should be reduced to reflect his "relative" contradictory (to the medical evidence) and unsubstantiated conclusion that the qualifying listed permanent restriction should be modified to "No Sitting longer than 1 hour without opportunity to stand". As opposed to... "Unable to Sit for more than 30 minutes or sit still for more than 10 minutes without severe back, neck, leg, knee, and hidradenitis pain". And, David presents this conclusion without any medical evidence or documentation to support it. Yet he states... "and there is substantial evidence to support such ability". Then he points to his review conclusion in the 3rd paragraph; "There is no medical basis on which to restrict a patient's participation in sedentary productive activity because of chronic neck and back pain. This is an issue of personal tolerance and not one of objective medical science."

LIB000090

Notably, the initial reviewer Howard April 2019 defined their modified restriction as "sitting up to 40 minutes continually for a total of up to 8 hours per day with the ability to alter the position." And, "at least have the capacity to function at a sedentary level with the ability to position change". To which, I appealed and was expecting the appeal review to address. Instead, the appeal review attempts to introduce and elicit an entirely new set of appeal criteria for which unexpected consideration must be given. And these reviews neglect to address the issue on appeal... any medical evidence to support their position of capacity to function at a sedentary level with positional change. Or support their modified change of sitting restrictions from factual 10-30 minutes, to an unexplained threshold of 40-60 minutes.

My diminished capacity and functional impairment have independently been verified by every physician, including the reviewers. The only discord seems to be How I can Sit and How long can I sit before the pain becomes unbearable.

How long I can sit is apparently the criteria used to determine whether sedentary work is possible as guided by authoritative pronouncements and rulings. And the concept of positional change becomes secondary to the qualifier of meeting that criteria. To defeat this criterion is to avoid the policy obligations entirely or to a substantial degree. The facts are; medical evidence demonstrates that I can't do sedentary work because it requires sitting, with reasonable continuity, for periods longer than I can withstand, as documented in the medical files. Considering the time required to sit, focus, and produce reports, schedules, documents, analysis and other Accounting/Budget/Business Intelligence and other occupational related Sedentary Job duties. While experiencing the severe back, leg, neck, and knee pain. I tried this sitting during those 10days I returned to the job in 2016. I was and still am today, in pain within 10 minutes of sitting, with positional change. I could not return to work due to the pains.

In conclusion, the restrictions listed by my attending physicians were factually based on actual results of documented medical examinations, medical evaluations, personal tolerance and experience, direct observations, tests of functional capacity, and direct testimony, and it is supported by direct medical evidence gathered through MRI's, X-Rays, I.R.E. and F.C.E. It's not conjectures or subjective information.

The medical evidence demonstrates, supports and confirms with medical certainty, that permanently; "I cannot sit for longer than 30 minutes at a time (or...) sit still, with "positional change" (Squirming in pain), for longer than 10 minutes at a time, without experiencing severe back pain, numbness in the hips, neck, thighs, legs and toes, and sharp sciatica pain. And sitting more than 10 minutes causes my Osteoarthritis in my right knee to flare in pain. When I do sit, I am compelled to sitting gingerly most of the time because of my Hidradenitis Suppurativa flareups and cannot twist around or squirm on my buttocks for "positional change" due to the pains associated with nodules and constant abscesses." The courts have upheld that claimants who can't sit for 30 minutes are disabled from all occupations.

There has been no "identified medical evidence" to support, or respond to, from any 1 of your reviewer's assumption that I can sit up to 40 minutes or 1 hour, with position change, with the capacity to function, with reasonable continuity, to perform the substantial and material duties of any occupation, including sedentary jobs. But there is overwhelming evidence to the contrary, that I cannot sit more than 30 minutes or sit still for 10 minutes with positional change without severe pain.

LIB000091

The reviewer attempts to use as hearsay evidence, what he describes as a result of a field investigation; A Facebook page shows a very active social life that includes going to restaurants, clubs, Still DJing, dancing and being morbidly obese and recreational goifing activities. He also attempts to use hearsay evidence in a medical dispute about an agreed surgical outcome, as evidence that there is a Tendency to overestimate the severity of his medical condition. None of which, provides medical evidence to support sitting up to 1 hour. Or demonstrates a capacity to function at a sedentary level with positional change. With reasonable continuity or performing the material and substantial acts of any occupation. For the record, I don't dance, I haven't DJ'd or worked as a DJ for years, anywhere. And my active social life is down over 80% since the accident. (I used to close the clubs, being the last customer to leave for 40+ yrs. Since the accident I can't tolerate social life more than a few minutes at a time.)

Your July 26, 2019 letter reveals another modification to the dynamics of this direct appeal. It states...

The policy states:
...
*"Material and Substantial Duties", with respect to Long Term Disability, means responsibilities that are normally required to perform the Covered Person's Own Occupation, or any other occupation, and cannot be reasonably eliminated or modified."*

Vs.

*"Substantial and Material Acts of any occupation, meaning that as a result of sickness or injury the covered Person is not able to engage with reasonable continuity in any occupation in which he could reasonably be expected to perform satisfactorily in light of his age, education, training, experience, station in life, and physical and mental capacity."*

This is a different standard and definition from the policy documents I received from my employer and currently possess, which are consistent with the language used in your previous letters throughout every correspondence including the denial letter dated April 30, 2019 from which this appeal is filed.

Already, you've gone from... You meet the definition of disabled to You are not disabled. From sitting 40 minutes to sitting 1 hour to just "change positions as needed for comfort to accommodate neck and back pain. From being morbidly obese to no longer obese. From a "minor automobile collision" to a "Moderate motor vehicle collision". From "improving" without surgery to "back pain that had been present for 2-4 yrs." From sitting comfortable with no signs of distress, to hunched over and shuffling in his gait due to pain. From having no concerns about hidradenitis and wanting no more treatments to having extensive Surgery. From failure of comprehensive rehab to active social life. From restricting light activity in patients with chronic back pain is harmful, to the claimant's self-documented recreational activity suggests that his condition is not as severe as he has indicated. And opioid use coincided with leaving a sedentary desk job. When the opioid use began several months after the work stopped. Please stop moving the goal posts or trying to have "ahh-ha" moments against medical evidence

The standard and obligation of providing "Proof of Disability" has been met. Please pay the claim and put the check in the mail after overturning this denial of benefits on appeal, without further delay.

Sufferingly yours,

Virgil Harris Claim #7223420

I don't want to spend hours getting into a rebuttal of a seemingly biased diatribe, rant, or medical declamation fraught with and full of contradictions, overlooked evidence, and meritless personal attacks that conflicts with the facts, in the conclusions made by the 2nd Reviewers.

Except that this language, in each of the reviewer's report, is designed to defeat approval of the benefits entitled to me under the policy provisions. Please expand, explain or define the following;

The 1st reviewer indicated their review was not a complete review... citing:

"The medical records; however, do not contain sufficient evidence to support restrictions of "no workability". The available medical records contain MRIs of the C- and L-spine closer in time to the motor vehicle accident; however

. These prior MRIs evidenced cervical and lumbar disc herniations; however, given the amount of time that has passed since the original date of imaging, it is possible for disc resorption and remodeling to occur around the previous herniations. Cervical and lumbar radiculopathy are stated as diagnoses within the available medical records; however, there does not appear to be any electrodiagnostic studies to evaluate and confirm ongoing radiculopathy. This condition, too, can improve over time and appears to have done so with no further neuromotor findings found on recent physical exams (normal strength)."

However, the 2nd reviewer documents;
"        the pain management physician found decreased subjective sensation on the right in the L4-S1 dermatomes, along with pain when the right hip was flexed and the knee extended (the same position used for driving). So, another MRI was done which showed no significant changes compared to October 2016."

AND, Even the "footnotes" to your review report indicates;
"S/30/2018 Jose Mathew, MD..., ... Get new MRI"
"6/11/18 MRI L spine: Diffuse central canal narrowing but no significant stenosis. Moderate foraminal stenosis L5-S1 bilateral. Disc herniation may irritate S1 nerve root R>L, L4-S L foraminal stenosis due to disc protrusion and bony changes, L4 nerve root may be irritated"

There were subsequent adequate medical imaging records available.

1st reviewer's restriction notes of;

"ability to change positions as needed for comfort to accommodate neck and back pain" and, "If stationed at a workstation, ergonomic set up will be required including screens at eye-level and avoidance of static positioning with head or neck in extremes of extension, flexion, or rotation"

(In particular, whether this restriction is an unconscionable directive/expectation to stand at an ergonomic workstation set up for 10 minutes, then sit for 10 minutes, then stand back up for 10 minutes, then sit back down for 10 minutes, repetitively throughout an 8-hour day for S days a week....)

Notably; Dr Feeman documented that I also need to lie down for 30 minutes 4 times a day. Currently, due to the pains and relief sought, I lie down for about 17 to 18 hours most days because of the relief given. Then, on most days, I force myself to get up and get active for weight loss and functional capacity

LIB000093

increase through recreational, leisure, passive exercise activity for about 2-3 hours (no more than the equivalence of just being awoke and needing to move), recognizing I am "Morbidly Obese" and was advised to lose weight for any future surgical relief options, despite having an very reduced active social life, frequently going to restaurants and music clubs (primarily to eat as I am obese) passively and leisurely golfing to improve functional capacity and range of motion (although swimming was also medically recommended but I don't swim), and dancing by nodding my head in a yes motion in a video or, taking a 13 second video to post on social media of my less than 1 hour surgery after the doctors had to place several pillows under my back for support and assist me on and off the table due to severe back pain. (pillows not shown on the 13 second video.)

the 2nd reviewer's note of:

"no sitting longer than 1 hour without opportunity to stand"

(Considering the 2nd reviewer's statement in his review report;
"There is no medical basis on which to restrict a patient's participation in sedentary productive activity because of chronic neck and back pain. This is an issue of personal tolerance, and not one of objective medical science."
Please refer to any relied upon objective medical science, note, document, file, evidence, field investigation, exam, or any reviewed support for Your listed restriction of;
        "no sitting longer than 1 hour without opportunity to stand"
and how your conclusion defeats the medical certainty demonstrated and documented in the reviewed files that I cannot sit for more than 30 minutes or sit still for more than 10 minutes without severe back, leg and knee pain, or if there is any other direct evidence that demonstrates with medical certainty that I can sit for an entire hour at a time, without severe back, leg, neck, knee and hidradenitis pain.)

In summary, the restrictions listed by my attending physicians were factually based on actual results of documented medical examinations, medical evaluations, personal tolerance, direct observations, tests of functional capacity, and direct testimony, and supported by direct medical evidence gathered through MRI's, X-Rays, I.R.E. and F.C.E. It's not conjectures or subjective information. The evidence demonstrates, supports and confirms with medical certainty the restrictions that

"I cannot sit for longer than 30 minutes at a time (or...) sit still, with "positional change" (Squirming in pain), for longer than 10 minutes at a time, without experiencing severe back pain, numbness in the hips, thighs, legs and toes, and sharp sciatica pain. And sitting more than 10 minutes causes my Osteoarthritis in my right knee to flare in pain.
When I do sit, I am compelled to sitting gingerly because of my Hidradenitis Suppurativa flareups and cannot twist around or squirm on my buttocks for "positional change" due to the pains associated with nodules and constant abscesses."

Therefore, I cannot sit for more than 10 minutes with the ability to change positions, or more than 30 minutes at a time without experiencing severe back, neck, leg, knee, and hidradenitis pain. Even while driving. Though I don't drive 8 hours a day / S days a week, or drive 1 hour at a time, with reasonable or daily continuity.

These actual results are based on direct personal efforts and experiences. You say (the opposite was true in this case: opioid use coincided with leaving a sedentary job) then you say "the claimant stopped

LIB000094

participating in his sedentary job 10 days after the collision" Yet, opioid medication wasn't prescribed until months later than the accident, long after physical therapy, steroid injections, and functional capacity exercises failed to improve the pain.

During those 10 days, Jack Geiss, Controller, Ballard Designs, witnessed, commented, and thanked me for trying to return to work, despite being hunched over, unable to sit still for 10 minutes with positional change at a work desk in a secluded office, or get to work on time as previously done, constantly moaning in pain throughout those 10 days, and showing obvious signs of distress and pain that were not present during my working months/years, prior to the accident, in an effort to complete the Monthly Accounting/Budgeting Closing process as we did in previous months. Your field investigation should have revealed or focused on this. Nothing in my condition has changed since this experience.

I couldn't work because of the time required to sit, focus, and produce reports, schedules, documents, analysis and other Accounting/Budget/Business Intelligence and other occupational related duties. While experiencing the severe back, leg, neck, and knee pain. Although I tried during those 10 days.

It was also reported to and observed by the managers of Robert Half on several occasions thereafter with commentary. My managers at Robert Half considered my work skills to be above average with occupational dedication. Never one of trying to get out of work.

Please provide your medical evidence leading to your listed restriction of "sitting no longer than 1 hour..." so I can review and respond substantively

I am requesting clarification from the 2nd reviewer on several of these contradictions and oversights in his report, so I may properly submit my timely response.

What Cervical MRI in 2015 is he referring to? Who ordered it? Who conducted it?

It appears from the language, that this reviewer is attempting to force-fit a determined, criteria. Again, the medical files and my direct testimony, subjective or objective, is:

"I cannot sit for longer than 30 minutes at a time (or...) sit still, with "positional change" (Squirming in pain), for longer than 10 minutes at a time, without experiencing severe back pain, numbness in the hips, thighs, legs and toes, and sharp sciatica pain. And sitting more than 10 minutes causes my Osteoarthritis in my right knee to flare in pain.
When I do sit, I am compelled to sitting gingerly because of my Hidradenitis Suppurativa flareups and cannot twist around or squirm on my buttocks for "positional change" due to the pains associated with nodules and constant abscesses."

The claimant had been working successfully full-time for years despite chronic neck and back pain then after a      automobile collision was deemed totally disabled. Then you say Nevertheless he continued working. He was in another      motor vehicle collision in October 2016. Then you say in July 2016 he also continued to work despite the pain he rated as 10/10 and you say "in May 2017, stated that the claimant was unable to perform any of his sedentary job duties due to back pain" and you injected from the files; "THAT HAD BEEN PRESENT FOR 2-4 YEARS.... Contrary to reality and therefore the physiatrist's opinion that the claimant is disabled for any occupation is not supported by objective fact. THEN, you say in April 2017 "Despite the FACT that the claimant had improved without surgery after the disc herniation identified by the surgeon in 2013." The surgeon again recommended lumbar fusion.

LIB000095

You say there is much published evidence that restricting light activity in patients with chronic back pain is harmful rather than helpful. You say what is known from medical research avoiding light work does not improve quality of life for people with chronic back pain or other musculoskeletal pain. Rather it worsens it. Likely because he was staying home from work and therefore had greater access to excess calories, and less physical activity. Then you say the claimant's self -documented recreational activity suggests that his condition is not as severe as he has indicated to his clinicians. Then you say the claimant's symptoms and use of medical treatments have steadily increased since he stopped working.

You say the nature and degree of degenerative spinal abnormalities cannot predict the nature or degree of symptoms. You state the medical basis of chronic neck and back pain that restrict a patient's participation in sedentary productive activity is an issue of personal tolerance, and not one of objective medical science.... Yet "you" concluded on your own, without examination or medical evidence to support your position, that I can "sit no longer than 1 hour without the opportunity to stand". And you say even though the MRI findings were greater in the cervical spine, it's the low back that has been consistently more symptomatic and neck pain is not much affected by obesity. (Note; it is the patient's responsibility if he is hurt to seek a disability evaluation or functional capacity exam to support his documentation to his employer as to why he is not at work, if it is due to injury... Not an issue or "ah-ha" moment)

You say in September 2016 at a dermatology visit (1 month before the Accident) he was also noted to appear comfortable sitting in a chair with no visible signs of distress after having hidradenitis surgery to remove some more painful abscesses in the groin. Recognizing that the disease is always active, chronic, painfully requiring surgery and incurable. You say after Oct 2016 accident the pain averaged 10/10 maximum despite walking and sitting without any visible difficulty (I'm guessing in Sept 2016 at the dermatology visit before the accident.) and driving to multiple appointments. But the surgeon, 2 months after the accident Dec 2016, noted on exam documented guarded movement of the neck and lower back with pain. You say when the claimant saw the physiatrist, he appeared distressed and walked with a limp. Are you confirming by agreeing that the records demonstrate in September 2016 he was not in pain until after the accident of October 2016?

You say in Oct 2016 the claimant endorsed back pain at the scene. But refused medical attention. You recognize that the annular tears were present and can cause pain. You say inexplicably 2 months after the collision which required no immediate medical attention. But you don't mention Northside Hospital that night with X-Rays and exams.

You say aggravation of pre-existing disc herniation which had been present for at least 3 years and despite which the claimant successfully worked full-time and claimant had worked full time for years.

Even though you've cherry picked medical evidence throughout my files to facilitate your determination to deny my rights to benefits under this plan, you have still managed to acknowledge with medically reasonable certainty, that my injuries as a result of the 2016 accident are significant, well documented, fully substantiated and supported by the medical evidence.

As it relates to the discrepancies relative to the 2013 auto accident injuries, you should have in your possession the IME report from Dr. Kelly of Peachtree Orthopedics where he evaluated my impairment rating at a mere 10% total impairment at that time as a result of the injuries sustained in the 2013



LIB000097

**PRIORITY MAIL** *(repeated, inverted across top)*

FROM:
1604 Pine Tree Trl.
College Park, GA 30349

POSTAGE REQUIRED

---

**UNITED STATES POSTAL SERVICE.** Retail

**P** US POSTAGE PAID
**$7.35**
Origin: 30349
08/02/19
1204820075-21

**PRIORITY MAIL 2-DAY** ®

0 Lb 2.70 Oz
1004

EXPECTED DELIVERY DAY: 08/05/19

B900

SHIP
TO:
PO BOX 7213
LONDON KY 40742-7213

**USPS TRACKING NUMBER**

9505 5108 4352 9214 3226 84

PS00001000014

EP14F July 2013
OD: 12.5 x 9.5

TO: Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
P.o. Box 7213
London Ky 40742-7213

**VISIT US AT USPS.COM®**
ORDER FREE SUPPLIES ONLINE

**UNITED STATES POSTAL SERVICE.**

### Recipient Information
**To:   Karilann Sneirson Courtney Grygiel**
**Company: Liberty Life Lincoln**
**Fax #: 16034227909**

### Sender Information
**From: Virgil A Harris**
**Company: Claim 7223420**
**Email address: kwinci@yahoo.com (from 98.192.111.44)**
**Phone #: 4047815494**
**Sent on: Friday, August 2 2019 at 3:45 PM EDT**



From Virgil Harris Claim #7223420
Fax 2 of 3

This fax was sent using the FaxZero.com fax service. Please send your response directly to the sender, not to FaxZero.

FaxZero.com has a zero tolerance policy for abuse and junk faxes. If this fax is spam or abusive, please e-mail support@faxzero.com or send a fax to 855-330-1238, or phone 707-400-6360. Specify fax #24963807. We will add your fax number to the block list.

LIB000098

I don't want to spend hours getting into a rebuttal of a seemingly biased diatribe, rant, or medical declamation fraught with and full of contradictions, overlooked evidence, and meritless personal attacks that conflicts with the facts, in the conclusions made by the 2nd Reviewers.

Except that this language, in each of the reviewer's report, is designed to defeat approval of the benefits entitled to me under the policy provisions. Please expand, explain or define the following;

The 1st reviewer indicated their review was not a complete review... citing:

"The medical records; however, do not contain sufficient evidence to support restrictions of "no workability". The available medical records contain MRIs of the C- and L-spine closer in time to the motor vehicle accident; however                                          . These prior MRIs evidenced cervical and lumbar disc herniations; however, given the amount of time that has passed since the original date of imaging, it is possible for disc resorption and remodeling to occur around the previous herniations. Cervical and lumbar radiculopathy are stated as diagnoses within the available medical records; however, there does not appear to be any electrodiagnostic studies to evaluate and confirm ongoing radiculopathy. This condition, too, can improve over time and appears to have done so with no further neuromotor findings found on recent physical exams (normal strength)."

However, the 2nd reviewer documents;
"              the pain management physician found decreased subjective sensation on the right in the L4-S1 dermatomes, along with pain when the right hip was flexed and the knee extended (the same position used for driving). So, another MRI was done which showed no significant changes compared to October 2016."

AND, Even the "footnotes" to your review report indicates;
"5/30/2018 Jose Mathew, MD..., ... Get new MRI"
"6/11/18 MRI L spine: Diffuse central canal narrowing but no significant stenosis. Moderate foraminal stenosis L5-S1 bilateral. Disc herniation may irritate S1 nerve root R>L, L4-5 L foraminal stenosis due to disc protrusion and bony changes, L4 nerve root may be irritated"

There were subsequent adequate medical imaging records available.

1st reviewer's restriction notes of;

(In particular, whether this restriction is an unconscionable directive/expectation to stand at an ergonomic workstation set up for 10 minutes, then sit for 10 minutes, then stand back up for 10 minutes, then sit back down for 10 minutes, repetitively throughout an 8-hour day for 5 days a week....)

