

Liberty Life Assurance Company of Boston
Disability Claims
P.O. Box 7207
London, KY 40742-7207
Phone: (800) 291-0112
Secure Fax No.: (603) 334-0380

November 4, 2016

VIRGIL HARRIS
1604 PINE TREE TRAIL
COLLEGE PARK, GA 30349-0000

RE:    ROBERT HALF INTERNATIONAL INC.
       Short Term Disability Benefits
       Claim #: 7037643

MR. HARRIS

We are pleased to advise you that your claim for Short Term Disability (STD) benefits has been approved based upon your inability to perform your job. Benefits have been approved through 11/27/2016 based upon the medically supported disability date of 10/15/2016.

We will be contacting you by phone to provide further details regarding the approval and to advise of the next steps in the administration of your claim.

If you have any questions regarding this information, please contact our office at (800) 291-0112, Monday through Friday, 8:00am – 5:00pm EST. We will be happy to assist you.

Sincerely,

Corey Abrams-weaver
Disability Case Manager
Phone: (800) 291-0112
Secure Fax No.: (603) 334-0380

**LIB001451**



## CONFIDENTIAL INVESTIGATIVE REPORT
### August 17, 2017

| | | |
|---|---|---|
| **Attn: Danielle Alford**<br>**Liberty Mutual Group Disability**<br>**Group Benefits Disability Claims**<br>**PO Box 7207**<br>**London, KY  40742** | **YOUR FILE NO.** | 7223420 |
| | **OTHER FILE NO.** | Alford, D |
| | **OUR FILE NO.** | 201708-524.1 |
| | **INSURED/EMPLOYER** | Robert Half International Inc |
| | **SUBJECT/CLAIMANT** | **Virgil A Harris** |
| | **DATE OF LOSS** | 10/15/2016 |
| **ASSIGNMENT RECEIVED** | 8/2/2017 | |
| **TYPE OF CLAIM** | Disability (DI) | |
| **REPORTED INJURY** | Low back pain | |

| | |
|---|---|
| **INVESTIGATOR** | Kevin Edwards |
| **ASSIGNMENT** | Surveillance (hourly) |
| **OBJECTIVE** | Conduct surveillance; document all claimant activity. |
| **CASE STATUS** | Closed |

### PRELIMINARY INVESTIGATION
A background investigation was conducted by Inv Gin Palios and documented under a separate report.

### INVESTIGATIVE SUMMARY
On **Thursday, August 11th, 2017, from 8:01 am to 1:41 pm,** surveillance began at the claimant's provided address of 1604 Pine Tree Trail, College Park, GA 30349. The residence can be described a blue with white trim, two-story townhome with a one car garage. A black Mercedes Benz SUV was backed into the driveway. Preliminary investigation shows the claimant owns a 2013 Mercedes-Benz GLK350 4dr Wagon bearing Georgia License Plate #CFP9243. No activity was observed however the front porch light was on. Due to the location of the residence, direct surveillance was not established however; a surveillance position along the only route of departure was established with periodic drive-by. No activity was observed during this surveillance period. Due to mechanical issues, surveillance was discontinued.

### VIDEO DOCUMENTATION
Approximately 59 seconds of video documentation was obtained during this investigation, none of which depict claimant activity.

https://www.tmgecase.com/Media/login/OTEyMjAxNjYyODIxQU0=/Authorized/Stream?source=rtmp://ams.tmgecase.com:443/isdvod/mp4:201708524-08_17_2017.MP4

As is customary, original unedited video will be securely maintained by our corporate office in Jacksonville, Florida.

### PHYSICAL DESCRIPTION
The claimant was not observed during this surveillance period.

LIB001452

## RESIDENTIAL ASSESSMENT

Th residence at 1604 Pine Tree Trail in College Park, GA 30349 can be described a blue with white trim, two-story townhome with a one car garage.



## VEHICLES

The following vehicles were found to be associated with the claimant:

2013 Mercedes-Benz GLK350 4dr Wagon bearing Georgia License Plate #CFP9243



## CUSTOMER CONTACT

Danielle Alford was updated throughout these efforts.

**ENCLOSURES** N/A

## DETAILS OF INVESTIGATION

**Surveillance**
**1604 Pine Tree Trail**
**College Park, GA 30349**
**Thursday, August 10, 2017**

Weather: Clear / 90 degrees

8:01am (Video)
Surveillance began at the claimant's provided address of 1604 Pine Tree Trail, College Park, GA 30349. The residence can be described a blue with white trim, two-story townhome with a one-car garage. A black Mercedes Benz SUV was backed into the driveway. Preliminary investigation shows the claimant owns a 2013 Mercedes-Benz GLK350 4dr Wagon bearing Georgia License Plate #CFP9243. No activity was observed however the front porch light was on. Due to the location of the residence, a surveillance position along the only route of departure was established with periodic drive-by's.

9:00am (Video)
No activity was noted. Surveillance continued.

**LIB001453**

<u>10:05am (Video)</u>
No activity was noted. Surveillance continued.

<u>11:00am (Video)</u>
No activity was noted. Surveillance continued.

<u>12:03pm (Video)</u>
No activity was noted. Surveillance continued.

<u>1:00pm (Video)</u>
No activity was noted. Surveillance continued.

<u>1:42pm (Video)</u>
No activity was observed during this surveillance period. Due to sudden mechanical issues with the surveillance vehicle, efforts were discontinued.

**END OF REPORT**

**LIB001454**

**NOTICE OF PROTECTION PROVIDED BY**
**CALIFORNIA LIFE AND HEALTH INSURANCE GUARANTEE ASSOCIATION**

This notice provides a brief summary regarding the protections provided to policyholders by the California Life and Health Insurance Guarantee Association (" the Association" ). The purpose of the Association is to assure that policyholders will be protected, within certain limits, in the unlikely event that a member insurer of the Association becomes financially unable to meet its obligations. Insurance companies licensed in California to sell life insurance, health insurance, annuities and structured settlement annuities are members of the Association. The protection provided by the Association is not unlimited and is not a substitute for consumers' care in selecting insurers. This protection was created under California law, which determines who and what is covered and the amounts of coverage.

Below is a brief summary of the coverages, exclusions and limits provided by the Association. This summary does not cover all provisions of the law; nor does it in any way change anyone's rights or obligations or the rights or obligations of the Association.

**COVERAGE**

- **Persons Covered**
  Generally, an individual is covered by the Association if the insurer was a member of the Association and the individual lives in California at the time the insurer is determined by a court to be insolvent. Coverage is also provided to policy beneficiaries, payees or assignees, whether or not they live in California.

- **Amounts of Coverage**
  The basic coverage protections provided by the Association are as follows.

  - Life Insurance, Annuities and Structured Settlement Annuities
    For life insurance policies, annuities and structured settlement annuities, the Association will provide the following:

    - Life Insurance
      80% of death benefits but not to exceed $300,000
      80% of cash surrender or withdrawal value but not to exceed $100,000

    - Annuities and Structured Settlement Annuities
      80% of the present value of annuity benefits, including net cash withdrawal and net cash surrender values but not to exceed $250,000

    The maximum amount of protection provided by the Association to an individual, for all life insurance, annuities and structured settlement annuities is $300,000, regardless of the number of policies or contracts covering the individual.

  - Health Insurance
    The maximum amount of protection provided by the Association to an individual, as of April 1, 2011, is $470,125. This amount will increase or decrease based upon changes in the health care cost component of the consumer price index to the date on which an insurer becomes an insolvent insurer.

**LIB001455**

**COVERAGE LIMITATIONS AND EXCLUSIONS FROM  COVERAGE**
The Association may not provide you coverage for this policy. Coverage by the Association generally requires residency in California. You should not rely on coverage by the Association in selecting an insurance company or in selecting an insurance  policy.

The following policies and persons are among those that are excluded from Association  coverage:
- A policy or contract issued by an insurer that was not authorized to do business in California when it issued the policy or  contract
- A policy issued by a health care service plan (HMO), a hospital or medical  service organization, a charitable organization, a fraternal benefit society, a mandatory state  pooling plan, a mutual assessment company, an insurance exchange, or a grants and annuities  society
- If the person is provided coverage by the guaranty association of another  state
- Unallocated annuity contracts; that is, contracts which are not issued to and owned by an individual and which do not guaranty annuity benefits to an  individual
- Employer and association plans, to the extent they are self-funded or  uninsured
- A policy or contract providing any health care benefits under Medicare Part C or Part D
- An annuity issued by an organization that is only licensed to issue charitable gift  annuities
- Any policy or portion of a policy which is not guaranteed by the insurer or for which  the individual has assumed the risk, such as certain investment elements of a variable  life insurance policy or a variable annuity  contract
- Any policy of reinsurance unless an assumption certificate was  issued
- Interest rate yields (including implied yields) that exceed limits that are specified in  Insurance Code Section 1607.02(b)(2)(C).

## NOTICES

Insurance companies or their agents are required by law to give or send you this notice. Policyholders with additional questions should first contact their insurer or agent. To learn more about coverages provided by the Association, please visit the Association's website at www.califega.org, or contact either of the following:

California Life and Health Insurance
Guarantee Association
P.O. Box 16860
Beverly Hills, CA 90209-3319
(323) 782-0182

California Department of Insurance
Consumer Communications Bureau
300 South Spring Street
Los Angeles, CA 90013
(800) 927-4357

**Insurance companies and agents are not allowed by California law to use the existence of the Association or its coverage to solicit, induce or encourage you to purchase any form of insurance. When selecting an insurance company, you should not rely on Association coverage. If there is any inconsistency between this notice and California law, then California law will control.**

**LIB001456**



## Liberty Life Assurance Company of Boston

# GROUP DISABILITY INCOME POLICY

**Sponsor:**      **Robert Half International Inc.**

**Policy Number:**   **GF3-860-066675-01**

**Effective Date:**    **January 1, 2015**

**Governing Jurisdiction** is **California** and subject to the laws of that State.

**Premiums** are due and payable monthly on the first day of each month.

**Policy Anniversaries** shall occur each January 1st beginning in 2016.

Liberty Life Assurance Company of Boston (hereinafter referred to as Liberty) agrees to pay benefits provided by this policy in accordance with its provisions. This policy provides Long Term Disability coverage.

**PLEASE READ THIS POLICY CAREFULLY FOR FULL DETAILS.**

This policy is a legal contract and is issued in consideration of the Application of the Sponsor, a copy of which is attached, and of the payment of premiums by the Sponsor.

For purposes of this policy, the Sponsor acts on its own behalf or as the Covered Person's agent. Under no circumstances will the Sponsor be deemed the agent of Liberty.

This policy is delivered in and governed by the laws of the governing jurisdiction and to the extent applicable by The Employee Retirement Income Security Act of 1974 (ERISA) and any subsequent amendments.

The following pages including any amendments, riders or endorsements are a part of this policy.

Signed at Liberty's Home Office, 175 Berkeley Street, Boston, Massachusetts, 02117

**If discussions with Liberty, its agent or other representative, have failed to produce a satisfactory resolution to any problem, you may contact the California Insurance Department for assistance. Department of Consumer Services Division- 300 S. Spring Street, Los Angeles, CA 90013. Phone- 1-800-927-HELP.**

SECRETARY                            PRESIDENT

### NON-PARTICIPATING

FORM ADOP                                              .4

**LIB001457**

# TABLE OF CONTENTS

SECTION 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . SCHEDULE OF BENEFITS

SECTION 2 . . . . . . . . . . . . . . . . . . . . . . . . . . . DEFINITIONS

SECTION 3 . . . . . . . . . . . . . . . . . . . . . . . . . . . ELIGIBILITY AND EFFECTIVE DATES

SECTION 4 . . . . . . . . . . . . . . . . . . . . . . . . . . . DISABILITY INCOME BENEFITS

SECTION 5 . . . . . . . . . . . . . . . . . . . . . . . . . . EXCLUSIONS

SECTION 6 . . . . . . . . . . . . . . . . . . . . . . . . . . . TERMINATION PROVISIONS

SECTION 7 . . . . . . . . . . . . . . . . . . . . . . . . . . . GENERAL PROVISIONS

SECTION 8 . . . . . . . . . . . . . . . . . . . . . . . . . . PREMIUMS

SECTION 9 . . . . . . . . . . . . . . . . . . . . . . . . . . APPLICATION

# SECTION 1 - SCHEDULE OF BENEFITS

**ELIGIBILITY REQUIREMENTS FOR INSURANCE BENEFITS**

**Minimum Hourly Requirement:**

Employees working a minimum of 30 regularly scheduled hours per week

**Long Term Disability Benefits:**

Class 1: All Active, Eligible Employees excluding Robert Half Salaried Professional Services (Sps) Employees and Protiviti Government Services Salaried Professional Services (Sps) Employees Enrolled In The Core Plan

Class 2: All Active, Eligible Robert Half Sps Employees Enrolled In The Core Plan

Class 3: All Active, Eligible Employees excluding Robert Half Salaried Professional Services (Sps) Employees and Protiviti Government Services Salaried Professional Services (Sps) Employees enrolled in the Buy-Up Plan

Class 4: All Active, Eligible Robert Half Sps Employees Participating in the Buy-Up Plan

Class 5: All Active, Eligible Protiviti Government Services Sps Employees enrolled in the Core Plan

Class 6: All Active, Eligible Protiviti Government Services Sps Employees participating in the Buy-Up Plan

**Note:** This policy does not cover the following Employees: Temporary and seasonal Employees and Employees who are not legal residents working in the United States.

**Eligibility Waiting Period:**

Applicable to Class 1, 3, 5, 6
1. If the Covered Person is employed by the Sponsor on the policy effective date -
   The later of January 1, 2015 or the first of the month coincident with or next following the date of hire

2. If the Covered Person begins employment for the Sponsor after the policy effective date -
   First of the month coincident with or next following the date of hire

Applicable to Class 2, 4
1. If the Covered Person is employed by the Sponsor on the policy effective date -
   The later of January 1, 2015 or the first of the month coincident with or next following 30 days of continuous, Active Employment

2. If the Covered Person begins employment for the Sponsor after the policy effective date -
   First of the month coincident with or next following 30 days of continuous, Active Employment

**Employee Contributions Required:**

Applicable to Class 1, 2, 5

No*

Applicable to Class 3, 4, 6

Yes

*  Premium is paid through a salary gross-up arrangement

Schedule of Benefits

**Form ADOP (continued)**                                                                SCH-1

**GF3-860-066675-01 R (1) Effective January 1, 2015**

**LIB001460**

**LONG TERM DISABILITY COVERAGE**

**Elimination Period:**

The greater of:

a.    the end of the Covered Person's Short Term Disability Benefits;  or

b.    180 days

**Amount of Insurance:**

Applicable to Class 1, 2, 5:

60.00% of Basic Monthly Earnings not to exceed a Maximum Monthly Benefit of $15,000.00  less Other Income Benefits and Other Income Earnings as outlined in Section  4.

Applicable to Class 3, 4, 6:

66.67% of Basic Monthly Earnings not to exceed a Maximum Monthly Benefit of $25,000.00 less Other Income Benefits and Other Income Earnings as outlined in Section  4.

**Maximum Basic Monthly Earnings on which the Benefit is  Based:**

Applicable to Class 1, 2, 5:                                    $25,000.00

Applicable to Class 3, 4, 6:                                    $37,498.13

**Own Occupation  Duration:**

24 Month Own Occupation

# SECTION 1 - SCHEDULE OF BENEFITS
(Continued)

**LONG TERM DISABILITY COVERAGE** (Continued)

**Minimum Monthly Benefit:**

The Minimum Monthly Benefit is $100.00 or 10.00% of the Covered Person's Gross Monthly Benefit, whichever is greater.

**Maximum Benefit Period:**

| Age at Disability | Maximum Benefit Period |
|---|---|
| Less than age 60 | Greater of SSNRA* or to age 65 (but not less than 5 years) |
| 60 | 60 months |
| 61 | 48 months |
| 62 | 42 months |
| 63 | 36 months |
| 64 | 30 months |
| 65 | 24 months |
| 66 | 21 months |
| 67 | 18 months |
| 68 | 15 months |
| 69 and over | 12 months |

\*    SSNRA means the Social Security Normal Retirement Age as figured by the 1983 amendment to the Social Security Act and any subsequent amendments and provides:

| Year of Birth | Normal Retirement Age |
|---|---|
| Before 1938 | 65 |
| 1938 | 65 and 2 months |
| 1939 | 65 and 4 months |
| 1940 | 65 and 6 months |
| 1941 | 65 and 8 months |
| 1942 | 65 and 10 months |
| 1943-1954 | 66 |
| 1955 | 66 and 2 months |
| 1956 | 66 and 4 months |
| 1957 | 66 and 6 months |
| 1958 | 66 and 8 months |
| 1959 | 66 and 10 months |
| 1960 and after | 67 |

# SECTION 2 - DEFINITIONS

In this section Liberty defines some basic terms needed to understand this policy. The male pronoun whenever used in this policy includes the female.

**"Active Employment"** means the Employee must be actively at work for the Sponsor:

1. on a full-time basis and paid regular earnings;

2. for at least the minimum number of hours shown in the Schedule of Benefits; and either perform such work:

   a. at the Sponsor's usual place of business; or
   b. at a location to which the Sponsor's business requires the Employee to travel.

An Employee will be considered actively at work if he was actually at work on the day immediately preceding:

1. a weekend (except where one or both of these days are scheduled work days);
2. holidays (except when the holiday is a scheduled work day);
3. paid vacations;
4. any non-scheduled work day;
5. an excused leave of absence (except medical leave for the Covered Person's own disabling condition and lay-off); and
6. an emergency leave of absence (except emergency medical leave for the Covered Person's own disabling condition).

**"Administrative Office"** means Liberty Life Assurance Company of Boston, 9 Riverside Road, Weston, MA 02493.

**"Annual Enrollment Period"** or **"Enrollment Period"** means the period before each policy anniversary so designated by the Sponsor and Liberty during which an Employee may enroll for coverage under this policy.

**"Application"** is the document designated in Section 9; it is attached to and is made a part of this policy.

**"Basic Monthly Earnings"** means the Covered Person's base salary, bonus, commissions, time off pay, overtime, on call pay, and shift pay averaged over a 12 month period, from 10/1 to 9/30 of the previous year. For a Covered Person working less than a 12-month period at the time of disability, earnings will be averaged over the period of employment with Robert Half International Inc.

**"Consumer Price Index"** means the government publication " The Consumer Price Index for Urban Wage Earners and Clerical Workers" provided monthly by the U.S. Department of Labor, or its successor or in the event of no successor a similar Index of comparable purpose chosen by Liberty.

**"Covered Person"** means an Employee insured under this policy.

**"Disability"** or **"Disabled"** means:

i.    that during the Elimination Period and the next 24 months of Disability the Covered Person, as a result of Injury or Sickness, is unable to perform with reasonable continuity the Substantial and Material Acts necessary to pursue his Own Occupation in the usual and customary way; and

ii.   thereafter, the Covered Person is unable to perform, with reasonable continuity, the Substantial and Material Acts of any occupation, meaning that as a result of sickness or injury the Covered Person is not able to engage with reasonable continuity in any occupation in which he could reasonably be expected to perform satisfactorily in light of his age, education, training, experience, station in life, and physical and mental capacity.

## SECTION 2 - DEFINITIONS
(Continued)

**"Domestic Partner"** means an adult who has chosen to share their life in an intimate and committed relationship of mutual caring. A domestic partnership shall be established in California when both persons file a Declaration of Domestic Partnership with the Secretary of State pursuant to this division, and, at the time of filing, all of the following requirements are met:

1. Neither person is married to someone else or is a member of another domestic partnership with someone else that has not been terminated, dissolved, or adjudged a nullity.