Notably; Dr Feeman documented that I also need to lie down for 30 minutes 4 times a day. Currently, due to the pains and relief sought, I lie down for about 17 to 18 hours most days because of the relief given. Then, on most days, I force myself to get up and get active for weight loss and functional capacity

LIB000099

increase through recreational, leisure, passive exercise activity for about 2-3 hours (no more than the equivalence of just being awake and needing to move), recognizing I am "Morbidly Obese" and was advised to lose weight for any future surgical relief options, despite having an very reduced active social life, frequently going to restaurants and music clubs (primarily to eat as I am obese) passively and leisurely golfing to improve functional capacity and range of motion (although swimming was also medically recommended but I don't swim), and dancing by nodding my head in a yes motion in a video or, taking a 13 second video to post on social media of my less than 1 hour surgery after the doctors had to place several pillows under my back for support and assist me on and off the table due to severe back pain. (pillows not shown on the 13 second video.)

the 2nd reviewer's note of;

(Considering the 2nd reviewer's statement in his review report;
"There is no medical basis on which to restrict a patient's participation in sedentary productive activity because of chronic neck and back pain. This is an issue of personal tolerance, and not one of objective medical science."
Please refer to any relied upon objective medical science, note, document, file, evidence, field investigation, exam, or any reviewed support for Your listed restriction of;
"no sitting longer than 1 hour without opportunity to stand"
and how your conclusion defeats the medical certainty demonstrated and documented in the reviewed files that I cannot sit for more than 30 minutes or sit still for more than 10 minutes without severe back, leg and knee pain, or if there is any other direct evidence that demonstrates with medical certainty that I can sit for an entire hour at a time, without severe back, leg, neck, knee and hidradenitis pain.)

In summary, the restrictions listed by my attending physicians were factually based on actual results of documented medical examinations, medical evaluations, personal tolerance, direct observations, tests of functional capacity, and direct testimony, and supported by direct medical evidence gathered through MRI's, X-Rays, I.R.E. and F.C.E. It's not conjectures or subjective information. The evidence demonstrates, supports and confirms with medical certainty the restrictions that

"I cannot sit for longer than 30 minutes at a time (or...) sit still, with "positional change" (Squirming in pain), for longer than 10 minutes at a time, without experiencing severe back pain, numbness in the hips, thighs, legs and toes, and sharp sciatica pain. And sitting more than 10 minutes causes my Osteoarthritis in my right knee to flare in pain.
When I do sit, I am compelled to sitting gingerly because of my Hidradenitis Suppurativa flareups and cannot twist around or squirm on my buttocks for "positional change" due to the pains associated with nodules and constant abscesses."

Therefore, I cannot sit for more than 10 minutes with the ability to change positions, or more than 30 minutes at a time without experiencing severe back, neck, leg, knee, and hidradenitis pain. Even while driving. Though I don't drive 8 hours a day / 5 days a week, or drive 1 hour at a time, with reasonable or daily continuity.

These actual results are based on direct personal efforts and experiences. You say (the opposite was true in this case: opioid use coincided with leaving a sedentary job) then you say "the claimant stopped

LIB000100

participating in his sedentary job 10 days after the collision" Yet, opioid medication wasn't prescribed until months later than the accident, long after physical therapy, steroid injections, and functional capacity exercises failed to improve the pain.

During those 10 days, Jack Geiss, Controller, Ballard Designs, witnessed, commented, and thanked me for trying to return to work, despite being hunched over, unable to sit still for 10 minutes with positional change at a work desk in a secluded office, or get to work on time as previously done, constantly moaning in pain throughout those 10 days, and showing obvious signs of distress and pain that were not present during my working months/years, prior to the accident, in an effort to complete the Monthly Accounting/Budgeting Closing process as we did in previous months. Your field investigation should have revealed or focused on this. Nothing in my condition has changed since this experience.

I couldn't work because of the time required to sit, focus, and produce reports, schedules, documents, analysis and other Accounting/Budget/Business Intelligence and other occupational related duties. While experiencing the severe back, leg, neck, and knee pain. Although I tried during those 10 days.

It was also reported to and observed by the managers of Robert Half on several occasions thereafter with commentary. My managers at Robert Half considered my work skills to be above average with occupational dedication. Never one of trying to get out of work.

Please provide your medical evidence leading to your listed restriction of "sitting no longer than 1 hour..." so I can review and respond substantively

I am requesting clarification from the 2nd reviewer on several of these contradictions and oversights in his report, so I may properly submit my timely response.

What Cervical MRI in 2015 is he referring to? Who ordered it? Who conducted it?

It appears from the language, that this reviewer is attempting to force-fit a determined, criteria. Again, the medical files and my direct testimony, subjective or objective, is:

"I cannot sit for longer than 30 minutes at a time (or...) sit still, with "positional change" (Squirming in pain), for longer than 10 minutes at a time, without experiencing severe back pain, numbness in the hips, thighs, legs and toes, and sharp sciatica pain. And sitting more than 10 minutes causes my Osteoarthritis in my right knee to flare in pain.
When I do sit, I am compelled to sitting gingerly because of my Hidradenitis Suppurativa flareups and cannot twist around or squirm on my buttocks for "positional change" due to the pains associated with nodules and constant abscesses."

The claimant had been working successfully full-time for years despite chronic neck and back pain then after a     automobile collision was deemed totally disabled. Then you say Nevertheless he continued working. He was in another      motor vehicle collision in October 2016. Then you say in July 2016 he also continued to work despite the pain he rated as 10/10 and you say "in May 2017, stated that the claimant was unable to perform any of his sedentary job duties due to back pain" and you injected from the files; "THAT HAD BEEN PRESENT FOR 2-4 YEARS.... Contrary to reality and therefore the physiatrist's opinion that the claimant is disabled for any occupation is not supported by objective fact. THEN, you say in April 2017 "Despite the FACT that the claimant had improved without surgery after the disc herniation identified by the surgeon in 2013." The surgeon again recommended lumbar fusion.

LIB000101

**Recipient Information**
**To:  Courtney Grygiel Karilann Sneirson**
**Company: Liberty Life Lincoln**
**Fax #: 16034227909**



**Sender Information**

**From: Virgil A Harris**
**Company: Claim 7223420**
**Email address: kwinci@yahoo.com (from 98.192.111.44)**
**Phone #: 4047815494**
**Sent on: Friday, August 2 2019 at 3:42 PM EDT**

From Virgil Harris Claim #7223420
Thank you for your assistance. Please expedite my check. Fax 1 of 3

This fax was sent using the FaxZero.com fax service. Please send your response directly to the sender, not to FaxZero.

FaxZero.com has a zero tolerance policy for abuse and junk faxes. If this fax is spam or abusive, please e-mail support@faxzero.com or send a fax to 855-330-1238, or phone 707-400-6360. Specify fax #24963782. We will add your fax number to the block list.

**LIB000102**

August 2, 2019

Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7213
London, KY 40742-7213
Attn: Karilann Sneirson, Karen McKenzie, Courtney Grygiel
From: Virgil Harris Claim #7223420

Dear all,

Thank you for your letter dated July 26, 2019 and July 24, 2019, and the copies of the independent medical reviews. Your letter indicates I can provide a response to these reviews, which you will consider in "making a decision", on my appeal. Therefore, this is my response!
Although I have read the reviews, and provided a multiple-page response to the independent reviews, (attached as notes for your careful review), It is my contention to provide a summary of my position and response to those independent reviews, here, as a cover letter for those notes.

But first, I would like to again, ask that you please put my check in the mail today. As we discussed several times, I had hidradenitis surgery on June 24, 2019 and your delays have created a hardship to my serious medical needs. Which makes me prepare this response in haste, rather than timely. You have no legitimate basis for the delay. I have provided overwhelming medical evidence and proof, that I am disabled from all occupations, including sedentary work based on the policy definitions, appellate court rulings, and judicial scrutiny, confirmed in substance by all of your own independent reviewers.

In direct response to the independent reviews.
As a basis for concluding; "the medical records however do not contain sufficient evidence to support restrictions of "no workability" ... Your reviewer Sheila only reviewed the 2016 and 2017 MRIs and did not review the May 2018 MRI or other relative medical records that were evidently available in the medical files and thereby admits, since 2017, she didn't review any
"updated advanced imaging to evaluate the current state of the canal, discs, or nerve roots."
Her oversight led her to incorrectly assess that these conditions can improve over time and "appears to have done so" with no further neuromotor findings found on recent physical exams."
(Contrary to the 2nd reviewer David's note that "in May 2018... another MRI was done which showed no significant changes compared to October 2016" ... and the actual MRI Report in the medical file.)
Because she based her conclusions on these desired updates. And did not review the medical records available to her, her review should rightfully be dismissed as unreliable in the appeal review process.

David's diatribe of insults, insinuations, and defamations should be reduced to reflect his "relative" contradictory (to the medical evidence) and unsubstantiated conclusion that the qualifying listed permanent restriction should be modified to "No Sitting longer than 1 hour without opportunity to stand". As opposed to... "Unable to Sit for more than 30 minutes or sit still for more than 10 minutes without severe back, neck, leg, knee, and hidradenitis pain". And, David presents this conclusion without any medical evidence or documentation to support it. Yet he states... "and there is substantial evidence to support such ability". Then he points to his review conclusion in the 3rd paragraph; "There is no medical basis on which to restrict a patient's participation in sedentary productive activity because of chronic neck and back pain. This is an issue of personal tolerance and not one of objective medical science."

**LIB000103**

Notably, the initial reviewer Howard April 2019 defined their modified restriction as "sitting up to 40 minutes continually for a total of up to 8 hours per day with the ability to alter the position." And, "at least have the capacity to function at a sedentary level with the ability to position change". To which, I appealed and was expecting the appeal review to address. Instead, the appeal review attempts to introduce and elicit an entirely new set of appeal criteria for which unexpected consideration must be given. And these reviews neglect to address the issue on appeal... any medical evidence to support their position of capacity to function at a sedentary level with positional change. Or support their modified change of sitting restrictions from factual 10-30 minutes, to an unexplained threshold of 40-60 minutes.

My diminished capacity and functional impairment have independently been verified by every physician, including the reviewers. The only discord seems to be How I can Sit and How long can I sit before the pain becomes unbearable.

How long I can sit is apparently the criteria used to determine whether sedentary work is possible as guided by authoritative pronouncements and rulings. And the concept of positional change becomes secondary to the qualifier of meeting that criteria. To defeat this criterion is to avoid the policy obligations entirely or to a substantial degree. The facts are; medical evidence demonstrates that I can't do sedentary work because it requires sitting, with reasonable continuity, for periods longer than I can withstand, as documented in the medical files. Considering the time required to sit, focus, and produce reports, schedules, documents, analysis and other Accounting/Budget/Business Intelligence and other occupational related Sedentary Job duties. While experiencing the severe back, leg, neck, and knee pain. I tried this sitting during those 10days I returned to the job in 2016. I was and still am today, in pain within 10 minutes of sitting, with positional change. I could not return to work due to the pains.

In conclusion, the restrictions listed by my attending physicians were factually based on actual results of documented medical examinations, medical evaluations, personal tolerance and experience, direct observations, tests of functional capacity, and direct testimony, and it is supported by direct medical evidence gathered through MRI's, X-Rays, I.R.E. and F.C.E. It's not conjectures or subjective information.

The medical evidence demonstrates, supports and confirms with medical certainty, that permanently; "I cannot sit for longer than 30 minutes at a time (or...) sit still, with "positional change" (Squirming in pain), for longer than 10 minutes at a time, without experiencing severe back pain, numbness in the hips, neck, thighs, legs and toes, and sharp sciatica pain. And sitting more than 10 minutes causes my Osteoarthritis in my right knee to flare in pain. When I do sit, I am compelled to sitting gingerly most of the time because of my Hidradenitis Suppurativa flareups and cannot twist around or squirm on my buttocks for "positional change" due to the pains associated with nodules and constant abscesses." The courts have upheld that claimants who can't sit for 30 minutes are disabled from all occupations.

There has been no "identified medical evidence" to support, or respond to, from any 1 of your reviewer's assumption that I can sit up to 40 minutes or 1 hour, with position change, with the capacity to function, with reasonable continuity, to perform the substantial and material duties of any occupation, including sedentary jobs. But there is overwhelming evidence to the contrary, that I cannot sit more than 30 minutes or sit still for 10 minutes with positional change without severe pain.

LIB000104

The reviewer attempts to use as hearsay evidence, what he describes as a result of a field investigation; A Facebook page shows a very active social life that includes going to restaurants, clubs, Still DJing, dancing and being morbidly obese and recreational golfing activities. He also attempts to use hearsay evidence in a medical dispute about an agreed surgical outcome, as evidence that there is a Tendency to overestimate the severity of his medical condition. None of which, provides medical evidence to support sitting up to 1 hour. Or demonstrates a capacity to function at a sedentary level with positional change. With reasonable continuity or performing the material and substantial acts of any occupation. For the record, I don't dance, I haven't DJ'd or worked as a DJ for years, anywhere. And my active social life is down over 80% since the accident. (I used to close the clubs, being the last customer to leave for 40+ yrs. Since the accident I can't tolerate social life more than a few minutes at a time.)

Your July 26, 2019 letter reveals another modification to the dynamics of this direct appeal. It states...

The policy states:
...
*"Material and Substantial Duties", with respect to Long Term Disability, means responsibilities that are normally required to perform the Covered Person's Own Occupation, or any other occupation, and cannot be reasonably eliminated or modified."*

Vs.

*"Substantial and Material Acts of any occupation, meaning that as a result of sickness or injury the covered Person is not able to engage with reasonable continuity in any occupation in which he could reasonably be expected to perform satisfactorily in light of his age, education, training, experience, station in life, and physical and mental capacity."*

This is a different standard and definition from the policy documents I received from my employer and currently possess, which are consistent with the language used in your previous letters throughout every correspondence including the denial letter dated April 30, 2019 from which this appeal is filed.

Already, you've gone from... You meet the definition of disabled to You are not disabled. From sitting 40 minutes to sitting 1 hour to just "change positions as needed for comfort to accommodate neck and back pain. From being morbidly obese to no longer obese. From a "minor automobile collision" to a "Moderate motor vehicle collision". From "improving" without surgery to "back pain that had been present for 2-4 yrs." From sitting comfortable with no signs of distress, to hunched over and shuffling in his gait due to pain. From having no concerns about hidradenitis and wanting no more treatments to having extensive Surgery. From failure of comprehensive rehab to active social life. From restricting light activity in patients with chronic back pain is harmful, to the claimant's self-documented recreational activity suggests that his condition is not as severe as he has indicated. And opioid use coincided with leaving a sedentary desk job. When the opioid use began several months after the work stopped. Please stop moving the goal posts or trying to have "ahh-ha" moments against medical evidence

The standard and obligation of providing "Proof of Disability" has been met. Please pay the claim and put the check in the mail after overturning this denial of benefits on appeal, without further delay.

Sufferingly yours,

Virgil Harris Claim #7223420

LIB000105

**Recipient Information**

**To: Karilann Sneirson Courtney Grygiel**
**Company: Liberty Life Lincoln**
**Fax #: 16034227909**

**Sender Information**



**From: Virgil A Harris**
**Company: Claim 7223420**
**Email address: kwinci@yahoo.com (from 98.192.111.44)**
**Phone #: 4047815494**
**Sent on: Friday, August 2 2019 at 3:47 PM EDT**

From Virgil Harris Claim #7223420
Fax 3 of 3, total 8 pages

This fax was sent using the FaxZero.com fax service. Please send your response directly to the sender, not to FaxZero.

FaxZero.com has a zero tolerance policy for abuse and junk faxes. If this fax is spam or abusive, please e-mail support@faxzero.com or send a fax to 855-330-1238, or phone 707-400-6360. Specify fax #24963839. We will add your fax number to the block list.

**LIB000106**

You say there is much published evidence that restricting light activity in patients with chronic back pain is harmful rather than helpful. You say what is known from medical research avoiding light work does not improve quality of life for people with chronic back pain or other musculoskeletal pain. Rather it worsens it. Likely because he was staying home from work and therefore had greater access to excess calories, and less physical activity. Then you say the claimant's self -documented recreational activity suggests that his condition is not as severe as he has indicated to his clinicians. Then you say the claimant's symptoms and use of medical treatments have steadily increased since he stopped working.

You say the nature and degree of degenerative spinal abnormalities cannot predict the nature or degree of symptoms. You state the medical basis of chronic neck and back pain that restrict a patient's participation in sedentary productive activity is an issue of personal tolerance, and not one of objective medical science.... Yet "you" concluded on your own, without examination or medical evidence to support your position, that I can "sit no longer than 1 hour without the opportunity to stand". And you say even though the MRI findings were greater in the cervical spine, it's the low back that has been consistently more symptomatic and neck pain is not much affected by obesity. (Note; it is the patient's responsibility if he is hurt to seek a disability evaluation or functional capacity exam to support his documentation to his employer as to why he is not at work, if it is due to injury... Not an issue or "ah-ha" moment)

You say in September 2016 at a dermatology visit (1 month before the Accident) he was also noted to appear comfortable sitting in a chair with no visible signs of distress after having hidradenitis surgery to remove some more painful abscesses in the groin. Recognizing that the disease is always active, chronic, painfully requiring surgery and incurable. You say after Oct 2016 accident the pain averaged 10/10 maximum despite walking and sitting without any visible difficulty (I'm guessing in Sept 2016 at the dermatology visit before the accident.) and driving to multiple appointments. But the surgeon, 2 months after the accident Dec 2016, noted on exam documented guarded movement of the neck and lower back with pain. You say when the claimant saw the physiatrist, he appeared distressed and walked with a limp. Are you confirming by agreeing that the records demonstrate in September 2016 he was not in pain until after the accident of October 2016?

You say in Oct 2016 the claimant endorsed back pain at the scene. But refused medical attention. You recognize that the annular tears were present and can cause pain. You say inexplicably 2 months after the collision which required no immediate medical attention. But you don't mention Northside Hospital that night with X-Rays and exams.

You say aggravation of pre-existing disc herniation which had been present for at least 3 years and despite which the claimant successfully worked full-time and claimant had worked full time for years.

Even though you've cherry picked medical evidence throughout my files to facilitate your determination to deny my rights to benefits under this plan, you have still managed to acknowledge with medically reasonable certainty, that my injuries as a result of the 2016 accident are significant, well documented, fully substantiated and supported by the medical evidence.

As it relates to the discrepancies relative to the 2013 auto accident injuries, you should have in your possession the IME report from Dr. Kelly of Peachtree Orthopedics where he evaluated my impairment rating at a mere 10% total impairment at that time as a result of the injuries sustained in the 2013

LIB000107

accident. That impairment rating is at 39% post 2016 accident. And you agree with his assessment that surgical relief would benefit my painful condition

You say I thought the doctor should be arrested because I thought the abscesses were still present. And I did.
5 minutes before he put me to sleep, I circled the painful abscesses and he agreed that I would not have stitches but, heal via wet to dry wound care, as I did in the 2012 and 2014 surgeries. When I woke up, the abscesses were still very visible and I had "staple" between my thighs and even penetrating the painful nodules left unremoved, as documented with photos and reviews such as the one mentioned in your 5/16/16 Bryant McIver note; "Presents today with a letter..." when I sought outside medical correction. I was walking with hard surgical staples between my morbidly obese thighs and as they fell off, I was in more pain than before the surgery.

And, your footnotes on 6/6/16 Bryant McIver MD, shows 2 months after surgery... Bilateral groin hidradenitis "Flare". Bilateral tender groin nodules quarter size residual wound f/u 2wks reassess for skin grafting. And, 7/18/16 Seema P, still with active axillary and gluteal draining nodules and sinus tracts
8/31/16 open areas of hidradenitis in perineum. Also, it was the dermatologist that informed me, hidradenitis is probably caused by environmental sources, such as the foods we eat, the water we drink, and other factors, while explaining that contributors to outbreaks include weather, smoking, etc.

You talk extensively about the April 19, 2016 hidradenitis surgery removing diseased skin in the groin and the disagreements we had about the expected vs actual outcomes. And you concluded as plaintiff, judge and jury that "this episode suggests that the claimant has a tendency to overestimate the severity of his medical condition." Which to me rises to the level of defamation of character because you report this in an appeal document. And it is not fact based or a true reflection of what the medical documents show, actually happened in 2016. But that is an argument for another setting.

However, you never mentioned the successful, uneventful hidradenitis surgical experiences in 2010, 2012, 2014, 2019 as character references. Or any other evidence to reflect or support a tendency to overestimate the severity of my medical condition. Nor did you mention the non-relative medical events with any other provider regarding any other existing condition. Nothing to support your "Tendency" reference. Neither does your review reveal that these same doctors prescribed Prednisone, Cipro, and a host of other retracted medicines and treatments over these same years. To include in 2016 a request to start me on Humira. But at this 2019 Surgery, they said it doesn't work and when I researched it online, it had awful reviews. So please don't lend too much attention to discussions between Dr's and Patients.