2. The two persons are not related by blood in a way that would prevent them from being married to each other in this state.

3. Both persons are at least 18 years of age.

4. Either of the following:

    a. Both persons are members of the same sex.

    b. One or both of the persons meet the eligibility criteria under Title II of the Social Security Act as defined in Section 402(a) of Title 42 of the United States Code for old-age insurance benefits or Title XVI of the Social Security Act as defined in Section 1381 of Title 42 of the United States Code for aged individuals. Notwithstanding any other provision of this section, persons of opposite sexes may not constitute a domestic partnership unless one or both of the persons are over 62 years of age.

    c. Both persons are capable of consenting to the domestic partnership.

**"Eligibility Date"** means the date an Employee becomes eligible for insurance under this policy. Eligibility Requirements are shown in the Schedule of Benefits.

**"Eligible Survivor"** means the Covered Person's spouse or Domestic Partner, if living, otherwise the Covered Person's children under age 25.

**"Eligibility Waiting Period"** means the continuous length of time an Employee must be in Active Employment in an eligible class to reach his Eligibility Date.

**"Elimination Period"** means a period of consecutive days of Disability or Partial Disability for which no benefit is payable. The Elimination Period is shown in the Schedule of Benefits and begins on the first day of Disability.

If the Covered Person returns to work for any thirty or fewer days during the Elimination Period and cannot continue, Liberty will count only those days the Covered Person is Disabled or Partially Disabled to satisfy the Elimination Period.

**"Employee"** means a person in Active Employment with the Sponsor.

**"Enrollment Form"** is the document completed by the Covered Person, if required, when enrolling for coverage. This form must be satisfactory to Liberty.

**"Evidence of Insurability"** means a statement of proof of an Employee's medical history upon which acceptance for insurance will be determined by Liberty.

**"Extended Treatment Plan"** means continued care that is consistent with the American Psychiatric Association's standard principles of Treatment, and is in lieu of confinement in a Hospital or Institution. It must be approved in writing by a Physician.

**"Family and Medical Leave"** means a leave of absence for the birth, adoption or foster care of a child, or for the care of the Covered Person's child, spouse or parent or for the Covered Person's own serious health condition as those terms are defined by the Federal Family and Medical Leave Act of 1993 (FMLA) and any amendments, or by applicable state law.

Applicable to Class 3, 4, 6:

**"Family Status Change"** means any one of the following events that may occur:
1. the Employee's marriage or divorce;
2. the Employee's filing or rescinding of a Domestic Partner certification;
3. the birth of a child to the Employee;
4. the adoption of a child by the Employee;
5. the death of the Employee's spouse or Domestic Partner or child;
6. the commencement or termination of employment of the Employee's spouse or Domestic Partner;
7. the change from part-time employment to full-time employment by the Employee or the Employee's spouse or Domestic Partner;
8. the change from full-time employment to part-time employment by the Employee or the Employee's spouse or Domestic Partner;
9. the taking of unpaid leave of absence by the Employee or the Employee's spouse or Domestic Partner.

**"Gross Monthly Benefit"** means the Covered Person's Monthly Benefit before any reduction for Other Income Benefits and Other Income Earnings.

**"Hospital"** or **"Institution"** means a facility licensed to provide Treatment for the condition causing the Covered Person's Disability.

**"Indexed Basic Monthly Earnings"** means the Covered Person's Basic Monthly Earnings in effect just prior to the date Disability or Partial Disability began adjusted on the first anniversary of benefit payments and each anniversary thereafter.

**"Initial Enrollment Period"** means one of the following periods during which an Employee may first enroll for coverage under this policy:

1.  for an Employee who is eligible for insurance on the policy effective date, a period before the policy effective date set by the Sponsor and Liberty.

2.  for an Employee who becomes eligible for insurance after the policy effective date, the period which ends 31 days after his Eligibility Date.

**"Injury"** means bodily impairment resulting directly from an accident and independently of all other causes. For the purpose of determining benefits under this policy:

1.  any Disability which begins more than 60 days after an Injury will be considered a Sickness; and

2.  any Injury which occurs before the Covered Person is covered under this policy, but which accounts for a medical condition that arises while the Covered Person is covered under this policy will be treated as a Sickness.

**"Last Monthly Benefit"** means the net Monthly Benefit payable to the Covered Person prior to his death.

**"Substantial and Material Acts"** means acts that are normally required for the performance of the Covered Person's Own Occupation and cannot be reasonably omitted or modified.

**"Mental Illness"** means a psychiatric or psychological condition classified as such in the most current edition of the Diagnostic and Statistical Manual of Mental Disorders (DSM) regardless of the underlying cause of the Mental Illness. If the DSM is discontinued, Liberty will use the replacement chosen or published by the American Psychiatric Association.

**"Monthly Benefit"** means the monthly amount payable by Liberty to the Disabled or Partially Disabled Covered Person.

**"Own Occupation"** means the Covered Person's occupation that he was performing when his Disability or Partial Disability began.

# SECTION 2 - DEFINITIONS
(Continued)

**"Partial Disability" or "Partially Disabled"** means the Covered Person is not Totally Disabled and that while actually working in his Own Occupation, as a result of Injury or Sickness the Covered Person is unable to earn 80% or more of his Indexed Basic Monthly Earnings.

**"Physician"** means a person who:

1.  is licensed to practice medicine and is practicing within the terms of his license; or

2.  is a licensed practitioner of the healing arts in a category specifically favored under the health insurance laws of the State where the policy is delivered, and is practicing within the terms of his license.

It does not include a Covered Person, any family member or domestic partner.

**"Proof"** means written proof covering the occurrence, the character and the extent of the loss for which the claim is made.

**"Retirement Benefit under a Retirement Plan"** means money which:

1.  is payable under a Retirement Plan either in a lump sum or in the form of periodic payments and derives from the same loss as benefits under this policy;

2.  does not represent contributions made by an Employee (payments which represent Employee contributions are deemed to be received over the Employee's expected remaining life regardless of when such payments are actually received); and

3.  is payable upon Disability, if the payment derives from the same loss as benefits under this policy and does reduce the amount of money which would have been paid under the plan at the normal retirement age.

**"Retirement Plan"** means a plan of the Sponsor which provides retirement benefits to Employees and which is not funded wholly by Employee contributions. The term shall not include a profit-sharing plan, informal salary continuation plan, registered retirement savings plan, stock ownership plan, 401(K) or a non-qualified plan of deferred compensation.

**"Schedule of Benefits"** means the section of this policy which shows, among other things, the Eligibility Requirements, Eligibility Waiting Period, Elimination Period, Amount of Insurance, Minimum Benefit, and Maximum Benefit Period.

**"Sickness"** means illness, disease, pregnancy or complications of pregnancy.

**"Sponsor"** means the entity to whom this policy is issued.

**"Substance Abuse"** means alcohol and/or drug abuse, addiction or dependency.

**" Treatment"** means receiving care or services provided by or under the direction of a Physician including diagnostic measures resulting in a positive diagnosis, being prescribed drugs and/or medicines, whether the Covered Person chooses to take them or not, and taking drugs and/or medicines.

# SECTION 3 - ELIGIBILITY AND EFFECTIVE DATES

**Applicable to Long Term Disability Class 1, 2, 5:**

**Eligibility Requirements for Insurance Benefits**

The eligibility requirements for insurance benefits are shown in the Schedule of Benefits.

**Eligibility Date for Insurance Benefits**

An Employee in an eligible class will qualify for insurance on the later of:

1. this policy's effective date; or

2. the day after the Employee completes the Eligibility Waiting Period shown in the Schedule of Benefits.

## SECTION 3 - ELIGIBILITY AND EFFECTIVE DATES
(Continued)

**Applicable to Long Term Disability Class 1, 2, 5:**

**Effective Date of Insurance**

Insurance will be effective at 12:01 A.M. Standard Time in the governing jurisdiction on the day determined as follows, but only if the Employee's application or enrollment for insurance is made with Liberty through the Sponsor in a form or format satisfactory to Liberty.

An Employee will be insured on his Eligibility Date.

**Delayed Effective Date for Insurance**

The effective date of any initial, increased or additional insurance will be delayed for an individual if he is not in Active Employment because of Injury or Sickness. The initial, increased or additional insurance will begin on the date the individual returns to Active Employment.

# SECTION 3 - ELIGIBILITY AND EFFECTIVE DATES

**Applicable to Long Term Disability Class 3, 4, 6:**

**Eligibility Requirements for Insurance Benefits**

The eligibility requirements for insurance benefits are shown in the Schedule of Benefits.

**Eligibility Date for Insurance Benefits**

An Employee in an eligible class will qualify for insurance on the later of:

1.  this policy's effective date; or

2.  the day after the Employee completes the Eligibility Waiting Period shown in the Schedule of Benefits.

**Initial Enrollment Period**

During the Initial Enrollment Period an Employee can enroll in any one coverage or coverage option shown in the Schedule of Benefits. If he does not choose any coverage or coverage option,he will automatically be enrolled in Core Plan. If an Employee's Initial Enrollment Period takes place during or after the Annual Enrollment Period, but before the policy anniversary his coverage option will apply for (a) the rest of the policy year in which he first becomes eligible; and (b) the next policy year.

**Annual Enrollment Period**

During each Annual Enrollment Period, a Covered Person may keep his coverage at the same level or make one of the following changes in coverage for the next policy year:

1.  a decrease in coverage;

2.  an increase in coverage without Evidence of Insurability subject to the Pre-Existing Condition Exclusion defined herein.

**Applicable to Long Term Disability Class 3, 4, 6:**

**Family Status Change**

When an Employee experiences a Family Status Change, he may keep his coverage at the same level or make one of the following changes in coverage:

1.  a decrease in coverage;

2.  an increase in coverage without Evidence of Insurability subject to the Pre-Existing Condition Exclusion defined herein.

The Covered Person must apply for the change in coverage within 31 Days of the date of the Family Status Change. Such changes in coverage must be due to or consistent with the reason that the change in coverage was permitted. A change in coverage is consistent with a Family Status Change only if it is necessary or appropriate as the result of the Family Status Change.

**Effective Date of Insurance**

Insurance will be effective at 12:01 A.M. Standard Time in the governing jurisdiction on the day determined as follows, but only if the Employee's application or enrollment for insurance is made with Liberty through the Sponsor in a form or format satisfactory to Liberty.

1.  For Coverage Applied for During Initial Enrollment Periods:

    a.  an Employee will be insured on the date the Employee makes application for insurance if he enrolls on or before the 31st day after his Eligibility Date; or
    b.  an Employee who does not enroll on or before the 31st day after his Eligibility Date, or terminated his insurance while continuing to be eligible must submit an application to Liberty for approval, at the Employee's expense. The Employee will be insured on the date Liberty gives its approval.

**Applicable to Long Term Disability Class 3, 4, 6:**

**Effective Date of Insurance** (Continued)

2.  For Contributory Coverage Applied for During Annual Enrollment Periods

    An Employee will be insured for the selected contributory coverage on the first day of the next policy anniversary.

3.  For Coverage Applied for Due to a Family Status Change

    An Employee will be insured for the selected coverage on the later of the following dates, provided he applies or enrolls for the change in coverage before the end of the 31st Day following the Family Status Change:

    a.  the date of the Family Status Change;
    b.  the date the Employee applies or enrolls for the change in coverage.

**Delayed Effective Date for Insurance**

The effective date of any initial, increased or additional insurance will be delayed for an individual if he is not in Active Employment because of Injury or Sickness. The initial, increased or additional insurance will begin on the date the individual returns to Active Employment.

**Family and Medical Leave**

An Employee's coverage may be continued under this policy for an approved family or medical leave of absence for up to 12 weeks following the date coverage would have terminated, subject to the following:

1.  the authorized leave is in writing;

2.  the required premium is paid;

3.  the Covered Person's benefit level, or the amount of earnings upon which the Covered Person's benefit may be based, will be that in effect on the date before said leave begins; and

4.  continuation of coverage will cease immediately if any one of the following events should occur:

    a.  the Covered Person returns to work;
    b.  this group insurance policy terminates;
    c.  the Covered Person is no longer in an eligible class;
    d.  nonpayment of premium when due by the Sponsor or the Covered Person;
    e.  the Covered Person's employment terminates.

Applicable to Long Term Disability Class 1, 2, 5:

**Rehire Terms**

If a former Employee is re-hired by the Sponsor within 30 days of his termination date, all past periods of Active Employment with the Sponsor will be used in determining the re-hired Employee's Eligibility Date. If a former Employee is re-hired by the Sponsor more than 30 days after his termination date, he is considered to be a new Employee when determining his Eligibility Date.

Applicable to Long Term Disability Class 3, 4, 6:

**Rehire Terms**

If a former Employee is re-hired by the Sponsor within 30 days of his termination date:

1.  all past periods of Active Employment with the Sponsor will be used in determining the re-hired Employee's Eligibility Date; and

2.  if an Employee is re-hired by the Sponsor he will be insured for the same coverage that was in effect for him on the date his employment terminated and no change in that coverage may be made during the rest of that policy year, unless he experiences a Family Status Change. He may make changes in his coverage options at the next Annual Enrollment Period.

If a former Employee is re-hired by the Sponsor more than 30 days after his termination date, he is considered to be a new Employee when determining his Eligibility Date.

**Leave of Absence**

The Sponsor may continue the Covered Person's coverage(s) by paying the required premiums, if the Covered Person is given a leave of absence

The Covered Person's coverage will not continue beyond a period of 12 months. In continuing such coverage under this provision, the Sponsor agrees to treat all Covered Persons equally.

## SECTION 3 - ELIGIBILITY AND EFFECTIVE DATES
### (Continued)

**Transfer Provision**

In order to prevent loss of coverage for an individual because of transfer of insurance carriers, this policy will provide coverage for certain individuals as follows:

**Failure to be In Active Employment Due to Injury or Sickness:**

Subject to premium payments, this policy will cover individuals who:

1. at the time of transfer are covered under the prior carrier's policy; and

2. are not in Active Employment due to Injury or Sickness on the effective date of this policy.

Benefits will be determined based on the lesser of:

1. the amount of the Disability benefit that would have been payable under the prior policy and subject to any applicable policy limitations; or

2. the amount of Disability benefits payable under this policy. If benefits are payable under the prior policy for the Disability, no benefits are payable under this policy.

**Disability Due to a Pre-Existing Condition**

If an individual was insured under the prior carrier's policy at the time of transfer and was in Active Employment and insured under this policy on its effective date, benefits may be payable for a Disability due to a Pre-Existing Condition.

If the individual can satisfy this policy's Pre-Existing Condition Exclusion, the benefit will be determined according to this policy.

If the individual cannot satisfy this policy's Pre-Existing Condition Exclusion, then:

1. Liberty will apply the Pre-Existing Condition Exclusion of the prior carrier's policy and;

2. if the individual would have satisfied the prior carrier's pre-existing condition exclusion, giving consideration towards continuous time coverage under this policy; and the prior carrier's policy, the benefit will be determined according to this policy. However, the Maximum Monthly Benefit amount payable under this policy shall not exceed the maximum monthly benefit payable under the prior carrier's policy.

No benefit will be paid if the individual cannot satisfy the Pre-Existing Condition Exclusions of either policy.

# SECTION 4 - DISABILITY INCOME BENEFITS

**LONG TERM DISABILITY COVERAGE**

**Disability Benefit**

When Liberty receives Proof that a Covered Person is Disabled due to Injury or Sickness, Liberty will pay the Covered Person a Monthly Benefit after the end of the Elimination Period, subject to any other provisions of this policy. The Proof must be at the Covered Person's expense.

For purposes of determining Disability, the Injury or Sickness must occur and Disability must begin while the Employee is insured for this coverage.

The Monthly Benefit will not:

1. exceed the Covered Person's Amount of Insurance; or

2. be paid for longer than the Maximum Benefit Period.

The Amount of Insurance and the Maximum Benefit Period are shown in the Schedule of Benefits.

**Amount of Disability Monthly Benefit**

To figure the amount of Monthly Benefit:

1. Take the lesser of:

   a. the Covered Person's Basic Monthly Earnings multiplied by the benefit percentage shown in the Schedule of Benefits; or

   b. the Maximum Monthly Benefit shown in the Schedule of Benefits; and then

2. Deduct Other Income Benefits and Other Income Earnings, (shown in the Other Income Benefits and Other Income Earnings provision of this policy), from this amount.

The Monthly Benefit payable will not be less than the Minimum Monthly Benefit shown in the Schedule of Benefits

**LONG TERM DISABILITY COVERAGE** (Continued)

**Partial Disability**

When Liberty receives Proof that a Covered Person is Partially Disabled and has experienced a loss of earnings due to Injury or Sickness, he will receive a Monthly Benefit, subject to any other provisions of this policy.  The Proof must be at the Covered Person's expense.

To be eligible to receive Partial Disability benefits, the Covered Person may be employed in his Own Occupation or another occupation, must satisfy the Elimination Period and must be earning less than 80% of his Basic Monthly Earnings.

For purposes of determining Partial Disability, the Injury or Sickness must occur and Partial Disability must begin while the Employee is insured for this coverage.

**Proportionate Loss Monthly Calculation with Work Incentive  Benefit**

For the first 12 Months, the work incentive benefit will be an amount equal to the Covered Person's Basic Monthly Earnings multiplied by the benefit percentage shown in the Schedule of Benefits under the heading titled, "Amounts of Insurance", without any reductions from earnings. The work incentive benefit will only be reduced, if the Monthly Benefit payable plus any earnings exceed 100% of  the Covered Person's Basic Monthly Earnings. If the combined total is more, the Monthly Benefit will be reduced by the excess amount so that the Monthly Benefit plus the Covered Person's earnings does not exceed 100% of his Basic Monthly Earnings.

Thereafter, to figure the Amount of Monthly Benefit the formula (A divided by B) x C will be  used.

   A = The Covered Person's Basic Monthly Earnings minus the Covered Person's earnings received while he is Partially Disabled. This figure represents the amount of lost  earnings.

   B  =  The Covered Person's Basic Monthly  Earnings.

   C = The Monthly Benefit as figured in the Disability provision of this policy plus the Covered Person's earnings received while he is Partially Disabled, (but, not  including  adjustments under the Cost of Living Adjustment Benefit, if  included).

**LONG TERM DISABILITY COVERAGE** (Continued)

**Partial Disability** (Continued)

**Proportionate Loss Monthly Calculation with Work Incentive Benefit** (Continued)

On the first anniversary of benefit payments and each anniversary thereafter, for the purpose of calculating the benefit, the term "Basic Monthly Earnings" is:

1. replaced by "Indexed Basic Monthly Earnings"; and

2. increased annually by the current annual percentage increase in the Consumer Price Index.

The Monthly Benefit payable will not be less than the Minimum Monthly Benefit shown in the Schedule of Benefits.

**LONG TERM DISABILITY COVERAGE** (Continued)

**Mental Illness and/or Substance Abuse**

The benefit for Disability due to Mental Illness and/or Substance Abuse will not exceed a combined period of 24 months of Monthly Benefit payments while the Covered Person is insured under this policy.

If the Covered Person is in a Hospital or Institution for Mental Illness and/or Substance Abuse at the end of the combined period of 24 months, the Monthly Benefit will be paid during the confinement.

If the Covered Person is not confined in a Hospital or Institution for Mental Illness and/or Substance Abuse, but is fully participating in an Extended Treatment Plan for the condition that caused Disability, the Monthly Benefit will be payable to a Covered Person for up to a combined period of 36 months.