LIB000108



**Liberty Life Assurance Company of Boston**
*A Lincoln Financial Group Company*
*Disability Claims*
*P.O. Box 7213*
*London, KY 40742-7213*
*Fax: 603-422-7909*
*www.LincolnFinacial.com*

July 26, 2019

Virgil Harris
1604 Pine Tree Trail
College Park, GA 30439

**RE: Virgil Harris**
    **HCB- 7223420**
    **Policyholder: Robert Half International/ GF3-860-066675-01**
    **Claim Number: 7223420**
    **N.A.I.C. # 65315 Liberty Life Assurance Company of Boston**

Dear Mr. Harris:

This letter responds to the request for assistance that you submitted to the California Department of Insurance.

The long-term disability ("LTD") policy which you claim coverage is the Robert Half International, Inc. Group Disability Income Policy ("the Policy"), which is a policy, sponsored by your employer and is fully insured by Liberty Life Assurance Company of Boston ("Liberty Life"). Effective May 1, 2018, Liberty Life Assurance Company of Boston ("LLACB") was acquired by The Lincoln National Life Insurance Company, a Lincoln Financial Group company ("LNL"). The ownership change does not change the terms and benefits of group insurance policies issued by LLACB. Robert Half International, Inc. established its Disability Plan for the purpose of providing disability benefits to its employees. As such, the Plan constitutes an ERISA employee welfare benefit plan, and is governed by ERISA. 1 See 29 U.S.C. sec 1002 (1).

The policy states:

*"Disability" or "Disabled" means that during the Elimination Period and the next 24 months of Disability the Covered Person, as a result of Injury or Sickness, is unable to perform with reasonable continuity the Substantial and Material Acts necessary to pursue his Own Occupation in the usual and customary way.*

*"Material and Substantial Duties", with respect to Long Term Disability, means responsibilities that are normally required to perform the Covered Person's Own Occupation, or any other occupation, and cannot be reasonably eliminated or modified.*

---

Employee Retirement Income Security Act (ERISA) defines an employee welfare plan as "any plan...established or maintained by an employer...to the extent that such plan...was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise,...benefits in the event of...disability..." 29 U.S.C. sec 1002

**LIB000109**

Our records indicate that your claim was denied April 30, 2019 on the basis that you were not disabled as defined above. Our review included an independent peer medical review and a vocational review. Our April 30, 2019 denial explains the basis for this determination. In the April 30, 2019 denial letter, we fully advised you of your ERISA right to request a review of the denial determination and to submit any additional information in support of your claim.

We received your May 15, 2019 appeal on May 15, 2019.

We spoke with you on May 17, 2019 and May 23, 2019 and you advised you would be submitting additional medical records for consideration of your appeal.

We received additional medical records on June 17, 2019. The date we received all information you wished considered for your appeal was June 17, 2019.

Your file was referred for a peer medical review on June 25, 2019.

We advised you on July 1, 2019 and July 10, 2019 that your claim had been referred for an additional medical review and of the status of your appeal. You were provided with the status of your appeal on July 15, 2019 and July 18, 2019.

You spoke with Karilann Sneirson, Appeal Manager, on July 19, 2019 and were advised of the status of your appeal. In addition, we confirmed the received date is the date that we receive all information that you want considered in your appeal. You were advised that we would provide you with copies of the peer medical reports conducted on appeal to allow you and opportunity to review and comment on this information before rendering the appeal determination.

We notified you by our letter dated July 24, 2019 of the status of your appeal. In the July 24, 2019 letter we provided you with the independent peer medical reviews and the vocational review conducted during the appeal. You were advised that you may review this information and provide a response to us, which we will consider in making our decision on this appeal. If we do not receive your response within 21 days of the date of this letter, we will proceed with making a determination on this appeal.

Liberty Life will keep you and the California Department of Insurance apprised of the status of your appeal.

You may contact Ms. Sneirson with any additional questions you have regarding the status of your appeal.

Pursuant to your request for assistance, as requested, our office has sent a copy of this response to along with a complete copy of your file to at The California Department of Insurance.

Sincerely,

Karen M. McKenzie
Claims Shared Services – Complaints
Liberty Life Assurance Company of Boston, a Lincoln Financial Group Company
Karen.McKenzie@lfg.com
603-970-2345

**LIB000111**

**UPS CampusShip: View/Print Label**

1. **Ensure there are no other shipping or tracking labels attached to your package.** Select the Print button on the print dialog box that appears. Note: If your browser does not support this function select Print from the File menu to print the label.

2. **Fold the printed label at the solid line below.** Place the label in a UPS Shipping Pouch. If you do not have a pouch, affix the folded label using clear plastic shipping tape over the entire label.

3. **GETTING YOUR SHIPMENT TO UPS**
   **Customers with a Daily Pickup**
   Your driver will pickup your shipment(s) as usual.

   **Customers without a Daily Pickup**
   Take your package to any location of The UPS Store®, UPS Access Point(TM) location, UPS Drop Box, UPS Customer Center, Staples® or Authorized Shipping Outlet near you. Items sent via UPS Return Services(SM) (including via Ground) are also accepted at Drop Boxes. To find the location nearest you, please visit the Resources area of CampusShip and select UPS Locations.
   Schedule a same day or future day Pickup to have a UPS driver pickup all your CampusShip packages.
   Hand the package to any UPS driver in your area.

UPS Access Point™
THE UPS STORE
422 CENTRAL AVE
DOVER ,NH 03820

UPS Access Point™
JANETOS SUPERETTE
77 MAIN ST
DOVER ,NH 03820

UPS Access Point™
MAIN ST MAILING & COPY
54 MAIN ST
DURHAM ,NH 03824



7223420
2nd day

K. mckenzie

FOLD HERE



**LIB000112**

Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7213
London, KY 40742-7213


MR. VIRGIL HARRIS
1604 PINE TREE TRAIL
COLLEGE PARK GA 30349

LIB000113



Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7213
London, KY 40742-7213
Phone No.: (888) 437-7611
Secure Fax No.: (603) 422-7909

July 24, 2019

Mr. Virgil A. Harris
1604 PINE TREE TRAIL
COLLEGE PARK, GA 30349

RE:     Long Term Disability (LTD) Benefits
        Robert Half International Inc.
        Claim #: 7223420

Dear Mr. Virgil Harris:

Lincoln Financial Group is responsible for managing claims for your benefits under the Robert Half International Inc., long-term disability (LTD) insurance plan.

The purpose of this letter is to inform you that we require additional time to render a determination on this LTD appeal. Under the Employee Retirement Income Security Act of 1974 (ERISA), an appeal determination should be rendered within 45 days of receipt of the appeal, unless there are special circumstances which require a delay in making an appeal determination.  If additional time is needed, ERISA allows for a 45-day extension to evaluate and render an appeal decision.

We are in process of reviewing your appeal of our decision regarding the above-referenced claim. This letter and enclosure(s) is to provide you with an opportunity to review and comment on new/additional evidence that has been received before a decision is rendered on this appeal.

Please find attached a copy of the independent medical reviews by David Carl Houghton, MD, FACP., board certified in internal medicine and Sheila Natarajan, MD, FAAPMR, board certified in physical medicine and rehabilitation and a copy of the vocational assessment (updated Transferrable Skills Analysis) which is new or additional evidence in connection with this appeal.  You may review these peer reviews and vocational report and provide a response to us, which we will consider in making our decision on this appeal.  If we do not receive your response within 21 days of the date of this letter, we will proceed with making a determination on this appeal.

Under ERISA, the period for making a benefit determination shall be tolled (suspended) from the date of this notice until we receive your timely response.  Upon receipt of your response, we will promptly complete our review and render a determination on this appeal.  If your response is not received by August 14, 2019 (21 days from date of this letter), we will render a determination based on the information contained in this file.

Should you have any questions pertaining to the status of this appeal, please contact me at the

LIB000114

telephone number below.  Please include the claim number listed above in all communications.

If you have any questions regarding this matter, please contact me.

Sincerely,

Courtney Grygiel
Appeals Consultant
Phone No.: (888) 437-7611 Ext. 13301
Secure Fax No.: (603) 422-7909

Attachments:   7223420-MEDICAL-CP/PEER REVIEW-07.11.2019
7223420-VOC-TRANSFERRABLE SKILLS ASSESSMENT-07.23.2019
7223420-MEDICAL-CP/PEER REVIEW-07.24.2019

LIB000115

| Customer Name | Claimant Name | Claim Number |
|---|---|---|
| ROBERT HALF INTERNATIONAL INC. | VIRGIL HARRIS | 7223420 |

| | | | |
|---|---|---|---|
| Referred By: | Courtney Grygiel | Claimant DOB: | 01/16/1962 |
| Referral Date: | 06/25/2019 | Job Title: | SALARIED PROFESSIONAL-ACCOUNTING CONSULTANT |
| Due Date: | 07/09/2019 | Medical/ Surgical Condition: | LBP/radiculopathy |
| Referral Type: | Appeal Referral | Disability Occupational Type: | |
| Reason for Priority Handling: | | Product Type: | LTD |
| Other Considerations | | LDW: | 10/14/2016 |
| Report Date: | | DOD: | 10/15/2016 |
| Physical Demands: | | BBD: | 04/13/2017 |
| Non-Medical Issue: | No | Non-Medical Issue Details: | |

**Core Questions**

1. **Please identify the primary impairing Diagnosis(es) with ICD 10 code(s).**

Lumbar disc disorders with radiculopathy M51.16, lumbosacral disc herniation (M51.27), cervical radiculopathy M54.12, cervical disc disorder C4-5, C5-6, C6-7 (M50.121-M50.123), hydradenitis axillaris L73.2

2. **Does the medical evidence support any diagnoses causing functional impairment from 4/22/19 to the present? Please explain your medical rationale as to why or why not.**

The available medical records support the above mentioned lumbar and cervical diagnoses are associated with impairment from 4/22/19 to present. This is supported given imaging records and treatment plans.

3. **If functional impairment is supported, please describe how that translates into restrictions or limitations and for what period(s) of time. Please define in terms of frequency (never, occasional, frequent, constant) and task (sit, stand, lift/carry, type etc). Please explain your medical rationale for any restrictions or limitations or why restrictions or limitations are not supported.**

The available medical records reasonably support the following restrictions and limitations: no more than occasional standing or walking, ability to change positions as needed for comfort to accommodate neck and back pain, no more than occasional lifting up to 10lbs,

no more than occasional reaching overhead and no lifting above shoulder level bilaterally. If stationed at a workstation, ergonomic set up will be required including screens at eye-level and avoidance of static positioning with head or neck in extremes of extension, flexion, or rotation. No climbing, crawling, crouching, kneeling. In the absence of surgery, these restrictions are reasonably supported permanently.

4. **Are there any reported or observed cognitive and/or physical side effects attributed to clmnt's medications? If yes, do the side effects contribute to claimant's impairment? Please explain your medical rationale.**

There are no mentioned impairing side effects of any currently prescribed medications.

5. **Does the (overall functional and ) medical evidence support the claimant has the ability to sustain full time capacity (8/hours/day 5 days/ week) within the identified restrictions and limitations from 4/22/19 to present?**

The evidence within the available medical records are insufficient to support an inability to sustain full-time capacity within the significant activity restrictions outlined above.

6. **If AP contact may clarify any significant areas such as diagnosis, R&L's, treatment opportunities, prognosis, or reason for work absence, the AP contact information is: Jose Mathew, MD/Stephanie Bridges, NP (770) 962 3642.**

I called to speak with Dr. Matthew or Ms. Dalandra Belcher APRN (from the records it appears she has treated the claimant most recently). I left a detailed voicemail message with request for callback on 7/1/19 at 4:30pm EST. I received voicemail back from Ms. Belcher on 7/2/19. I called her back on 7/8/19 and left another message with request for call back and called once again on 7/11/19 and left a message. I have not been able to reach either Dr. Mathew or Dalandra Belcher to date.

**Analysis:**
The available medical records support impairment significant enough to require the detailed permanent restrictions and limitations as outlined above. The medical records; however, do not contain sufficient evidence to support restrictions of "no workability". The available medical records contain MRIs of the C- and L-spine from 2016 and 2017, closer in time to the motor vehicle accident; however, there does not appear to be any updated advanced imaging to evaluate the current state of the canal, discs, or nerve roots. These prior MRIs evidenced cervical and lumbar disc herniations; however, given the amount of time that has passed since the original date of imaging, it is possible for disc resorption and remodeling to occur around the previous herniations. Cervical and lumbar radiculopathy are stated as diagnoses within the available medical records; however, there does not appear to be any electrodiagnostic studies to evaluate and confirm ongoing radiculopathy. This condition, too, can improve over time and appears to have done so with no further neuromotor findings found on recent physical exams (normal strength). Furthermore, there is discrepancy within the different providers' notes regarding the current physical exam findings. On 3/27/19, Dalandra Belcher APRN noted strength grossly intact in major muscles

LIB000117

of all extremities, decreased sensation to bilateral L4-5 dermatomes, cervical, lumber, and gluteal tenderness to palpation along mid cervical facet joints, positive facet loading, and decreased cervical range of motion. Dr. Blake; however, indicated within his note dated 5/14/19 the following findings which are relatively benign: normal range of motion, no tenderness or deformity, normal reflexes, normal muscle tone, normal coordination, and normal range of motion of the neck. Lastly, the treatment plan has included a recommendation for surgical intervention in 2017 which has not yet occurred due to either a claims or insurance approval issue. Currently the treatment plan includes chiropractic treatment along with a stable dose of gabapentin, flexeril, and hydrocodone filled on a monthly basis. In the absence of surgery, there does not appear to be any current escalation of medication or alternative pain management recommendations which does not correlate with the severity of claimed impairment of "no workability".

There was included within the appeals documentation an IME conducted by chiropractor Donald Capoferri dated 5/21/19. This IME largely bases its recommendation of impairment on imaging results (which is not always reliable as a functional indicator) and history. The physical examination is an inherent part of a well performed independent medical examination and there was no mention of any abnormal physical exam findings that correlate with imagining findings described within this IME. A whole person impairment rating was also provided, however, while impairment percentage ratings are used in Workers Compensation administrative proceedings and legal proceedings they do not lend much information when trying to assess specifics of active functional capacity.

The available medical records also indicate a diagnosis of hidradenitis suppurativa; however, it appears the claimant responded with "dramatic improvement" to previous surgeries. While it appears he has had involved areas including the groin and bilateral axillae in the past, the most recent available dermatology medical records indicate his hidradenitis has overall remained quiescent except for one recurrent tract involving the right axilla. Surgery was planned for this on 6/24/19. There was mention of perineal fold redness consistent with intertrigo (which is simply skin inflammation usually in moist areas such as in between skin folds) for which a steroid and anti-fungal cream was prescribed. While these dermatologic conditions were mentioned within the available medical records, this report has focused primarily on impairment associated strictly with physical medicine diagnoses. I defer comment on impairment associated with any dermatologic condition to the appropriate specialist.

**Case Summary:**
The available medical records indicate a 57 year old male with history of lumbar and cervical spine spondylosis and degenerative disc disease who was involved in a motor vehicle accident on 10/4/16 with aggravation of back and neck pain. Imaging at that time indicated left paracentral C4-5, central C5-6, right C6-7 disc herniations with bilateral neuroforaminal stenosis at C4-5 and C6-7 and right neuroforaminal stenosis at C5-6 with cord compression at C4-5. There was also findings suggestive of aggravation of preexisting lumbago with disc herniation at L5-S1. Treatment has included physical therapy, chiropractic therapy, and medication pain management with gabapentin, flexeril, and hydrocodone. Evaluation initially included advanced imaging such as MRIs of the cervical and lumbar spine as well as neurosurgical consultation in 2016 and 2017. Surgery was recommended including a C4-C7

LIB000118

anteiror discectomy and fusion and L5-S1 fusion but does not appear to have taken place yet. Treatment has continued and appears to include a stable medication regimen of gabapentin, flexeril (muscle relaxant), and hydrocodone. Additional medical history includes hidradenitis suppurativa managed by dermatology. Remote history of several surgeries for this but has largely remained controlled with as needed antibiotics and bleach baths. There has been a recurrence in the right axilla for which surgery was planned on 6/24/19.

<<ELECTRONICALLY SIGNED>>

Sheila Natarajan, MD, FAAPMR
Board Certified Physical Medicine and Rehabilitation
Consulting Physician
Lincoln Financial Group

LIB000119

**Vocational Memorandum**

**From:** Lori Ashworth, M.Ed., CRC           **Date:** 7/23/2019

**To:** Courtney Grygiel

**Claim#:**         7223420
**Claimant:**       Virgil Harris
**Date of Birth:**    1/16/1962
**Date of Disability:**   10/15/2016

**Vocational Assessment:**

VCM received this file for a TSA update to one previously performed by Alicia Powell, MA, CRC on 4/22/2018. Please see that report for complete details regarding demographics, capacities utilized, education, work history, transferable skills and alternative occupations with accompanying wages. The following occupations were identified in that TSA: Accountant, Budget Accountant, Cost Accountant, Budget Analyst, Disc Jockey and Tax Preparer. By way of summary, EE is a 57-year-old Accountant with a bachelor's degree in accounting. The following work history: Accountant since 1985 and also worked as a disc jockey for 9 years. I have been asked to utilize restrictions and limitations from a peer review completed by Sheila Natarajan, MD (Physical Medicine & Rehabilitation) dated 7/11/2019. Based on these updated capacities, the previously identified occupations of Accountant, Budget Accountant, Cost Accountant, Budget Analyst and Tax Preparer remain viable. In the current employment environment, and as a result of technological advancement, employers are providing a variety of workstation types and associated equipment that allow individuals opportunity to experience and sustain comfort in their respective work settings within the occupation(s). Disc jockey was precluded given updated restrictions. This information has been provided to the ARC. This memorandum will serve in lieu of a formal written report given no change from the prior review.

Lori Ashworth, M.Ed., CRC
Certified Rehabilitation Counselor
Vocational Case Manager
SDN: 732-6302
Group Protection
Lincoln Financial Group

**LIB000120**

1

LIB000121

ICP Memo

| Customer Name | Claimant Name | Claim Number |
|---|---|---|
| ROBERT HALF INTERNATIONAL INC. | VIRGIL HARRIS | 7223420 |

| Referred By: | Courtney Grygiel | Claimant DOB: | 01/16/1962 |
|---|---|---|---|
| Referral Date: | 07/10/2019 | Job Title: | SALARIED PROFESSIONAL-ACCOUNTING CONSULTANT |
| Due Date: | 07/24/2019 | Medical/ Surgical Condition: | hidradentitis |
| Referral Type: | Appeal Referral | Disability Occupational Type: | |
| Reason for Priority Handling: | | Product Type: | LTD |
| Other Considerations | | LDW: | 10/14/2016 |
| Report Date: | | DOD: | 10/15/2016 |
| Physical Demands: | | BBD: | 04/13/2017 |
| Non-Medical Issue: | No | Non-Medical Issue Details: | |

**Core Questions**

**1. Please identify the primary impairing diagnoses with ICD 10 codes.**
Cervical disc disorder C4-7 (M50.82) and cervical spondylosis (M47.812) associated with chronic neck pain. Lumbosacral disc disorder with radiculopathy (M51.17) and lumbosacral spondylosis with radiculopathy (M47.27) with chronic low back pain and sciatica.

**2. If applicable, please identify clinically significant comorbid diagnoses with ICD 10 codes.**
Class II obesity (E66.0). Hidradenitis suppurativa (L73.2).

**3. Taking into consideration the entire clinical picture, including standards of care and evidence based medicine, and any medication or other treatment side effects, please describe how any supported level of impairment translates into restrictions and limitations from 4/22/19 to the present, and comment on the expected duration. If the medical records in the file do not support impairment and the need for restrictions and/or limitations during the above timeframe, provide a detailed explanation.**
The following permanent activity restrictions are supported. No friction or pressure applied to axillary skin. The following permanent functional limitations are reasonable. No sitting longer than 1 hour without opportunity to stand. No standing or walking longer than 15 minutes without opportunity to sit. No more than occasional bending/twisting at the waist or neck. No exertion of more than 20 pounds of force. There is no objective evidence of inability to engage in sustained productive activity within these parameters, and there is substantial evidence to support such ability. See the analysis below for further explanation.

**4. Treatment Opportunities: Is the treatment provided consistent with the standard of care for the apparent level of severity of the conditions? Is there any evidence that the claimant is not compliant with treatment that meets the standard of care?**
A lumbar spine MRI was obtained 3 days after the claimant was involved in a motor vehicle collision that resulted in low back pain without neurologic impairment. Multiple professional

LIB000122

guidelines indicate this should not have been done, because in this setting the degenerative changes commonly seen in the general population are incorrectly perceived to indicate serious injury and lead to excessive treatment and inappropriate activity restriction.

Opioid therapy for chronic musculoskeletal pain, and back/neck pain in particular, is controversial. While the practice is common, a number of published guidelines discourage its use in this situation, since there is little evidence that opioids meaningfully increase functional capacity or quality of life, and there is substantial evidence of serious and even life-threatening risks. They should only be used if objective increases in functional capacity are documented as a result (the opposite was true in this case: opioid use coincided with leaving a sedentary job). Opioids certainly should not be used until other options have been exhausted (psychological interventions such as cognitive behavioral therapy are particularly important but often skipped, as in this case). The claimant's clinicians used physical therapy, chiropractic and epidural steroid injections, but there are many other treatment options endorsed in published guidelines. Combining opioids with gabapentin increases risk of accidental death, and there is little if any evidence that gabapentin is effective for chronic back pain with sciatica, and so its use is discouraged in this setting. The facet blocks, medial branch blocks and radiofrequency ablation recommended by the claimant's pain specialist have not been shown to have long-term benefit for chronic back pain, and are discouraged in current literature. The literature indicates the surgery recommended to the claimant should only be done after failure of comprehensive rehab, to include psychological interventions (which was not done in this case).