In no event will the Monthly Benefit be payable beyond the Maximum Benefit Period shown in the Schedule of Benefits.

**LONG TERM DISABILITY COVERAGE** (Continued)

**Three Month Survivor Benefit**

Liberty will pay a lump sum benefit to the Eligible Survivor when Proof is received that a Covered Person died:

    1.   after Disability had continued for 180 or more consecutive days; and

    2.   while receiving a Monthly Benefit.

The lump sum benefit will be an amount equal to three times the Covered Person's Last Monthly Benefit.

If the survivor benefit is payable to the Covered Person's children, payment will be made in equal shares to the children, including step children and legally adopted children. However, if any of said children are minors or incapacitated, payment will be made on their behalf to the court appointed guardian of the children's property. This payment will be valid and effective against all claims by others representing or claiming to represent the children.

If there is no Eligible Survivor, the benefit is payable to the estate.

If an overpayment is due to Liberty at the time of a Covered Person's death, the benefit payable under this provision will be applied toward satisfying the overpayment.

# SECTION 4 - DISABILITY INCOME BENEFITS
### (Continued)

**3 Month Survivor**

# SECTION 4 - DISABILITY INCOME BENEFITS
(Continued)

**LONG TERM DISABILITY COVERAGE** (Continued)

**Other Income Benefits and Other Income Earnings**

**Other Income Benefits** means:

1.  The amount that the Covered Person receives which is paid to the Covered Person in compensation for the same Disability and loss of income covered under this policy under:

    a.  any benefit paid under temporary disability benefit under Workers Compensation;
    b.  Occupational Disease Law;
    c.  Title 46, United States Code Section 688 (The Jones Act);
    d.  any governmental compulsory benefit act or law; or
    e.  any other act or law of like intent.

2.  The amount of Disability Retirement Benefits the Covered Person receives which is paid to the Covered Person in compensation for the same Disability and loss of income covered under this policy.

3.  The amount of Disability Benefits under the United States Social Security Act, the Canada Pension Plan, the Quebec Pension Plan, or any similar plan or act, which:

    a.  the Covered Person receives which is paid to the Covered Person in compensation for the same Disability and loss of income covered under this policy; or
    b.  his dependent spouse, dependent child or dependent children receives because of such Disability.

4.  Any amount the Covered Person receives from or on behalf of a third party for loss of time benefits as a result of injury caused or contributed to by the third party, not including attorney's fees paid by the claimant.

**Other Income Earnings** means:

1.  any amount the Covered Person receives from any formal or informal sick leave or salary continuation plan(s).

2.  the amount of earnings the Covered Person earns or receives from any form of employment for which the Covered Person becomes employed after the Covered Person's Disability or Partial Disability began.

**Long Term Disability Primary and Family Integration**
**Other Income Benefits and Other Income Earnings**
Form ADOP **LTD-22.2**

**LIB001487**

## SECTION 4 - DISABILITY INCOME BENEFITS
(Continued)

**LONG TERM DISABILITY COVERAGE** (Continued)

**Social Security Assistance**

Liberty may offer help to a Covered Person in applying for Social Security Disability Income Benefits. In order to be eligible for assistance the Covered Person must be receiving a Monthly Benefit from Liberty. Such assistance will be offered only if Liberty determines that assistance would be beneficial.

# SECTION 4 - DISABILITY INCOME BENEFITS
(Continued)

**LONG TERM DISABILITY COVERAGE** (Continued)

**Lump Sum Payments**

Other Income Benefits from a compromise, settlement, award or judgement which are paid to the Covered Person in a lump sum and are meant to compensate the Covered Person for loss of past or future wages will be prorated on a monthly basis as follows:

1. over the period of time such benefits would have been paid if not in a lump sum; or

2. if such period of time cannot be determined, the lesser of:

   a. the remainder of the Maximum Benefit Period; or
   b. 5 years.

**Cost of Living Freeze**

After the first deduction for each of the Other Income Benefits, the Monthly Benefit will not be further reduced due to any cost of living increases payable under the Other Income Benefits and Other Income Earnings provision of this policy. This provision does not apply to increases received from any form of employment.

**Prorated Benefits**

For any period for which a Long Term Disability benefit is payable that does not extend through a full month, the benefit will be paid on a prorated basis. The rate will be 1/30th for each day for such period of Disability.

**LONG TERM DISABILITY COVERAGE** (Continued)

**Discontinuation of the Long Term Disability Benefit**

The Monthly Benefit will cease on the earliest of:

1. the date the Covered Person unreasonably refuses to be examined or evaluated at reasonable intervals;

2. the date the Covered Person's current Partial Disability earnings exceed 80% of his Basic Monthly Earnings;

   Because the Covered Person's current earnings may fluctuate, Liberty will average earnings over three consecutive months rather than immediately terminating his benefit once 80% of Indexed Basic Monthly Earnings has been exceeded.

3. the date the Covered Person is no longer Disabled according to this policy;

4. the end of the Maximum Benefit Period; or

5. the date the Covered Person dies.

**LONG TERM DISABILITY COVERAGE** (Continued)

**Successive Periods of Disability**

With respect to this policy, **"Successive Periods of Disability"** means a Disability which is related or due to the same cause(s) as a prior Disability for which a Monthly Benefit was payable.

A Successive Period of Disability will be treated as part of the prior Disability if, after receiving Disability benefits under this policy, a Covered Person:

1.  returns to his Own Occupation on an Active Employment basis for less than six continuous months; and

2.  performs all the Substantial and Material Acts of his Own Occupation.

To qualify for a Successive Periods of Disability benefit, the Covered Person must experience more than a 20% loss of Basic Monthly Earnings.

Benefit payments will be subject to the terms of this policy for the prior Disability.

If a Covered Person returns to his Own Occupation on an Active Employment basis for six continuous months or more, the Successive Period of Disability will be treated as a new period of Disability. The Covered Person must complete another Elimination Period.

If a Covered Person becomes eligible for coverage under any other group long term disability coverage, this Successive Period of Disability provision will cease to apply to that Covered Person.

# SECTION 5 - EXCLUSIONS

**GENERAL EXCLUSIONS**

This policy will not cover any Disability due to:

1.  war, declared or undeclared, or any act of war;

2.  intentionally self-inflicted injuries, while sane or insane;

3.  active Participation in a Riot;

4.  the committing of or attempting to commit a felony;

5.  cosmetic surgery unless such surgery is in connection with an Injury or Sickness sustained while the individual is a Covered Person.

No benefit will be paid during any period of incarceration after the conviction of a crime.

With respect to this provision, **Participation** shall include promoting, inciting, conspiring to promote or incite, aiding, abetting, and all forms of taking part in, but shall not include actions taken in defense of public or private property, or actions taken in defense of the Covered Person, if such actions of defense are not taken against persons seeking to maintain or restore law and order including, but not limited to police officers and fire fighters.

With respect to this provision, **Riot** shall include all forms of public violence, disorder or disturbance of the public peace, by three or more persons assembled together, whether or not acting with a common intent and whether or not damage to persons or property or unlawful act or acts is the intent or the consequence of such disorder.

**LONG TERM DISABILITY COVERAGE**

**Pre-Existing Condition Exclusion**

This policy will not cover any Disability or Partial Disability:

1.  which is caused or substantially contributed to by a Pre-Existing Condition or medical or surgical treatment of a Pre-Existing Condition; and

2.  which begins in the first 12 months immediately after the Covered Person's effective date of coverage.

**"Pre-Existing Condition"** means a physical or mental condition, whether diagnosed or undiagnosed, resulting from an Injury or Sickness for which the Covered Person received Physician's advice or Treatment within three months prior to the Covered Person's effective date of coverage.

# SECTION 6 - TERMINATION PROVISIONS

**Termination of a Covered Person's Insurance**

A Covered Person will cease to be insured on the earliest of the following dates:

1. the date this policy terminates, but without prejudice to any claim originating prior to the time of termination;

2. the date the Covered Person is no longer in an eligible class;

3. the date the Covered Person's class is no longer included for insurance;

4. the last day for which any required Employee contribution has been made;

5. the date employment terminates. Cessation of Active Employment will be deemed termination of employment, except the insurance will be continued for an Employee absent due to Disability during:

   a. the Elimination Period; and
   b. any period during which premium is being waived.

6. the date the Covered Person ceases active work due to a labor dispute, including any strike, work slowdown, or lockout.

Liberty reserves the right to review and terminate all classes insured under this policy if any class(es) cease(s) to be covered.

Applicable to Long Term Disability Class 1, 2, 5

**Policy Termination**

1.  Termination of this policy under any conditions will not prejudice any claim which occurs while this policy is in force.

2.  If the Sponsor fails to pay any premium within the grace period, this policy will terminate at 12:00 midnight Standard Time on the last day of the grace period. The Sponsor may terminate this policy by advance written notice delivered to Liberty at least 31 days prior to the termination date. This policy will not terminate during any period for which premium has been paid. The Sponsor will be liable to Liberty for all premiums due and unpaid for the full period for which this policy is in force.

3.  Liberty may terminate this policy on any premium due date by giving written notice to the Sponsor at least 31 days in advance if:

    a.  the number of Employees insured is fewer than 10; or

    b.  less than 100.00% of all the Employees eligible for any non-contributory insurance are insured for it; or

    c.  the Sponsor fails:

        i.  to furnish promptly any information which Liberty may reasonably require; or
        ii. to perform any other obligations pertaining to this policy.

4.  Liberty may terminate this policy or any coverage(s) afforded hereunder and for any class of covered Employees on any premium due date after it has been in force for 12 months. Liberty will provide written notice of such termination to the Sponsor at least 31 days before the termination is effective.

5.  Termination may take effect on an earlier date if agreed to by the Sponsor and Liberty.

Applicable to Long Term Disability Class 3, 4, 6

**Policy Termination**

1.  Termination of this policy under any conditions will not prejudice any claim which occurs while this policy is in force.

2.  If the Sponsor fails to pay any premium within the grace period, this policy will terminate at 12:00 midnight Standard Time on the last day of the grace period. The Sponsor may terminate this policy by advance written notice delivered to Liberty at least 31 days prior to the termination date. This policy will not terminate during any period for which premium has been paid. The Sponsor will be liable to Liberty for all premiums due and unpaid for the full period for which this policy is in force.

3.  Liberty may terminate this policy on any premium due date by giving written notice to the Sponsor at least 31 days in advance if:

    a.  the number of Employees insured is fewer than 10; or

    b.  less than 0.00% of all the Employees eligible for any contributory insurance are insured for it; or

    c.  the Sponsor fails:

        i.   to furnish promptly any information which Liberty may reasonably require; or
        ii.  to perform any other obligations pertaining to this policy.

4.  Liberty may terminate this policy or any coverage(s) afforded hereunder and for any class of covered Employees on any premium due date after it has been in force for 12 months. Liberty will provide written notice of such termination to the Sponsor at least 31 days before the termination is effective.

5.  Termination may take effect on an earlier date if agreed to by the Sponsor and Liberty.

**Termination of Coverage Option(s)**

**Participation Requirements**

Liberty may terminate coverage or any coverage option afforded hereunder on any premium due date by giving written notice to the Sponsor at least 31 days in advance:

# SECTION 7 - GENERAL PROVISIONS

**Entire Contract; Changes**

This policy, the application of the employer, and the individual applications, if any, of the employees constitute the entire contract between the parties, and any statement made by the employer or by any employee shall, in the absence of fraud, be deemed a representation and not a warranty. No such statement shall (avoid the insurance or reduce the benefits under this policy or) be used in defense to a claim hereunder unless it is contained in a written application, nor shall any such statement of the employer, except a fraudulent misstatement, be used at all to void this policy after it has been in force for two years from the date of its issue, nor shall any such statement of any employee eligible for coverage under the policy, except a fraudulent misstatement, be used at all in defense to a claim for loss incurred or Disability or Partial Disability (as defined in the policy) commencing after the insurance coverage with respect to which claim is made has been in effect for two years from the date it became effective.

No change in this policy shall be valid unless approved by an executive officer of the insurer and unless such approval be endorsed hereon or attached hereto. No agent has authority to change this policy or to waive any of its provisions.

**Time Limit on Certain Defenses**

(a) After two years from the date of issue of this policy, no misstatements, except fraudulent misstatements, made by the applicant in the application for such policy shall be used to void the policy or to deny a claim for loss incurred or Disability (as defined in the policy) commencing after the expiration of such two-year period. (b) No claim for loss incurred or Disability (as defined in the policy) commencing after two years from the date of issue of this policy shall be reduced or denied on the ground that a disease or physical condition not excluded from coverage by name or specific description effective on the date of loss had existed prior to the effective date of coverage of this policy.

**Grace Period**

A grace period of 31 days will be granted for the payment of premiums accruing after the first premium, during which grace period the policy shall continue in force, but the employer shall be liable to the insurer for the payment of the premium accruing for the period the policy continues in force.

**Notice of Claim**

Written notice of claim must be given to the insurer within 20 days after the occurrence or commencement of any loss covered by the policy, or as soon thereafter as is reasonably possible. Subject to the qualifications set forth below, if the insured Covered Person suffers loss of time on account of Disability for which indemnity may be payable for at least two years, the Covered Person shall at least once in every six months after having given notice of claim, give to the insurer notice of continuance of said Disability, except in the event of legal incapacity. The period of six months following any filing of proof by the insured or any payment by the insurer on account of such claim or any denial of liability in whole or in part by the insurer shall be excluded in applying this provision. Delay in giving of such notice shall not impair the insured Covered Person's right to any indemnity which would otherwise have accrued during the period of six months preceding the date on which such notice is actually given.

**Claims Forms**

The insurer, upon receipt of a written notice of claim, will furnish to the claimant such forms as are usually furnished by it for filing proofs of loss. If such forms are not furnished within 15 days after the giving of such notice the claimant shall be deemed to have complied with the requirements of this policy as to proof of loss upon submitting, within the time fixed in the policy for filing proofs of loss, written proof covering the occurrence, the character and the extent of the loss for which claim is made.

**Proofs of Loss**

Written proof of loss must be furnished to the insurer, in the case of claim for loss for Long Term Disability benefits, within 90 days after the termination of the period for which the insurer is liable, and in case of claim for any other loss, within 90 days after the date of such loss. Failure to furnish such proof within the time required shall not invalidate nor reduce any claim if it was not reasonably possible to give proof within such time, provided such proof is furnished as soon as reasonably possible and in no event, except in the absence of legal capacity of the employee, later than one year from the time proof is otherwise required.

**Time of Payment of Claim**

Indemnities payable under this policy for any loss other than Long Term Disability benefits will be paid as they accrue immediately upon receipt of due written proof of such loss. Subject to due written proof of such loss, all accrued indemnity for Long Term Disability benefits will be paid Monthly to the insured employee and any balance remaining unpaid upon the termination of the period of liability will be paid immediately upon receipt of due written proof.

**Payment of Claims**

If any indemnity of this policy shall be payable to the estate of the insured employee or employee who is a minor or otherwise not competent to give a valid release, the insurer may pay such indemnity up to an amount not exceeding $1,000 to any relative by blood or connection by marriage of the insured employee who is deemed by the insurer to be equitable entitled thereto. Any payment made by the insurer in good faith pursuant to this provision shall fully discharge the insurer to the extent of such payment.

**Physical Examination and autopsy**

The insurer at its own expense shall have the right and opportunity to examine the person of any individual whose injury or sickness is the basis of claim when and as often as it may reasonably require during the pendency of a claim hereunder and to make an autopsy in case of death where it is not forbidden by law.

**Legal Actions**

No action at law or in equity shall be brought to recover on this policy prior to the expiration of 60 days after written proof of loss has been furnished in accordance with the requirements of this policy. No such action shall be brought after the expiration of three years after the time written proof of loss is required to be furnished.

**Misstatement of Age**

If the age of any individual covered under this policy has been misstated, the amount payable shall be such as the premium paid for the coverage of such individual would have purchased at the correct age.

**Conformity with state statutes**

Any provision of this policy which, on its effective date, is in conflict with the statutes of the state in which the insured resides on such date is hereby amended to conform to the minimum requirements of such statutes.

# SECTION 8 - PREMIUMS

**Premium Rates**

Liberty has set the premiums that apply to the coverage(s) provided under this policy. Those premiums are shown in a notice given to the Sponsor with or prior to delivery of this policy.

A change in the initial premium rate(s) will not take effect within the first 3 years except that Liberty may change premium rates at any time for reasons which affect the risk assumed, including those reasons shown below:

1. a change occurs in the policy design;

2. a division, subsidiary or Associated Company is added to or deleted from this policy;

3. when the number of Covered Persons changes by 15.00% or more from the number insured on this policy's effective date; or

4. a change in existing law which affects this policy.

No premium may be changed unless Liberty notifies the Sponsor at least 31 days in advance. Premium changes may take effect on an earlier date when both Liberty and the Sponsor agree.

**Payment of Premiums**

1. All premiums due under this policy, including adjustments, if any, are payable by the Sponsor on or before their due dates at Liberty's Administrative Office, or to Liberty's agent. The due dates are specified on the first page of this policy.

2. All payments made to or by Liberty shall be in United States dollars.

3. If premiums are payable on a monthly basis, premiums for additional or increased insurance becoming effective during a policy month will be charged from the next premium due date.

4. The premium charge for insurance terminated during a policy month will cease at the end of the policy month in which such insurance terminates. This manner of charging premium is for accounting purposes only. It will not extend insurance coverage beyond a date it would have otherwise terminated as shown in the "Termination of a Covered Person's Insurance" provision of this policy.

5. If premiums are payable on other than a monthly basis, premiums for additional, increased, reduced or terminated insurance will cause a prorated adjustment on the next premium due date.

6. Except for fraud and premium adjustments, refunds of premiums or charges will be made only for:

   1. the current policy year; and

   2. the immediately preceding policy year.

**Waiver of Premium**

With respect to Long Term Disability benefits, premium payments for a Covered Person are waived during any period for which benefits are payable. If coverage is to be continued, premium payments must be resumed following a period during which they were waived.

# NOTICE OF CHANGE

In The Certificate Booklet
Issued to Employees of:

**Robert Half International Inc.**

This Notice is a summary of changes that have been made to your Booklet. These changes are effective on January 1, 2015.  Keep this Notice with your Booklet.

**LIBERTY LIFE ASSURANCE COMPANY OF BOSTON**

*Stephen J. McAnna*

**LIB001502**

# AMENDMENT

to be attached to and made a part of
the Certificate for Group Plan No. GF3-860-066675-01
issued by

### LIBERTY LIFE ASSURANCE COMPANY OF BOSTON
(Liberty)

to

### Robert Half International Inc.
(Sponsor)


Effective date of this Amendment:     January 1, 2015

The attached pages reflect the following revisions: Update to the Evidence of Insurability requirements and the New Employee Enrollment Limit.

ADOC-AMENDMENT

**LIB001503**

# Robert Half International Inc. Long Term Disability Plan
## January 1, 2015

LIB001504

## <u>DISCLAIMER</u>

**Sponsor**:          **Robert Half International Inc.**

**Policy Number(s)**:   **GF3-860-066675-01**

**Date Provided**:      **November 23, 2016**

The following certificate(s) are a true copy of the certificate(s) issued under the  policy(ies).