There is no medical basis on which to restrict a patient's participation in sedentary productive activity because of chronic neck and back pain. This is an issue of personal tolerance, and not one of objective medical science. There is no medical risk involved. There is much published evidence that restricting light activity in patients with chronic back pain is harmful rather than helpful. Guidelines explain that the treatment of patients with chronic pain should focus on functional capacity rather than pain intensity. The large number of clinicians that have treated the claimant over the past 3 years have universally focused on pain scores rather than functional capacity. The claimant had been working successfully full-time for years despite chronic neck and back pain, and then after a minor automobile collision was deemed totally disabled. If accurate, such a dramatic decline mandates comprehensive rehabilitation. Because this did not happen, and rather treatment has focused almost exclusively on opioids after failure to improve with physical therapy and epidural injections, it would seem that treatment has been inadequate, or else the condition is not as severe as described. The claimant's self-documented recreational activity suggests that his condition is not as severe as he has indicated to his clinicians.

**Analysis**

The claimant has a long history of neck and back pain. In 2015 he had an MRI of the cervical spine that showed degenerative changes (spondylosis) from C4 through C7, without disc herniation or central canal stenosis. There was some foraminal narrowing, where nerve roots exit the spine. Interestingly, there were also lacunar infarcts (small ischemic strokes) in the brainstem with severe small vessel disease. Strokes and vascular disease in general have not been otherwise mentioned in the more than 900 pages of medical records reviewed. The claimant also had a history of lumbar spondylosis. Despite the MRI findings, annual exams in May 2015 and March 2016 said nothing about neck or back pain. The claimant was "working out" and losing weight (he is obese). This highlights the well-established fact that degenerative changes of the spine on MRI have little correlation with symptoms. The nature and degree of degenerative spinal abnormalities cannot predict the nature or degree of symptoms. Such abnormalities are very common in the general population, and are often asymptomatic.

The claimant has a long history of hidradenitis suppurativa, which is an inflammatory condition of the skin that leads to abscesses and draining sinus tracts and scarring. It usually affects the skin folds, such as the axilla and groin. This has been the claimant's experience, and he's had

LIB000123

multiple surgeries through the years as part of the treatment for this condition. In April 2016 the claimant had another surgery, removing diseased skin in the groin. He didn't think it had been extensive enough, and so he went to the surgery clinic 3 days later saying he was going to "have the doctors arrested". He was directed to one of the administrative staff members to explore his dissatisfaction. In June 2016 the claimant still felt that there were areas of disease buried under the skin that should have been removed during the surgery, but the surgeon documented the absence of active disease and said the wounds were healing well. The surgeon noted that he "had long conversation with Mr Harris re: his expectations. He wishes excision of very specific areas that do not appear to be active disease." The surgeon did "not feel this is indicated" and said the claimant "disagrees", but was still cleared to return to his sedentary job. This episode suggests that the claimant has a tendency to overestimate the severity of his medical condition, as well as the intensity of treatment required. In July 2016 he told his dermatologist that he believed his skin condition was caused by the public water supply, but the dermatologist explained the true contributors to the disease, which are genetics, immunology, hormones, obesity and smoking (the claimant has a long smoking history).

In July 2016 the claimant played golf and developed some lumbar pain that he rated as 10/10 (worst pain possible), and yet he was described by 2 physicians as exhibiting no distress, and was overall feeling well. His exam was normal except for some tenderness of the lumbar muscles. Thus the pain intensity reported by the claimant was far out of proportion to his overall appearance and objective physical exam. He also continued to work despite the pain he rated as 10/10. In August he had 3 more clinic visits for back pain, and each time continued to have an exam notable only for obesity and mild back tenderness, and still continued to work. In September 2016 he had another visit for the hidradenitis, believing that there was a persistent abscess, but the exam failed to demonstrate it. He was also noted to appear comfortable sitting in a chair, with no visible distress. He had gained weight as he tried to quit smoking, and planned to spend more time at the gym to combat that. By 2016 October he was at borderline morbid obesity.

On 10/4/16 the claimant was in the driver's seat of his vehicle when it was struck from behind by another vehicle. The police reported the damage as moderate. The claimant endorsed back pain at the scene, but refused medical attention. Three days later he had an MRI of the lumbar spine that showed moderate spondylosis, including some facet degeneration. As with the cervical MRI the previous year, there was some foraminal stenosis. There was also some disc bulging at L4-5 and disc herniation at L5-S1, which touched the right S1 nerve root and "barely" touched the sac surrounding the nerves in the central canal. The medical documentation indicates that this disc herniation had been present since at least 2013. Some annular tears of the discs were seen, which the radiologist stated "may have been aggravated by reported injury and can cause pain." This is not an objective finding, but rather conjecture. These annular tears are present in up to half of asymptomatic individuals. Disc herniation is present in 20-40% of asymptomatic individuals. Bulging discs are present in up to 80% of asymptomatic individuals. Thus these findings have very little clinical significance. This is why multiple professional guidelines indicate that this MRI, obtained 3 days after the collision, should never have been ordered. Such inappropriate testing leads to exaggerated perceptions of injury in patients and excessive treatments from their clinicians. This appears to be the case here. The claimant stopped participating in his sedentary job 10 days after the collision.

In December 2016 his internist said that the claimant's chronic back pain, which had before improved with weight loss, had increased after the motor vehicle collision in October. The claimant said the pain increased with movement and lifting, but on exam the he was noted to be walking without difficulty and appeared well. The internist said that he had "a benign musculoskeletal back injury" and prescribed a muscle relaxer and gabapentin. There is no role for gabapentin in this setting, according to current literature, and when combined with a muscle relaxer can be even more sedating that when used alone. The internist told the claimant he would "extend his time off but he must lose weight. This is the reason he is having worse back issues" in the wake of the collision.

LIB000124

Inexplicably, 2 months after the collision which required no immediate medical attention, the internist restricted the claimant from his sedentary job for 3 more months. There is no objective support for this.

Later in December 2016 the claimant saw an orthopedic surgeon, who noted that physical therapy and chiropractic manipulation and epidural steroid injections since the October motor vehicle collision had not helped the pain. He stated that there was no prior history of neck pain, but that contradicts the cervical spine MRI that was done in 2015. The surgeon had seen the claimant in 2013 after a motor vehicle collision, at which time L5-S1 disc herniation was present. Surgery had been recommended at that time, but the claimant had declined. That decision was vindicated by the fact that his pain reportedly decreased to 2/10 severity thereafter, until the October 2016 collision, after which time it averaged 10/10. Again, this maximal pain rating, which is meant to indicate the greatest degree of pain possible (such as an acutely broken leg, etc), was being used by the claimant despite walking and sitting without any visible difficulty, and driving to multiple appointments. On exam the surgeon documented guarded movement of the neck and lower back, with pain when the hips were flexed and the knees extended (the same position required for driving a car). There was some subjective decrease in sensation in the fingers of the right hand (specific fingers were not mentioned; a pinched nerve in the cervical spine would be expected to affect only some fingers, and spare the others). Based mostly on subjective discomfort, with an intensity rating far out of proportion to the claimant's observed behavior, the surgeon inexplicably stated "he is unable to work as an accountant secondary to the injuries sustained." The only injury specified was "aggravation" of pre-existing disc herniation, which had been present for at least 3 years and despite which the claimant successfully worked full-time. Despite the fact that they had already failed to provide relief, the surgeon wanted to do more injections. He also referred the claimant to a physiatrist because "he wishes to explore disability evaluation." Entertaining the idea of total disability for sedentary work due to 2 months of "aggravation" of chronic low back pain through which the claimant had worked full-time for years is medically inappropriate.

In January 2017 MRI of the cervical spine was done, which showed moderate disc herniation at C4-5 with cord compression, with lesser degrees of cord involvement from disc degeneration at C3-4 and C5-7. There was also moderate foraminal narrowing where the nerve roots exit the spine. This is consistent with the published evidence that these kinds of MRI findings have little correlation with clinical symptoms, because even though the MRI findings were greater in the cervical spine, it's the low back that has been consistently more symptomatic. It also supports the internist's statement that the claimant's obesity was the main driver of his back pain, because even though the MRI findings were more advanced in the neck, neck pain is not much affected by obesity. The physiatrist began seeing the claimant in January 2017. This visit was scheduled specifically for the purpose of a disability evaluation, and, contrary to the multiple clinical visits that had already been documented since the collision nearly 4 months earlier, when the claimant saw the physiatrist he appeared distressed and walked with a limp. There was mild weakness detected in the right foot, with pain when flexing the right hip and extending the right knee (the same position required for driving), and subjective decrease in sensation in the right L5 dermatome. The exam was otherwise normal. The claimant told the physiatrist that he could not sit for longer than 30 minutes at a time, and had to lie down 4 times a day. Based on this subjective information, and mild exam abnormalities, the physiatrist inexplicably stated "it is my opinion within a reasonable degree of medical certainty that he is totally and permanently disabled due to his intervertebral disc disorders as a result of MVA." This statement is contradicted by the fact that the disc disorders had preceded the collision by at least 3 years, and that the claimant had continued to work full-time nonetheless.

Around the same time, the claimant began seeing a pain clinic for opioid pain medication. He again rated his pain as 10/10, the maximum degree of pain a person can experience. And again this subjective rating was far out of proportion to the objective exam findings of stiffness and tenderness of the neck and low back. There was no objective evidence of neurologic impairment, no visible evidence of distress, and he was freely conversational. By this time he had crossed the

LIB000125

threshold into morbid obesity, likely because he was staying home from work and therefore had greater access to excess calories, and less physical activity. The claimant's clinical course illustrates what is known from medical research: avoiding light work does not improve quality of life for people with chronic back pain or other musculoskeletal pain. Rather it worsens it. The claimant's symptoms and use of medical treatments have steadily increased since he stopped working. Interestingly, since the claimant began seeing multiple physicians for back and neck pain, complaints related to his skin condition have mostly ceased. In March 2017 he told the dermatologist that he had no concerns about it and didn't want any more treatment.

In April 2017 the claimant again saw the orthopedic surgeon, and again reported 10/10 pain despite demonstrating he was "able to ambulate without difficulty" and having the same mild exam abnormalities seen in December 2016. And despite the fact that the claimant had improved without surgery after the disc herniation identified by the surgeon in 2013, the surgeon again recommended lumbar fusion. He also recommended nerve blocks for the neck even though the pain was reduced to 3-4/10 (mild to moderate) with hydrocodone. These recommendations are difficult to line up with published treatment guidelines for back pain. Again the surgeon restricted the claimant from all work with no explanation other than "he has been granted disability status" by the physiatrist. This is the same physiatrist, who, in May 2017, stated that the claimant was unable to perform any of his sedentary job duties due to back pain that had been present for 2-4 years. This is contrary to the reality that the claimant had indeed worked full-time during those years, and therefore the physiatrist's opinion that the claimant is disabled for any occupation is not supported by objective fact. At this same time, a field investigation found that the claimant's Facebook posts and photos showed he was "active with his DJ career". Once again, objective facts contradict the statements by the surgeon and physiatrist about the claimant's functional capacity.

In June 2017 the pain management physician decided to perform nerve blocks to determine whether the facet joints of the spine were the source of the claimant's pain, and whether ablation of the nerves would reduce pain. While this is commonly performed by spine specialists, it is discouraged by published guidelines. In July 2017 the orthopedic surgeon said that since the insurance company was taking too long to approve cervical spine injections, he would recommend cervical spine fusion along with lumbar fusion, since he believed the injections would not be effective 9 months after the collision. But this again is hard to reconcile with the fact that the neck pain was mild to moderate with pain medication, and there was no objective neurologic deficit. In September 2017 the claimant again rated his pain as 10/10 (the maximum pain a person can experience), despite demonstrating no visible distress on exam and being freely conversant in his clinical interactions. The pain management physician again documented no neurologic signs on exam, only some stiffness and tenderness of the neck and lower back. A few days later the internist examined the claimant, and said the claimant was hunched over and shuffling in his gait due to pain, with pain in both legs when the hips were flexed and knees extended (the same position used for driving). The pain management physician had documented just 4 days before that there was no pain with that maneuver. The internist documented weakness of grip and with abducting and adducting the fingers, as well as hip flexion and extension. The neurologic exam was normal a few days earlier when performed in the pain clinic. A few weeks later in the pain clinic the neurologic exam was again normal, and exam again only showed stiffness and tenderness of the neck and low back. This inconsistency in findings is characteristic of the extensive medical records reviewed, and further weakens objective support for impairment.

In October 2017 a physiatry peer review was completed. After reviewing the records, the peer reviewer contacted the physician assistant at the pain clinic, who told him that the claimant was unable to work and permanently impaired. The peer reviewer appears to have taken this statement at face value, despite acknowledging that the claimant had been working despite back pain prior to the collision. The review concluded that the claimant should remain out of sedentary work until he could get surgery. The review didn't provide a medical explanation for this perplexing recommendation. From the fall of 2017 through the spring of 2018, the claimant continued to assert

LIB000126

that his pain was 10/10, the maximum pain a person can experience, and again only had stiffness and tenderness of the neck and low back, with ongoing morbid obesity, and no neurologic deficits. Interestingly, he told the pain clinic that in addition to movement, mental stress made his pain worse, which suggests some psychological component of the claimant's perception of severe pain. He saw a different orthopedic surgeon in April 2018, who treated him for medial epicondylitis (tennis elbow) and knee osteoarthritis on the right, and contrary to the previous orthopedic surgeon, found no sensory deficit in the upper extremities. In May 2018 the pain management physician found decreased subjective sensation on the right in the L4-S1 dermatomes, along with pain when the right hip was flexed and the knee extended (the same position used for driving). So another MRI was done, which showed no significant changes compared to October 2016. Through the summer of 2018 the pain rating remained at 10/10, which suggests the treatments being provided were not very effective. Yet they continued, and the claimant continued to exhibit no visible distress on exam. As summer moved into fall in 2018, the pain clinic documented that hip flexion with knee extension was painful in both legs, with ongoing subjective decrease in sensation in the L4-S1 dermatomes, but no objective neurologic deficit.

In December 2018, the pain clinic documented ongoing severe pain with no visible distress, stiffness and tenderness of the shoulders, stiffness of the knees and tenderness of the patellae, and the same stiffness and tenderness of the neck and low back that have been documented all along. But in January and March 2019, pain clinic notes document the absence of any pain with straight leg raise, and just some stiffness and tenderness of the neck and low back. Then at the end of March the same subjective sensory findings from late 2018 reappear in the pain clinic notes. Pain was noted to be down to 6/10 (moderate) with medications. Fortunately the claimant managed to lose about 30 pounds, so he is no longer morbidly obese.

In April 2019 a chiropractor documented that the claimant was unable to exert any force with the left hip and thigh, which, if true, would render the claimant unable to walk. But the claimant **was** walking. The chiropractor also said the claimant was unable to exert any force with the left triceps, and had severe shoulder pain due to adhesive capsulitis. This is a condition in which the ligaments and tendons become contracted and stiff, precluding movement. However, at the same time, the claimant was posting photos of himself golfing on his public Facebook page (accessed through the field investigation report). So obviously his shoulder and triceps were functional. All of this shows that the claimant's inconsistent exam findings don't translate to actual functional capacity. In April 2019 another physiatry peer review was done, which concluded that the claimant is capable of full-time sedentary work, sitting up to 40 minutes at a time, and standing or walking up to 20 minutes at a time. The claimant was deemed ineligible for disability benefits and filed an appeal.

In May 2019 the claimant's internist said "due to continuous pain, patient unable to remain still for longer than 10 minutes" and can't return to work. However, the claimant's public Facebook page has a video he recorded of himself in June, in which he was fully conscious during his axillary outpatient surgery, lying completely still for the procedure, with good range of motion of the shoulder. His account demonstrates with captioned and dated photos of himself that he currently has a very active social life, frequently going to restaurants and music clubs, as well as dancing and golfing at the same time that he was reporting constant 10/10 pain to his clinicians. His photos and videos don't reveal any visible indication of discomfort. His page indicates that he works as a DJ. A chiropractor did an independent medical evaluation in May at the request of the claimant's attorney. He attaches great importance to the MRI findings, which, as noted above, are proven in published research to have little correlation with symptoms or functional capacity. He further says that spinal surgery is needed to "lessen the danger of a catastrophic spinal cord injury from another fall or accident." This is simply untrue. Having a chronic disc herniation does not constitute a risk for paralysis, and spinal fusion surgery is not performed in this setting to prevent paralysis. Chiropractors are not trained nor qualified to provide surgical recommendations.

A third physiatry peer review was done 2 weeks ago, which pointed out the inconsistencies in exam findings among clinicians, as well as the discrepancy between the reported severity of the

claimant's condition and the fact that treatment has not changed in over 2 years. He also disagreed with the methodology of the chiropractic independent medical evaluation. The review concluded that there is no evidence of inability to sustain full-time work within reasonable restrictions, such as no more than occasional standing or walking, support for changing positions as needed, no heavy lifting, and no extremes of bending or twisting. The reviewer reached out to the treating clinicians but none of them returned the calls. If the clinicians believe that returning to sedentary work is dangerous or impossible, then it seems that at least one of them would return a call from a peer reviewer exploring the question of impairment.

In summary, the claimant has had chronic neck and back pain for years, with degenerative changes in the cervical and lumbar spine, including L5-S1 disc herniation. It was apparently aggravated by a motor vehicle collision in 2013. Despite this, the claimant continued working at his full-time sedentary job. In the summer of 2016 he reported 10/10 low back pain after golfing (the maximum pain a person is capable of experiencing). Nevertheless he continued working. He was in another moderate motor vehicle collision in October 2016, at which time he declined medical attention. Since then he has continued to complain of 10/10 back pain, as well as a lesser degree of neck pain. There has been some right leg pain as well, suggesting some nerve root irritation. MRI done a few days after the collision again showed the L5-S1 disc herniation seen in 2013. His clinicians have said that the collision exacerbated his chronic back pain, but objective abnormalities on exam have been mild and inconsistent. In many instances the exam findings and pain intensity have been sharply at odds with demonstrated functional capacity. Treatment has remained the same for over 2 years, consisting of a low potency opioid, a muscle relaxer, and low dose gabapentin. This year 2 physiatry peer reviews have concluded that the claimant is capable of full-time sedentary work with modest limitations similar to those I have recommended. Multiple published professional guidelines agree that keeping the claimant out of work in this situation is harmful. There is no objective support for the opinion of his clinicians that he is totally disabled, and there is substantial evidence that his functional capacity is sufficient for sedentary full-time productive activity. A large number of studies show that patients involved in litigation or disability disputes or at-fault injury are much more likely to remain out of work. Unfortunately in this case it appears that the treating clinicians have contributed to this resistance rather than helping to overcome it.

David Carl Houghton, MD, FACP
Consulting physician, Liberty Assurance Company of Boston
602-626-6022 (direct voice)

Representative and relevant data from more than 920 pages of medical records provided:

2/17/15 MRI cervical spine: Spondylosis C4-7 without central stenosis or disc herniation. Brainstem with lacunar infarcts and severe small vessel disease. Some foraminal narrowing.

5/28/15 Kelvin M Hamner, MD (internal medicine): Annual exam. BMI 34.2. ROS neg. Comprehensive exam o/w normal.

11/12/15 Kelvin M Hamner, MD (internal medicine): Problem list: hidradenitis, elevated BP, tinea pedis, vitamin D def.

3/16/16 Robin Klein, MD (internal medicine): Annual exam, hidradenitis. Groin still having discharge. Still smoking but less. Working out and losing wt. ROS neg. Several draining areas of groin, inguinal LAD, axillary scars. Exam o/w normal. Refer back to surgery.

4/8/16 Rondi B Gelbard, MD (general surgery): Will do bilateral groin excision 4/19/16.

4/22/16 Stephanie Graddick, LPN (general surgery): "Presented to clinic expecting a meeting with administration and the surgeons. He stated that he was here to have the doctors arrested. ...Directed to Patient/Family Experience to speak with Ms Jordan."

5/4/16 Rondi B Gelbard, MD (general surgery): Partial dehiscence of left groin incision. Stop prednisone prescribed by dermatologist after surgery. He's concerned that there was insufficient excision.

5/16/16 Bryant McIver, MD (general surgery): "Presents today with a letter from his dermatologist that states that he had MRSA in his groin wound." Left groin incision healing well without evidence of infection...healing beautifully...continue doxycycline, will add a 10-day course of Bactrim given concern for MRSA...back to work on 6/6/16."

6/6/16 Bryant McIver, MD (general surgery): Bilateral groin hidradenitis flare. Bilateral tender groin nodules, quarter-size residual wound healing well. Cont abx, f/u 2wks to reassess for skin grafting.