**LIBERTY LIFE ASSURANCE COMPANY OF  BOSTON**

# Robert Half International Inc. Long Term Disability Plan

LIB001505



## CERTIFICATE OF COVERAGE

**Liberty Life Assurance Company of Boston** welcomes your employer as a client.

**Sponsor:** **Robert Half International Inc.**

**Plan Number:** **GF3-860-066675-01**

**Effective Date:** **January 1, 2015**

When this plan refers to "you" or "your" it means the Employee insured under this plan. This is your Disability Income certificate of coverage as long as you are eligible for insurance and remain insured.

A few words about this certificate of coverage...

It is written in plain English. A few terms and provisions are written as required by insurance law. **PLEASE READ IT CAREFULLY**. If you have any questions about any terms and provisions, please contact the Insurance Administrator at your work location or write to Liberty at 175 Berkeley Street, Boston, Massachusetts, 02117. You may call Liberty's toll-free telephone number at 1-800-344-0197. Liberty will assist you in any way we can to help you understand your benefits.

**If discussions with Liberty, its agent or other representative, have failed to produce a satisfactory resolution to any problem, you may contact the California Insurance Department for assistance. Department of Consumer Services Division- 300 S. Spring Street, Los Angeles, CA 90013. Phone- 1-800-927-HELP.**

Also, if the terms of your certificate of coverage and the policy differ, the policy will govern. Your coverage may be terminated or modified in whole or in part under the terms and provisions of the policy.

*Stephen J. McAnna*

**President, Liberty Mutual Benefits**

**LIB001506**

# TABLE OF CONTENTS

SECTION 1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . SCHEDULE OF BENEFITS

SECTION 2. . . . . . . . . . . . . . . . . . . . . . . . . . . . DEFINITIONS

SECTION 3. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ELIGIBILITY AND EFFECTIVE DATES

SECTION 4. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . DISABILITY INCOME BENEFITS

SECTION 5. . . . . . . . . . . . . . . . . . . . . . . . . . . . EXCLUSIONS

SECTION 6. . . . . . . . . . . . . . . . . . . . . . . . . . . . . TERMINATION PROVISIONS

SECTION 7. . . . . . . . . . . . . . . . . . . . . . . . . . . . . GENERAL PROVISIONS

# SECTION 1 - SCHEDULE OF BENEFITS

**ELIGIBILITY REQUIREMENTS FOR INSURANCE BENEFITS**

**What is the Minimum Hourly Requirement?**

Employees working a minimum of 30 regularly scheduled hours per week

**Who is Eligible for Long Term Disability Benefits?**

Class 1: All Active, Eligible Employees excluding Robert Half Salaried Professional Services (Sps) Employees and Protiviti Government Services Salaried Professional Services (Sps) Employees Enrolled In The Core Plan

Class 2: All Active, Eligible Robert Half Sps Employees Enrolled In The Core Plan

Class 3: All Active, Eligible Employees excluding Robert Half Salaried Professional Services (Sps) Employees and Protiviti Government Services Salaried Professional Services (Sps) Employees enrolled in the Buy-Up Plan

Class 4: All Active, Eligible Robert Half Sps Employees Participating in the Buy-Up Plan

Class 5: All Active, Eligible Protiviti Government Services Sps Employees enrolled in the Core Plan

Class 6: All Active, Eligible Protiviti Government Services Sps Employees participating in the Buy-Up Plan

**Note:** This policy does not cover the following Employees: Temporary and seasonal Employees and Employees who are not legal residents working in the United States.

**What is the Eligibility Waiting Period?**

Applicable to Class 1, 3, 5, 6

1. If you are employed by the Sponsor on the policy effective date -
The later of January 1, 2015 or the first of the month coincident with or next following the date of hire

2. If you begin employment for the Sponsor after the policy effective date -
First of the month coincident with or next following the date of hire

Applicable to Class 2, 4

1. If you are employed by the Sponsor on the policy effective date -
The later of January 1, 2015 or the first of the month coincident with or next following 30 days of continuous, Active Employment

2. If you begin employment for the Sponsor after the policy effective date -
First of the month coincident with or next following 30 days of continuous, Active Employment

**Are Employee Contributions Required?**

Applicable to Class 1, 2, 5

No*

Applicable to Class 3, 4, 6

Yes

*  Premium is paid through a salary gross-up arrangement

## SECTION 1 - SCHEDULE OF BENEFITS
### (Continued)

**LONG TERM DISABILITY COVERAGE**

**What is the Elimination Period?**

The greater of:

a.   the end of your Short Term Disability Benefits; or

b.   180 days

**What is the Amount of Insurance Benefits?**

Applicable to Class 1, 2, 5:

60.00% of Basic Monthly Earnings not to exceed a Maximum Monthly Benefit of $15,000.00 less Other Income Benefits and Other Income Earnings as outlined in Section 4.

Applicable to Class 3, 4, 6:

66.67% of Basic Monthly Earnings not to exceed a Maximum Monthly Benefit of $25,000.00 less Other Income Benefits and Other Income Earnings as outlined in Section 4.

**What is the Maximum Basic Monthly Earnings on which the Benefit is Based?**

Applicable to Class 1, 2, 5:                    $25,000.00

Applicable to Class 3, 4, 6:                    $37,498.13

**What is the Own Occupation Duration?**

24 Month Own Occupation

## SECTION 1 - SCHEDULE OF BENEFITS
(Continued)

**LONG TERM DISABILITY COVERAGE** (Continued)

**What is the Minimum Monthly Benefit?**

The Minimum Monthly Benefit is $100.00 or 10.00% of your Gross Monthly Benefit, whichever is greater.

**What is the Maximum Benefit Period?**

| Age at Disability | Maximum Benefit Period |
|---|---|
| Less than age 60 | Greater of SSNRA* or to age 65 (but not less than 5 years) |
| 60 | 60 months |
| 61 | 48 months |
| 62 | 42 months |
| 63 | 36 months |
| 64 | 30 months |
| 65 | 24 months |
| 66 | 21 months |
| 67 | 18 months |
| 68 | 15 months |
| 69 and over | 12 months |

\*    SSNRA means the Social Security Normal Retirement Age as figured by the 1983 amendment to the Social Security Act and any subsequent amendments and provides:

| Year of Birth | Normal Retirement Age |
|---|---|
| Before 1938 | 65 |
| 1938 | 65 and 2 months |
| 1939 | 65 and 4 months |
| 1940 | 65 and 6 months |
| 1941 | 65 and 8 months |
| 1942 | 65 and 10 months |
| 1943-1954 | 66 |
| 1955 | 66 and 2 months |
| 1956 | 66 and 4 months |
| 1957 | 66 and 6 months |
| 1958 | 66 and 8 months |
| 1959 | 66 and 10 months |
| 1960 and after | 67 |

# SECTION 2 - DEFINITIONS

In this section Liberty defines some basic terms needed to understand this plan.

**"Active Employment"** means you must be actively at work for the Sponsor:

1. on a full-time basis and paid regular earnings;

2. for at least the minimum number of hours shown in the Schedule of Benefits; and either perform such work:

   a. at the Sponsor's usual place of business; or
   b. at a location to which the Sponsor's business requires you to travel.

You will be considered actively at work if you were actually at work on the day immediately preceding:

1. a weekend (except where one or both of these days are scheduled work days);
2. holidays (except when the holiday is a scheduled work day);
3. paid vacations;
4. any non-scheduled work day;
5. an excused leave of absence (except medical leave for your own disabling condition and lay-off); and
6. an emergency leave of absence (except emergency medical leave for your own disabling condition).

**"Administrative Office"** Liberty Life Assurance Company of Boston, 9 Riverside Road, Weston, MA 02493.

**"Annual Enrollment Period"** or **"Enrollment Period"** means the period before each plan anniversary so designated by the Sponsor and Liberty during which you may enroll for coverage under this plan.

## SECTION 2 - DEFINITIONS
### (Continued)

**"Basic Monthly Earnings"** means the Covered Person's base salary, bonus, commissions, time off pay, overtime, on call pay, and shift pay averaged over a 12 month period, from 10/1 to 9/30 of the previous year. For a Covered Person working less than a 12-month period at the time of disability, earnings will be averaged over the period of employment with Robert Half International Inc.

**"Consumer Price Index"** means the government publication "The Consumer Price Index for Urban Wage Earners and Clerical Workers" provided monthly by the U.S. Department of Labor, or its successor or in the event of no successor a similar Index of comparable purpose chosen by Liberty.

**"Disability"** or **"Disabled"** means:

    i.  that during the Elimination Period and the next 24 months of Disability you, as a result of Injury or Sickness, are unable to perform with reasonable continuity the Substantial and Material Acts necessary to pursue your Own Occupation in the usual and customary way; and

    ii.  thereafter, you are unable to perform, with reasonable continuity, the Substantial and Material Acts of any occupation, meaning that as a result of sickness or injury you are unable to perform with reasonable continuity in any occupation in which you could reasonably be expected to perform satisfactorily in light of your age, education, training, experience, station in life, and physical and mental capacity.

**"Domestic Partner"** means an adult who has chosen to share their life in an intimate and committed relationship of mutual caring. A domestic partnership shall be established in California when both persons file a Declaration of Domestic Partnership with the Secretary of State pursuant to this division, and, at the time of filing, all of the following requirements are met:

1. Neither person is married to someone else or is a member of another domestic partnership with someone else that has not been terminated, dissolved, or adjudged a nullity.

2. The two persons are not related by blood in a way that would prevent them from being married to each other in this state.

3. Both persons are at least 18 years of age.

4. Either of the following:

   a. Both persons are members of the same sex.

   b. One or both of the persons meet the eligibility criteria under Title II of the Social Security Act as defined in Section 402(a) of Title 42 of the United States Code for old-age insurance benefits or Title XVI of the Social Security Act as defined in Section 1381 of Title 42 of the United States Code for aged individuals. Notwithstanding any other provision of this section, persons of opposite sexes may not constitute a domestic partnership unless one or both of the persons are over 62 years of age.

   c. Both persons are capable of consenting to the domestic partnership.

**"Eligibility Date"** means the date you become eligible for insurance under this plan. The Eligibility Requirements are shown in the Schedule of Benefits.

**"Eligible Survivor"** means your spouse or Domestic Partner, if living, otherwise your children under age 25.

**"Eligibility Waiting Period"** means the continuous length of time you must be in Active Employment in an eligible class to reach your Eligibility Date.

**"Elimination Period"** means a period of consecutive days of Disability or Partial Disability for which no benefit is payable. The Elimination Period is shown in the Schedule of Benefits and begins on the first day of Disability.

If you return to work for any thirty or fewer days during the Elimination Period and cannot continue, Liberty will count only those days you are Disabled or Partially Disabled to satisfy the Elimination Period.

**"Employee"** means a person in Active Employment with the Sponsor.

**"Enrollment Form"** is the document completed by you, if required, when enrolling for coverage. This form must be satisfactory to Liberty.

**"Evidence of Insurability"** means a statement of proof of your medical history upon which acceptance for insurance will be determined by Liberty.

**"Extended Treatment Plan"** means continued care that is consistent with the American Psychiatric Association's standard principles of Treatment, and is in lieu of confinement in a Hospital or Institution. It must be approved in writing by a Physician.

**"Family and Medical Leave"** means a leave of absence for the birth, adoption or foster care of a child, or for the care of your child, spouse or parent or for your own serious health condition as those terms are defined by the Federal Family and Medical Leave Act of 1993 (FMLA) and any amendments, or by applicable state law.

Applicable to Class 3, 4, 6:

**"Family Status Change"** means any one of the following events that may occur:
1. your marriage or divorce;
2. your filing or rescinding of a Domestic Partner certification;
3. the birth of a child to you;
4. the adoption of a child by you;
5. the death of your spouse or Domestic Partner or child;
6. the commencement or termination of employment of your spouse or Domestic Partner;
7. the change from part-time employment to full-time employment by you or your spouse or Domestic Partner;
8. the change from full-time employment to part-time employment by you or your spouse or Domestic Partner;
9. the taking of unpaid leave of absence by you or your spouse or Domestic Partner.

**"Gross Monthly Benefit"** means your Monthly Benefit before any reduction for Other Income Benefits and Other Income Earnings.

**"Hospital"** or **"Institution"** means a facility licensed to provide Treatment for the condition causing your Disability.

## SECTION 2 - DEFINITIONS
(Continued)

**"Indexed Basic Monthly Earnings"** means your Basic Monthly Earnings in effect just prior to the date Disability or Partial Disability began adjusted on the first anniversary of benefit payments and each anniversary thereafter.

**"Initial Enrollment Period"** means one of the following periods during which you may first enroll for coverage under this plan:

1.  if you are eligible for insurance on the plan effective date, a period before the plan effective date set by the Sponsor and Liberty.

2.  if you become eligible for insurance after the plan effective date, the period which ends 31 days after your Eligibility Date.

**"Injury"** means bodily impairment resulting directly from an accident and independently of all other causes. For the purpose of determining benefits under this plan:

1.  any Disability which begins more than 60 days after an Injury will be considered a Sickness; and

2.  any Injury which occurs before you are covered under this plan, but which accounts for a medical condition that arises while you are covered under this plan will be treated as a Sickness.

**"Last Monthly Benefit"** means the net Monthly Benefit payable to you prior to your death.

**"Substantial and Material Acts"** means acts that are normally required for the performance of your Own Occupation and cannot be reasonably omitted or modified.

**"Mental Illness"** means a psychiatric or psychological condition classified as such in the most current edition of the Diagnostic and Statistical Manual of Mental Disorders (DSM) regardless of the underlying cause of the Mental Illness. If the DSM is discontinued, Liberty will use the replacement chosen or published by the American Psychiatric Association.

**"Monthly Benefit"** means the monthly amount payable by Liberty to you if you are Disabled or Partially Disabled.

**"Own Occupation"** means your occupation that you were performing when your Disability or Partial Disability began.

**"Partial Disability" or "Partially Disabled"** means you are not Totally Disabled and that while actually working in your Own Occupation, as a result of Injury or Sickness you are unable to earn 80% or more of your Indexed Basic Monthly Earnings.

**"Physician"** means a person who:

1.  is licensed to practice medicine and is practicing within the terms of his license; or

2.  is a licensed practitioner of the healing arts in a category specifically favored under the health insurance laws of the state where the Treatment is received and is practicing within the terms of his license.

It does not include you, any family member or domestic partner.

**"Proof"** means written proof covering the occurrence, the character and the extent of the loss for which the claim is made.

**"Retirement Benefit under a Retirement Plan"** means money which:

1. is payable under a Retirement Plan either in a lump sum or in the form of periodic payments and derives from the same loss as benefits under this policy;

2. does not represent contributions made by you (payments which represent your contributions are deemed to be received over your expected remaining life regardless of when such payments are actually received); and

3. is payable upon Disability, if the payment derives from the same loss as benefits under this policy does reduce the amount of money which would have been paid under the plan at the normal retirement age.

**"Retirement Plan"** means a plan of the Sponsor which provides retirement benefits to you and which is not funded wholly by your contributions. The term shall not include a profit-sharing plan, informal salary continuation plan, registered retirement savings plan, stock ownership plan, 401(K) or a non-qualified plan of deferred compensation.

**"Schedule of Benefits"** means the section of this policy which shows, among other things, the Eligibility Requirements, Eligibility Waiting Period, Elimination Period, Amount of Insurance, Minimum Benefit, and Maximum Benefit Period.

**"Sickness"** means illness, disease, pregnancy or complications of pregnancy.

**"Sponsor"** means the entity to whom this policy is issued.

**"Substance Abuse"** means alcohol and/or drug abuse, addiction or dependency.

**"Treatment"** means consulting, receiving care or services provided by or under the direction of a Physician including diagnostic measures, being prescribed drugs and/or medicines, whether you choose to take them or not, and taking drugs and/or medicines.

# SECTION 3 - ELIGIBILITY AND EFFECTIVE DATES

**Applicable to Long Term Disability Class 1, 2, 5:**

**Who is Eligible for Coverage?**

The eligibility requirements for insurance benefits are shown in the Schedule of Benefits.

**What is Your Eligibility Date for Insurance Benefits?**

If you are in an eligible class you will qualify for insurance on the later of:

1. this plan's effective date; or

2. the day after you complete the Eligibility Waiting Period shown in the Schedule of Benefits.

**LIB001522**

**Applicable to Long Term Disability Class 1, 2, 5:**

**What is Your Effective Date of Insurance?**

Your insurance will be effective at 12:01 A.M. Standard Time in the governing jurisdiction on the day determined as follows, but only if your application or enrollment for insurance is made with Liberty through the Sponsor in a form or format satisfactory to Liberty.

You will be insured on your Eligibility Date.

**When will Your Effective Date of Insurance be Delayed?**

Your effective date of any initial, increased or additional insurance will be delayed if you are not in Active Employment because of Injury or Sickness. The initial, increased or additional insurance will begin on the date you return to Active Employment.

# SECTION 3 - ELIGIBILITY AND EFFECTIVE DATES

**Applicable to Long Term Disability Class 3, 4, 6:**

**Who is Eligible for Benefits?**

The eligibility requirements for insurance benefits are shown in the Schedule of Benefits.

**What is Your Eligibility Date for Insurance Benefits?**

If you are in an eligible class you will qualify for insurance on the later of:

1.  this plan's effective date; or

2.  the day after you complete the Eligibility Waiting Period shown in the Schedule of Benefits.

**What Happens During the Initial Enrollment Period?**

You may enroll in any one coverage or coverage option shown in the Schedule of Benefits. If you do not choose any coverage or coverage option,he will automatically be enrolled in Core Plan. If your Initial Enrollment Period takes place during or after the Annual Enrollment Period, but before the plan anniversary, your coverage option will apply for (a) the rest of the plan year in which you first become eligible; and (b) the next plan year.

**What Happens During the Annual Enrollment Period?**

You may keep your coverage at the same level or make one of the following changes in coverage for the next plan year:

1.  a decrease in coverage;

2.  an increase in coverage without Evidence of Insurability subject to the Pre-Existing Condition Exclusion defined herein.

**Applicable to Long Term Disability Class 3, 4, 6:**

**What Happens when You Experience a Family Status Change?**

You may keep your coverage at the same level or make one of the following changes in coverage:

1. a decrease in coverage;

2. an increase in coverage without Evidence of Insurability subject to the Pre-Existing Condition Exclusion defined herein.

You must apply for the change in coverage within 31 Days of the date of the Family Status Change. Such change in coverage must be due to or consistent with the reason that the change in coverage was permitted. A change in coverage is consistent with a Family Status Change only if it is necessary or appropriate as the result of the Family Status Change.

**What is Your Effective Date of Insurance?**

Your insurance will be effective at 12:01 A.M. Standard Time in the governing jurisdiction on the day determined as follows, but only if your application or enrollment for insurance is made with Liberty through the Sponsor in a form or format satisfactory to Liberty.

1. For Coverage Applied for During Initial Enrollment Periods:

   a. you will be insured for contributory coverage on the date you make application for insurance if you enroll on or before the 31st day after your Eligibility Date; or
   b. if you do not enroll for contributory coverage on or before the 31st day after your Eligibility Date, or you terminated your insurance while continuing to be eligible you must submit an application to Liberty for approval, at your expense. You will be insured on the date Liberty gives its approval.

**Applicable to Long Term Disability Class 3, 4, 6:**

**What is Your Effective Date of Insurance?** (Continued)

2.  For Contributory Coverage Applied for During Annual Enrollment Periods

    You will be insured for the selected contributory coverage on the first day of the next policy anniversary.

3.  For Coverage Applied for Due to a Family Status Change

    You will be insured for the selected coverage on the later of the following dates, provided you apply or enroll for the change in coverage before the end of the 31st Day following the Family Status Change:

    a.  the date of the Family Status Change;
    b.  the date you apply or enroll for the change in coverage.