6/20/16 Christopher J Dente, MD, FACS (general surgery): "Continues to feel there are areas under the skin that are active disease that were not dealt with at original operation." No active disease on exam of groin, left thigh wound almost completely healed. "Had long conversation with Mr Harris re: his expectations. He wishes excision of very specific areas that do not appear to be active disease...I do not feel this is indicated...He disagrees...He is OK to return to work."

7/13/16 Ernest Amukamara, NP (family medicine): Few days of back pain, dysuria. BMI 39. Pain w/ flexion/extension of low back, suprapubic TTP. Codeine. UA shows moderate heme, trace LE, some protein. Cipro.

7/18/16 Seema P Kini, MD (dermatology): "Still with active axillary and gluteal draining nodules and sinus tracts. Long discussion today that there is no cure for hidradenitis but that our goal is control. Discussed Humira...Thinks all of this is due to the water." ROS+ R back pain w/ spasm but "feeling well." Pain 10/10. No distress. Talk to PCP about back pain.

7/19/16 Clayton Ramsue, MD (urgent care): Played golf for 1st time in 3mos, now w/ 3d of back pain, spasms. ROS neg. Lumbar paraspinal TTP, exam o/w normal.

8/8/16 Clayton Ramsue, MD (urgent care): 6wks of back pain, moderate, right upper, worse w/ movement, better w/ rest. ROS neg. BMI 35.6. Mild TTP R scapular area, exam o/w normal. LBP w/o sciatica.

8/19/16 Nkechi M Mbaezue, MD, MSCR (primary care): New pt for R back pain. BMI 37.6. 6wks ago after playing golf R upper back pain began. Exacerbated by certain movements. Mild TTP R rhomboid, exam o/w normal. Refer to PT. No golf. Refer to ortho.

8/31/16 Nkechi M Mbaezue, MD, MSCR (primary care): Annual exam. BMI 37.2. Open areas of hidradenitis in perineum, comprehensive exam o/w normal.

9/6/16 Seema P Kini, MD (dermatology): HBSAg+, HBCAb+ (IgG), will check IgM and refer to hepatology.

9/12/16 Patrick Davis, MD (ENT): "Patient 'feels' abscess is still present [on face], however does not complain of pain or fever. Nor discoloration of skin overlying left maxilla. No drainage." ROS neg. "Sitting comfortably on the exam chair, no signs of acute distress." Left maxilla tender to deep palpation but otherwise normal. "Sebaceous cyst resolved."

9/20/16 Aarti Agarwal, MD (primary care): Chronic hep B, refer to GI. BMI 37.2, exam o/w normal. "Obesity worsening particularly over the past few months. Related to tobacco cessation. Planning to do more work at LA Fitness, more exercise, will cut down on the amount of food he eats."

10/4/16 Dr Afolake Mobolaji (family medicine): Lab f/u. BMI 39.4. ROS neg. Exam o/w normal. Cont tx for hidradenitis.

10/4/16 Police report: Claimant's vehicle struck from behind, moderate damage, he reported back pain but refused medical care.

10/7/16 MRI lumbar spine: Moderate spondylosis T11-S1, most at L5-S1. Facet arthropathy L1-L4. L4-5 central bulging disc and bone spur indents thecal sac, foraminal stenosis from facet arthopathy and small bilateral foraminal herniated disc protrusion. L5-S1 severe DDD, central and right paracentral herniated disc protrusion indenting epidural space and barely touching thecal sac and touching R S1 nerve. Foraminal stenosis due to facet arthropathy, small foraminal herniated disc protrusions and bone spurs bilaterally. Annular tears seen may have been aggravated by reported injury and can cause pain.

11/17/16 Clarence Clark III, MD (general surgery): Anal fistula eval. ROS neg. 11/28/16 fistulotomy and flap.

11/29/16 Chantel Lee, PA-C (orthopedics): Referred for surgery. No work 11/29/16 to 12/31/16.

12/5/16 Clarence Clark III, MD (general surgery): Healing well.

12/6/16 Victor J Blake, MD (internal medicine): BMI 38.4. Chronic back pain worse after MVA in October. Had improved w/ wt loss. Worse w/ lifting, movement. Walking without trouble, well appearing. "Symptoms and exam are most consistent of a benign musculoskeletal back injury." Muscle relaxer. Start gabapentin. "Told him I will extend his time off but he must lose weight. This is the reason he is having worse back issues in addition to his MVA." No work until 3/1/17 for back problems.

12/20/16 Erik Bendiks, MD (orthopedics): Neck and low back pain, in MVA 10/4/16 in which he was rear ended. Chiro and PT didn't help. ESI no help. No prior hx of neck pain. Last seen 4/11/13 after MVA 10/6/12 w/ L5-S1 disc herniation but refused surgery. Pain averaged 2/10 until latest MVA. Neck 6 10/10, back 10/10, aggravated by sitting more than 5min. R sciatica. Hard to sleep. "He is unable to work as an accountant secondary to the injuries sustained. He attempted to return immediately following the collision but was unable to complete his duties." ROS neg. Guarding w/ neck ROM, decr sensation R fingers, guarding w/ lumbar ROM, SLR bilateral, exam o/w normal. Aggravation of previous L5-S1 herniation due to MVA. Get MRI and do more ESI. "I recommend referral to Dr Feeman as he wishes to explore disability evaluation." No work until 1/27/17.

LIB000129

1/24/17 MRI cervical spine: C3-4: Anterior margin of the cord is mildly flattened. Moderately severe stenosis of foramina from spurs. C4-5 moderate posterior disc herniation causing displacement and compression of the cord. Spurs cause moderate stenosis of foramina. C5-6 disc protrusion causing some impression on anterior margin of the cord, moderate right foramen stenosis from spurs. C6-7 moderate size protrusion causing compression of R cord.

1/24/17 Mark W Feeman, DO (PM&R): "It is my opinion within a reasonable degree of medical certainty that he is totally and permanently disabled due to his intervertebral disc disorders as a result of MVA." PT and ESI have provided no pain relief. Extreme pain, has to lie down frequently. ROS+ difficulty sleeping. On exam distressed from pain, antalgic gait. R dorsiflexion 4/5, bilateral SI TTP, SLR+ R, decr L5 sensation, o/w exam normal. Can't sit longer than 30min and has to lie down QID.

2/13/17 Victor J Blake, MD (internal medicine): "Back pain otherwise doing well. He off and on feels drainage in upper buttocks area with odor." No perianal wounds.

2/21/17 Stanley P Riepe, MD (GI): Immune-tolerant chronic HBV doesn't require tx. HCC screening q6mos w/ LFTs.

2/28/17 José Mathew (pain management): Pain 10/10, meds help him do daily activities. BMI 40.7. Exam same as 9/1/17 except R SLR+.

3/13/17 Seema P Kini, MD (dermatology): "Reports he's doing very well. He states he hasn't had a bad flare of HS in years...area on left groin "fills with fluid when it rains...he reports that his HS has been quiescent and he is uninterested in Humira or other HS tx."

3/28/17 José Mathew, MD (pain management): Pain 9/10, meds help him move w/ less pain. BMI 41.6. Exam same as 9/1/17.

4/26/17 Erik Bendiks, MD (orthopedics): Neck pain down to 3-4/10 with hydrocodone, intolerable without it. LBP 10/10. "He has been granted disability status with Dr Feeman." ROS neg except trouble sleeping. On exam "able to ambulate without difficulty. Same exam as 12/20/16. Neck pain w/ radiculopathy C4-7 due to DDD. LBP w/ L5 disc herniation w/ spinal stenosis and radiculopathy. Try bilateral cervical branch blocks C4-6. L5-S1 fusion recommended. No work.

5/16/17 Dr Mark Feeman: Condition began 10/4/16. Treated 1/23/17. Referred to PT. Unable to perform any of his job duties due to severe back pain for 2-4 yrs. Will be treated monthly. Disabled for any occupation.

5/19/17 Amit Patel, MD (pain management): Pain 6/10, meds help him move with less pain. BMI 41, exam same as 9/1/17. Start gabapentin.

5/20/17 Field investigation: Facebook photos and posts suggest he is "active with his DJ career."

6/16/17 José Mathew, MD (pain management): Exam same as 9/1/17. Will proceed w/ diagnostic medial branch blocks L3-S1 to see if facets are the pain generator, and if ablation would help. Continue PT/HEP.

7/12/17 Erik Bendiks, MD (orthopedics): Feels poorly, blurry vision, trouble sleeping, ROS o/w neg. Cervical and lumbar DDD w/radiculopathy. Exam unchanged from 4/26/17. Waiting for insurance to approve c-spine injections and lumbar fusion. "Too much time has transpired since the collision for injections to be an effective means of pain control." So cervical fusion recommended.

9/1/17 José Mathew, MD (pain management): Pain 10/10 lower back radiating to legs. Improves w/ changing position and meds. Worse w/ prolonged sitting/standing. Meds help w/ tolerance of daily activities. BMI 41. Decr cervical ROM, TTP C3-6, decr lumbar ROM, TTP L3-S1, pain reproduced w/ facet loading, SLR neg. "In no acute distress, conversant." Cervical and lumbar spondylosis w/ radiculopathy, chronic pain syndrome.

9/5/17 Victor J Blake, MD (internal medicine): Back pain f/u. Bilateral sciatica, very severe, daily, gradual onset, worse w/ movement. ROS neg. C5-T2 and L4-S1 TTP, causing sciatica. "Hunched, slow, shuffling gait due to pain. Weakness with grip strength and abd/adduction of fingers B/L. Weakness to hip flexion and extension." SLR bilaterally. Sensation intact. Exam o/w normal.

10/2/17 José Mathew, MD (pain management): BMI 41. Same as 12/26/17 note.

10/13/17 Arthur Kalman, MD (PM&R peer review): Prior to DOD had tx for hidradenitis, back pain, and other issues. L spine MRI 10/7/16 showed moderate spondylosis T11-S1, mostly at L5-S1. Above L5 there was facet arthropathy but no herniated discs or stenosis. Disc bulge and bone spur indented thecal sac. L5-S1 showed central and right paracentral herniated disc protrusion "barely touching the thecal sac to the right of midline while touching the right S1 nerve root." Foraminal stenosis due to facet arthropathy and disc protrusions. 12/6/16 seen for chronic LBP w/ radiation to buttocks. Muscle relaxer and gabapentin added. Seen by ortho 12/20/16 and 12/22/16 for neck pain 6-10/10 and LBP 10/10 w/ RLE rad. Sleep disrupted by pain. "Reportedly, the claimant was unable to work due to the injuries sustained." 11/8/16 lumbar ESI didn't help. Was excused from work 12/22/16 through 1/27/17. 1/23/17 seen by PM&R/pain mgmt, had to alternate sitting and standing. Had to lie down frequently. Reportedly PT and ESI hadn't helped. Surgeon recommended lumbar fusion. Physiatrist said totally and permanently disabled from DDD. 1/24/17 MRI cervical spine showed C4 5 moderate disc herniation causing cord compression but no myelomalacia. "It was possible that the herniation was a recent and post-traumatic deformity, although there was moderate degeneration of the disc." C6-7 moderate disc protrusion and small spur causing compression of R cord, disc moderately degenerated. C5-6 less prominent disc protrusion. 4/26/17 saw surgeon for intolerable neck pain that was 3-4/10 w/ hydrocodone. LBP 10/10 w/ RLE rad. Decr ROM neck. Decr sensation R fingers. Decr ROM L spine, SLR+ bilateral. C4 6 medial branch block recommended. Was restricted from work. 7/12/17 exam unchanged. Cervical and lumbar fusion were recommended. 9/5/17 chronic back pain and sciatica rated 10/10, C5-T2 TTP and L4-S1 TTP, SLR bilateral, weak grip and finger abduction/adduction bilateral and hip flex/ext. Hunched, slow, shuffling due to pain. Peer to peer w/ PA concluded unable to work, permanently impaired, unable to do sedentary work for 3mos while waiting for surgery.

LIB000130

11/1/17 José Mathew, MD (pain management): BMI 41. Same as 12/26/17 note.

12/4/17 José Mathew, MD (pain management): Same as 12/26/17 note.

12/26/17 José Mathew, MD (pain management): Neck, shoulders, back pain f/u. 10/10, better w/ meds and rest, worse w/ sitting, lifting, stress. Meds allow him to perform daily activities. BMI 40.3. Same exam as 4/3/18. Lose wt.

1/31/18 José Mathew, MD (pain management): Same as 12/26/17 note.

3/2/18 José Mathew, MD (pain management): Pain 10/10, same as 12/26/17 note.

4/3/18 José Mathew, MD (pain management): Pain in neck, shoulders, low back (f/u). Better if constantly moving, and with meds. Worse w/ sitting and lying down. No side fx. 10/10 pain on average. BMI 40. Normal exam including neuro, except decr cervical and lumbar ROM w/ bilateral facet TTP and pain w/ facet loading. SLR neg. LBP, cervical radiculopathy, chronic pain syndrome.

4/27/18 Peter J Symbas, MD (orthopedics): No improvement of R elbow or R knee despite exercises, tennis elbow strap and steroid injection in knees. Mild TTP R elbow epicondyles and carpal flexors. Exam o/w normal except obesity. Normal sensation in BUE. R knee primary OA. R medial epicondylitis. MRI.

5/1/18 José Mathew, MD (pain management): 10/10 pain better w/ meds, worse w/ activity. BMI 39. Shoulders decr ROM and TTP GH joint, o/w same exam as 4/3/18.

5/16/18 Garrett Okun, DC (chiropractic): Constant neck/back discomfort 10/10 worse w/ movement, pressure, prolonged sitting, coughing, sneezing. Rad to R&L trap and R hip and R elbow. Better w/ meds and chiro. R leg ¼ inch shorter than L when prone. Subluxations treated.

5/30/18 José Mathew, MD (pain management): Pain 10/10, better w/ light exercise and rest and meds. Worse w/ prolonged activity. Meds allow daily activities. BMI 39. Decr sensation R L4-S1, SLR+ R, o/w same exam as 4/3/18 note. Get new MRI.

6/11/18 MRI L spine: Diffuse central canal narrowing but no significant stenosis. Moderate foraminal stenosis L5-S1 bilateral. Disc herniation may irritate S1 nerve root R>L. L4-5 L foraminal stenosis due to disc protrusion and bony changes, L4 nerve root may be irritated.

6/29/18 José Mathew, MD (pain management): Decr sensation L4-S1 R, SLR+ R, o/w same as 4/3/18 note.

7/30/18 José Mathew, MD (pain management): Pain 10/10. Same as 4/3/18 note.

8/29/18 José Mathew, MD (pain management): 10/10 average pain neck, low back, shoulders. Worse w/ bending and prolonged standing or sitting. Pain med "allows patient to attempt working out." Pain 10/10, no distress, conversant, same exam as 9/25/18.

9/17/18 Mark William Feeman, DO (PM&R): Injections haven't helped. Severe pain. 10/10 (7-8/10 w/ meds). ROS+ trouble sleeping. On exam distressed from pain, antalgic gait. R dorsiflexion 4/5. Decr ROM L spine. SLR+ R. Bilateral SI TTP. Decr sensation R L5. Exam o/w normal. "Not able to be predictably productive in the workplace. Cannot stand, walk or sit for prolonged periods of time, and will need to rest and change positions throughout the day. At times, the pain will reach levels where they will not be able to go to work, may miss many days/month. This patient is disabled from any and all employment."

9/25/18 Scott M Linacre, PA (pain management): Average 8/10 pain (neck, low back, shoulders, knees, toes). Functional improvement: less pain. BMI 39. No distress, conversant, decr sensation L4-S1, SLR+ bilateral, otherwise same exam as 12/26/18.

10/29/18 José Mathew, MD (pain management): Neck, low back, shoulders, knees, toes. Average 8/10. Better w/ exercise, worse when stationary and bending. BMI 39. No distress, conversant, same exam as 12/26/18.

11/28/18 José Mathew, MD (pain management): Average 9/10 pain (neck, low back, legs). Better w/ exercise and rest, worse w/ bending, walking, sitting, prolonged standing. "Functional benefits from the medications include: able to perform daily activities." BMI 39. Pain 9/10, no distress, conversant. Same exam as 11/26/18.

12/26/18 José Mathew, MD (pain management): Neck, low back, legs. Average 8/10. Without meds 10/10. Improves with exercise but worse with walking and standing. "Functional benefits from the medications include: ease the pain." BMI 38.5. No distress, conversant, pain 8/10. Decr ROM R shoulder, TTP R GH joint, same on L. Both knees decr ROM and TTP around patella. Decr ROM of neck and TTP C3-6 reproduced w/ facet loading, same for L3-S1. Exam otherwise normal. "Reports functional improvement and decreased pain with opioid." Trying to lose weight to get back surgery.

1/29/19 José Mathew, MD (pain management): Same as 4/3/18 note.

3/1/19 José Mathew, MD (pain management): BMI 38.5. Same as 4/3/18 note.

3/27/19 Dalandra Belcher, APRN, FNP C (pain management): Pain 6/10 with pain meds, 10/10 without. Worse w/ lifting, standing, walking for long periods. No side fx. BMI 38.2. Decr sensation L4-5 bilateral, ↑SLR bilateral, TTP spine, exam o/w unremarkable. Functional improvement w/ meds.

LIB000131

4/9/19 Lauren Orenstein, MD (dermatology): Multiple surgeries for hidradenitis since 2001 w/ good results. R axilla draining nodule, 1 small residual nodule on scrotum that sometimes drains. Would like R axilla surgery, not interested in immunotherapy. R axilla 4x1.5cm sinus tract w/ draining nodules. 5mm papule on scrotum. Scarring in both axillar and perianal. Intertrigo (HC 2.5% and ketoconazole).

4/17/19 Howard Grattan, MD (PM&R, pain medicine peer review): Has had intermittent surgeries for hidradenitis suppurativa. July 2016 NP saw him for LBP w/ DDD, pain on flexion. Seen again in July 2016 for LBP after playing golf, normal neuro exam, mild pain w/ flexion, cyclobenzaprine and naproxen. August 2016 seen for LBP in urgent care. 12/6/16 seen for LBP, continue same meds. 1/23/17 seen for LBP, had MVA 10/4/16, antalgic gait, R plantarflexion 4/5, SLR+ R and decr sensation R L5. Can't sit longer than 30min and has to lie down for 30min QID. 4/26/17 saw ortho, had MVA that caused neck pain and radiculopathy, disc herniation C4-7, bilateral foraminal stenosis C4-7, cord compression C4-6, aggravation of pre-existing back pain w/ disc herniation L5-S1. Rest, meds, PT, injections hadn't helped. Fusion recommended. "Restricted from work." 5/19/17 NP saw him for LBP w/ LLE pain, worse w/ walking or standing for long periods. Cyclobenzaprine and hydrocodone, gabapentin. Cervical ESI recommended. 7/12/17 cervical and lumbar fusion recommended. Decr ROM w/ normal motor and sensation. 12/26/17 neck and LBP, bilateral shoulder pain, worse w/ sitting, lifting, stress. Motor and sensory intact. Decr ROM neck/lumbar. Same exam 3/2/18 w/ neg SLR. 8/29/18 exam unchanged except L4-S1 decr sensation. 9/17/18 still has pain despite injections, 7 8/10. Plantarflexion R 4/5 and decr L5 sensation. "At times his pain will reach levels where he is unable to go to work. He is impaired from all employment." 12/26/18 insurance hadn't approved surgery and not recommended until loses wt (lost 30lbs). 1/29/19 pain 10/10 (neck, back, legs) w/ normal neuro exam and decr ROM. 3/1/19 facet loading + in back and neck, decr ROM, normal neuro, on cyclobenzaprine, hydrocodone, gabapentin. Needs surgery. 3/27/19 pain 8/10, decr sensation bilateral L4-5, normal motor, SLR+ bilateral. Chronic pain syndrome, lumbar spondylosis w/ radiculopathy, cervical radiculopathy, lumbar DDD. No comorbidity from PM&R perspective. Impaired from 10/15/16 to present. Can do full-time sedentary work, sitting up to 40 min at a time, standing/walking up to 20min at a time. Re-eval in 3mos.

4/22/19 Garrett Okun, DC (chiropractic): R&L shoulder, L cervical discomfort. 10/10 pain constant, worse lying on L, pulling, sleeping. Lumbosacral and buttock pain radiates to R foot 10/10 pain constant. Worse w/ bending, stairs, computer work, coughing, dressing, lying down, lifting, pulling, pushing, prolonged sitting, standing. Meds help. Severe pain on ROM and w/ compression on top of head (bilateral). Decreased pain w/ distraction of neck (bending away from pain). Unable to abduct L shoulder. Unable to exert any force w/ L triceps. Mild weakness of L wrist extension. Unable to exert any force with L iliopsoas and quadriceps and hamstring. Mild weakness of L foot dorsiflexion. SLR+ R&L at 2 degrees. Severe L shoulder pain w/ maneuver for adhesive capsulitis. Unable to raise arms. "He has been inconsistent when following our recommendations for care. Overall, Virgil feels his condition has stayed the same." Avoid prolonged standing.