**When will Your Effective Date for Insurance be Delayed?**

Your effective date of any initial, increased or additional insurance will be delayed if you are not in Active Employment because of Injury or Sickness. The initial, increased or additional insurance will begin on the date you return to Active Employment.

## SECTION 3 - ELIGIBILITY AND EFFECTIVE DATES
(Continued)

**What Happens to Your Coverage During a Family and Medical Leave?**

Your coverage may be continued under this plan for an approved family or medical leave of absence for up to 12 weeks following the date coverage would have terminated, subject to the following:

1.  the authorized leave is in writing;

2.  the required premium is paid;

3.  your benefit level, or the amount of earnings upon which your benefit may be based, will be that in effect on the date before the leave begins; and

4.  continuation of coverage will cease immediately if any one of the following events should occur:

    a.  you return to work;
    b.  this plan terminates;
    c.  you are no longer in an eligible class;
    d.  nonpayment of premium when due by the Sponsor or you;
    e.  your employment terminates.

**What Happens if You are Rehired?**

Applicable to Long Term Disability Class 1, 2, 5:

If you are a former Employee and are re-hired by the Sponsor within 30 days of your termination date, all past periods of Active Employment with the Sponsor will be used in determining your Eligibility Date. If you are a former Employee and are re-hired by the Sponsor more than 30 days after your termination date, you are considered to be a new Employee when determining your Eligibility Date.

Applicable to Long Term Disability Class 3, 4, 6:

If you are a former Employee and you are re-hired by the Sponsor within 30 days of your termination date:

1.  all past periods of Active Employment with the Sponsor will be used in determining your Eligibility Date; and

2.  if you are re-hired by the Sponsor you will be insured for the same coverage that was in effect for you on the date your employment terminated and no change in that coverage may be made during the rest of that plan year, unless you experience a Family Status Change. You may make changes in your coverage options at the next Annual Enrollment Period.

If you are a former Employee and you are re-hired by the Sponsor more than 30 days after your termination date, you are considered to be a new Employee when determining your Eligibility Date.

**Leave of Absence**

The Sponsor may continue your coverage(s) by paying the required premiums, if you are given a leave of absence.

Your coverage will not continue beyond a period of 12 months. In continuing such coverage under this provision, the Sponsor agrees to treat all covered Employees equally.

## SECTION 3 - ELIGIBILITY AND EFFECTIVE DATES
### (Continued)

**What Happens if There is a Transfer of Insurance Carriers?**

In order to prevent loss of coverage for you because of transfer of insurance carriers, this plan will provide coverage for you as follows:

**If You are not in Active Employment Due to Injury or Sickness**

Subject to premium payments, this plan will cover you if:

1. at the time of transfer you were covered under the prior carrier's plan; and

2. you are not in Active Employment due to Injury or Sickness on the effective date of this plan.

Benefits will be determined based on the lesser of:

1. the amount of the Disability benefit that would have been payable under the prior plan and subject to any applicable plan limitations; or

2. the amount of Disability benefits payable under this plan. If benefits are payable under the prior plan for the Disability, no benefits are payable under this plan.

**If You are Disabled Due to a Pre-Existing Condition**

If you were insured under the prior carrier's plan at the time of transfer and were in Active Employment and insured under this plan on its effective date, benefits may be payable for a Disability due to a Pre-Existing Condition.

If you can satisfy this plan's Pre-Existing Condition Exclusion, the benefit will be determined according to this plan.

If you cannot satisfy this plan's Pre-Existing Condition Exclusion, then:

1. Liberty will apply the Pre-Existing Condition Exclusion of the prior carrier's plan; and

2. if you would have satisfied the prior carrier's pre-existing condition exclusion, giving consideration towards continuous time coverage under this plan and the prior carrier's plan, the benefit will be determined according to this plan. However, the Maximum Monthly Benefit amount payable under this plan shall not exceed the maximum monthly benefit payable under the prior carrier's plan.

No benefit will be paid if you cannot satisfy the Pre-Existing Condition Exclusions of either plan.

# SECTION 4 - DISABILITY INCOME BENEFITS

**LONG TERM DISABILITY COVERAGE**

**Disability Benefit**

**When is Your Disability Benefit Payable?**

When Liberty receives Proof that you are Disabled due to Injury or Sickness, Liberty will pay you a Monthly Benefit after the end of the Elimination Period, subject to any other provisions of this plan. The Proof must be given at your expense.

The Monthly Benefit will not:

1. exceed your Amount of Insurance; or

2. be paid for longer than the Maximum Benefit Period.

The Amount of Insurance and the Maximum Benefit Period are shown in the Schedule of Benefits.

**How is Your Amount of Disability Monthly Benefit Figured?**

To figure the amount of your Monthly Benefit:

1. Take the lesser of:

   a. your Basic Monthly Earnings multiplied by the benefit percentage shown in the Schedule of Benefits; or

   b. the Maximum Monthly Benefit shown in the Schedule of Benefits; and then

2. Deduct Other Income Benefits and Other Income Earnings, (shown in the Other Income Benefits and Other Income Earnings provision of this plan), from this amount.

The Monthly Benefit payable will not be less than the Minimum Monthly Benefit shown in the Schedule of Benefits

**LONG TERM DISABILITY COVERAGE** (Continued)

**Partial Disability**

**When is Your Partial Disability Benefit Payable?**

When Liberty receives Proof that you are Partially Disabled and have experienced a loss of earnings due to Injury or Sickness, you will receive a Monthly Benefit, subject to any other provisions of this plan. The Proof must be given at your expense.

To be eligible to receive Partial Disability benefits, you may be employed in your Own Occupation or another occupation, must satisfy the Elimination Period and must be earning less than 80% of your Basic Monthly Earnings.

For purposes of determining Partial Disability, the Injury or Sickness must occur and Partial Disability must begin while you are insured for this coverage.

**How is Your Loss of Earnings Partial Disability Benefit Figured using the Proportionate with Work Incentive Monthly Calculation?**

For the first 12 Months, the work incentive benefit will be an amount equal to your Basic Monthly Earnings multiplied by the benefit percentage shown in the Schedule of Benefits, under the Heading titled, "Amounts of Insurance", without any reductions from earnings. The work incentive benefit will only be reduced, if the Monthly Benefit payable plus any earnings exceed 100% of your Basic Monthly Earnings. If the combined total is more, the Monthly Benefit will be reduced by the excess amount so that the Monthly Benefit plus your earnings does not exceed 100% of your Basic Monthly Earnings.

Thereafter, to figure the amount of Monthly Benefit the formula (A divided by B) x C will be used.

  A = Your Basic Monthly Earnings minus your earnings received while you are Partially Disabled. This figure represents the amount of lost earnings.

  B = Your Basic Monthly Earnings.

  C = The Monthly Benefit as figured in the Disability provision of this plan plus your earnings received while you are Partially Disabled, (but, not including adjustments under the Cost of Living Adjustment Benefit, if included).

**LONG TERM DISABILITY COVERAGE** (Continued)

**Partial Disability** (Continued)

**How is Your Loss of Earnings Partial Disability Benefit Figured using the Proportionate Loss with Work Incentive Monthly Calculation?** (Continued)

On the first anniversary of benefit payments and each anniversary thereafter, for the purpose of calculating the benefit, the term "Basic Monthly Earnings" is:

1.  replaced by "Indexed Basic Monthly Earnings"; and

2.  increased annually by the current annual percentage increase in the Consumer Price Index.

The Monthly Benefit payable will not be less than the Minimum Monthly Benefit shown in the Schedule of Benefits.

**LONG TERM DISABILITY COVERAGE** (Continued)

**Mental Illness and/or Substance Abuse**

**What Limitations will Apply for Mental Illness and/or Substance Abuse?**

The benefit for Disability due to Mental Illness and/or Substance Abuse will not exceed a combined period of 24 months of Monthly Benefit payments while you are insured under this plan.

If you are in a Hospital or Institution for Mental Illness and/or Substance Abuse at the end of the combined period of 24 months, the Monthly Benefit will be paid during the confinement.

If you are not confined in a Hospital or Institution for Mental Illness and/or Substance Abuse, but are fully participating in an Extended Treatment Plan for the condition that caused Disability, the Monthly Benefit will be payable to you for up to a combined period of 36 months from the date of Disability.

In no event will the Monthly Benefit be payable beyond the Maximum Benefit Period shown in the Schedule of Benefits.

# SECTION 4 - DISABILITY INCOME BENEFITS

(Continued)

**LONG TERM DISABILITY COVERAGE** (Continued)

**Three month Survivor Benefit**

**What Happens to Your Benefit if You Die?**

Liberty will pay a lump sum benefit to the Eligible Survivor when Proof is received that you died:

1. after Disability had continued for 180 or more consecutive days; and

2. while receiving a Monthly Benefit.

The lump sum benefit will be an amount equal to three times your Last Monthly Benefit.

If the survivor benefit is payable to your children, payment will be made in equal shares to the children, including step children and legally adopted children. However, if any of said children are minors or incapacitated, payment will be made on their behalf to the court appointed guardian of the children's property. This payment will be valid and effective against all claims by others representing or claiming to represent the children.

If there is no Eligible Survivor, the benefit is payable to the estate.

If an overpayment is due to Liberty at the time of your death, the benefit payable under this provision will be applied toward satisfying the overpayment.

## SECTION 4 - DISABILITY INCOME BENEFITS
(Continued)

**LONG TERM DISABILITY COVERAGE** (Continued)

**Other Income Benefits and Other Income Earnings**

**What are Your Other Income Benefits and Other Income Earnings?**

**Other Income Benefits** means:

1. The amount that you receive which is paid to you in compensation for the same Disability and loss of income covered under this certificate under:

   a. any benefit paid under temporary disability benefit under Workers Compensation;
   b Occupational Disease Law;
   c. Title 46, United States Code Section 688 (The Jones Act);
   d. any governmental compulsory benefit act or law; or
   e. any other act or law of like intent.

2. The amount of Disability Retirement Benefits you receive which is paid to you in compensation for the same Disability and loss of income covered under this certificate.

3. the amount of Disability Benefits under the United States Social Security Act, the Canada Pension Plan, the Quebec Pension Plan, or any similar plan or act, which:

   a. you receive which is paid to you in compensation for the same Disability and loss of income covered under this certificate; or
   b. your dependent spouse, dependent child or dependent children receive because of such Disability

4. Any amount the Covered Person receives from or on behalf of a third party for loss of time benefits as a result of injury caused or contributed to by the third party, not including attorney's fees paid by the claimant.

**Other Income Earnings** means:

1. any amount you receive from any formal or informal sick leave or salary continuation plan(s); and

2. the amount of earnings you earn or receive from any form of employment for which you become employed after your Disability or Partial Disability began.

**Long Term Disability Primary and Family Integration**
**Other Income Benefits and Other Income Earnings**
ADOC                                    **LTD-24.2**

**LIB001535**

**LONG TERM DISABILITY COVERAGE** (Continued)

**When May Liberty Provide Social Security  Assistance?**

Liberty may offer help to you in applying for Social Security Disability Income Benefits. In order to be eligible for assistance you must be receiving a Monthly Benefit from Liberty. Such assistance will be offered only if Liberty determines that assistance would be  beneficial.

**LONG TERM DISABILITY COVERAGE** (Continued)

**What Happens if You Receive a Lump Sum Payment?**

Other Income Benefits from a compromise, settlement, award or judgment which are paid to you in a lump sum and are meant to compensate you for loss of past or future wages will be prorated on a monthly basis as follows:

1. over the period of time such benefits would have been paid if not in a lump sum; or

2. if such period of time cannot be determined, the lesser of:

   a. the remainder of the Maximum Benefit Period; or
   b. 5 years.

**What Happens if You Receive any Cost of Living Increases?**

After the first deduction for each of the Other Income Benefits, the Monthly Benefit will not be further reduced due to any cost of living increases payable under the Other Income Benefits and Other Income Earnings provision of this plan. This provision does not apply to increases received from any form of employment.

**What Happens if Your Benefit Period is Less than a Month?**

For any period for which a Long Term Disability benefit is payable that does not extend through a full month, the benefit will be paid on a prorated basis. The rate will be 1/30th for each day for such period of Disability.

**LONG TERM DISABILITY COVERAGE** (Continued)

**When will Your Long Term Disability Benefits be Discontinued?**

The Monthly Benefit will cease on the earliest of:

1.  the date you unreasonably refuse to be examined or evaluated at reasonable intervals;

2.  the date your current Partial Disability earnings exceed 80% of your Basic Monthly Earnings;

    Because your current earnings may fluctuate, Liberty may average earnings over three consecutive months rather than immediately terminating your benefit once 80% of Indexed Basic Monthly Earnings has been exceeded.

3.  the date you are no longer Disabled according to this plan;

4.  the end of the Maximum Benefit Period; or

5.  the date you die.

# SECTION 4 - DISABILITY INCOME BENEFITS
(Continued)

**LONG TERM DISABILITY COVERAGE** (Continued)

**Successive Periods of Disability**

**What Happens if You Return to Work and Become Disabled Again?**

With respect to this plan, **"Successive Periods of Disability"** means a Disability which is related or due to the same cause(s) as a prior Disability for which a Monthly Benefit was payable.

A Successive Period of Disability will be treated as part of the prior Disability if, after receiving Disability benefits under this plan, you:

1.  return to your Own Occupation on an Active Employment basis for less than six continuous months; and

2.  perform all the Substantial and Material Acts of your Own Occupation.

To qualify for the Successive Periods of Disability benefit, you must experience more than a 20% loss of Basic Monthly Earnings.

Benefit payments will be subject to the terms of this plan for the prior Disability.

If you return to your Own Occupation on an Active Employment basis for six continuous months or more, the Successive Period of Disability will be treated as a new period of Disability. You must complete another Elimination Period.

If you become eligible for coverage under any other group long term disability coverage, this Successive Periods of Disability provision will cease to apply to you.

# SECTION 5 - EXCLUSIONS

**GENERAL EXCLUSIONS**

**What Disabilities are Not Covered?**

This plan will not cover any Disability due to:

1.  war, declared or undeclared, or any act of war;

2.  intentionally self-inflicted injuries, while sane or insane;

3.  active Participation in a Riot;

4.  the committing of or attempting to commit a felony;

5.  cosmetic surgery unless such surgery is in connection with an Injury or Sickness sustained while you are covered under this plan.

No benefit will be paid during any period of incarceration after the conviction of a crime.

With respect to this provision, **Participation** shall include promoting, inciting, conspiring to promote or incite, aiding, abetting, and all forms of taking part in, but shall not include actions taken in defense of public or private property, or actions taken in your defense, if such actions of defense are not taken against persons seeking to maintain or restore law and order including, but not limited to, police officers and fire fighters.

With respect to this provision, **Riot** shall include all forms of public violence, disorder or disturbance of the public peace, by three or more persons assembled together, whether or not acting with a common intent and whether or not damage to persons or property or unlawful act or acts is the intent or the consequence of such disorder.

**LONG TERM DISABILITY COVERAGE**

**Pre-Existing Condition Exclusion**

**What Other Disabilities are Not Covered?**

This plan will not cover any Disability or Partial Disability:

1.   which is caused or substantially contributed to by, or results from a Pre-Existing Condition or medical or surgical treatment of a Pre-Existing Condition; and

2.   which begins in the first 12 months immediately after your effective date of coverage.

**"Pre-Existing Condition"** means a physical or mental condition whether diagnosed or undiagnosed, resulting from an Injury or Sickness for which you received Physician's advice or Treatment within three months prior to your effective date of coverage.

# SECTION 6 - TERMINATION PROVISIONS

**When will Your Insurance End?**

You will cease to be insured on the earliest of the following dates:

1. the date this plan terminates, but without prejudice to any claim originating prior to the time of termination;

2. the date you are no longer in an eligible class;

3. the date your class is no longer included for insurance;

4. the last day for which any required Employee contribution has been made;

5. the date employment terminates. Cessation of Active Employment will be deemed termination of employment, except the insurance will be continued for an Employee absent due to Disability during:

   a. the Elimination Period; and
   b. any period during which premium is being waived.

6. the date you cease active work due to a labor dispute, including any strike, work slowdown, or lockout.

Liberty reserves the right to review and terminate all classes insured under this plan if any class(es) cease(s) to be covered.

# SECTION 7 - GENERAL PROVISIONS

**Entire Contract; Changes**

This policy, the application of the employer, and the individual applications, if any, of the employees constitute the entire contract between the parties, and any statement made by the employer or by any employee shall, in the absence of fraud, be deemed a representation and not a warranty. No such statement shall (avoid the insurance or reduce the benefits under this policy or) be used in defense to a claim hereunder unless it is contained in a written application, nor shall any such statement of the employer, except a fraudulent misstatement, be used at all to void this policy after it has been in force for two years from the date of its issue, nor shall any such statement of any employee eligible for coverage under the policy, except a fraudulent misstatement, be used at all in defense to a claim for loss incurred or Disability or Partial Disability (as defined in the policy) commencing after the insurance coverage with respect to which claim is made has been in effect for two years from the date it became effective.

No change in this policy shall be valid unless approved by an executive officer of the insurer and unless such approval be endorsed hereon or attached hereto. No agent has authority to change this policy or to waive any of its provisions.

**Time Limit on Certain Defenses**

(a) After two years from the date of issue of this policy, no misstatements, except fraudulent misstatements, made by the applicant in the application for such policy shall be used to void the policy or to deny a claim for loss incurred or Disability (as defined in the policy) commencing after the expiration of such two-year period. (b) No claim for loss incurred or Disability (as defined in the policy) commencing after two years from the date of issue of this policy shall be reduced or denied on the ground that a disease or physical condition not excluded from coverage by name or specific description effective on the date of loss had existed prior to the effective date of coverage of this policy.

**Grace Period**
A grace period of 31 days will be granted for the payment of premiums accruing after the first premium, during which grace period the policy shall continue in force, but the employer shall be liable to the insurer for the payment of the premium accruing for the period the policy continues in force.

**Notice of Claim**
Written notice of claim must be given to the insurer within 20 days after the occurrence or commencement of any loss covered by the policy, or as soon thereafter as is reasonably possible. Subject to the qualifications set forth below, if the insured suffers loss of time on account of Disability for which indemnity may be payable for at least two years, the insured shall at least once in every six months after having given notice of claim, give to the insurer notice of continuance of said Disability, except in the event of legal incapacity. The period of six months following any filing of proof by the insured or any payment by the insurer on account of such claim or any denial of liability in whole or in part by the insurer shall be excluded in applying this provision. Delay in giving of such notice shall not impair the insured's right to any indemnity which would otherwise have accrued during the period of six months preceding the date on which such notice is actually given.

## SECTION 7 - GENERAL PROVISIONS
(Continued)

**Claims Forms**

The insurer, upon receipt of a written notice of claim, will furnish to the claimant such forms as are usually furnished by it for filing proofs of loss. If such forms are not furnished within 15 days after the giving of such notice the claimant shall be deemed to have complied with the requirements of this policy as to proof of loss upon submitting, within the time fixed in the policy for filing proofs of loss, written proof covering the occurrence, the character and the extent of the loss for which claim is made.

**Proofs of Loss**
Written proof of loss must be furnished to the insurer, in the case of claim for loss for Long Term Disability benefits, within 90 days after the termination of the period for which the insurer is liable, and in case of claim for any other loss, within 90 days after the date of such loss. Failure to furnish such proof within the time required shall not invalidate nor reduce any claim if it was not reasonably possible to give proof within such time, provided such proof is furnished as soon as reasonably possible and in no event, except in the absence of legal capacity of the employee, later than one year from the time proof is otherwise required.