5/14/19 Victor J Blake, MD (internal medicine): TLS spine pain rad to R foot, severe, chronic. Paresthesia. L shoulder pain 9/10 rad to L neck and hand w/ paresthesia. Chronic neck pain more on L, severe. Bilateral knee pain 8/10. ROS neg. Meds: HC 2.5%, ketoconazole, gabapentin, cyclobenzaprine, hydrocodone, doxycycline. 3/22/19 CT showed mild ascending aorta enlargement 4.1cm. Normal exam. "Due to continuous pain, patient unable to remain still for longer than 10 minutes." DDD CTLS spine. R knee OA, hidradenitis surgery 6/24/19 for axilla. Aortic widening incidentally found on CT, has cardiology appt 8/14/19. LUE pain due to cervical DDD. Can't raise L arm above 90deg. Pain radiates to L fingers. Can't RTW. BMI 37.5.

5/21/19 Donald A Capoferri, DC (chiropractic independent medical evaluation): For claimant's attorney. Restrained driver 10/4/16, his vehicle was struck from behind while stopped. Imaging on 1/24/17 showed multilevel disc herniations with C4-5 cord compression, consistent with findings at 20 days after collision and also April 2017. C4-5 "represents a traumatic aggravation of a prior disc herniation." 10/18/12 imaging shows L5-S1 disc displacement compressing thecal sac and bone marrow edema. 10/7/16 imaging shows worsened edema and edema in disc "consistent with acute annular tears and loss of disc height...consistent with a traumatic aggravation." MRI 10/18/12 showed central disc herniation L5-S1 compressing thecal sac and narrowing neural foramina. 10/7/16 imaging showed 55% aggravation of prior condition (22mm vs 14mm herniation). "I conclude, more likely than not, the injuries complained of by this patient and the injuries being treated were directly caused by the incident of 10/4/16." Aggravation of pre-existing cervical and lumbar DDD. 19% AMA whole body impairment rating. Examined spine 5/20/19. C7 moves 8.4mm and L1 5.4mm. Whole body impairment for spine 39%. Would benefit from cervical and lumbar fusion "to improve functionality and lessen the danger of a catastrophic spinal cord injury from another fall or accident...biomechanical and medical management [will] be required to maintain any level of functionality."

7/11/19 Sheila Natarajan, MD, FAAPMR (PM&R peer review): Lumbar DDD w/ radiculopathy (M51.16), LS disc herniation (M51.27), cervical radiculopathy (M54.12), cervical DDD C4-7 (M50.121, M50.122, M50.123), hidradenitis axillaris (L73.2). No more than occ standing or walking, needs to change positions as needed, no lifting more than 10lbs occasionally, no more than occ overhead reaching, no lifting above shoulders, ergonomic workstation, no extremes of flexion/extension/rotation. No crawling, crouching, kneeling, climbing. No evidence of inability to sustain full-time work within restrictions. APs have not returned calls. No advanced imaging since 2017 to see what happened to herniations. No EMG. Neuro exam has improved. Discrepancies between examiners' findings. Tx has not changed for yrs. Impairment percentages used by chiropractor are for legal proceedings and don't necessarily reflect functional capacity.

## References

UpToDate monograph "Occupational low back pain: Evaluation and management" updated 11/3/18
https://www.uptodate.com/contents/occupational-low-back-pain-evaluation-and-management

UpToDate monograph "Subacute and chronic low back pain: Nonpharmacologic and pharmacologic treatment" updated 6/9/19
https://www.uptodate.com/contents/subacute-and-chronic-low-back-pain-nonpharmacologic-and-pharmacologic-treatment

LIB000132

UpToDate monograph "Subacute and chronic low back pain: Nonsurgical interventional treatment" updated 1/2/19
https://www.uptodate.com/contents/subacute-and-chronic-low-back-pain-nonsurgical-interventional-treatment

UpToDate monograph "Subacute and chronic low back pain: Surgical treatment" updated 1/2/19
https://www.uptodate.com/contents/subacute-and-chronic-low-back-pain-surgical-treatment

UpToDate monograph "Use of opioids in the management of chronic non-cancer pain" updated 4/10/19
https://www.uptodate.com/contents/use-of-opioids-in-the-management-of-chronic-non-cancer-pain

Qaseem A, Wilt TJ, McLean RM, Forciea MA, for the Clinical Guidelines Committee of the American College of Physicians. Noninvasive Treatments for Acute, Subacute, and Chronic Low Back Pain: A Clinical Practice Guideline From the American College of Physicians. Ann Intern Med 166:514–530; 14 February 2017.
https://annals.org/aim/fullarticle/2603228/noninvasive-treatments-acute-subacute-chronic-low-back-pain-clinical-practice

Hegmann KT, et al. American College of Occupational and Environmental Medicine Practice Guidelines: Opioids for Treatment of Acute, Subacute, Chronic, and Postoperative Pain. Journal of Occupational and Environmental Medicine 56:12, e143–e159; December 2014.
https://journals.lww.com/joem/Fulltext/2014/12000/ACOEM_Practice_Guidelines___Opioids_for_T reatment.19.aspx

Hegmann, KT, et al. American College of Occupational and Environmental Medicine Practice Guidelines: Diagnostic Tests for Low Back Disorders. Journal of Occupational and Environmental Medicine 61:4, e155-e168; April 2019.
https://acoem.org/acoem/media/PracticeResources/Diagnostic_Tests_for_Low_Back_Disorders-Apr-2019.pdf

American College of Occupational and Environmental Medicine practice guideline "Low Back Disorders" updated 3/7/19
https://new.mdguidelines.com/acoem/disorders/low-back-disorders

American College of Occupational and Environmental Medicine Position Statement. The Personal Physician's Role in Helping Patients With Medical Conditions Stay at Work or Return to Work. Journal of Occupational and Environmental Medicine 59:6, e125-e131; June 2017.
https://acoem.org/Guidance-and-Position-Statements/Guidance-and-Position-Statements/The-Personal-Physician-s-Role-in-Helping-Patients-with-Medical-Conditions-Stay-at-Work-or-Return-to

Reed P, The Medical Disability Advisor, Workplace Guidelines for Disability Duration, 5th Edition, 2005.
https://new.mdguidelines.com/mda/lumbosacral-spondylosis-without-myelopathy
https://new.mdguidelines.com/mda/sciatica

**LIB000133**

**ICP Memo**

| Customer Name | Claimant Name | Claim Number |
|---|---|---|
| ROBERT HALF INTERNATIONAL INC. | VIRGIL HARRIS | 7223420 |

| | | | |
|---|---|---|---|
| **Referred By:** | Courtney Grygiel | **Claimant DOB:** | 01/16/1962 |
| **Referral Date:** | 07/10/2019 | **Job Title:** | SALARIED PROFESSIONAL-ACCOUNTING CONSULTANT |
| **Due Date:** | 07/24/2019 | **Medical/ Surgical Condition:** | hidradentitis |
| **Referral Type:** | Appeal Referral | **Disability Occupational Type:** | |
| **Reason for Priority Handling:** | | **Product Type:** | LTD |
| **Other Considerations** | | **LDW:** | 10/14/2016 |
| **Report Date:** | | **DOD:** | 10/15/2016 |
| **Physical Demands:** | | **BBD:** | 04/13/2017 |
| **Non-Medical Issue:** | No | **Non-Medical Issue Details:** | |

**Core Questions**

**1. Please identify the primary impairing diagnoses with ICD 10 codes.**

Cervical disc disorder C4-7 (M50.82) and cervical spondylosis (M47.812) associated with chronic neck pain. Lumbosacral disc disorder with radiculopathy (M51.17) and lumbosacral spondylosis with radiculopathy (M47.27) with chronic low back pain and sciatica.

**2. If applicable, please identify clinically significant comorbid diagnoses with ICD 10 codes.**

Class II obesity (E66.0). Hidradenitis suppurativa (L73.2).

**3. Taking into consideration the entire clinical picture, including standards of care and evidence based medicine, and any medication or other treatment side effects, please describe how any supported level of impairment translates into restrictions and limitations from 4/22/19 to the present, and comment on the expected duration. If the medical records in the file do not support impairment and the need for restrictions and/or limitations during the above timeframe, provide a detailed explanation.**

The following permanent activity restrictions are supported. No friction or pressure applied to axillary skin. The following permanent functional limitations are reasonable. No sitting longer than 1 hour without opportunity to stand. No standing or walking longer than 15 minutes without opportunity to sit. No more than occasional bending/twisting at the waist or neck. No exertion of more than 20 pounds of force. There is no objective evidence of inability to engage in sustained productive activity within these parameters, and there is substantial evidence to support such ability. See the analysis below for further explanation.

**4. Treatment Opportunities: Is the treatment provided consistent with the standard of care for the apparent level of severity of the conditions? Is there any evidence that the claimant is not compliant with treatment that meets the standard of care?**

A lumbar spine MRI was obtained 3 days after the claimant was involved in a motor vehicle collision that resulted in low back pain without neurologic impairment. Multiple professional

guidelines indicate this should not have been done, because in this setting the degenerative changes commonly seen in the general population are incorrectly perceived to indicate serious injury and lead to excessive treatment and inappropriate activity restriction.

Opioid therapy for chronic musculoskeletal pain, and back/neck pain in particular, is controversial. While the practice is common, a number of published guidelines discourage its use in this situation, since there is little evidence that opioids meaningfully increase functional capacity or quality of life, and there is substantial evidence of serious and even life-threatening risks. They should only be used if objective increases in functional capacity are documented as a result (the opposite was true in this case: opioid use coincided with leaving a sedentary job). Opioids certainly should not be used until other options have been exhausted (psychological interventions such as cognitive behavioral therapy are particularly important but often skipped, as in this case). The claimant's clinicians used physical therapy, chiropractic and epidural steroid injections, but there are many other treatment options endorsed in published guidelines. Combining opioids with gabapentin increases risk of accidental death, and there is little if any evidence that gabapentin is effective for chronic back pain with sciatica, and so its use is discouraged in this setting. The facet blocks, medial branch blocks and radiofrequency ablation recommended by the claimant's pain specialist have not been shown to have long-term benefit for chronic back pain, and are discouraged in current literature. The literature indicates the surgery recommended to the claimant should only be done after failure of comprehensive rehab, to include psychological interventions (which was not done in this case).

There is no medical basis on which to restrict a patient's participation in sedentary productive activity because of chronic neck and back pain. This is an issue of personal tolerance, and not one of objective medical science. There is no medical risk involved. There is much published evidence that restricting light activity in patients with chronic back pain is harmful rather than helpful. Guidelines explain that the treatment of patients with chronic pain should focus on functional capacity rather than pain intensity. The large number of clinicians that have treated the claimant over the past 3 years have universally focused on pain scores rather than functional capacity. The claimant had been working successfully full-time for years despite chronic neck and back pain, and then after a minor automobile collision was deemed totally disabled. If accurate, such a dramatic decline mandates comprehensive rehabilitation. Because this did not happen, and rather treatment has focused almost exclusively on opioids after failure to improve with physical therapy and epidural injections, it would seem that treatment has been inadequate, or else the condition is not as severe as described. The claimant's self-documented recreational activity suggests that his condition is not as severe as he has indicated to his clinicians.

**Analysis**

The claimant has a long history of neck and back pain. In 2015 he had an MRI of the cervical spine that showed degenerative changes (spondylosis) from C4 through C7, without disc herniation or central canal stenosis. There was some foraminal narrowing, where nerve roots exit the spine. Interestingly, there were also lacunar infarcts (small ischemic strokes) in the brainstem with severe small vessel disease. Strokes and vascular disease in general have not been otherwise mentioned in the more than 900 pages of medical records reviewed. The claimant also had a history of lumbar spondylosis. Despite the MRI findings, annual exams in May 2015 and March 2016 said nothing about neck or back pain. The claimant was "working out" and losing weight (he is obese). This highlights the well-established fact that degenerative changes of the spine on MRI have little correlation with symptoms. The nature and degree of degenerative spinal abnormalities cannot predict the nature or degree of symptoms. Such abnormalities are very common in the general population, and are often asymptomatic.

The claimant has a long history of hidradenitis suppurativa, which is an inflammatory condition of the skin that leads to abscesses and draining sinus tracts and scarring. It usually affects the skin folds, such as the axilla and groin. This has been the claimant's experience, and he's had

**LIB000135**

multiple surgeries through the years as part of the treatment for this condition. In April 2016 the claimant had another surgery, removing diseased skin in the groin. He didn't think it had been extensive enough, and so he went to the surgery clinic 3 days later saying he was going to "have the doctors arrested". He was directed to one of the administrative staff members to explore his dissatisfaction. In June 2016 the claimant still felt that there were areas of disease buried under the skin that should have been removed during the surgery, but the surgeon documented the absence of active disease and said the wounds were healing well. The surgeon noted that he "had long conversation with Mr Harris re: his expectations. He wishes excision of very specific areas that do not appear to be active disease." The surgeon did "not feel this is indicated" and said the claimant "disagrees", but was still cleared to return to his sedentary job. This episode suggests that the claimant has a tendency to overestimate the severity of his medical condition, as well as the intensity of treatment required. In July 2016 he told his dermatologist that he believed his skin condition was caused by the public water supply, but the dermatologist explained the true contributors to the disease, which are genetics, immunology, hormones, obesity and smoking (the claimant has a long smoking history).

In July 2016 the claimant played golf and developed some lumbar pain that he rated as 10/10 (worst pain possible), and yet he was described by 2 physicians as exhibiting no distress, and was overall feeling well. His exam was normal except for some tenderness of the lumbar muscles. Thus the pain intensity reported by the claimant was far out of proportion to his overall appearance and objective physical exam. He also continued to work despite the pain he rated as 10/10. In August he had 3 more clinic visits for back pain, and each time continued to have an exam notable only for obesity and mild back tenderness, and still continued to work. In September 2016 he had another visit for the hidradenitis, believing that there was a persistent abscess, but the exam failed to demonstrate it. He was also noted to appear comfortable sitting in a chair, with no visible distress. He had gained weight as he tried to quit smoking, and planned to spend more time at the gym to combat that. By 2016 October he was at borderline morbid obesity.

On 10/4/16 the claimant was in the driver's seat of his vehicle when it was struck from behind by another vehicle. The police reported the damage as moderate. The claimant endorsed back pain at the scene, but refused medical attention. Three days later he had an MRI of the lumbar spine that showed moderate spondylosis, including some facet degeneration. As with the cervical MRI the previous year, there was some foraminal stenosis. There was also some disc bulging at L4-5 and disc herniation at L5-S1, which touched the right S1 nerve root and "barely" touched the sac surrounding the nerves in the central canal. The medical documentation indicates that this disc herniation had been present since at least 2013. Some annular tears of the discs were seen, which the radiologist stated "may have been aggravated by reported injury and can cause pain." This is not an objective finding, but rather conjecture. These annular tears are present in up to half of asymptomatic individuals. Disc herniation is present in 20-40% of asymptomatic individuals. Bulging discs are present in up to 80% of asymptomatic individuals. Thus these findings have very little clinical significance. This is why multiple professional guidelines indicate that this MRI, obtained 3 days after the collision, should never have been ordered. Such inappropriate testing leads to exaggerated perceptions of injury in patients and excessive treatments from their clinicians. This appears to be the case here. The claimant stopped participating in his sedentary job 10 days after the collision.

In December 2016 his internist said that the claimant's chronic back pain, which had before improved with weight loss, had increased after the motor vehicle collision in October. The claimant said the pain increased with movement and lifting, but on exam the he was noted to be walking without difficulty and appeared well. The internist said that he had "a benign musculoskeletal back injury" and prescribed a muscle relaxer and gabapentin. There is no role for gabapentin in this setting, according to current literature, and when combined with a muscle relaxer can be even more sedating that when used alone. The internist told the claimant he would "extend his time off but he must lose weight. This is the reason he is having worse back issues" in the wake of the collision.

**LIB000136**

Inexplicably, 2 months after the collision which required no immediate medical attention, the internist restricted the claimant from his sedentary job for 3 more months. There is no objective support for this.

Later in December 2016 the claimant saw an orthopedic surgeon, who noted that physical therapy and chiropractic manipulation and epidural steroid injections since the October motor vehicle collision had not helped the pain. He stated that there was no prior history of neck pain, but that contradicts the cervical spine MRI that was done in 2015. The surgeon had seen the claimant in 2013 after a motor vehicle collision, at which time L5-S1 disc herniation was present. Surgery had been recommended at that time, but the claimant had declined. That decision was vindicated by the fact that his pain reportedly decreased to 2/10 severity thereafter, until the October 2016 collision, after which time it averaged 10/10. Again, this maximal pain rating, which is meant to indicate the greatest degree of pain possible (such as an acutely broken leg, etc), was being used by the claimant despite walking and sitting without any visible difficulty, and driving to multiple appointments. On exam the surgeon documented guarded movement of the neck and lower back, with pain when the hips were flexed and the knees extended (the same position required for driving a car). There was some subjective decrease in sensation in the fingers of the right hand (specific fingers were not mentioned; a pinched nerve in the cervical spine would be expected to affect only some fingers, and spare the others). Based mostly on subjective discomfort, with an intensity rating far out of proportion to the claimant's observed behavior, the surgeon inexplicably stated "he is unable to work as an accountant secondary to the injuries sustained." The only injury specified was "aggravation" of pre-existing disc herniation, which had been present for at least 3 years and despite which the claimant successfully worked full-time. Despite the fact that they had already failed to provide relief, the surgeon wanted to do more injections. He also referred the claimant to a physiatrist because "he wishes to explore disability evaluation." Entertaining the idea of total disability for sedentary work due to 2 months of "aggravation" of chronic low back pain through which the claimant had worked full-time for years is medically inappropriate.

In January 2017 MRI of the cervical spine was done, which showed moderate disc herniation at C4-5 with cord compression, with lesser degrees of cord involvement from disc degeneration at C3-4 and C5-7. There was also moderate foraminal narrowing where the nerve roots exit the spine. This is consistent with the published evidence that these kinds of MRI findings have little correlation with clinical symptoms, because even though the MRI findings were greater in the cervical spine, it's the low back that has been consistently more symptomatic. It also supports the internist's statement that the claimant's obesity was the main driver of his back pain, because even though the MRI findings were more advanced in the neck, neck pain is not much affected by obesity. The physiatrist began seeing the claimant in January 2017. This visit was scheduled specifically for the purpose of a disability evaluation, and, contrary to the multiple clinical visits that had already been documented since the collision nearly 4 months earlier, when the claimant saw the physiatrist he appeared distressed and walked with a limp. There was mild weakness detected in the right foot, with pain when flexing the right hip and extending the right knee (the same position required for driving), and subjective decrease in sensation in the right L5 dermatome. The exam was otherwise normal. The claimant told the physiatrist that he could not sit for longer than 30 minutes at a time, and had to lie down 4 times a day. Based on this subjective information, and mild exam abnormalities, the physiatrist inexplicably stated "it is my opinion within a reasonable degree of medical certainty that he is totally and permanently disabled due to his intervertebral disc disorders as a result of MVA." This statement is contradicted by the fact that the disc disorders had preceded the collision by at least 3 years, and that the claimant had continued to work full-time nonetheless.

Around the same time, the claimant began seeing a pain clinic for opioid pain medication. He again rated his pain as 10/10, the maximum degree of pain a person can experience. And again this subjective rating was far out of proportion to the objective exam findings of stiffness and tenderness of the neck and low back. There was no objective evidence of neurologic impairment, no visible evidence of distress, and he was freely conversational. By this time he had crossed the

**LIB000137**

threshold into morbid obesity, likely because he was staying home from work and therefore had greater access to excess calories, and less physical activity. The claimant's clinical course illustrates what is known from medical research: avoiding light work does not improve quality of life for people with chronic back pain or other musculoskeletal pain. Rather it worsens it. The claimant's symptoms and use of medical treatments have steadily increased since he stopped working. Interestingly, since the claimant began seeing multiple physicians for back and neck pain, complaints related to his skin condition have mostly ceased. In March 2017 he told the dermatologist that he had no concerns about it and didn't want any more treatment.

In April 2017 the claimant again saw the orthopedic surgeon, and again reported 10/10 pain despite demonstrating he was "able to ambulate without difficulty" and having the same mild exam abnormalities seen in December 2016. And despite the fact that the claimant had improved without surgery after the disc herniation identified by the surgeon in 2013, the surgeon again recommended lumbar fusion. He also recommended nerve blocks for the neck even though the pain was reduced to 3-4/10 (mild to moderate) with hydrocodone. These recommendations are difficult to line up with published treatment guidelines for back pain. Again the surgeon restricted the claimant from all work with no explanation other than "he has been granted disability status" by the physiatrist. This is the same physiatrist, who, in May 2017, stated that the claimant was unable to perform any of his sedentary job duties due to back pain that had been present for 2-4 years. This is contrary to the reality that the claimant had indeed worked full-time during those years, and therefore the physiatrist's opinion that the claimant is disabled for any occupation is not supported by objective fact. At this same time, a field investigation found that the claimant's Facebook posts and photos showed he was "active with his DJ career". Once again, objective facts contradict the statements by the surgeon and physiatrist about the claimant's functional capacity.