**Time of Payment of Claim**
Indemnities payable under this policy for any loss other than Long Term Disability benefits will be paid as they accrue immediately upon receipt of due written proof of such loss. Subject to due written proof of such loss, all accrued indemnity for Long Term Disability benefits will be paid Monthly to the insured employee and any balance remaining unpaid upon the termination of the period of liability will be paid immediately upon receipt of due written proof.

**Payment of Claims**

If any indemnity of this policy shall be payable to the estate of the insured employee or employee who is a minor or otherwise not competent to give a valid release, the insurer may pay such indemnity up to an amount not exceeding $1,000 to any relative by blood or connection by marriage of the insured employee who is deemed by the insurer to be equitable entitled thereto. Any payment made by the insurer in good faith pursuant to this provision shall fully discharge the insurer to the extent of such payment.

**Physical Examination and autopsy**

The insurer at its own expense shall have the right and opportunity to examine the person of any individual whose injury or sickness is the basis of claim when and as often as it may reasonably require during the pendency of a claim hereunder and to make an autopsy in case of death where it is not forbidden by law.

**Legal Actions**

No action at law or in equity shall be brought to recover on this policy prior to the expiration of 60 days after written proof of loss has been furnished in accordance with the requirements of this policy. No such action shall be brought after the expiration of three years after the time written proof of loss is required to be furnished.

**Misstatement of Age**

If the age of any individual covered under this policy has been misstated, the amount payable shall be such as the premium paid for the coverage of such individual would have purchased at the correct age.

**Conformity with state statutes**

Any provision of this policy which, on its effective date, is in conflict with the statutes of the state in which the insured resides on such date is hereby amended to conform to the minimum requirements of such statutes.

# SUMMARY PLAN DESCRIPTION

Name of Plan:   Robert Half International  Inc.

Plan benefits are provided under the terms of the Group Disability  Income  Policy  No. GF3-860-066675-01 hereinafter referred to as "the policy", issued by Liberty Life Assurance Company of Boston, hereinafter referred to as "Liberty," to the Employer hereinafter referred to as  "Sponsor".

Participants Included: See Schedule of  Benefits

Name and Address of  Sponsor:

Robert Half International Inc.
2613 Camino Ramon
STE 3
San Ramon, CA 94583

Who Pays For the Plan:  Premiums are paid by the  Sponsor.

The cost of the Plan is funded by both Employer and Employee  contributions.

Plan Identification Number:

    a.   Sponsor IRS Identification No.: 94-1648752

    b.   Plan No.:      501

Type of Plan:     Group Disability Income

Plan Year:  January 1-December  31

Plan Administrator, Name, Address and Telephone  No:

Robert Half International Inc.
2613 Camino Ramon
STE 3
San Ramon, CA 94583
925-598-7000

Agent for Service of Legal Process on the  Plan:

same as above

Type of Administration:    Insurer  Administration

Funding Arrangement of the Plan:  Benefits of the Plan are  insured.

**LIB001546**

**Amendment of the Sponsor's Plan:**

The Plan Sponsor reserves the right to modify, amend or terminate in whole or in part, any or all provisions of the Plan. Amendments to the Plan are to be made by a written resolution adopted in accordance with the established procedures of the Board of Directors. Amendments may be adopted with retroactive effect to the extent permitted by ERISA and the Code.

**Amendment of Liberty's Policy:**

The policy may be changed in whole or in part by mutual agreement of the Sponsor and Liberty. Only an Officer of Liberty can approve a change. The approval must be in writing and endorsed on or attached to the policy. No consent of any participant or any other person referred to in the policy(ies) shall be required to modify, amend, or change the policy(ies).

NOTE: If you cease active employment, see your benefits administrator to determine what arrangements, if any, may be made to continue your coverage beyond the date you cease active employment.

**When May The Policy Terminate?**

1.  If the Sponsor fails to pay any premium within the grace period, the policy will automatically terminate at 12:00 midnight of the last day of the grace period. The "grace period" is the 31 days following a premium due date during which premium payment may be paid.

2.  The Sponsor may terminate the policy by advance written notice delivered to Liberty at least 31 days prior to the termination date. But the policy will not terminate during any period for which premium has been paid.

3.  Liberty may terminate the policy on any premium due date by giving written notice to the Sponsor at least 31 days in advance if:

    a.  The number of employees insured is less than 10;

    b.  less than 100% of the Employees eligible for any non-contributory insurance are insured for it; or

    c.  less than 0.00% of the Employees eligible for any contributory insurance are insured for it; or

    d.  the Sponsor fails:

        i.   to furnish promptly any information which Liberty may reasonably require; or
        ii.  to perform any other obligations pertaining to this policy.

4.  Termination may take effect on any earlier date when both the Sponsor and Liberty agree.

No consent of any participant or any other person referred to in the policy(ies) shall be required to terminate the policy(ies).

**LIB001547**

**Termination of Coverage Option(s)**

**Participation Requirements**

Liberty may terminate coverage or any coverage option afforded hereunder on any premium due date by giving written notice to the Sponsor at least 31 days in advance:

**What Are Your Rights In The Event Of Policy Termination?**

Termination of the policy under any conditions will not prejudice any payable claim which occurs while the policy is in force.

**What Are Your Rights Under ERISA?**

1.  As a participant in this Plan, you are entitled to certain rights and protection under the Employee Retirement Income Security Act of 1974 (ERISA). ERISA provides that all Plan participants shall be entitled to:

    a.  Examine, without charge, at the Plan Administrator's office and at other specified locations, all documents governing the Plan, including insurance contracts, and a copy of the latest annual report (Form 5500 Series) filed by the Plan with the U.S. Department of Labor and available at the Public Disclosure Room of the Employee Benefits Security Administration.

    b.  Obtain, upon written request to the Plan Administrator, copies of documents governing the operation of the Plan, including insurance contracts, and copies of the latest annual report (Form 5500 Series) and updated summary plan description. The Plan Administrator may make a reasonable charge for the copies.

    c.  Receive a summary of the Plan's annual financial report. The Plan Administrator is required by law to furnish each participant with a copy of this summary annual report.

2.  In addition to creating rights for Plan participants, ERISA imposes duties upon the people who are responsible for the operation of the employee benefit Plan.

3.  The people who operate your Plan, called "fiduciaries" of the Plan, have a duty to do so prudently and in the interest of you and other Plan participants and beneficiaries.

4.  No one, including your employer, your union, or any other person, may fire you or otherwise discriminate against you in any way to prevent you from obtaining a welfare benefit or exercising your rights under ERISA.

5.  If your claim for a welfare benefit is denied or ignored, in whole or in part, you have a right to know why this was done, to obtain copies of documents relating to the decision without charge, and to appeal any denial, all within certain time schedules.

6.  Under ERISA, there are steps you can take to enforce the above rights. For instance, if you request a copy of plan documents or the latest annual report from the Plan and do not receive them within 30 days, you may file suit in a Federal court. In such a case, the court may require the Plan Administrator to provide the materials and pay you up to $110 a day until you receive the materials, unless the materials were not sent because of reasons beyond the control of the Administrator.

**LIB001548**

**What Are Your Rights Under ERISA?** (Continued)

7.  If you have a claim for benefits which is denied or ignored, in whole or in part, you may file suit in a state or federal court. If it should happen that Plan fiduciaries misuse the Plan's money, or if you are discriminated against for asserting your rights, you may seek assistance from the U.S. Department of Labor, or you may file suit in a federal court. The court will decide who should pay court costs and legal fees. If you are successful the court may order the person you have sued to pay these costs and fees. If you lose, the court may order you to pay these costs and fees if, for example, it finds your claim is frivolous.

8.  If you have any questions about your Plan, you should contact the Plan Administrator.

9.  If you have any questions about this statement or about your rights under ERISA, or if you need assistance in obtaining documents from the Plan Administrator, you should contact the nearest office of the Employee Benefits Security Administration, U.S. Department of Labor, listed in your telephone directory or the Division of Technical Assistance and Inquiries, Employee Benefits Security Administration, U.S. Department of Labor, 200 Constitution Avenue, N.W., Washington, D.C. 20210. You may also obtain certain publications about your rights and responsibilities under ERISA by calling the publications hotline of the Employee Benefits Security Administration.

**What is the Time Frame For Claim Decisions?**

If your claim is denied, Liberty will notify you of the adverse decision within a reasonable period of time, but not later than 45 days after receiving the claim. This 45-day period may be extended for up to 30 days, if Liberty: (1) determines the extension is necessary because of matters beyond the Plan's control, and (2) notifies you, before the end of the 45-day period, why the extension is needed and the expected decision date. If, before the end of the first 30-day extension, Liberty determines, due to matters beyond the Plan's control, a decision cannot be rendered within that extension period, the determination period may be extended for up to an additional 30 days, provided Liberty notifies you, before the end of the first 30-day extension period, why the extension is needed and the expected decision date.

The notice of extension shall explain: (1) the standards on which benefit entitlement is based, (2) the unresolved issues that prevent a claim decision, and (3) the additional information needed. You have at least 45 days to provide the information.

The claim determination time frames begin when a claim is filed, without regard to whether all the information necessary to make a claim determination accompanies the filing.

If an extension is necessary because you failed to submit necessary information, the days from the date Liberty sends you the extension notice until you respond to the request for additional information are not counted as part of the claim determination period.

**What If Your Claim Is Denied?**

Liberty's notice of denial shall include:

1.  The specific reason or reasons for denial with reference to those specific Plan provisions on which the denial is based;

2.  A description of any additional material or information necessary to perfect the claim and an explanation of why that material or information is necessary;

3.  A description of the Plan's appeal procedures and time frames, including a statement of the claimant's right to bring a civil action under ERISA following an adverse decision on appeal;

4.  If applicable, any internal rule, guideline, protocol, or other similar criterion relied upon in making the adverse decision, or a statement that such a rule, guideline, protocol, other similar criterion was relied upon and a copy thereof will be provided free of charge upon request; and

5.  If the adverse decision was based on a medical necessity, experimental treatment, or similar exclusion or limit, an explanation of the scientific or clinical judgment for the adverse decision, or a statement that such explanation will be provided free of charge upon request.

**What Do You Do To Appeal A Claim Denial?**

You, or your authorized representative, may appeal a denied claim within 180 days after you receive Liberty's notice of denial. You have the right to:

1.  Submit to Liberty, for review, written comments, documents, records, and other information relating to the claim;

2.  Request, free of charge, reasonable access to, and copies of, all documents, records and other information relevant to your claim;

3.  A review that takes into account all comments, documents, records, and other information submitted by you, without regard to whether such information was submitted or considered in the initial claim decision;

4.  A review that does not afford deference to the initial adverse decision and which is conducted neither by the individual who made the adverse decision nor the person's subordinate;

5.  If the appeal involves an adverse decision based on medical judgment, a review of your claim by a health care professional who has appropriate training and experience in the field of medicine involved in the medical judgment, and who was neither consulted in connection with the adverse decision nor the subordinate of any such individual; and

6.  The identification of medical or vocational experts, if any, consulted in connection with the claim denial, without regard to whether the advice was relied upon in making the decision.

**LIB001550**

**What Do You Do To Appeal A Claim Denial?** (Continued)

Liberty will make a full and fair review of your appeal and may require additional documents as it deems necessary in making such a review. A final decision on the review will be made within a reasonable period of time but not later than 45 days following receipt of the written request for review unless Liberty determines that special circumstances require an extension. In such case, a written notice will be sent to you before the end of the initial 45-day period. The extension notice shall indicate the special circumstances and the date by which Liberty expects to render the appeal decision. The extension cannot exceed a period of 45 days from the end of the initial period.

The appeal time frames begin when an appeal is filed, without regard to whether all the information necessary to make an appeal decision accompanies the filing.

If an extension is necessary because you failed to submit necessary information, the days from the date of the extension notice until you respond to the request for additional information are not counted as part of the appeal determination period.

Liberty's notice of denial shall include:

1.  The specific reason or reasons for denial with reference to those Plan provisions on which the denial is based;

2.  A statement that you are entitled to receive, upon request and free of charge, reasonable access to, and copies of all documents, records, and other information relevant to your claim;

3.  A statement describing any voluntary appeal procedures offered by Liberty and your right to obtain the information about such procedures, and a statement of your right to bring an action under ERISA;

4.  If applicable, any internal rule, guideline, protocol, or other similar criterion relied upon in making the adverse decision, or a statement that such a rule, guideline, protocol, or other similar criterion was relied upon and a copy thereof will be provided free of charge upon request; and

5.  If the adverse decision was based on a medical necessity, experimental treatment, or similar exclusion or limit, an explanation of the scientific or clinical judgment for the adverse decision, or a statement that such explanation will be provided free of charge upon request.

You and your Plan may have other voluntary alternative dispute resolution options, such as mediation. One way to find out what may be available is to contact your local U.S. Department of Labor Office and your State insurance regulatory agency.

**LIB001551**

Virgil Harris

| clm_num | chk_num | ChkFromDate | ChkThruDate | ChkDate | ben_gross_amt | chk_total_ofst_amt | chk_adj_ben_gross_amt | chk_fed_tax_withd_amt | chk_fica_tax_withd_amt | chk_adj_amt | chk_total_dedn_amt | chk_state_tax_withd_amt | ben_net_amt |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3624744 | 37564658 | 04/26/16 | 05/02/16 | 05/05/16 | $700.00 | $0.00 | $700.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $700.00 |
| 3624744 | 37566515 | 05/03/16 | 05/09/16 | 05/09/16 | $700.00 | $0.00 | $700.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $700.00 |
| 3624744 | 37571185 | 05/10/16 | 05/16/16 | 05/16/16 | $700.00 | $0.00 | $700.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $700.00 |
| 3624744 | 37575840 | 05/17/16 | 05/23/16 | 05/23/16 | $700.00 | $0.00 | $700.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $700.00 |
| 3624744 | 37580816 | 05/24/16 | 05/30/16 | 05/30/16 | $700.00 | $0.00 | $700.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $700.00 |
| 3624744 | 37585160 | 05/31/16 | 06/06/16 | 06/06/16 | $700.00 | $0.00 | $700.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $700.00 |
| 3624744 | 37589624 | 06/07/16 | 06/13/16 | 06/13/16 | $700.00 | $0.00 | $700.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $700.00 |
| 3624744 | 37594308 | 06/14/16 | 06/20/16 | 06/20/16 | $700.00 | $0.00 | $700.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $700.00 |
| **3624744** | | | | | **$5,600.00** | **$0.00** | **$5,600.00** | **$0.00** | **$0.00** | **$0.00** | **$0.00** | **$0.00** | **$5,600.00** |
| | | | | | | | | | | | | | |
| 7037643 | 37689584 | 10/22/16 | 10/28/16 | 11/03/16 | $700.00 | $0.00 | $700.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $700.00 |
| 7037643 | 37690518 | 10/29/16 | 11/04/16 | 11/04/16 | $700.00 | $0.00 | $700.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $700.00 |
| 7037643 | 37695058 | 11/05/16 | 11/11/16 | 11/11/16 | $700.00 | $0.00 | $700.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $700.00 |
| 7037643 | 37699838 | 11/12/16 | 11/18/16 | 11/18/16 | $700.00 | $0.00 | $700.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $700.00 |
| 7037643 | 37704601 | 11/19/16 | 11/25/16 | 11/25/16 | $700.00 | $0.00 | $700.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $700.00 |
| 7037643 | 37705602 | 11/26/16 | 11/27/16 | 11/28/16 | $200.00 | $0.00 | $200.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $200.00 |
| 7037643 | 37711959 | 11/28/16 | 12/04/16 | 12/07/16 | $700.00 | $0.00 | $700.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $700.00 |
| 7037643 | 37714846 | 12/05/16 | 12/11/16 | 12/12/16 | $700.00 | $0.00 | $700.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $700.00 |
| 7037643 | 37719529 | 12/12/16 | 12/18/16 | 12/19/16 | $700.00 | $0.00 | $700.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $700.00 |
| 7037643 | 37724661 | 12/19/16 | 12/25/16 | 12/26/16 | $700.00 | $0.00 | $700.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $700.00 |
| 7037643 | 37729173 | 12/26/16 | 01/01/17 | 01/02/17 | $700.00 | $0.00 | $700.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $700.00 |
| 7037643 | 37733558 | 01/02/17 | 01/08/17 | 01/09/17 | $700.00 | $0.00 | $700.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $700.00 |
| 7037643 | 37738223 | 01/09/17 | 01/15/17 | 01/16/17 | $657.14 | $0.00 | $657.14 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $657.14 |
| 7037643 | 37742850 | 01/16/17 | 01/22/17 | 01/23/17 | $600.00 | $0.00 | $600.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $600.00 |
| 7037643 | 37747099 | 01/23/17 | 01/27/17 | 01/27/17 | $428.57 | $0.00 | $428.57 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $428.57 |
| 7037643 | 37751773 | 01/28/17 | 02/03/17 | 02/03/17 | $600.00 | $0.00 | $600.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $600.00 |
| 7037643 | 37756283 | 02/04/17 | 02/10/17 | 02/10/17 | $600.00 | $0.00 | $600.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $600.00 |
| 7037643 | 37760971 | 02/11/17 | 02/17/17 | 02/17/17 | $600.00 | $0.00 | $600.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $600.00 |
| 7037643 | 37766579 | 02/18/17 | 02/24/17 | 02/24/17 | $600.00 | $0.00 | $600.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $600.00 |
| 7037643 | 37771464 | 02/25/17 | 03/03/17 | 03/03/17 | $600.00 | $0.00 | $600.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $600.00 |
| 7037643 | 37775926 | 03/04/17 | 03/10/17 | 03/10/17 | $600.00 | $0.00 | $600.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $600.00 |
| 7037643 | 37780498 | 03/11/17 | 03/17/17 | 03/17/17 | $600.00 | $0.00 | $600.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $600.00 |
| 7037643 | 37784757 | 03/18/17 | 03/24/17 | 03/24/17 | $600.00 | $0.00 | $600.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $600.00 |
| 7037643 | 37789861 | 03/25/17 | 03/31/17 | 03/31/17 | $600.00 | $0.00 | $600.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $600.00 |