In June 2017 the pain management physician decided to perform nerve blocks to determine whether the facet joints of the spine were the source of the claimant's pain, and whether ablation of the nerves would reduce pain. While this is commonly performed by spine specialists, it is discouraged by published guidelines. In July 2017 the orthopedic surgeon said that since the insurance company was taking too long to approve cervical spine injections, he would recommend cervical spine fusion along with lumbar fusion, since he believed the injections would not be effective 9 months after the collision. But this again is hard to reconcile with the fact that the neck pain was mild to moderate with pain medication, and there was no objective neurologic deficit. In September 2017 the claimant again rated his pain as 10/10 (the maximum pain a person can experience), despite demonstrating no visible distress on exam and being freely conversant in his clinical interactions. The pain management physician again documented no neurologic signs on exam, only some stiffness and tenderness of the neck and lower back. A few days later the internist examined the claimant, and said the claimant was hunched over and shuffling in his gait due to pain, with pain in both legs when the hips were flexed and knees extended (the same position used for driving). The pain management physician had documented just 4 days before that there was no pain with that maneuver. The internist documented weakness of grip and with abducting and adducting the fingers, as well as hip flexion and extension. The neurologic exam was normal a few days earlier when performed in the pain clinic. A few weeks later in the pain clinic the neurologic exam was again normal, and exam again only showed stiffness and tenderness of the neck and low back. This inconsistency in findings is characteristic of the extensive medical records reviewed, and further weakens objective support for impairment.

In October 2017 a physiatry peer review was completed. After reviewing the records, the peer reviewer contacted the physician assistant at the pain clinic, who told him that the claimant was unable to work and permanently impaired. The peer reviewer appears to have taken this statement at face value, despite acknowledging that the claimant had been working despite back pain prior to the collision. The review concluded that the claimant should remain out of sedentary work until he could get surgery. The review didn't provide a medical explanation for this perplexing recommendation. From the fall of 2017 through the spring of 2018, the claimant continued to assert

LIB000138

that his pain was 10/10, the maximum pain a person can experience, and again only had stiffness and tenderness of the neck and low back, with ongoing morbid obesity, and no neurologic deficits. Interestingly, he told the pain clinic that in addition to movement, mental stress made his pain worse, which suggests some psychological component of the claimant's perception of severe pain. He saw a different orthopedic surgeon in April 2018, who treated him for medial epicondylitis (tennis elbow) and knee osteoarthritis on the right, and contrary to the previous orthopedic surgeon, found no sensory deficit in the upper extremities. In May 2018 the pain management physician found decreased subjective sensation on the right in the L4-S1 dermatomes, along with pain when the right hip was flexed and the knee extended (the same position used for driving). So another MRI was done, which showed no significant changes compared to October 2016. Through the summer of 2018 the pain rating remained at 10/10, which suggests the treatments being provided were not very effective. Yet they continued, and the claimant continued to exhibit no visible distress on exam. As summer moved into fall in 2018, the pain clinic documented that hip flexion with knee extension was painful in both legs, with ongoing subjective decrease in sensation in the L4-S1 dermatomes, but no objective neurologic deficit.

In December 2018, the pain clinic documented ongoing severe pain with no visible distress, stiffness and tenderness of the shoulders, stiffness of the knees and tenderness of the patellae, and the same stiffness and tenderness of the neck and low back that have been documented all along. But in January and March 2019, pain clinic notes document the absence of any pain with straight leg raise, and just some stiffness and tenderness of the neck and low back. Then at the end of March the same subjective sensory findings from late 2018 reappear in the pain clinic notes. Pain was noted to be down to 6/10 (moderate) with medications. Fortunately the claimant managed to lose about 30 pounds, so he is no longer morbidly obese.

In April 2019 a chiropractor documented that the claimant was unable to exert any force with the left hip and thigh, which, if true, would render the claimant unable to walk. But the claimant *was* walking. The chiropractor also said the claimant was unable to exert any force with the left triceps, and had severe shoulder pain due to adhesive capsulitis. This is a condition in which the ligaments and tendons become contracted and stiff, precluding movement. However, at the same time, the claimant was posting photos of himself golfing on his public Facebook page (accessed through the field investigation report). So obviously his shoulder and triceps were functional. All of this shows that the claimant's inconsistent exam findings don't translate to actual functional capacity. In April 2019 another physiatry peer review was done, which concluded that the claimant is capable of full-time sedentary work, sitting up to 40 minutes at a time, and standing or walking up to 20 minutes at a time. The claimant was deemed ineligible for disability benefits and filed an appeal.

In May 2019 the claimant's internist said "due to continuous pain, patient unable to remain still for longer than 10 minutes" and can't return to work. However, the claimant's public Facebook page has a video he recorded of himself in June, in which he was fully conscious during his axillary outpatient surgery, lying completely still for the procedure, with good range of motion of the shoulder. His account demonstrates with captioned and dated photos of himself that he currently has a very active social life, frequently going to restaurants and music clubs, as well as dancing and golfing at the same time that he was reporting constant 10/10 pain to his clinicians. His photos and videos don't reveal any visible indication of discomfort. His page indicates that he works as a DJ. A chiropractor did an independent medical evaluation in May at the request of the claimant's attorney. He attaches great importance to the MRI findings, which, as noted above, are proven in published research to have little correlation with symptoms or functional capacity. He further says that spinal surgery is needed to "lessen the danger of a catastrophic spinal cord injury from another fall or accident." This is simply untrue. Having a chronic disc herniation does not constitute a risk for paralysis, and spinal fusion surgery is not performed in this setting to prevent paralysis. Chiropractors are not trained nor qualified to provide surgical recommendations.

A third physiatry peer review was done 2 weeks ago, which pointed out the inconsistencies in exam findings among clinicians, as well as the discrepancy between the reported severity of the

claimant's condition and the fact that treatment has not changed in over 2 years. He also disagreed with the methodology of the chiropractic independent medical evaluation. The review concluded that there is no evidence of inability to sustain full-time work within reasonable restrictions, such as no more than occasional standing or walking, support for changing positions as needed, no heavy lifting, and no extremes of bending or twisting. The reviewer reached out to the treating clinicians but none of them returned the calls. If the clinicians believe that returning to sedentary work is dangerous or impossible, then it seems that at least one of them would return a call from a peer reviewer exploring the question of impairment.

In summary, the claimant has had chronic neck and back pain for years, with degenerative changes in the cervical and lumbar spine, including L5-S1 disc herniation. It was apparently aggravated by a motor vehicle collision in 2013. Despite this, the claimant continued working at his full-time sedentary job. In the summer of 2016 he reported 10/10 low back pain after golfing (the maximum pain a person is capable of experiencing). Nevertheless he continued working. He was in another moderate motor vehicle collision in October 2016, at which time he declined medical attention. Since then he has continued to complain of 10/10 back pain, as well as a lesser degree of neck pain. There has been some right leg pain as well, suggesting some nerve root irritation. MRI done a few days after the collision again showed the L5-S1 disc herniation seen in 2013. His clinicians have said that the collision exacerbated his chronic back pain, but objective abnormalities on exam have been mild and inconsistent. In many instances the exam findings and pain intensity have been sharply at odds with demonstrated functional capacity. Treatment has remained the same for over 2 years, consisting of a low potency opioid, a muscle relaxer, and low dose gabapentin. This year 2 physiatry peer reviews have concluded that the claimant is capable of full-time sedentary work with modest limitations similar to those I have recommended. Multiple published professional guidelines agree that keeping the claimant out of work in this situation is harmful. There is no objective support for the opinion of his clinicians that he is totally disabled, and there is substantial evidence that his functional capacity is sufficient for sedentary full-time productive activity. A large number of studies show that patients involved in litigation or disability disputes or at-fault injury are much more likely to remain out of work. Unfortunately in this case it appears that the treating clinicians have contributed to this resistance rather than helping to overcome it.

David Carl Houghton, MD, FACP
Consulting physician, Liberty Assurance Company of Boston
602-626-6022 (direct voice)

Representative and relevant data from more than 920 pages of medical records provided:

2/17/15 MRI cervical spine: Spondylosis C4-7 without central stenosis or disc herniation. Brainstem with lacunar infarcts and severe small vessel disease. Some foraminal narrowing.

5/28/15 Kelvin M Hamner, MD (internal medicine): Annual exam. BMI 34.2. ROS neg. Comprehensive exam o/w normal.

11/12/15 Kelvin M Hamner, MD (internal medicine): Problem list: hidradenitis, elevated BP, tinea pedis, vitamin D def.

3/16/16 Robin Klein, MD (internal medicine): Annual exam, hidradenitis. Groin still having discharge. Still smoking but less. Working out and losing wt. ROS neg. Several draining areas of groin, inguinal LAD, axillary scars. Exam o/w normal. Refer back to surgery.

4/8/16 Rondi B Gelbard, MD (general surgery): Will do bilateral groin excision 4/19/16.

4/22/16 Stephanie Graddick, LPN (general surgery): "Presented to clinic expecting a meeting with administration and the surgeons. He stated that he was here to have the doctors arrested. …Directed to Patient/Family Experience to speak with Ms Jordan."

5/4/16 Rondi B Gelbard, MD (general surgery): Partial dehiscence of left groin incision. Stop prednisone prescribed by dermatologist after surgery. He's concerned that there was insufficient excision.

5/16/16 Bryant McIver, MD (general surgery): "Presents today with a letter from his dermatologist that states that he had MRSA in his groin wound." Left groin incision healing well without evidence of infection…healing beautifully…continue doxycycline, will add a 10-day course of Bactrim given concern for MRSA…back to work on 6/6/16."

6/6/16 Bryant McIver, MD (general surgery): Bilateral groin hidradenitis flare. Bilateral tender groin nodules, quarter-size residual wound healing well. Cont abx, f/u 2wks to reassess for skin grafting.

6/20/16 Christopher J Dente, MD, FACS (general surgery): "Continues to feel there are areas under the skin that are active disease that were not dealt with at original operation." No active disease on exam of groin, left thigh wound almost completely healed. "Had long conversation with Mr Harris re: his expectations. He wishes excision of very specific areas that do not appear to be active disease…I do not feel this is indicated…He disagrees…He is OK to return to work."

7/13/16 Ernest Amukamara, NP (family medicine): Few days of back pain, dysuria. BMI 39. Pain w/ flexion/extension of low back, suprapubic TTP. Codeine. UA shows moderate heme, trace LE, some protein. Cipro.

7/18/16 Seema P Kini, MD (dermatology): "Still with active axillary and gluteal draining nodules and sinus tracts. Long discussion today that there is no cure for hidradenitis but that our goal is control. Discussed Humira…Thinks all of this is due to the water." ROS+ R back pain w/ spasm but "feeling well." Pain 10/10. No distress. Talk to PCP about back pain.

7/19/16 Clayton Ramsue, MD (urgent care): Played golf for 1st time in 3mos, now w/ 3d of back pain, spasms. ROS neg. Lumbar paraspinal TTP, exam o/w normal.

8/8/16 Clayton Ramsue, MD (urgent care): 6wks of back pain, moderate, right upper, worse w/ movement, better w/ rest. ROS neg. BMI 35.6. Mild TTP R scapular area, exam o/w normal. LBP w/o sciatica.

8/19/16 Nkechi M Mbaezue, MD, MSCR (primary care): New pt for R back pain. BMI 37.6. 6wks ago after playing golf R upper back pain began. Exacerbated by certain movements. Mild TTP R rhomboid, exam o/w normal. Refer to PT. No golf. Refer to ortho.

8/31/16 Nkechi M Mbaezue, MD, MSCR (primary care): Annual exam. BMI 37.2. Open areas of hidradenitis in perineum, comprehensive exam o/w normal.

9/6/16 Seema P Kini, MD (dermatology): HBSAg+, HBCAb+ (IgG), will check IgM and refer to hepatology.

9/12/16 Patrick Davis, MD (ENT): "Patient 'feels' abscess is still present [on face], however does not complain of pain or fever. Nor discoloration of skin overlying left maxilla. No drainage." ROS neg. "Sitting comfortably on the exam chair, no signs of acute distress." Left maxilla tender to deep palpation but otherwise normal. "Sebaceous cyst resolved."

9/20/16 Aarti Agarwal, MD (primary care): Chronic hep B, refer to GI. BMI 37.2, exam o/w normal. "Obesity worsening particularly over the past few months. Related to tobacco cessation. Planning to do more work at LA Fitness, more exercise, will cut down on the amount of food he eats."

10/4/16 Dr Afolake Mobolaji (family medicine): Lab f/u. BMI 39.4. ROS neg. Exam o/w normal. Cont tx for hidradenitis.

10/4/16 Police report: Claimant's vehicle struck from behind, moderate damage, he reported back pain but refused medical care.

10/7/16 MRI lumbar spine: Moderate spondylosis T11-S1, most at L5-S1. Facet arthropathy L1-L4. L4-5 central bulging disc and bone spur indents thecal sac, foraminal stenosis from facet arthopathy and small bilateral foraminal herniated disc protrusion. L5-S1 severe DDD, central and right paracentral herniated disc protrusion indenting epidural space and barely touching thecal sac and touching R S1 nerve. Foraminal stenosis due to facet arthropathy, small foraminal herniated disc protrusions and bone spurs bilaterally. Annular tears seen may have been aggravated by reported injury and can cause pain.

11/17/16 Clarence Clark III, MD (general surgery): Anal fistula eval. ROS neg. 11/28/16 fistulotomy and flap.

11/29/16 Chantel Lee, PA-C (orthopedics): Referred for surgery. No work 11/29/16 to 12/31/16.

12/5/16 Clarence Clark III, MD (general surgery): Healing well.

12/6/16 Victor J Blake, MD (internal medicine): BMI 38.4. Chronic back pain worse after MVA in October. Had improved w/ wt loss. Worse w/ lifting, movement. Walking without trouble, well appearing. "Symptoms and exam are most consistent of a benign musculoskeletal back injury." Muscle relaxer. Start gabapentin. "Told him I will extend his time off but he must lose weight. This is the reason he is having worse back issues in addition to his MVA." No work until 3/1/17 for back problems.

12/20/16 Erik Bendiks, MD (orthopedics): Neck and low back pain, in MVA 10/4/16 in which he was rear ended. Chiro and PT didn't help. ESI no help. No prior hx of neck pain. Last seen 4/11/13 after MVA 10/6/12 w/ L5-S1 disc herniation but refused surgery. Pain averaged 2/10 until latest MVA. Neck 6-10/10, back 10/10, aggravated by sitting more than 5min. R sciatica. Hard to sleep. "He is unable to work as an accountant secondary to the injuries sustained. He attempted to return immediately following the collision but was unable to complete his duties." ROS neg. Guarding w/ neck ROM, decr sensation R fingers, guarding w/ lumbar ROM, SLR+ bilateral, exam o/w normal. Aggravation of previous L5-S1 herniation due to MVA. Get MRI and do more ESI. "I recommend referral to Dr Feeman as he wishes to explore disability evaluation." No work until 1/27/17.

**LIB000141**

1/24/17 MRI cervical spine: C3-4: Anterior margin of the cord is mildly flattened. Moderately severe stenosis of foramina from spurs. C4-5 moderate posterior disc herniation causing displacement and compression of the cord. Spurs cause moderate stenosis of foramina. C5-6 disc protrusion causing some impression on anterior margin of the cord, moderate right foramen stenosis from spurs. C6-7 moderate size protrusion causing compression of R cord.

1/24/17 Mark W Feeman, DO (PM&R): "It is my opinion within a reasonable degree of medical certainty that he is totally and permanently disabled due to his intervertebral disc disorders as a result of MVA." PT and ESI have provided no pain relief. Extreme pain, has to lie down frequently. ROS+ difficulty sleeping. On exam distressed from pain, antalgic gait. R dorsiflexion 4/5, bilateral SI TTP, SLR+ R, decr L5 sensation, o/w exam normal. Can't sit longer than 30min and has to lie down QID.

2/13/17 Victor J Blake, MD (internal medicine): "Back pain otherwise doing well. He off and on feels drainage in upper buttocks area with odor." No perianal wounds.

2/21/17 Stanley P Riepe, MD (GI): Immune-tolerant chronic HBV doesn't require tx. HCC screening q6mos w/ LFTs.

2/28/17 José Mathew (pain management): Pain 10/10, meds help him do daily activities. BMI 40.7. Exam same as 9/1/17 except R SLR+.

3/13/17 Seema P Kini, MD (dermatology): "Reports he's doing very well. He states he hasn't had a bad flare of HS in years…area on left groin "fills with fluid when it rains…he reports that his HS has been quiescent and he is uninterested in Humira or other HS tx."

3/28/17 José Mathew, MD (pain management): Pain 9/10, meds help him move w/ less pain. BMI 41.6. Exam same as 9/1/17.

4/26/17 Erik Bendiks, MD (orthopedics): Neck pain down to 3-4/10 with hydrocodone, intolerable without it. LBP 10/10. "He has been granted disability status with Dr Feeman." ROS neg except trouble sleeping. On exam "able to ambulate without difficulty. Same exam as 12/20/16. Neck pain w/ radiculopathy C4-7 due to DDD. LBP w/ LS disc herniation w/ spinal stenosis and radiculopathy. Try bilateral cervical branch blocks C4-6. L5-S1 fusion recommended. No work.

5/16/17 Dr Mark Feeman: Condition began 10/4/16. Treated 1/23/17. Referred to PT. Unable to perform any of his job duties due to severe back pain for 2-4 yrs. Will be treated monthly. Disabled for any occupation.

5/19/17 Amit Patel, MD (pain management): Pain 6/10, meds help him move with less pain. BMI 41, exam same as 9/1/17. Start gabapentin.

5/20/17 Field investigation: Facebook photos and posts suggest he is "active with his DJ career."

6/16/17 José Mathew, MD (pain management): Exam same as 9/1/17. Will proceed w/ diagnostic medial branch blocks L3-S1 to see if facets are the pain generator, and if ablation would help. Continue PT/HEP.

7/12/17 Erik Bendiks, MD (orthopedics): Feels poorly, blurry vision, trouble sleeping, ROS o/w neg. Cervical and lumbar DDD w/radiculopathy. Exam unchanged from 4/26/17. Waiting for insurance to approve c-spine injections and lumbar fusion. "Too much time has transpired since the collision for injections to be an effective means of pain control." So cervical fusion recommended.

9/1/17 José Mathew, MD (pain management): Pain 10/10 lower back radiating to legs. Improves w/ changing position and meds. Worse w/ prolonged sitting/standing. Meds help w/ tolerance of daily activities. BMI 41. Decr cervical ROM, TTP C3-6, decr lumbar ROM, TTP L3-S1, pain reproduced w/ facet loading, SLR neg. "In no acute distress, conversant." Cervical and lumbar spondylosis w/ radiculopathy, chronic pain syndrome.

9/5/17 Victor J Blake, MD (internal medicine): Back pain f/u. Bilateral sciatica, very severe, daily, gradual onset, worse w/ movement. ROS neg. C5-T2 and L4-S1 TTP, causing sciatica. "Hunched, slow, shuffling gait due to pain. Weakness with grip strength and abd/adduction of fingers B/L. Weakness to hip flexion and extension." SLR+ bilaterally. Sensation intact. Exam o/w normal.

10/2/17 José Mathew, MD (pain management): BMI 41. Same as 12/26/17 note.

10/13/17 Arthur Kalman, MD (PM&R peer review): Prior to DOD had tx for hidradenitis, back pain, and other issues. L spine MRI 10/7/16 showed moderate spondylosis T11-S1, mostly at L5-S1. Above L5 there was facet arthropathy but no herniated discs or stenosis. Disc bulge and bone spur indented thecal sac. L5-S1 showed central and right paracentral herniated disc protrusion "barely touching the thecal sac to the right of midline while touching the right S1 nerve root." Foraminal stenosis due to facet arthropathy and disc protrusions. 12/6/16 seen for chronic LBP w/ radiation to buttocks. Muscle relaxer and gabapentin added. Seen by ortho 12/20/16 and 12/22/16 for neck pain 6-10/10 and LBP 10/10 w/ RLE rad. Sleep disrupted by pain. "Reportedly, the claimant was unable to work due to the injuries sustained." 11/8/16 lumbar ESI didn't help. Was excused from work 12/22/16 through 1/27/17. 1/23/17 seen by PM&R/pain mgmt, had to alternate sitting and standing. Had to lie down frequently. Reportedly PT and ESI hadn't helped. Surgeon recommended lumbar fusion. Physiatrist said totally and permanently disabled from DDD. 1/24/17 MRI cervical spine showed C4-5 moderate disc herniation causing cord compression but no myelomalacia. "It was possible that the herniation was a recent and post-traumatic deformity, although there was moderate degeneration of the disc." C6-7 moderate disc protrusion and small spur causing compression of R cord, disc moderately degenerated. C5-6 less prominent disc protrusion. 4/26/17 saw surgeon for intolerable neck pain that was 3-4/10 w/ hydrocodone. LBP 10/10 w/ RLE rad. Decr ROM neck. Decr sensation R fingers. Decr ROM L spine, SLR+ bilateral. C4-6 medial branch block recommended. Was restricted from work. 7/12/17 exam unchanged. Cervical and lumbar fusion were recommended. 9/5/17 chronic back pain and sciatica rated 10/10, C5-T2 TTP and L4-S1 TTP, SLR+ bilateral, weak grip and finger abduction/adduction bilateral and hip flex/ext. Hunched, slow, shuffling due to pain. Peer to peer w/ PA concluded unable to work, permanently impaired, unable to do sedentary work for 3mos while waiting for surgery.