**LIB001552**

Virgil Harris

| clm_num | chk_num | ChkFromDate | ChkThruDate | ChkDate | ben_gross_amt | chk_total_ofst_amt | chk_adj_ben_gross_amt | chk_fed_tax_withd_amt | chk_fica_tax_withd_amt | chk_adj_amt | chk_total_dedn_amt | chk_state_tax_withd_amt | ben_net_amt |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 7037643 | 37794497 | 04/01/17 | 04/07/17 | 04/07/17 | $600.00 | $0.00 | $600.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $600.00 |
| 7037643 | 37797106 | 04/08/17 | 04/12/17 | 04/12/17 | $428.57 | $0.00 | $428.57 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $428.57 |
| **7037643** | | | | | **$16,014.28** | **$0.00** | **$16,014.28** | **$0.00** | **$0.00** | **$0.00** | **$0.00** | **$0.00** | **$16,014.28** |
| | | | | | | | | | | | | | |
| 7223420 | 31384776 | 04/13/17 | 05/12/17 | 05/30/17 | $2,889.03 | $0.00 | $2,889.03 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $2,889.03 |
| 7223420 | 31395779 | 05/13/17 | 06/12/17 | 06/06/17 | $2,889.03 | $0.00 | $2,889.03 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $2,889.03 |
| 7223420 | 47425118 | 06/13/17 | 07/12/17 | 07/06/17 | $2,889.03 | $0.00 | $2,889.03 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $2,889.03 |
| 7223420 | 47449725 | 07/13/17 | 08/12/17 | 08/07/17 | $2,889.03 | $0.00 | $2,889.03 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $2,889.03 |
| 7223420 | 47474088 | 08/13/17 | 09/12/17 | 09/06/17 | $2,889.03 | $0.00 | $2,889.03 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $2,889.03 |
| 7223420 | 47499454 | 09/13/17 | 10/12/17 | 10/06/17 | $2,889.03 | $0.00 | $2,889.03 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $2,889.03 |
| 7223420 | 47524595 | 10/13/17 | 11/12/17 | 11/06/17 | $2,889.03 | $0.00 | $2,889.03 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $2,889.03 |
| 7223420 | 47550938 | 11/13/17 | 12/12/17 | 12/06/17 | $2,889.03 | $0.00 | $2,889.03 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $2,889.03 |
| 7223420 | 47578065 | 12/13/17 | 01/12/18 | 01/08/18 | $2,889.03 | $0.00 | $2,889.03 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $2,889.03 |
| 7223420 | 47605350 | 01/13/18 | 02/12/18 | 02/06/18 | $2,889.03 | $0.00 | $2,889.03 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $2,889.03 |
| 7223420 | 47633713 | 02/13/18 | 03/12/18 | 03/06/18 | $2,889.03 | $0.00 | $2,889.03 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $2,889.03 |
| 7223420 | 47662015 | 03/13/18 | 04/12/18 | 04/06/18 | $2,889.03 | $0.00 | $2,889.03 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $2,889.03 |
| 7223420 | 47690703 | 04/13/18 | 05/12/18 | 05/07/18 | $2,889.03 | $0.00 | $2,889.03 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $2,889.03 |
| 7223420 | 47720038 | 05/13/18 | 06/12/18 | 06/06/18 | $2,889.03 | $0.00 | $2,889.03 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $2,889.03 |
| 7223420 | 47750259 | 06/13/18 | 07/12/18 | 07/06/18 | $2,889.03 | $0.00 | $2,889.03 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $2,889.03 |
| 7223420 | 47778933 | 07/13/18 | 08/12/18 | 08/06/18 | $2,889.03 | $0.00 | $2,889.03 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $2,889.03 |
| 7223420 | 47810795 | 08/13/18 | 09/12/18 | 09/06/18 | $2,889.03 | $0.00 | $2,889.03 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $2,889.03 |
| 7223420 | 47842845 | 09/13/18 | 10/12/18 | 10/08/18 | $2,889.03 | $0.00 | $2,889.03 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $2,889.03 |
| 7223420 | 47873588 | 10/13/18 | 11/12/18 | 11/06/18 | $2,889.03 | $0.00 | $2,889.03 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $2,889.03 |
| 7223420 | 47905357 | 11/13/18 | 12/12/18 | 12/06/18 | $2,889.03 | $0.00 | $2,889.03 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $2,889.03 |
| 7223420 | 47936234 | 12/13/18 | 01/12/19 | 01/07/19 | $2,889.03 | $0.00 | $2,889.03 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $2,889.03 |
| 7223420 | 47967005 | 01/13/19 | 02/12/19 | 02/06/19 | $2,889.03 | $0.00 | $2,889.03 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $2,889.03 |
| 7223420 | 48000545 | 02/13/19 | 03/12/19 | 03/06/19 | $2,889.03 | $0.00 | $2,889.03 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $2,889.03 |
| 7223420 | 48032818 | 03/13/19 | 04/12/19 | 04/08/19 | $2,889.03 | $0.00 | $2,889.03 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $2,889.03 |
| 7223420 | 48056392 | 04/13/19 | 04/22/19 | 04/30/19 | $963.01 | $0.00 | $963.01 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $963.01 |
| **7223420** | | | | | **$70,299.73** | **$0.00** | **$70,299.73** | **$0.00** | **$0.00** | **$0.00** | **$0.00** | **$0.00** | **$70,299.73** |

**LIB001553**

THOMAS GEORGE ASSOCIATES, LTD
TGA
Post Office Box 30
East Northport NY 11731 0030
(631) 261-8800


December 20, 2018

THE LAW OFFICE OF CALVIN SMITH
3560 LENOX RD NE STE:3020
ATLANTA, GA      30326-0000


Attention:   MORGAN MEDDERS ESQ.


OUR CLIENT:        LINCOLN FINANCIAL GROUP
OUR INSURED:       ROBERT HALF INTERNATIONAL INC
CLIENTS CLAIM#:    7223420
OUR FILE #:        871645-32
AMT OF LIEN:       $8,667.09
DATE OF LOSS:      10/04/16
YOUR CLIENT:       VIRGIL HARRIS
YOUR FILE #:       VIRGIL HARRIS

Please be advised that we  are  the  recovery agents for the above
referenced client and are aiding  them in their recovery rights
as result of the above captioned loss.

This  lien has  evolved as  a  result  of benefits  paid  out of
an  commercial  disability  policy.  Under  this  policy
LINCOLN FINANCIAL GROUP has a right to  be  reimbursed  by
the responsible party or the injured  party, if the bodily injury
claim  has  already been  settled. If the claim has  yet to  be
settled, please contact the undersigned, so  that we may set  our
diary  ahead  accordingly.  Please  note,  due  to  the nature of
this  claim, final  balance  verification is  required  prior to
final  settlement  of the  lien.

When  processing  this claim  make  your  check  payable to
LINCOLN FINANCIAL GROUP and mail it to the  address listed
above. Kindly reference  our file  number  on  all correspondence.
If  any  additional information is needed,  please feel  free to
contact  me at  the  above  number.

Very truly yours,


Barry  Bent



LIB001554

## *Thomas George Associates, Ltd.*
### *P.O. BOX 30*
### *East Northport, NY 11731*
### *Phone (631) 261-8800*
### *Fax (631) 261-8896*

This communication is from a debt collector and is an attempt to collect a debt. Any information obtained will be used for that purpose.

**From: Barry Bent**

**Date: 12/20/2018 4:03:14 PM**

**Fax: 1-404-842-1498**

**Attention: Morgan Medders Esq.**
**Company: The Law Office Of Calvin Smith**

**Comments: The Law Office Of Calvin Smith Client: Virgil Harris / Lincoln Financial Group Claim# 7223420 / TGA File# 871645**
**Please see attached doc. to be review, please call to discuss.**

**Thank You**

This message is intended only for the use of the individual or entity to which it is addressed, and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of the message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone at (631)261-8800 and destroy this message.

LIB001555

THOMAS GEORGE ASSOCIATES, LTD
TGA
Post Office Box 30
East Northport NY 11731 0030
(631) 261-8800

December 20, 2018

THE LAW OFFICE OF CALVIN SMITH
3560 LENOX RD NE STE:3020
ATLANTA, GA      30326-0000


Attention:   MORGAN MEDDERS ESQ.


| | |
|---|---|
| OUR CLIENT: | LINCOLN FINANCIAL GROUP |
| OUR INSURED: | ROBERT HALF INTERNATIONAL INC |
| CLIENTS CLAIM#: | 7223420 |
| OUR FILE #: | 871645-32 |
| AMT OF LIEN: | $8,667.09 |
| DATE OF LOSS: | 10/04/16 |
| YOUR CLIENT: | VIRGIL HARRIS |
| YOUR FILE #: | VIRGIL HARRIS |

Please be advised that we are the recovery agents for the above referenced client and are aiding them in their recovery rights as result of the above captioned loss.

This lien has evolved as a result of benefits paid out of an commercial disability policy. Under this policy LINCOLN FINANCIAL GROUP has a right to be reimbursed by the responsible party or the injured party, if the bodily injury claim has already been settled. If the claim has yet to be settled, please contact the undersigned, so that we may set our diary ahead accordingly. Please note, due to the nature of this claim, final balance verification is required prior to final settlement of the lien.

When processing this claim make your check payable to LINCOLN FINANCIAL GROUP and mail it to the address listed above. Kindly reference our file number on all correspondence. If any additional information is needed, please feel free to contact me at the above number.

Very truly yours,


Barry Bent




LIB001556



**Liberty Mutual.**
**INSURANCE**

Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7207
London, KY 40742-7207
Phone No.: (800) 291-0112
Secure Fax No.: (603) 334-5994

November 8, 2016

Mr. Virgil A. Harris
1604 PINE TREE TRAIL
COLLEGE PARK, GA 30349

RE:     Short Term Disability (STD) Benefits
        Robert Half International Inc.
        Claim #: 7037643

Dear Mr. Virgil Harris:

Liberty Life Assurance Company of Boston ("Liberty") is responsible for managing claims for Short Term Disability (STD) benefits under Robert Half International Inc.'s Group Disability Plan. We are writing in reference to your claim for STD benefits under the Plan.

We are currently reviewing your eligibility for continued disability benefits, and are in need of additional information.

You have informed us that a negligent third party may have caused your claim for disability benefits.

The Plan under which you are covered states that when a covered person's disability is due to another party, Liberty Life Assurance Company of Boston is entitled to recover disability benefits paid to the covered person.

In order to comply with this provision, you or your legal representative must complete the enclosed Third Party Liability and Reimbursement Agreement forms. These forms must be returned no later than December 8, 2016. If we do not receive the requested information by this date, your benefits will not be continued.

Robert Half International Inc.'s STD Plan requires that, in order to receive ongoing benefits, you provide all documents needed to establish your entitlement to disability benefits within a required timeframe. Your cooperation in providing the requested information is essential to our claim investigation as we are unable to evaluate your eligibility for benefits without it. We ask that you provide us with this information no later than December 8, 2016 as required under the terms of the Plan.

Please be advised that we are unable to evaluate eligibility for continued benefits without this

LIB001557

# REIMBURSEMENT AGREEMENT

 **Liberty Mutual.** INSURANCE

Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7207
London, KY 40742-7207
Phone No.: (800) 291-0112
Secure Fax No.: (603) 334-5994

**Return To:** Corey Abrams-Weaver

Please complete, sign, and return a copy to Liberty Mutual.

---

*TO BE COMPLETED BY LIBERTY MUTUAL*

Claimant Name: **Virgil Harris**

Address: **3343 PEACHTREE RD.   COLLEGE PARK GA 30349**

Name of Employer: **Robert Half International Inc.**

---

In consideration of the receipt of disability benefit payments received by me from the Plan Sponsor, I

( **Virgil Harris** ) hereby agree:
   (Claimant Name)

(a)   to repay the Plan Sponsor for such benefits to the extent they are for losses for which compensation is paid to the covered person by or on behalf of the person at fault;

(b)   to allow the Plan Sponsor a lien on such compensation and to hold such compensation in a trust for the Sponsor, and;

(c)   to execute and give to the Plan Sponsor any instruments needed to secure the rights under (a) and (b).

Further, when the Plan Sponsor has paid benefits to or on behalf of the injured covered person, the Plan Sponsor will be subrogated to all rights of recovery that the covered has against the person at fault. These subrogation rights will extend only to recovery of the amount the Plan Sponsor has paid. The covered person must execute and deliver any instruments needed and do whatever else is necessary to secure those rights to the Plan Sponsor.

11/29/2016
———————————
   / (Date)

———————————
   (Signature of injured individual or legal representative)

**PLEASE RETAIN A COPY FOR YOUR RECORDS, OR ONE MAY BE PROVIDED FOR YOU UPON REQUEST.**

LIB001558

Officer: Appleberry

Court Date: 11/7/16          Report Number: 16 978 2455

Time: 1 04   am/pm

# Incident Report

Zone 2 Precinct

3120 Maple Drive

Atlanta, GA 30305

404-848-7231




Your incident has been reported to the Atlanta Police Department. Your report will be ready in **7 to 10 business days**. If your incident requires further investigation, your report will be forwarded to the Criminal Investigation Division.

## How Do You Get A Copy of Your Report?

3493 Donald Lee Hollowell Pkwy  ·  404-546-7461

or

BUYCRASH.COM

### Department Numbers

Investigations Unit          404-816-7067
Victim Assistance          404-588-4740
*(www.atlantava.org)*
Atlanta City Jail          404-865-8001
*(251 Peachtree St SW, Atlanta, GA 30303)*
Fulton County Jail          404-613-2000
*(901 Rice St NW, Atlanta, GA 30318)*

### Towing/Impound

Futo's Wrecker Services
2050 Liddell Drive, Atlanta, GA 30324
404-874-5926



### Atlanta Municipal Court

150 Garnett Street SW
Atlanta, GA 30303
court.atlantaga.gov
404-658-6940

Payment?
courtview.atlantaga.gov

### Fulton County Magistrate Court

185 Central Ave SW
Atlanta, GA 30303
www.magistratefulton.org
404-613-5360

Civil Matters: small claims, evictions
Criminal Matters: warrant applications

### Fulton County Superior Court

136 Pryor Street SW
Atlanta, GA 30303
www.fultoncourt.org
404-613-5313

Legitimation, Temporary Protective Order, Mediation

LIB001559

| Accident Number 16278245900 | Agency NCIC No. APD0000 | **GEORGIA UNIFORM MOTOR VEHICLE ACCIDENT REPORT** | County FULTON | Date Rec. by DOT |

| Date 10/04/2016 | Day Of Week TUESDAY | Time 17:45 | Off. Arrived 18:00 | Vehicles 2 | Injuries 1 | Fatalities 0 | Inside City Of: Atlanta | Hit And Run? ☐ |

Suppl. To Original? ☐

Road of Occurence 2146 BOLTON RD NW        At Its Intersection With PAUL AVE        Private Property? ☐

| **UNIT 1 - DRIVER** | Last Name SESSIONS | First HOPEMARIE | Middle | | **UNIT 2 - DRIVER** | Last Name HARRIS | First VIRGIL | Middle |
|---|---|---|---|---|---|---|---|---|
| | Address 1480 SETH | | | | | Address 1604 PINE TREE | | |
| City GRAYSON | State GA | Zip 30017 | DOB 05/04/1995 | | City COLLEGE PARK | State GA | Zip 30349 | DOB 01/16/1962 |
| Driver's License No 056905094 | Class CLASS C | State GA | ☐ Male ☑ Female | | Driver's License No 058293043 | Class CLASS C | State GA | ☑ Male ☐ Female |
| Posted Speed 35 | Insurance Co. LIBERTY MUTUAL | Policy No. A0S2580251555 | | | Posted Speed 35 | Insurance Co. AMERICAN FAMILY | Policy No. 2177300002FPPAGA | |
| Year 2007 | Make JEEP | Model WRG | Telephone No. 770-375-7656 | | Year 2013 | Make MERZ | Model | Telephone No. 404-781-5494 |
| VIN 1J4GA591X7L161950 | | Vehicle Color Red | | | VIN WDCGG8JB4DG140505 | | Vehicle Color Black | |
| Tag # RVPSHER | State GA | County | Year 0 | | Tag # CHP9243 | State GA | County | Year 12017 |
| Trailer | | | | | Trailer | | | |

| ☐ Same as Driver | Owner's Last Name PUGLISE-SESSIONS | First MARILYNN | Middle | | ☐ Same as Driver | Owner's Last Name HARRIS | First VIRGIL | Middle |
|---|---|---|---|---|---|---|---|---|
| Address 1480 SETH | | | | | Address 1604 PINE TREE | | | |
| City GRAYSON | State GA | Zip 30017 | | | City COLLEGE PARK | State GA | Zip 30349 | |
| Removed By DRIVER | | ☐ Request ☐ List | | | Removed By DRIVER | | ☐ Request ☐ List | |
| Alcohol Test No | Type Not Tested | Results None Given | Drug Test No | Type | Results | Alcohol Test No | Type Not Tested | Results None Given | Drug Test No | Type | Results |

| Driver Cond Not Drinking | Direction of Travel W | Vision Obscured Not Obscured | Contributing Factors Following too Close | | Driver Cond Not Drinking | Direction of Travel W | Vision Obscured Not Obscured | Contributing Factors No Contributing Factors |
|---|---|---|---|---|---|---|---|---|
| Vehicle Cond No Known Defects | Vehicle Maneuver Straight | | | | Vehicle Cond No Known Defects | Vehicle Maneuver Stopped | | |
| Most Harmful Event Motor Vehicle In Motion | Vehicle Class Privately Owned | | Vehicle Type: Utility Passenger Vehicle | | Most Harmful Event Motor Vehicle In Motion | Vehicle Class Privately Owned | | Vehicle Type: Utility Passenger Vehicle |
| Traffic Ctrl Lanes | Device Inoperative? ☐ Yes ☐ No | | | | Traffic Ctrl Lanes | Device Inoperative? ☐ Yes ☐ No | | |
| Injured Taken To : | | By: | | | Injured Taken To : | | By: | |
| EMS Notified Time | | EMS Arrival Time | | | EMS Notified Time | | EMS Arrival Time | |
| Hospital Arrival Time | Photos Taken ☐ Yes ☑ No | By: | | | Hospital Arrival Time | Photos Taken ☐ Yes ☑ No | By: | |

| Carrier Name | | | | | Carrier Name | | | |
|---|---|---|---|---|---|---|---|---|
| Vehicle # 1 | | | | | Vehicle # 2 | | | |
| Address | City | State | Zip | | Address | City | State | Zip |
| No. of Axles G.V.W.R | | Fed. Reportable ☐ Yes ☑ No | Cargo Body Type | | No. of Axles G.V.W.R | | Fed. Reportable ☐ Yes ☑ No | Cargo Body Type |
| Vehicle Config. | I.C.C.M.C. # | U.S. D.O.T. # | Interstate ☐ Intrastate ☐ | | Vehicle Config. | I.C.C.M.C. # | U.S. D.O.T. # | Interstate ☐ Intrastate ☐ |
| C.D.L. ? ☐ Yes ☐ No | | C.D.L. Suspended? ☐ Yes ☐ No | | | C.D.L. ? ☐ Yes ☐ No | | C.D.L. Suspended? ☐ Yes ☐ No | |
| Vehicle Placarded ? ☐ Yes ☐ No | | Hazardous Materials? ☐ Yes ☐ No | | | Vehicle Placarded ? ☐ Yes ☐ No | | Hazardous Materials? ☐ Yes ☐ No | |
| Released ? ☐ Yes ☐ No | | | | | Released ? ☐ Yes ☐ No | | | |
| If YES, Name or 4 Digit Number from Diamond | | | | | If YES, Name or 4 Digit Number from Diamond | | | |
| ☐ Ran Off Road ☐ Down Hill Runaway ☐ Cargo Loss or Shift ☐ Separation of Units | | | | | ☐ Ran Off Road ☐ Down Hill Runaway ☐ Cargo Loss or Shift ☐ Separation of Units | | | |

| Report By: NEEDS FIXED | Badge # 1046 | Department ATLPD | Report Date 10/5/2016 8:03:41 AM | Submitted By ATLANTA TRANSMIT | Checked By | Date Checked 10/4/2016 |
|---|---|---|---|---|---|---|

Date of Print 10/5/2016 8:04:01 AM | Ver 5.00        Page 1 of 3

LIB001560

None Listed

Driver #1 stated that she was traveling westbound on Bolton Rd. She stated that her vehicle was following vehicle #1 too closely and when traffic came to a stop, her vehicle struck vehicle #2 from the rear.

Driver #2 stated that he was traveling westbound on Bolton Rd and came to stop in traffic when his vehicle was struck from the rear by vehicle #1. Driver #2 complained of back pain but refused medical treatment.