**LIB000142**

11/1/17 José Mathew, MD (pain management): BMI 41. Same as 12/26/17 note.

12/4/17 José Mathew, MD (pain management): Same as 12/26/17 note.

12/26/17 José Mathew, MD (pain management): Neck, shoulders, back pain f/u. 10/10, better w/ meds and rest, worse w/ sitting, lifting, stress. Meds allow him to perform daily activities. BMI 40.3. Same exam as 4/3/18. Lose wt.

1/31/18 José Mathew, MD (pain management): Same as 12/26/17 note.

3/2/18 José Mathew, MD (pain management): Pain 10/10, same as 12/26/17 note.

4/3/18 José Mathew, MD (pain management): Pain in neck, shoulders, low back (f/u). Better if constantly moving, and with meds. Worse w/ sitting and lying down. No side fx. 10/10 pain on average. BMI 40. Normal exam including neuro, except decr cervical and lumbar ROM w/ bilateral facet TTP and pain w/ facet loading. SLR neg. LBP, cervical radiculopathy, chronic pain syndrome.

4/27/18 Peter J Symbas, MD (orthopedics): No improvement of R elbow or R knee despite exercises, tennis elbow strap and steroid injection in knees. Mild TTP R elbow epicondyles and carpal flexors. Exam o/w normal except obesity. Normal sensation in BUE. R knee primary OA. R medial epicondylitis. MRI.

5/1/18 José Mathew, MD (pain management): 10/10 pain better w/ meds, worse w/ activity. BMI 39. Shoulders decr ROM and TTP GH joint, o/w same exam as 4/3/18.

5/16/18 Garrett Okun, DC (chiropractic): Constant neck/back discomfort 10/10 worse w/ movement, pressure, prolonged sitting, coughing, sneezing. Rad to R&L trap and R hip and R elbow. Better w/ meds and chiro. R leg ¼ inch shorter than L when prone. Subluxations treated.

5/30/18 José Mathew, MD (pain management): Pain 10/10, better w/ light exercise and rest and meds. Worse w/ prolonged activity. Meds allow daily activities. BMI 39. Decr sensation R L4-S1, SLR+ R, o/w same exam as 4/3/18 note. Get new MRI.

6/11/18 MRI L spine: Diffuse central canal narrowing but no significant stenosis. Moderate foraminal stenosis L5-S1 bilateral. Disc herniation may irritate S1 nerve root R>L. L4-5 L foraminal stenosis due to disc protrusion and bony changes, L4 nerve root may be irritated.

6/29/18 José Mathew, MD (pain management): Decr sensation L4-S1 R, SLR+ R, o/w same as 4/3/18 note.

7/30/18 José Mathew, MD (pain management): Pain 10/10. Same as 4/3/18 note.

8/29/18 José Mathew, MD (pain management): 10/10 average pain neck, low back, shoulders. Worse w/ bending and prolonged standing or sitting. Pain med "allows patient to attempt working out." Pain 10/10, no distress, conversant, same exam as 9/25/18.

9/17/18 Mark William Feeman, DO (PM&R): Injections haven't helped. Severe pain. 10/10 (7-8/10 w/ meds). ROS+ trouble sleeping. On exam distressed from pain, antalgic gait. R dorsiflexion 4/5. Decr ROM L spine. SLR+ R. Bilateral SI TTP. Decr sensation R L5. Exam o/w normal. "Not able to be predictably productive in the workplace. Cannot stand, walk or sit for prolonged periods of time, and will need to rest and change positions throughout the day. At times, the pain will reach levels where they will not be able to go to work, may miss many days/month. This patient is disabled from any and all employment."

9/25/18 Scott M Linacre, PA (pain management): Average 8/10 pain (neck, low back, shoulders, knees, toes). Functional improvement: less pain. BMI 39. No distress, conversant, decr sensation L4-S1, SLR+ bilateral, otherwise same exam as 12/26/18.

10/29/18 José Mathew, MD (pain management): Neck, low back, shoulders, knees, toes. Average 8/10. Better w/ exercise, worse when stationary and bending. BMI 39. No distress, conversant, same exam as 12/26/18.

11/28/18 José Mathew, MD (pain management): Average 9/10 pain (neck, low back, legs). Better w/ exercise and rest, worse w/ bending, walking, sitting, prolonged standing. "Functional benefits from the medications include: able to perform daily activities." BMI 39. Pain 9/10, no distress, conversant. Same exam as 11/26/18.

12/26/18 José Mathew, MD (pain management): Neck, low back, legs. Average 8/10. Without meds 10/10. Improves with exercise but worse with walking and standing. "Functional benefits from the medications include: ease the pain." BMI 38.5. No distress, conversant, pain 8/10. Decr ROM R shoulder, TTP R GH joint, same on L. Both knees decr ROM and TTP around patella. Decr ROM of neck and TTP C3-6 reproduced w/ facet loading, same for L3-S1. Exam otherwise normal. "Reports functional improvement and decreased pain with opioid." Trying to lose weight to get back surgery.

1/29/19 José Mathew, MD (pain management): Same as 4/3/18 note.

3/1/19 José Mathew, MD (pain management): BMI 38.5. Same as 4/3/18 note.

3/27/19 Dalandra Belcher, APRN, FNP-C (pain management): Pain 6/10 with pain meds, 10/10 without. Worse w/ lifting, standing, walking for long periods. No side fx. BMI 38.2. Decr sensation L4-5 bilateral, +SLR bilateral, TTP spine, exam o/w unremarkable. Functional improvement w/ meds.

**LIB000143**

4/9/19 Lauren Orenstein, MD (dermatology): Multiple surgeries for hidradenitis since 2001 w/ good results. R axilla draining nodule, 1 small residual nodule on scrotum that sometimes drains. Would like R axilla surgery, not interested in immunotherapy. R axilla 4x1.5cm sinus tract w/ draining nodules. 5mm papule on scrotum. Scarring in both axillar and perianal. Intertrigo (HC 2.5% and ketoconazole).

4/17/19 Howard Grattan, MD (PM&R, pain medicine peer review): Has had intermittent surgeries for hidradenitis suppurativa. July 2016 NP saw him for LBP w/ DDD, pain on flexion. Seen again in July 2016 for LBP after playing golf, normal neuro exam, mild pain w/ flexion, cyclobenzaprine and naproxen. August 2016 seen for LBP in urgent care. 12/6/16 seen for LBP, continue same meds. 1/23/17 seen for LBP, had MVA 10/4/16, antalgic gait, R plantarflexion 4/5, SLR+ R and decr sensation R L5. Can't sit longer than 30min and has to lie down for 30min QID. 4/26/17 saw ortho, had MVA that caused neck pain and radiculopathy, disc herniation C4-7, bilateral foraminal stenosis C4-7, cord compression C4-6, aggravation of pre-existing back pain w/ disc herniation L5-S1. Rest, meds, PT, injections hadn't helped. Fusion recommended. "Restricted from work." 5/19/17 NP saw him for LBP w/ LLE pain, worse w/ walking or standing for long periods. Cyclobenzaprine and hydrocodone, gabapentin. Cervical ESI recommended. 7/12/17 cervical and lumbar fusion recommended. Decr ROM w/ normal motor and sensation. 12/26/17 neck and LBP, bilateral shoulder pain, worse w/ sitting, lifting, stress. Motor and sensory intact. Decr ROM neck/lumbar. Same exam 3/2/18 w/ neg SLR. 8/29/18 exam unchanged except L4-S1 decr sensation. 9/17/18 still has pain despite injections, 7-8/10. Plantarflexion R 4/5 and decr L5 sensation. "At times his pain will reach levels where he is unable to go to work. He is impaired from all employment." 12/26/18 insurance hadn't approved surgery and not recommended until loses wt (lost 30lbs). 1/29/19 pain 10/10 (neck, back, legs) w/ normal neuro exam and decr ROM. 3/1/19 facet loading + in back and neck, decr ROM, normal neuro, on cyclobenzaprine, hydrocodone, gabapentin. Needs surgery. 3/27/19 pain 8/10, decr sensation bilateral L4-5, normal motor, SLR+ bilateral. Chronic pain syndrome, lumbar spondylosis w/ radiculopathy, cervical radiculopathy, lumbar DDD. No comorbidity from PM&R perspective. Impaired from 10/15/16 to present. Can do full-time sedentary work, sitting up to 40 min at a time, standing/walking up to 20min at a time. Re-eval in 3mos.

4/22/19 Garrett Okun, DC (chiropractic): R&L shoulder, L cervical discomfort. 10/10 pain constant, worse lying on L, pulling, sleeping. Lumbosacral and buttock pain radiates to R foot 10/10 pain constant. Worse w/ bending, stairs, computer work, coughing, dressing, lying down, lifting, pulling, pushing, prolonged sitting, standing. Meds help. Severe pain on ROM and w/ compression on top of head (bilateral). Decreased pain w/ distraction of neck (bending away from pain). Unable to abduct L shoulder. Unable to exert any force w/ L triceps. Mild weakness of L wrist extension. Unable to exert any force with L iliopsoas and quadriceps and hamstring. Mild weakness of L foot dorsiflexion. SLR+ R&L at 2 degrees. Severe L shoulder pain w/ maneuver for adhesive capsulitis. Unable to raise arms. "He has been inconsistent when following our recommendations for care. Overall, Virgil feels his condition has stayed the same." Avoid prolonged standing.

5/14/19 Victor J Blake, MD (internal medicine): TLS spine pain rad to R foot, severe, chronic. Paresthesia. L shoulder pain 9/10 rad to L neck and hand w/ paresthesia. Chronic neck pain more on L, severe. Bilateral knee pain 8/10. ROS neg. Meds: HC 2.5%, ketoconazole, gabapentin, cyclobenzaprine, hydrocodone, doxycycline. 3/22/19 CT showed mild ascending aorta enlargement 4.1cm. Normal exam. "Due to continuous pain, patient unable to remain still for longer than 10 minutes." DDD CTLS spine. R knee OA, hidradenitis surgery 6/24/19 for axilla. Aortic widening incidentally found on CT, has cardiology appt 8/14/19. LUE pain due to cervical DDD. Can't raise L arm above 90deg. Pain radiates to L fingers. Can't RTW. BMI 37.5.

5/21/19 Donald A Capoferri, DC (chiropractic independent medical evaluation): For claimant's attorney. Restrained driver 10/4/16, his vehicle was struck from behind while stopped. Imaging on 1/24/17 showed multilevel disc herniations with C4-5 cord compression, consistent with findings at 20 days after collision and also April 2017. C4-5 "represents a traumatic aggravation of a prior disc herniation." 10/18/12 imaging shows L5-S1 disc displacement compressing thecal sac and bone marrow edema. 10/7/16 imaging shows worsened edema and edema in disc "consistent with acute annular tears and loss of disc height…consistent with a traumatic aggravation." MRI 10/18/12 showed central disc herniation L5-S1 compressing thecal sac and narrowing neural foramina. 10/7/16 imaging showed 55% aggravation of prior condition (22mm vs 14mm herniation). "I conclude, more likely than not, the injuries complained of by this patient and the injuries being treated were directly caused by the incident of 10/4/16." Aggravation of pre-existing cervical and lumbar DDD. 19% AMA whole body impairment rating. Examined spine 5/20/19. C7 moves 8.4mm and L1 5.4mm. Whole body impairment for spine 39%. Would benefit from cervical and lumbar fusion "to improve functionality and lessen the danger of a catastrophic spinal cord injury from another fall or accident…biomechanical and medical management [will] be required to maintain any level of functionality."

7/11/19 Sheila Natarajan, MD, FAAPMR (PM&R peer review): Lumbar DDD w/ radiculopathy (M51.16), LS disc herniation (M51.27), cervical radiculopathy (M54.12), cervical DDD C4-7 (M50.121, M50.122, M50.123), hidradenitis axillaris (L73.2). No more than occ standing or walking, needs to change positions as needed, no lifting more than 10lbs occasionally, no more than occ overhead reaching, no lifting above shoulders, ergonomic workstation, no extremes of flexion/extension/rotation. No crawling, crouching, kneeling, climbing. No evidence of inability to sustain full-time work within restrictions. APs have not returned calls. No advanced imaging since 2017 to see what happened to herniations. No EMG. Neuro exam has improved. Discrepancies between examiners' findings. Tx has not changed for yrs. Impairment percentages used by chiropractor are for legal proceedings and don't necessarily reflect functional capacity.

## References

UpToDate monograph "Occupational low back pain: Evaluation and management" updated 11/3/18
https://www.uptodate.com/contents/occupational-low-back-pain-evaluation-and-management

UpToDate monograph "Subacute and chronic low back pain: Nonpharmacologic and pharmacologic treatment" updated 6/9/19
https://www.uptodate.com/contents/subacute-and-chronic-low-back-pain-nonpharmacologic-and-pharmacologic-treatment

**LIB000144**

UpToDate monograph "Subacute and chronic low back pain: Nonsurgical interventional treatment" updated 1/2/19
https://www.uptodate.com/contents/subacute-and-chronic-low-back-pain-nonsurgical-interventional-treatment

UpToDate monograph "Subacute and chronic low back pain: Surgical treatment" updated 1/2/19
https://www.uptodate.com/contents/subacute-and-chronic-low-back-pain-surgical-treatment

UpToDate monograph "Use of opioids in the management of chronic non-cancer pain" updated 4/10/19
https://www.uptodate.com/contents/use-of-opioids-in-the-management-of-chronic-non-cancer-pain

Qaseem A, Wilt TJ, McLean RM, Forciea MA, for the Clinical Guidelines Committee of the American College of Physicians. Noninvasive Treatments for Acute, Subacute, and Chronic Low Back Pain: A Clinical Practice Guideline From the American College of Physicians. Ann Intern Med 166:514–530; 14 February 2017.
https://annals.org/aim/fullarticle/2603228/noninvasive-treatments-acute-subacute-chronic-low-back-pain-clinical-practice

Hegmann KT, et al. American College of Occupational and Environmental Medicine Practice Guidelines: Opioids for Treatment of Acute, Subacute, Chronic, and Postoperative Pain. Journal of Occupational and Environmental Medicine 56:12, e143–e159; December 2014.
https://journals.lww.com/joem/Fulltext/2014/12000/ACOEM_Practice_Guidelines___Opioids_for_Treatment.19.aspx

Hegmann, KT, et al. American College of Occupational and Environmental Medicine Practice Guidelines: Diagnostic Tests for Low Back Disorders. Journal of Occupational and Environmental Medicine 61:4, e155-e168; April 2019.
https://acoem.org/acoem/media/PracticeResources/Diagnostic_Tests_for_Low_Back_Disorders-Apr-2019.pdf

American College of Occupational and Environmental Medicine practice guideline "Low Back Disorders" updated 3/7/19
https://new.mdguidelines.com/acoem/disorders/low-back-disorders

American College of Occupational and Environmental Medicine Position Statement. The Personal Physician's Role in Helping Patients With Medical Conditions Stay at Work or Return to Work. Journal of Occupational and Environmental Medicine 59:6, e125-e131; June 2017.
https://acoem.org/Guidance-and-Position-Statements/Guidance-and-Position-Statements/The-Personal-Physician-s-Role-in-Helping-Patients-with-Medical-Conditions-Stay-at-Work-or-Return-to

Reed P, The Medical Disability Advisor, Workplace Guidelines for Disability Duration, 5th Edition, 2005.
https://new.mdguidelines.com/mda/lumbosacral-spondylosis-without-myelopathy
https://new.mdguidelines.com/mda/sciatica

**LIB000145**

**UPS CampusShip: View/Print Label**

1. **Ensure there are no other shipping or tracking labels attached to your package.** Select the Print button on the print dialog box that appears. Note: If your browser does not support this function select Print from the File menu to print the label.

2. **Fold the printed label at the solid line below.** Place the label in a UPS Shipping Pouch. If you do not have a pouch, affix the folded label using clear plastic shipping tape over the entire label.

3. **GETTING YOUR SHIPMENT TO UPS**
   **Customers with a Daily Pickup**
   Your driver will pickup your shipment(s) as usual.

   **Customers without a Daily Pickup**
   Take your package to any location of The UPS Store®, UPS Access Point(TM) location, UPS Drop Box, UPS Customer Center, Staples® or Authorized Shipping Outlet near you. Items sent via UPS Return Services(SM) (including via Ground) are also accepted at Drop Boxes. To find the location nearest you, please visit the Resources area of CampusShip and select UPS Locations.
   Schedule a same day or future day Pickup to have a UPS driver pickup all your CampusShip packages.
   Hand the package to any UPS driver in your area.

UPS Access Point™
THE UPS STORE
422 CENTRAL AVE
DOVER ,NH 03820

UPS Access Point™
JANETOS SUPERETTE
77 MAIN ST
DOVER ,NH 03820

UPS Access Point™
MAIN ST MAILING & COPY
54 MAIN ST
DURHAM ,NH 03824



FOLD HERE



LIB000146

**Vocational Memorandum**

**From:** Lori Ashworth, M.Ed., CRC           **Date:** 7/23/2019

**To:** Courtney Grygiel

| | |
|---|---|
| **Claim#:** | 7223420 |
| **Claimant:** | Virgil Harris |
| **Date of Birth:** | 1/16/1962 |
| **Date of Disability:** | 10/15/2016 |

**Vocational Assessment:**

VCM received this file for a TSA update to one previously performed by Alicia Powell, MA, CRC on 4/22/2018. Please see that report for complete details regarding demographics, capacities utilized, education, work history, transferable skills and alternative occupations with accompanying wages. The following occupations were identified in that TSA: Accountant, Budget Accountant, Cost Accountant, Budget Analyst, Disc Jockey and Tax Preparer. By way of summary, EE is a 57-year-old Accountant with a bachelor's degree in accounting. The following work history: Accountant since 1985 and also worked as a disc jockey for 9 years. I have been asked to utilize restrictions and limitations from a peer review completed by Sheila Natarajan, MD (Physical Medicine & Rehabilitation) dated 7/11/2019. Based on these updated capacities, the previously identified occupations of Accountant, Budget Accountant, Cost Accountant, Budget Analyst and Tax Preparer remain viable. In the current employment environment, and as a result of technological advancement, employers are providing a variety of workstation types and associated equipment that allow individuals opportunity to experience and sustain comfort in their respective work settings within the occupation(s). Disc jockey was precluded given updated restrictions. This information has been provided to the ARC. This memorandum will serve in lieu of a formal written report given no change from the prior review.

Lori Ashworth, M.Ed., CRC
Certified Rehabilitation Counselor
Vocational Case Manager
SDN: 732-6302
Group Protection
Lincoln Financial Group

1

LIB000148

# VOCATIONAL CASE MANAGEMENT

## Transferable Skills Analysis

---

### PLEASE HAVE THE FOLLOWING IN THE CLAIM FILE BEFORE REFERRING

☑ JOB DESCRIPTION   (if cannot obtain in writing, must have phone doc from discussions with EE/ER detailing job duties)

☐ PHYSICAL JOB EVALUATION FORM (if available)

☐ UPDATED MEDICAL WITH CLEAR R&L'S       ☑ TRAINING-EDUCATION-EXPERIENCE FORM

☑ MANAGER APPROVAL (if required)       ☐ ATTORNEY INFO (if applicable)

---

FROM:   Yasmne Toomasi                DATE:        Thursday, July 18, 2019

## CLAIM BACKGROUND

---

Claimant Name:   **VIRGIL HARRIS**            Claim Number:        7223420

☐ STD   ☑ FULLY INSURED           ( THRESHOLD $ )

☑ LTD   ☐ ASO   ☐ LIFE       Has MDS worked the claim? ☑ YES  ☐ NO

Employer:  ROBERT HALF INTERNATIONAL INC.

Change In DEF. Date:   04/13/2019

Pre-Disability Earnings:   $4,333.33   /  M       Claim Service Type:      ADOP
                                       (mode)

---

**Document Locations**

☑ Document List       ☑ Correspondence       ☐ Paper File

---

**Case Manager's Recommendations / Reason For Referral:**

based on PM&R review dated 07/11/2019

---

DP 512

**LIB000149**



# INVOICE

**Reliable Review Services**

**Invoice Number : 36388-1**                    **4/17/2019 2:26 PM CDT**

Claimant: Virgil A Harris
Client Claim#: 7223420
RRS Claim#: 36388-1

**Customer:** LINCOLN FINANCIAL GROUP
8801 Indian Hills Drive
Omaha, NE 68114

| Description of Services | Hours | Rate | Other Fees | Amount Due |
|---|---|---|---|---|
| PEER REVIEW | 6.75 | 210 | $0.00 | 1417.50 |

**Total Due: $1417.50**

**Reviewer Details**

**Reviewer**

**Please include the invoice number with your payment and mail to:**

Reliable RS
PO Box 492890,
Redding CA 96049                    **Tax Id:** 26-1114252

**LIB000150**