Vehicle 30997
Assignment 3203

BOLTON RD NW

TO HOLLYWOOD RD NW

TO PAUL AVE NW

LIB001561

| Unit | Name | Violation |
|---|---|---|
| 1 | HOPEMARIE SESSIONS | 40 6 49 (FOLLOWING TOO CLOSELY) |
| 2 | VIRGIL HARRIS | None |

| First Harmful Event | Traffic Way Flow | Weather | Surface Cond. | Light Cond. | Manner of Collision | Location at area of Impact | Road Comp. | Road Def. | Road Character | Construction / Maintenance Zone |
|---|---|---|---|---|---|---|---|---|---|---|
| Motor Vehicle in Motion | Two-Way Trafficway with no physical separation | Clear | Dry | Daylight | Rear End | On Roadway | Black Top | No Defects | Straight and Level | None |

| VEH # | Number of Occupants | Point of Initial Contact | Damage To Vehicles | Skid Distance Before Impact | After | Width of Road |
|---|---|---|---|---|---|---|
| 1 | 1 | Front End | Moderate | 0 | 0 | 0 |
| 2 | 1 | Rear End | Moderate | 0 | 0 | 0 |

None Listed

| Last Name | First | Address | City | State | Zip | Age | Sex | Veh # | Pos | Injury | Taken for treat. | Eject | Safety Equip. | Extric | Air Bag |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| SESSIONS | HOPEMARIE | 1480 SETH | GRAYSON | GA | 30017 | 21 | F | 1 | Front Seat Left Side | Not Injured | No | Not Ejected | Lap and Shoulder Belt | No | Non Deployed Air Bag |
| HARRIS | VIRGIL | 1604 PINE TREE | COLLEGE PARK | GA | 30349 | 54 | M | 2 | Front Seat-Left Side | Complaint | | Not Ejected | Lap and Shoulder Belt | No | Non-Deployed Air Bag |

LIB001562

# *Thomas George Associates, Ltd.*
## *P.O. BOX 30*
### *East Northport, NY 11731*
### *Phone (631) 261-8800*
### *Fax (631) 261-8896*

This communication is from a debt collector and is an attempt to collect a debt. Any information obtained will be used for that purpose.

**From: Barry Bent**

**Date: 9/20/2018 2:48:21 PM**

**Fax: 1-404-842-1498**

**Attention: Morgan Medders esq.**
**Company: The Law Office Of Calvin Smith**

**Comments: The Law Office Of Calvin Smith Client:Virgil Harris / Lincoln Financial Group Claim# 7223420 / TGA File# 871645**
**Please see attached doc. to be review, please call to discuss.**

**Thank You**

This message is intended only for the use of the individual or entity to which it is addressed, and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of the message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone at (631)261-8800 and destroy this message.

LIB001563

THOMAS GEORGE ASSOCIATES, LTD
TGA
Post Office Box 30
East Northport NY 11731 0030
(631) 261-8800

September 20, 2018

THE LAW OFFICE OF CALVIN SMITH
3560 LENOX RD NE STE:3020
ATLANTA,  GA      30326-0000


Attention:   MORGAN MEDDERS ESQ.


OUR CLIENT:        LINCOLN FINANCIAL GROUP
OUR INSURED:       ROBERT HALF INTERNATIONAL INC
CLIENTS CLAIM#:    7223420
OUR FILE #:        871645-32
AMT OF LIEN:       $8,667.09
DATE OF LOSS:      10/04/16
YOUR CLIENT:       VIRGIL HARRIS
YOUR FILE #:       VIRGIL HARRIS

Please be advised that we  are  the  recovery agents for the above
referenced client and are aiding  them in their recovery rights
as result of the above captioned loss.

This  lien has  evolved as  a  result  of benefits  paid  out of
an  commercial  disability  policy.  Under  this  policy
LINCOLN FINANCIAL GROUP has a right to  be  reimbursed  by
the responsible party or the injured  party, if the bodily injury
claim  has  already been  settled. If the claim has  yet to  be
settled, please contact the undersigned, so  that we may set  our
diary  ahead  accordingly.  Please  note,  due  to  the nature of
this  claim, final  balance  verification is  required  prior to
final  settlement  of the  lien.

When  processing  this claim  make  your  check  payable to
LINCOLN FINANCIAL GROUP and mail it to the  address listed
above. Kindly reference  our file  number  on  all correspondence.
If  any  additional information is needed,  please feel  free to
contact  me at  the  above  number.

Very truly yours,


Barry  Bent



LIB001564

THOMAS GEORGE ASSOCIATES, LTD
TGA
Post Office Box 30
East Northport NY 11731 0030
(631) 261-8800

September 20, 2018

THE LAW OFFICE OF CALVIN SMITH
3560 LENOX RD NE STE:3020
ATLANTA, GA    30326-0000


Attention:  MORGAN MEDDERS ESQ.


OUR CLIENT:       LINCOLN FINANCIAL GROUP
OUR INSURED:      ROBERT HALF INTERNATIONAL INC
CLIENTS CLAIM#:   7223420
OUR FILE #:       871645-32
AMT OF LIEN:      $8,667.09
DATE OF LOSS:     10/04/16
YOUR CLIENT:      VIRGIL HARRIS
YOUR FILE #:      VIRGIL HARRIS

Please be advised that we are the recovery agents for the above referenced client and are aiding them in their recovery rights as result of the above captioned loss.

This lien has evolved as a result of benefits paid out of an commercial disability policy. Under this policy LINCOLN FINANCIAL GROUP has a right to be reimbursed by the responsible party or the injured party, if the bodily injury claim has already been settled. If the claim has yet to be settled, please contact the undersigned, so that we may set our diary ahead accordingly. Please note, due to the nature of this claim, final balance verification is required prior to final settlement of the lien.

When processing this claim make your check payable to LINCOLN FINANCIAL GROUP and mail it to the address listed above. Kindly reference our file number on all correspondence. If any additional information is needed, please feel free to contact me at the above number.

Very truly yours,


Barry Bent



LIB001565

This communication is from a debt collector and is an attempt to collect a debt. Any information obtained will be used for that purpose.

# *Thomas George Associates, Ltd.*
## *P.O. BOX 30*
## *East Northport, NY 11731*
## *Phone (631) 261-8800*
## *Fax (631) 261-8896*

**From: Barry Bent**

**Date: 5/18/2018 3:55:53 PM**

**Fax: 1-404-842-1498**

**Attention: Morgan Medders Esq.**
**Company: The Law Office Of Calvin Smith**

**Comments: The Law Office Of Calvin Smith Client: Virgil Harris/ Liberty Life Assurance Co. Claim# 7223420/ TGA File# 871645**
**Please see attached doc. to be review, please call to discuss.**

**Thank You**

This message is intended only for the use of the individual or entity to which it is addressed, and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of the message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone at (631)261-8800 and destroy this message.

LIB001566

THOMAS GEORGE ASSOCIATES, LTD
TGA
Post Office Box 30
East Northport NY 11731 0030
(631) 261-8800


May 18, 2018

THE LAW OFFICE OF CALVIN SMITH
3560 LENOX RD NE STE:3020
ATLANTA, GA      30326-0000


Attention:   MORGAN MEDDERS ESQ.


| | |
|---|---|
| OUR CLIENT: | LIBERTY LIFE ASSURANCE COMPANY |
| OUR INSURED: | ROBERT HALF INTERNATIONAL INC |
| CLIENTS CLAIM#: | 7223420 |
| OUR FILE #: | 871645-32 |
| AMT OF LIEN: | $8,667.09 |
| DATE OF LOSS: | 10/04/16 |
| YOUR CLIENT: | VIRGIL HARRIS |
| YOUR FILE #: | VIRGIL HARRIS |

Please be advised that we are the recovery agents for the above referenced client and are aiding them in their recovery rights as result of the above captioned loss.

This lien has evolved as a result of benefits paid out of an commercial disability policy. Under this policy LIBERTY LIFE ASSURANCE COMPANY has a right to be reimbursed by the responsible party or the injured party, if the bodily injury claim has already been settled. If the claim has yet to be settled, please contact the undersigned, so that we may set our diary ahead accordingly. Please note, due to the nature of this claim, final balance verification is required prior to final settlement of the lien.

When processing this claim make your check payable to LIBERTY LIFE ASSURANCE COMPANY and mail it to the address listed above. Kindly reference our file number on all correspondence. If any additional information is needed, please feel free to contact me at the above number.

Very truly yours,


Barry Bent




LIB001567

THOMAS GEORGE ASSOCIATES, LTD
TGA
Post Office Box 30
East Northport NY 11731 0030
(631) 261-8800

May 18, 2018

THE LAW OFFICE OF CALVIN SMITH
3560 LENOX RD NE STE:3020
ATLANTA, GA        30326-0000


Attention:    MORGAN MEDDERS ESQ.


| | |
|---|---|
| OUR CLIENT: | LIBERTY LIFE ASSURANCE COMPANY |
| OUR INSURED: | ROBERT HALF INTERNATIONAL INC |
| CLIENTS CLAIM#: | 7223420 |
| OUR FILE #: | 871645-32 |
| AMT OF LIEN: | $8,667.09 |
| DATE OF LOSS: | 10/04/16 |
| YOUR CLIENT: | VIRGIL HARRIS |
| YOUR FILE #: | VIRGIL HARRIS |

Please be advised that we are the recovery agents for the above referenced client and are aiding them in their recovery rights as result of the above captioned loss.

This lien has evolved as a result of benefits paid out of an commercial disability policy. Under this policy LIBERTY LIFE ASSURANCE COMPANY has a right to be reimbursed by the responsible party or the injured party, if the bodily injury claim has already been settled. If the claim has yet to be settled, please contact the undersigned, so that we may set our diary ahead accordingly. Please note, due to the nature of this claim, final balance verification is required prior to final settlement of the lien.

When processing this claim make your check payable to LIBERTY LIFE ASSURANCE COMPANY and mail it to the address listed above. Kindly reference our file number on all correspondence. If any additional information is needed, please feel free to contact me at the above number.

Very truly yours,


Barry Bent



LIB001568

# *Thomas George Associates, Ltd.*
## *P.O. BOX 30*
## *East Northport, NY 11731*
## *Phone (631) 261-8800*
## *Fax (631) 261-8896*

This communication is from a debt collector and is an attempt to collect a debt. Any information obtained will be used for that purpose.

**From: Barry Bent**

**Date: 3/16/2018 1:09:36 PM**

**Fax: 1-404-842-1498**

**Attention: Morgan Medders Esq.**
**Company: The Law Office Of Calvin Smith**

**Comments: The Law Office Of Calvin Smith Client: Virgil Harris/ Liberty Life Assurance Co. Claim# 7223420/ TGA File# 871645**
**Please see attached doc. to be review, please call to discuss.**

**Thank You**

This message is intended only for the use of the individual or entity to which it is addressed, and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of the message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone at (631)261-8800 and destroy this message.

LIB001569

THOMAS GEORGE ASSOCIATES, LTD
TGA
Post Office Box 30
East Northport NY 11731 0030
(631) 261-8800

March 16, 2018

THE LAW OFFICE OF CALVIN SMITH
3560 LENOX RD NE STE:3020
ATLANTA, GA      30326-0000


Attention:    MORGAN MEDDERS ESQ.


| | |
|---|---|
| OUR CLIENT: | LIBERTY LIFE ASSURANCE COMPANY |
| OUR INSURED: | ROBERT HALF INTERNATIONAL INC |
| CLIENTS CLAIM#: | 7223420 |
| OUR FILE #: | 871645-32 |
| AMT OF LIEN: | $8,667.09 |
| DATE OF LOSS: | 10/04/16 |
| YOUR CLIENT: | VIRGIL HARRIS |
| YOUR FILE #: | VIRGIL HARRIS |

Please be advised that we  are  the  recovery agents for the above referenced client and are aiding  them in their recovery rights as result of the above captioned loss.

This  lien has  evolved as  a  result  of benefits  paid  out of an  commercial  disability  policy.  Under  this  policy LIBERTY LIFE ASSURANCE COMPANY has a right to  be  reimbursed  by the responsible party or the injured  party, if the bodily injury claim  has  already been  settled. If the claim has  yet to  be settled, please contact the undersigned, so  that we may set  our diary  ahead  accordingly.  Please  note,  due  to  the nature of this  claim, final  balance  verification is  required  prior to final  settlement  of the  lien.

When  processing  this claim  make  your  check  payable to LIBERTY LIFE ASSURANCE COMPANY and mail it to the  address listed above. Kindly reference  our file  number  on  all correspondence. If  any  additional information is needed,  please feel  free to contact  me at  the  above  number.

Very truly yours,


Barry  Bent



LIB001570

THOMAS GEORGE ASSOCIATES, LTD
TGA
Post Office Box 30
East Northport NY 11731 0030
(631) 261-8800

March 16, 2018

THE LAW OFFICE OF CALVIN SMITH
3560 LENOX RD NE STE:3020
ATLANTA, GA        30326-0000


Attention:   MORGAN MEDDERS ESQ.


| | |
|---|---|
| OUR CLIENT: | LIBERTY LIFE ASSURANCE COMPANY |
| OUR INSURED: | ROBERT HALF INTERNATIONAL INC |
| CLIENTS CLAIM#: | 7223420 |
| OUR FILE #: | 871645-32 |
| AMT OF LIEN: | $8,667.09 |
| DATE OF LOSS: | 10/04/16 |
| YOUR CLIENT: | VIRGIL HARRIS |
| YOUR FILE #: | VIRGIL HARRIS |

Please be advised that we are the recovery agents for the above referenced client and are aiding them in their recovery rights as result of the above captioned loss.

This lien has evolved as a result of benefits paid out of an commercial disability policy. Under this policy LIBERTY LIFE ASSURANCE COMPANY has a right to be reimbursed by the responsible party or the injured party, if the bodily injury claim has already been settled. If the claim has yet to be settled, please contact the undersigned, so that we may set our diary ahead accordingly. Please note, due to the nature of this claim, final balance verification is required prior to final settlement of the lien.

When processing this claim make your check payable to LIBERTY LIFE ASSURANCE COMPANY and mail it to the address listed above. Kindly reference our file number on all correspondence. If any additional information is needed, please feel free to contact me at the above number.

Very truly yours,


Barry Bent



LIB001571

## *Thomas George Associates, Ltd.*
### *P.O. BOX 30*
### *East Northport, NY 11731*
### *Phone (631) 261-8800*
### *Fax (631) 261-8896*

This communication is from a debt collector and is an attempt to collect a debt. Any information obtained will be used for that purpose.

**From: Barry Bent**

**Date: 12/20/2017 3:23:55 PM**

**Fax: 1-404-842-1498**

**Attention: Morgan Medders Esq.**
**Company: The Law Office Of Calvin Smith**

**Comments: The Law Office Of Calvin Smith Client: Virgil Harris/ Liberty Life Assurance Co. Claim# 7223420/ TGA File# 871645**
**Please see attached doc. to be review, please call to discuss.**

**Thank You**

This message is intended only for the use of the individual or entity to which it is addressed, and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of the message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone at (631)261-8800 and destroy this message.

LIB001572

December 20, 2017

THE LAW OFFICE OF CALVIN SMITH
3560 LENOX RD NE STE:3020
ATLANTA, GA     30326-0000


Attention:   MORGAN MEDDERS ESQ.


| | |
|---|---|
| OUR CLIENT: | LIBERTY LIFE ASSURANCE COMPANY |
| OUR INSURED: | ROBERT HALF INTERNATIONAL INC |
| CLIENTS CLAIM#: | 7223420 |
| OUR FILE #: | 871645-32 |
| AMT OF LIEN: | $8,667.09 |
| DATE OF LOSS: | 10/04/16 |
| YOUR CLIENT: | VIRGIL HARRIS |
| YOUR FILE #: | VIRGIL HARRIS |

Please be advised that we are the recovery agents for the above referenced client and are aiding them in their recovery rights as result of the above captioned loss.

This lien has evolved as a result of benefits paid out of an commercial disability policy. Under this policy LIBERTY LIFE ASSURANCE COMPANY has a right to be reimbursed by the responsible party or the injured party, if the bodily injury claim has already been settled. If the claim has yet to be settled, please contact the undersigned, so that we may set our diary ahead accordingly. Please note, due to the nature of this claim, final balance verification is required prior to final settlement of the lien.

When processing this claim make your check payable to LIBERTY LIFE ASSURANCE COMPANY and mail it to the address listed above. Kindly reference our file number on all correspondence. If any additional information is needed, please feel free to contact me at the above number.

Very truly yours,


Barry Bent



LIB001573

December 20, 2017

THE LAW OFFICE OF CALVIN SMITH
3560 LENOX RD NE STE:3020
ATLANTA, GA        30326-0000


Attention:   MORGAN MEDDERS ESQ.


OUR CLIENT:        LIBERTY LIFE ASSURANCE COMPANY
OUR INSURED:       ROBERT HALF INTERNATIONAL INC
CLIENTS CLAIM#:    7223420
OUR FILE #:        871645-32
AMT OF LIEN:       $8,667.09
DATE OF LOSS:      10/04/16
YOUR CLIENT:       VIRGIL HARRIS
YOUR FILE #:       VIRGIL HARRIS

Please be advised that we  are  the  recovery agents for the above
referenced client and are aiding  them in their recovery rights
as result of the above captioned loss.

This  lien has  evolved as  a  result  of benefits  paid  out of
an  commercial  disability  policy.  Under  this  policy
LIBERTY LIFE ASSURANCE COMPANY has a right to  be  reimbursed  by
the responsible party or the injured  party, if the bodily injury
claim  has  already been  settled. If the claim has  yet to  be
settled, please contact the undersigned, so  that we may set  our
diary  ahead  accordingly.  Please  note,  due  to  the nature of
this  claim, final  balance  verification is  required  prior to
final  settlement  of  the  lien.

When  processing  this claim  make  your  check  payable to
LIBERTY LIFE ASSURANCE COMPANY and mail it to the  address listed
above. Kindly reference  our file  number  on  all correspondence.
If  any  additional information is  needed,  please feel  free to
contact  me at  the  above  number.

Very truly yours,


Barry  Bent



LIB001574

| clm_num | cust_name | emp_first_name | emp_mi_name | emp_last_name | emp_line1_addr | emp_city | emp_state_addr | emp_zip | emp_phone_num | clm_disab_dte | prod_type |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 7223420 | ROBERT HALF INTERNATIONAL INC. | VIRGIL | A | HARRIS | 1604 PINE TREE TRAIL | COLLEGE PARK | GA | 303490000 | 4047815494 | 15-Oct-16 | LTD |

LIB001575

| fund_mechn_cde | clm_sttus_cde | bank_i | adj_ben_gross | pln_typ | ccident_type_de | accident_dte | accident_state | claim_filed_state | claimant_attorney_name | hant_attorney_p | t_auto_insuranc | _auto_insuranc | third_party_name |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| CON | AP | Y | $8,667.09 | E | MVA | 10/4/2016 | GA | GA | attorney USGGS | 9544132133 | UNKNOWN | 0000000000 | HOPEMARIE SESSIONS |

LIB001576

| hird_party_carrier_name | party_carrier_add | d_party_carrier_ | J_party_carrier_ | d_party_carrier_ | party_carrier_p | score_comments | eferring_offic |
|---|---|---|---|---|---|---|---|
| unknown | unknown | city | GA | 000000000 | 0000000000 | SEE POLICE REPORT, SUBROGATION FORMS, CLMT.SUPPLEMENTARY STATEMENT W/ THE ATTORNEY CONTACT INFORMATION ON IT. | 587 |

LIB001577