IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| VIRGIL HARRIS ) | |
| ) | |
|     Plaintiff ) | |
| ) | CIVIL ACTION |
| v. ) | |
| ) | FILE NO. 1:19-cv-04257-CC |
| LINCOLN LIFE ASSURANCE ) | |
| COMPANY OF BOSTON ) | |
| ) | |
|     Defendant ) | |

**PLAINTIFFS' RESPONSE TO DEFENDANT'S STATEMENT OF
UNDISPUTED MATERIAL FACTS**

Comes now Plaintiff Virgil Harris (hereinafter "Harris") and files his response

to Defendant Lincoln Life Assurance Company of Boston's (hereinafter "Defendant")

Statement of Undisputed Material Facts.

**RESPONSE TO INTRODUCTORY STATEMENT**

Defendant makes a legal argument in the its fact pleading citing case law. This

pleading is not the proper vehicle for the citation of legal arguments. As explained

in LR 56.1(B) (1) (c) the District Court will not consider any fact "stated as an issue

or legal conclusion." Moreover, Defendant's argument is legally wrong. Defendant

1

misrepresents the law in cases such as this which are decided under the *de novo* standard.  Defendant claims incorrectly that an ERISA Court in the Eleventh Circuit "does not take evidence, but rather evaluates the reasonableness of an administrative determination" citing Leahy v. Raytheon Co., 315 F.3d 11, 16-18 (1st Cir. 2002). **This is a complete misrepresentation of the legal standard in the Eleventh Circuit**.  When a case is decided on the *de novo* standard of review, the Court does not determine "reasonableness" nor is the Court limited to evidence contained within the administrative record.

Under the *de novo* standard, an ERISA court acts as a normal court.  It gives no deference to Defendant in anyway.  Further a court conducting a *de novo* standard of review may consider any relevant evidence in existence regarding an individual's disability at the time the plan administrator's decision was made regardless of whether this evidence was made available to the administrator.  See Kirwan v. Marriott Corp., 10 F.3d 784, 789 (11th Cir.1994) (a court conducting a *de novo* standard of review may consider any relevant evidence in existence regarding an individual's disability at the time the plan administrator's decision was made regardless of whether this evidence was made available to the administrator).

To the extent that it is necessary to respond to this section of the "Material

Facts," Harris disputes this section *in toto*.

Unfortunately, Defendant also failed to follow the local rules with regard to its numbered facts. As demonstrated below, Defendant cited to pleadings, failed to individually separate factual statements and often failed to cite to the record at all. Harris did the best he could in his responses, but states unequivocally that anything not expressly undisputed is herein disputed.

## RESPONSE TO NUMBERED MATERIAL FACTS

### 1.

Plaintiff Virgil Harris ("Plaintiff") was a participant in an employee welfare benefit plan (the "Plan") sponsored and maintained by his former employer, Robert Half International, Inc.. Decl. Tom at ¶ 2.

**RESPONSE**: Objection. Under LR 56.1(B)(1) the Court will "not consider any fact...(b) supported by a citation to a pleading rather than to evidence." Arguably the Declaration of Richard Tom is merely a pleading. Undisputed that Harris was a plan participant.

### 2.

Long-term disability ("LTD") benefits under the Plan were at all relevant times funded by a Group Long-Term Disability Insurance Policy, Policy Number GF3-860-

066676-01, which was issued by Lincoln's predecessor in interest (the "Group Policy"). Decl. Tom at ¶ 3.

**RESPONSE:** Objection. Under LR 56.1(B)(1) the Court will "not consider any fact...(b) supported by a citation to a pleading rather than to evidence." Arguably the Declaration of Richard Tom is merely a pleading. Undisputed that Defendant funds the insurance policy at issue.

3.

Lincoln at all relevant times served as the claim administrator for the Group Policy and for LTD benefits under the Plan. Decl. Tom at ¶ 4.

**RESPONSE:** Objection. Under LR 56.1(B)(1) the Court will "not consider any fact...(b) supported by a citation to a pleading rather than to evidence." Arguably the Declaration of Richard Tom is merely a pleading. Undisputed that Defendant is the claims administrator.

4.

Plaintiff applied for LTD benefits under the Group Policy alleging that he became disabled after leaving work on or about October 14, 2015. Decl. Tom at ¶ 5.

**RESPONSE:** Objection. Under LR 56.1(B)(1) the Court will "not consider any

fact...(b) supported by a citation to a pleading rather than to evidence." Arguably the Declaration of Richard Tom is merely a pleading. Undisputed that Harris applied for LTD benefits after becoming disabled.

5.

On May 26, 2017, Lincoln approved LTD benefits under the Group Policy. Decl. Tom at ¶ 6.

**RESPONSE:**   Objection.  Under LR 56.1(B)(1) the Court will "not consider any fact...(b) supported by a citation to a pleading rather than to evidence." Arguably the Declaration of Richard Tom is merely a pleading.  Undisputed that Defendant approved benefits.

6.

Lincoln paid LTD benefits under the Group Policy from April 13, 2017, to April 23, 2019. Decl. Tom at ¶ 7.

**RESPONSE:**   Objection.  Under LR 56.1(B)(1) the Court will "not consider any fact...(b) supported by a citation to a pleading rather than to evidence." Arguably the Declaration of Richard Tom is merely a pleading.  Undisputed that Defendant paid benefits.

7.

On or about April 30, 2019, Lincoln notified Plaintiff of its determination that he failed to meet his continuing burden to prove eligibility for LTD benefits under the Group Policy. Decl. Tom at ¶ 8.

**RESPONSE:** Objection. Under LR 56.1(B)(1) the Court will "not consider any fact...(b) supported by a citation to a pleading rather than to evidence." Arguably the Declaration of Richard Tom is merely a pleading. Undisputed that Defendant terminated benefits on or about April 30, 2019.

8.

As allowed by the Group Policy, Plaintiff requested an administrative appeal of Lincoln's determination by letter dated May 15, 2019. Decl. Tom at ¶ 9.

**RESPONSE:** Objection. Under LR 56.1(B)(1) the Court will "not consider any fact...(b) supported by a citation to a pleading rather than to evidence." Arguably the Declaration of Richard Tom is merely a pleading. Undisputed that Harris requested an appeal by letter dated May 15, 2019.

9.

In response to Plaintiff's appeal, Lincoln provided a full and fair review. Decl. Tom at ¶ 10. Upon completing its review, Lincoln again upheld its prior

determination.  *Id.*  Lincoln notified Plaintiff of its uphold determination by letter dated August 23, 2019.  *Id.*

**RESPONSE:**  Objection.  Under LR 56.1(B)(1) the Court will "not consider any fact...(b) supported by a citation to a pleading rather than to evidence."  Arguably the Declaration of Richard Tom is merely a pleading.  Objection.  Under LR 56.1(B)(1) each fact shall be separate and numbered.    There is more than one fact here.  Objection.  Defendant's "fact" is a legal conclusion.  See LR 56.1 (B)(1)(c) and it is legally disputed that Lincoln provided a full and fair review in this case.  Undisputed that Defendant upheld its prior determination and notified Harris via letter dated August 23, 2019.

10.

Thereafter, Plaintiff filed this lawsuit. Decl. Tom at ¶ 11.

**RESPONSE:**  Objection.  Under LR 56.1(B)(1) the Court will "not consider any fact...(b) supported by a citation to a pleading rather than to evidence."  Arguably the Declaration of Richard Tom is merely a pleading.  Undisputed that Harris filed suit.

11.

Pursuant to ERISA, 29 U.S.C. §1001, *et seq.,* and applicable regulations, Lincoln compiled an Administrative Record with respect to Plaintiff's LTD claim and

Lincoln's administration of that claim.  Decl. Tom at ¶ 12.

**RESPONSE:**  Objection.  Under LR 56.1(B)(1) the Court will "not consider any fact...(b) supported by a citation to a pleading rather than to evidence."  Arguably the Declaration of Richard Tom is merely a pleading.  Undisputed that there is a claims file in this case.

12.

A true and accurate copy of the Administrative Record compiled by Lincoln in this matter is attached as Exhibit A which consists of 1577 pages of the Administrative Record (numbered LIB0001 through LIB1577).  Decl. Tom at ¶ 13.

**RESPONSE:**  Objection.  Under LR 56.1(B)(1) the Court will "not consider any fact...(b) supported by a citation to a pleading rather than to evidence."  Arguably the Declaration of Richard Tom is merely a pleading.  Undisputed that there is a claims file in this case of 1577 pages.

## Evidence in the Administrative Record

1.

Under the Group Policy, no LTD benefits are payable unless a claimant first proves a continuous disability throughout a 180-day Elimination Period.  *See*

LIB1461; LIB1465; LIB1466.  Even if a claimant initially proves such a disability, LTD benefits continue only so long as the claimant continues to prove that his absence from work remains due to the same disability.  *See, e.g.,* LIB1490.

**RESPONSE:**  Objection.  Under LR 56.1(B)(1) each fact shall be separate and numbered.  There is more than one fact here. Objection.  Defendant's "facts" call for a legal conclusion.  See LR 56.1 (B)(1)(c).  Undisputed that the policy contains such language.

2.

During the Elimination Period and the next 24 months, the Group Policy defines "Disability" to mean that "the [claimant], as a result of Injury or Sickness, is unable to perform the Material Acts necessary to pursue his Own Occupation in the usual and customary way."  LIB1465.  After the first 24 months, the Group Policy's definition of "Disability" changes to mean that the claimant must prove that he "is unable to perform, with reasonable continuity, the Substantial and Material Acts of any occupation" in order to maintain benefits.  LIB1465.

**RESPONSE:** Objection.  Under LR 56.1(B)(1) each fact shall be separate and numbered.  There is more than one fact here.  Undisputed that the policy contains such language.

3.

At all times, however, the claimant must give proof of continuing disability at his own expense.  LIB1481.  For purposes of the Group Policy, "Proof" means "written proof covering the occurrence, the character and the extent of the loss for which the claim is made." LIB1471.  The Group Policy explicitly provides that LTD benefits will cease "the date the [claimant] is no longer Disabled according to this policy."  LIB1490.

**RESPONSE:**  Objection.  Under LR 56.1(B)(1) each fact shall be separate and numbered.   There is more than one fact here.  Undisputed that the policy contains such language.

4.

Thus, absent proof of continuous disability, a claimant's coverage simply comes to an end once he is no longer actively working a regular schedule of at least 30 hours a week. *See* LIB1459 (eligibility requirements); LIB1463 (defining "Active Employment").

**RESPONSE:**  Undisputed that the policy contains such language.

5.

Plaintiff worked for years with a variety of medical conditions, including

hidradenitis suppurativa (an inflammatory skin condition that leads to abscesses), degenerative disc disease, and obesity.  For instance, he had surgery to excise hidradenitis abscesses on August 21, 2014.  LIB0272.  A February 17, 2015, MRI of Plaintiff's cervical spine shows that his C5-6 disc was "severely degenerated and collapsed," that his C6-7 disc was "degenerated [and] compressed" with a "minor bulge," and the he generally suffered from multi-level spondylosis from C4-5 through C6-7.  LIB0491.  In July 2016, Plaintiff injured his back while golfing, and, although he continued working, he was still seeking medical treatment for the resulting back pain at least six weeks later.  *See. E.g.,* LIB0864, LIB1156.  Progress notes from a routine visit to Dr. Victor Blake, his primary care physician, on the morning of October 4, 2016, show the Plaintiff's body-mass index ("BMI") was 39.37, "which qualifies as obese."  LIB0852; LIB0856.

**RESPONSE:**  Objection.  Under LR 56.1(B)(1) each fact shall be separate and numbered.  There is more than one fact here. Objection.  Under LR 56.1(B)(1) each material fact must be supported by a citation to the evidence.   "Plaintiff worked for years with a variety of medical conditions, including hidradenitis suppurativa (an inflammatory skin condition that leads to abscesses), degenerative disc disease, and obesity" has no citation and is thus disputed.     It is undisputed that Harris had

11

surgery to excise hidradenitis abscesses on August 21, 2014. (LIB 272). It is disputed that the February 17, 2015 MRI was of the Virgil Harris in this case. (LIB 491). The February 17, 2015 MRI does not have Harris' birth date on it and appears to be someone else's MRI. (LIB 491). It is undisputed that Harris injured himself playing golf in July 2016 and that he was obese.

6.

In the late afternoon of October 4, 2016, Plaintiff was involved in a motor vehicle accident. His car was struck from behind. According to the police report, Plaintiff's vehicle sustained "[m]oderate" damage in the collision. LIB1436. At the scene, Plaintiff "complained of back pain but refused medical treatment." LIB1435.

**RESPONSE:** Objection. Under LR 56.1(B)(1) each fact shall be separate and numbered. There is more than one fact here. Objection. Under LR 56.1(B)(1) each material fact must be supported by a citation to the evidence and the first two sentences above are without citation. Undisputed that Harris had a car accident on October 4, 2016, that he was struck from behind, sustained damage, had back pain and refused medical treatment.

7.

Later that week, on October 7, 2016, Plaintiff had an MRI of his lumbar spine,

which again showed "moderate degenerative spondylosis at all levels . . . most prominently at L5-S1." LIB1424. However, the MRI also confirmed,

> There is no evidence of fracture or bone destruction. There is a normal degree of lordosis. Signal intensity from the intervertebral discs appears normal. I see no evidence of a pars defect. I see no evidence of injury to the interspinous ligaments or the supraspinous ligaments.

LIB1424

**RESPONSE:** Objection. Under LR 56.1(B)(1) each fact shall be separate and numbered. There is more than one fact here. Undisputed that the October 7, 2016 MRI language is accurately reflected here, but it is also incomplete. (LIB 1425). For example, the MRI also stated that at L5-S1 there was "severe degenerative spondylosis." (LIB 1425).

8.

Plaintiff stopped work on October 14, 2016, and applied for short-term disability ("STD") benefits, which Lincoln approved on November 4, 2016. LIB1451. On November 7, 2016, Plaintiff visited gastroenterologist Dr. Clarence Clark to evaluate an anal fistula. LIB0849. Dr. Clark scheduled a colonoscopy and surgery to remove the fistula for November 28, 2016. LIB0851. The surgery was successful, and on the next day, Physician Assistant Chantel Lee wrote Plaintiff a

work excusal note indicating he should stay off work until December 31, 2016, because he "was referred for surgery." LIB1440.

**RESPONSE:** Objection. Under LR 56.1(B)(1) each fact shall be separate and numbered. There is more than one fact here. Undisputed that the records cited here state the above facts.

9.

Plaintiff next visited Dr. Blake on December 6, 2016, again complaining of back pain. On examination, Dr. Blake recorded that Plaintiff was "well-appearing" and "ambulating without difficulty." LIB0844. Dr. Blake described Plaintiff's symptoms as the result of "a benign musculoskeletal back injury" with a "favorable prognosis." LIB0844. But in a work excusal note Dr. Blake wrote the same day, he described Plaintiff as having "severe back problems" which required him to be off work until March 1, 2017. LIB1426.

**RESPONSE:** Objection. Under LR 56.1(B)(1) each fact shall be separate and numbered. There is more than one fact here. Undisputed that the records cited here state the above facts.

10.

Plaintiff visited Dr. Erik Bendiks, an orthopedist, on December 22, 2016. His

14

exam showed: the ability "to ambulate without difficulty"; "[p]ainless passive, full range of motion of bilateral hips"; and muscle strength of "5/5."  LIB0823.  Dr. Bendiks recommended steroid injections for back pain and also recommended a referral to Dr. Mark Feeman, a physiatrist, "as [Plaintiff] wishes to explore disability evaluation."  LIB0823.

**RESPONSE:**  Objection.  Under LR 56.1(B)(1) each fact shall be separate and numbered.  There is more than one fact here.  Objection.  Under LR 56.1(B)(1) each material fact must be supported by a citation to the evidence and the first  sentence above is without citation.  Undisputed that the medical records cited here contain the above language in part.

11.

Plaintiff visited Dr. Feeman on January 23, 2017.  According to the progress note, Plaintiff "complained of neck pain but denied back pain.'  LIB0251.  Dr. Feeman obtained another MRI of Plaintiff's cervical spine which showed "moderate degeneration" and noted it was "possible" that one apparent herniation might be "a recent and post-traumatic deformity."  LIB0492.  Dr. Feeman then completed a one-page, check-the-box Capacities Evaluation form, in which he opined that during an eight-hour work day, Plaintiff would be able to sit, stand, or walk for less than one

15

hour each.  LIB0254.  According to the form, Plaintiff would "never" be able to lift "[u]p to 10lbs."  LIB0254.  In addition to the form, Dr. Feeman also wrote a three-sentence advocacy letter in which he said, based on this one visit that Plaintiff sought out for that very purpose, Plaintiff was "totally and permanently disabled due to his intervertebral disc disorders as a result of MVA."  LIB0255.

**RESPONSE:**  Objection.  Under LR 56.1(B)(1) each fact shall be separate and numbered.  There is more than one fact here.  Objection.  Under LR 56.1(B)(1) each material fact must be supported by a citation to the evidence and the first  sentence above is without citation.  Undisputed that the medical records cited here contain the above language in part.  Disputed as to the characterization of Dr. Feeman's examination as a check the box evaluation since he examined Harris, reviewed records and diagnostic studies.  (LIB 255).

12.

On May 26, 2017, Lincoln's Disability Case Manager Danielle Alford approved LTD benefits and wrote to notify Plaintiff of that decision.  LIB0765.  IN her letter, she wrote, "Please notify our office immediately if your condition changes or your physicians alter your treatment plan."  LIB0766.

**RESPONSE:**  Objection.  Under LR 56.1(B)(1) each fact shall be separate and

numbered.  There is more than one fact here.  Undisputed that the records cited above contain this language.

13.

In accordance with Plaintiff's burden to prove his continuing eligibility for LTD benefits, Lincoln periodically requested updated medical evidence and made other investigations of the Plaintiff's condition.  *See. E.g.,* LIB723.

**RESPONSE:**  Undisputed that Lincoln requested medical records but LIB723 does not reflect that fact.  (LIB 723).  LIB723 is one page of an investigative report.  (LIB 723).

14.

On July 12, 2017, Plaintiff again visited Dr. Bendiks complaining of back and neck pain.  LIB0257.  On exam, Plaintiff was "[a]ble to ambulate without difficulty," but demonstrated "[g]uarding" with respect to his neck and back and reported "pain at terminal ranges of motion."  LIB0257.  Plaintiff showed "[n]o evidence of shoulder impingement," and his strength was "5/5 and equal symmetrically."  LIB0257.  Dr. Bendiks recommended Plaintiff for cervical fusion surgery and referred him to pain management pending approval of surgery.  LIB0258.

**RESPONSE:**  Objection.  Under LR 56.1(B)(1) each fact shall be separate and

17

numbered. There is more than one fact here. Undisputed that the records cited above contain this language in part.

15.

In response to Lincoln's inquiries as to his treatment plan, Plaintiff told Lincoln on July 17, 2017, that his medical insurer refused to approve payment for the recommended back surgery. LIB0738. In the meantime, Plaintiff began visiting Dr. Jose Mathew, and various physician assistants and nurse practitioners in his office, for pain management and the prescription of opioid drugs. *See, e.g.,* LIB0673; LIB0671; LIB0668; LIB0645.

**RESPONSE:** Objection. Under LR 56.1(B)(1) each fact shall be separate and numbered. There is more than one fact here. Undisputed that Harris' medical provider would not pay for back surgery. Undisputed that Harris began seeing Dr. Mathew and others.

16.

On September 1, 2017, Plaintiff visited Nurse Practitioner Dina Patel in Dr. Mathew's office for a refill of opioid pain medication. LIB0668. At that time, Plaintiff self-reported his pain as "10/10" and "worse with sitting and standing for prolonged periods." LIB0668. Yet on physical examination, Nurse Patel's note

shows that Plaintiff was "in no acute distress" and "conversant."  LIB0668.  His breathing was "unlabored," and his thoracic range of motion was "WNL," meaning within normal limits.  LIB0668-69.

**RESPONSE:**  Objection.  Under LR 56.1(B)(1) each fact shall be separate and numbered.  There is more than one fact here.  Undisputed that LIB 668-669 contain the above language.

### 17.

When Plaintiff returned to Dr. Blake on September 5, 2017, he reported low back pain, but he also reported exercising regularly—specifically, "4 to 5 x weekly x 45 mins to 1 hour."  LIB0692.  On exam, Dr. Blake found Plaintiff to be "[w]ell appearing, well nourished [and] in no distress."  LIB0693.

**RESPONSE:**  Objection.  Under LR 56.1(B)(1) each fact shall be separate and numbered.  There is more than one fact here.  Undisputed that LIB 692-93 contain the above language.

### 18.

To evaluate Plaintiff's evolving condition,  Ms. Alford asked a third-party vendor to select an independent physician to review the record.  The vendor selected R. Arthur Kalman, who is board certified in physical medicine and rehabilitation, and

he issued a report dated October 13, 2017.  LIB0659.  Dr. Kalman opined that the medical evidence supported the diagnoses of lumbar spondylosis and cervical radiculopathy, among others, and he opined that in light of the recommended back surgery, Plaintiff was likely to be functionally impaired.  LIB0664.  In an addendum report, Dr. Kalman opined that Plaintiff's impairment should not be re-evaluated for at least three months—enough time to see if the [Plaintiff] has surgery and how he progresses."  LIB0657.

**RESPONSE:**  Objection.  Under LR 56.1(B)(1) each fact shall be separate and numbered.  There is more than one fact here.  Undisputed that LIB 659, LIB 664 and LIB 657 contain the above language.

19.

Deferring to Dr. Kalman's assessment, Lincoln continued paying LTD benefits for the next eighteen months while collecting updated medical evidence.  During that time, Plaintiff continued to seek regular refills of opioid pain medications, *see, e.g.,* LIB0642; LIB0639; LIB0615; LIB0612; LIB0609; LIB0602: LIB0558, and he also began treatment with a chiropractor.  *See* LIB0277-302.  However, he never had the back surgery recommended by his treating orthopedist.

**RESPONSE:**  Objection.  Under LR 56.1(B)(1) each fact shall be separate and

numbered.   There is more than one fact here.   Under LR 56.1(B)(1) each material fact must be supported by a citation to the evidence and the last sentence is without citation. Undisputed that Lincoln paid benefits, that Harris remained on pain medication and saw a chiropractor.   Undisputed that Harris has not yet had the back or neck surgeries.

20.

Under the terms of the Group Policy, the definition of disability changed from an "own occupation" standard to an "any occupation" standard on April 13, 2019. *See, e.g.* LIB381.   In the months leading up to that change, Lincoln continued to request and review medical evidence from Plaintiff's treating practitioners.

**RESPONSE:** Objection.   Under LR 56.1(B)(1) each fact shall be separate and numbered.   There is more than one fact here.   Under LR 56.1(B)(1) each material fact must be supported by a citation to the evidence and the last sentence is without citation. Undisputed that the disability definition changed and that Defendant requested and reviewed evidence.

21.

Plaintiff had an MRI of his lumbar spine in June 11, 2018.   LIB0489. According to the diagnostic report, there was "moderate advanced disc degeneration"

at L5-S1 and "mild disc degeneration at the remaining lumbar levels," but "[n]o vertebral compression deformity or significant listhesis [was] seen at any level." LIB0489. "No paraspinal soft tissue pathology [was] appreciated in the lumbar region." LIB0489.

**RESPONSE:** Objection. Under LR 56.1(B)(1) each fact shall be separate and numbered. There is more than one fact here. Undisputed that the June 11, 2018 MRI reflects the above in part. (LIB 489).

22.

Approximately monthly, Plaintiff visited Dr. Mathew, and others in his office, for refills of opioid pain medication. The progress notes from these visits show that Plaintiff consistently self-reported pain of "10/10," but he also consistently presented at his appointments "in no acute distress" and consistently denied any side effects from the medication. *See, e.g.* LIB0552; LIB0486; LIB0480; LIB0469; LIB0433. When examined on January 29, 2019, for example, Nurse Practitioner Stephanie Bridges noted that Plaintiff's breathing was "unlabored," his strength was "5/5" in upper and lower muscle groups, and his neurological sensations and deep tendon reflexes were "grossly intact." LIB0433-34. Although Nurse Bridges observed decreased range of motion and "tenderness to palpation" along Plaintiff's cervical and

lumbosacral spine, she also noted that Plaintiff's thoracic range of motion was "WNL," or within normal limits, and that his thoracic region was "NTTP," or non-tender to palpitation.  LIB0434.

**RESPONSE:**    Objection.  Under LR 56.1(B)(1) each fact shall be separate and numbered.   There is more than one fact here.   Under LR 56.1(B)(1)  each material fact must be supported by a citation to the evidence and the first sentence is without citation.

Disputed that the progress notes show that Plaintiff consistently self-reported pain of 10/10. (LIB 384) (LIB 460) (LIB 480) (LIB 387).  On three  days he did report 10/10 pain.  (LIB 433) (LIB 486) (LIB 552).  But on one of these days, Harris' pain was "8/10 average.  The severity of the pain without pain medication is 10/10. The severity of the pain with pain medication is 6/10."  (LIB 384).   On another day, Harris' pain was 8/10 average and with medication 7/10. (LIB 460).   On October 29, 2018, it was 8/10 average.  (LIB 480). On March 1, 2019, Harris' records reflect no pain scale report at all.  (LIB 387).   Undisputed that LIB0433-34 reflects some of the above language.  Undisputed that Harris visted Dr. Mathew's office almost monthly for examination and medication.

23.

Subsequent examination findings by other treating practitioners in Dr. Mathew's office—including a March 1, 2019 examination by Nurse Practitioner Deborah Wilkins and a March 27, 2019 examination by Registered Nurse Dalandra Belcher—were essentially identical, again showing no acute distress, "grossly intact" strength in all extremities, and no neurological deficits. *See* LIB0387-88; LIB03484-85.

**RESPONSE:** Undisputed.

24.

On April 9, 2019, Plaintiff visited dermatologist Lauren Orenstein complaining of a new hidradenitis flare-up in his right armpit. LIB0327. She prescribed a topical ointment. LIB0329.

**RESPONSE:** Objection. Under LR 56.1(B)(1) each fact shall be separate and numbered. There is more than one fact here. Undisputed that LIB 327 and LIB 329 are accurately reflected here.

25.

In connection with Lincoln's "any occupation" review, Ms. Alford asked a third-party vendor to select an independent, qualified physician to review all of the

medical evidence in the file.  The vendor selected Dr. Howard Grattan, who is board certified in pain medicine and physical medicine and rehabilitation.  *See* LIB0360-69. In his report, dated April 17, 2019, Dr. Grattan summarized Plaintiff's medical records and attempted to contact Plaintiff's treating providers, but they did not return his calls.  *See* lIB0363.  Commenting on the medical evidence, Dr. Grattan noted diagnoses of lumbar spondylosis, cervical radiculopathy, and degenerative disc disease.  LIB0363.  He observed that Plaintiff did not have the fusion surgery. LIB0364.  Instead, Plaintiff "remained under the care of pain management" and "had an ongoing limited range of motion in the cervical and lumbosacral regions." LIB0364.  Taking into consideration "the entire clinical picture," Dr. Grattan explained that while the Plaintiff's medically supported limitations were "significant," they "would not preclude all level of function."  LIB0364.

**RESPONSE:**  Objection.  Under LR 56.1(B)(1) each fact shall be separate and numbered.  There is more than one fact here.  Under LR 56.1(B)(1) each material fact must be supported by a citation to the evidence and the first sentence is without citation and is thus disputed.  Undisputed that Dr. Grattan's report so stated.

26.

Specifically, Dr. Grattan found that Plaintiff's medically necessary restrictions

throughout a normal 40-hour work week would include:

> lifting, carrying, pushing and pulling up to 10 pounds occasionally (up to 1/3 of the day) and up to 5 pounds frequently (1/3 to 2/3 of the day).  Sitting up to 40 minutes continually for a total of up to eight hours per day with the ability to alter the position.  Walking and standing combined up to 20 minutes continually for a total of up to 3 hours out of an 8 hour day. . . . No crawling or balancing.  Occasionally perform reaching below the waist.  Occasionally, perform reaching overhead.  No restrictions with reaching at waist level.  Fingering, handling, feeling, and grasping is unrestricted. LIB0364.  In sum,

he concluded that Plaintiff would "at east have the capacity to function at a

sedentary level," provided he also had the opportunity to change position for

comfort.  LIB0364.

**RESPONSE:**  Objection.  Under LR 56.1(B)(1) each fact shall be separate and

numbered.  There is more than one fact here.  Undisputed that Dr. Grattan's report

so stated.  As is obvious from the report, Dr. Grattan provided no reasoning

explaining his findings.  (LIB 363-364).

27.

Ms. Alford next asked Rehabilitation Counselor Alicia Powell to prepare a

Transferable Skills Analysis ("TSA") to identify——in light of Plaintiff's education,

training, and employment background—occupations that Plaintiff could perform

within the medical limitations determined by Dr. Grattan.  Ms. Powell's report, dated

April 22, 2019, identified six "sedentary" occupations, including Plaintiff's own occupation of accountancy, that met all search criteria.  LIB0354.

**RESPONSE:**  Objection.  Under LR 56.1(B)(1) each fact shall be separate and numbered.  There is more than one fact here.  Under LR 56.1(B)(1) each material fact must be supported by a citation to the evidence and the first sentence is without citation and is thus disputed.    Undisputed that Ms. Powell's report identified six occupations.

### 28.

Based on Dr. Grattan's medical opinion and the results of Ms. Powell's vocational assessment, Ms. Alford determined that Plaintiff had failed to meet his burden to prove ongoing entitlement to LTD benefits under the Group Policy.  She wrote to notify him of her decision on April 30, 2019.  *See* LIB0345-52.  In her letter, she recited the applicable Group Policy language, identified the medical evidence considered, and quoted at length form Dr. Grattan's report and from Ms. Powell's analysis.  After explaining the decision, Ms. Alford conclude, "Benefits will be paid through April 22, 2019, and your claim is closed as of April 23, 2019."  LIB0350. The letter also notified Plaintiff of his right to appeal and said that the appeal submission should include "[a]ny additional office notes, diagnostic test results,

27

hospital records, clinical evaluations, specific restrictions or limitations imposed, medical opinions from your treating physicians, a valid functional capacity evaluation and any other medical documentation you feel will support you are unable to perform any occupation beyond April 22, 2019," as well as "any additional information that you feel will support your claim." LIB0351.

**RESPONSE:** Objection. Under LR 56.1(B)(1) each fact shall be separate and numbered. There is more than one fact here. Under LR 56.1(B)(1) each material fact must be supported by a citation to the evidence and the first and third sentences are without citation and are thus disputed. Undisputed that LIB0345-52 contained the above language.

### 29.

As permitted by the Group Policy, Plaintiff requested an administrative appeal of Lincoln's determination by letter dated May 15, 2019. LIB0339. In support of his appeal, Plaintiff submitted updated medical records and advised Lincoln that he was scheduled for hidradenitis surgery on June 24, 2019. LIB0340; *see also, e.g.,* LIB0209; LIB0221; LIB0170; LIB0172.

**RESPONSE:** Objection. Under LR 56.1(B)(1) each fact shall be separate and numbered. There is more than one fact here. Undisputed that Harris requested an

appeal.   Undisputed that Harris submitted updated medical records and advised Lincoln that he was scheduled for surgery.

30.

The additional medical records showed that Plaintiff visited Dr. Blake, his primary care physician, on May 14, 2019.  LIB0262.  Dr. Blake's progress note described Plaintiff's "chronic" neck and back pain, but on physical exam, Dr. Blake wrote: "Neck: Normal range of motion.  Neck supple."  LIB0264.  "Pulmonary/Chest: Effort normal and breath sounds normal.  No respiratory distress."  LIB0264. "Musculoskeletal: Normal range of motion.  He exhibits no edema, tenderness or deformity."  LIB0264.  "Neurological: He is alert and oriented to person, place, and time.  He has normal reflexes. . . . No cranial nerve deficit.  He exhibits normal muscle tone.  Coordination is normal."  LIB0264.  Despite such unremarkable exam findings, however, Dr. Blake also wrote, without any supporting rationale, "In my clinical opinion, this patient is unable to return to work at this time given his current diagnoses and comorbid conditions."  LIB00265.

**RESPONSE:**  Objection.  Under LR 56.1(B)(1) each fact shall be separate and numbered.  There is more than one fact here.  Undisputed that LIB 264-265 contains some of the above language.  Disputed that this was an "unremarkable exam. " (LIB

264-265). On that day Dr. Blake found back pain due to severe degenerative disc disease complicated by several herniations and nerve impingement, arm pain, neck pain and knee pain. (LIB 262-264). He found severe pain and loss of range of motion of the left upper extremity 2/2 herniated C-Spine Disc including the inability to raise the left arm above 90 degrees. (LIB 262-264).

31.

Plaintiff also submitted a report from chiropractor Dr. Donald Capoferri, dated May 21, 2019, which was apparently prepared in connection with Plaintiff's personal injury claims against the other drive in the October 2016 motor vehicle accident. LIB0175-82. While Dr. Capoferri's report contains narrative descriptions of certain neck and spine imaging results, the report appears to be more geared towards establishing causation—*i.e.,* attributing Plaintiff's symptoms to the accident—rather evaluating the degree or extent of Plaintiff's alleged functional limitations. The report concludes that Plaintiff's injuries "have caused permanent and consequential limitations," but Dr. Capoferri did not describe what those limitations were or what functional capacity the Plaintiff might retain. *See* LIB0182.

**RESPONSE:** Objection. Under LR 56.1(B)(1) each fact shall be separate and numbered. There is more than one fact here. Under LR 56.1(B)(1) each material

fact must be supported by a citation to the evidence and the second sentence is without citation and is thus disputed.   Undisputed that the report contained the language quoted above and that Harris submitted it.

### 32.

Finally, Plaintiff also submitted records pertaining to his surgery on June 24, 2019, to remove a hidradenitis lesion from his right armpit. *See, e.g.,* LIB0171. Post-operative records from Plaintiff's dermatologist, later submitted, showed the "surgical site healing well" and "good arm mobility." LIB0062.

**RESPONSE:**   Objection.   Under LR 56.1(B)(1) each fact shall be separate and numbered.   There is more than one fact here.   Undisputed that LIB 171 and LIB62 are accurately reflected.

### 33.

Lincoln assigned the appeal to Appeals Consultant Courtney Grygiel.  Ms. Grygiel first asked medical consultant Dr. Sheila Natarajan, who is board-certified in physical medicine and rehabilitation, to review all of the medical evidence in the record.  In her report, dated July 9, 2019, Dr. Natarajan discussed the Plaintiff's lumbar and cervical diagnoses as well as his skin condition.  She concluded that the medical records "reasonably support" a number of "significant" activity restrictions

but were nevertheless "insufficient to support an inability to sustain full-time capacity" within those restrictions. LIB0116-17.

**RESPONSE:** Objection. Under LR 56.1(B)(1) each fact shall be separate and numbered. There is more than one fact here. Under LR 56.1(B)(1) each material fact must be supported by a citation to the evidence and the first three sentences are without citation and are thus disputed. Disputed in particular that Dr. Natarajan made any finding whatsoever with regard to Harris' skin condition. (LIB 118). Dr. Natarajan stated "I defer comment on impairment associated with any dermatologic condition to the appropriate specialist." (LIB 118). Undisputed that LIB 116-117 contains the above quoted language.

34.

In explaining her conclusion, Dr. Natarjaran noted that the MRIs closer in time to the motor vehicle accident evidenced disc herniation, however, "given the amount of time that has passed. . . , it is possible for disc resorption and remodeling to occur around the previous herniations." LIB0117. She cited the absence of "any electrodiagnostic studies to evaluate and confirm ongoing radiculopathy." LIB0117. Noting the consistent findings of "normal strength," she said, radiculopathy, "too, can improve over time and appears to have done so with no further neuromotor findings

found on recent physical exams." LIB0117. Next, Dr. Natarjaran discussed "discrepanc[ies] within the different providers' notes." LIB0117. She contrasted, for example, Dr. Blake's "relatively benign" examination results on May 14, 2019, with his opinion the Plaintiff would be completely unable to work. LIB0117. "Lastly," she concluded, "the treatment plan . . . included a recommendation for surgical intervention in 2017 which has not yet occurred." LIB0117. "In the absence of surgery, there does not appear to be any current escalation of medication or alternative pain management recommendations which does not correlate with the severity of claimed impairment of "no workability." LIB0118.

**RESPONSE:** Objection. Under LR 56.1(B)(1) each fact shall be separate and numbered. There is more than one fact here. Undisputed that LIB 117-118 contains the above quoted language.

35.

Upon receipt of the report, Ms. Grygiel asked Rehabilitation Counselor Lori Ashworth to prepare a new vocational assessment using the restrictions identified by Dr. Natarjaran. Ms. Ashworth concluded, "Based on these updated capacities, the previously identified occupations of Accountant, Budget Accountant, Cost Accountant, Budget Analyst and Tax Preparer remain viable." LIB0147.

**RESPONSE:**   Objection.   Under LR 56.1(B)(1) each fact shall be separate and numbered.   There is more than one fact here.   Under LR 56.1(B)(1)  each material fact must be supported by a citation to the evidence and the first sentences is without citation and is thus disputed.   Undisputed that LIB 147 contains the above quoted language.

36.

To have the benefit of a second opinion as to the medical evidence, Ms. Grygiel also asked medical consultant Dr. David Houghton, who is board-certified in internal medicine, to review the entire record and evaluate Plaintiff's functional capacity.  Dr. Houghton's report, dated July 24, 2019, contains a lengthy and detailed review of Plaintiff's medical and treatment history, both before and after his October 2016 motor vehicle accident.  He concluded that the following functional limitations were reasonably supported:

> No sitting longer than 1 hour without opportunity to stand.  No standing or walking longer than 15 minutes without opportunity to sit.  No more than occasional bending/twisting at the waist or neck.  No exertion of more than 20 pounds of force.

LIB0134.   But Dr. Houghton also concluded that the evidence did not support Plaintiff's alleged inability to perform sedentary work.  LIB0134.  He continued,

There is no medical basis on which to restrict a patient's participation in sedentary productive activity because of chronic neck and back pain. This is an issue of personal tolerance, and not one of objective medical science. There is no medical risk involved. There is much published evidence that restricting light activity in patients with chronic back pain is harmful rather than helpful. . . . The claimant's self-documented recreational activity suggests that his condition is not as severe as he indicated to his clinicians.

* * *

[T]he claimant has had chronic neck and back pain for years, with degenerative changes in the cervical and lumbar spine, including L5-S1 disc herniation. It was apparently aggravated by a motor vehicle collision in 2013. Despite this, the claimant continued working at his full-time sedentary job. In the summer of 2016 he reported 10/10 low back pain after golfing (the maximum pain a person is capable of experiencing). Nevertheless he continued working. He was in another moderate motor vehicle collision in October 2016, at which time he declined medical attention. Since then he has continued to complain of 10/10 back pain, as well as a lesser degree of neck pain. . . . His clinicians have said that the collision exacerbated his chronic back pain, but objective abnormalities on exam have been mild and inconsistent. In many instances the exam findings and pain intensity have been sharply at odds with demonstrated functional capacity. Treatment has remained the same for over 2 years, consisting of a low potency opioid, a muscle relaxer, and low dose gabapentin. . . . There is no objective support for the opinion of his clinicians that he is totally disabled, and there is substantial evidence that his functional capacity is sufficient for sedentary full-time productive activity. A large number of studies show that patients involved in litigation or disability disputes or at-fault injury are much more likely to remain out of work. Unfortunately in this case it appears that the treating clinicians have contributed to this resistance rather than helping to overcome it.

LIB0135-40.

**RESPONSE:**    Objection.    Under LR 56.1(B)(1) each fact shall be separate and

35

numbered.   There is more than one fact here.   Under LR 56.1(B)(1) each material fact must be supported by a citation to the evidence and the first two sentences are without citation and are thus disputed.   It is undisputed that the report cited above contains the above language.   The accuracy of Dr. Houghton's conclusions that Harris worked with  neck and back pain for years is disputed because this appears to have been primarily based on a 2015 MRI that was not of the Virgil Harris in this case as is obvious from the birth date on that record. (LIB 491).   Moreover, the level of pain that Dr. Houghton claims that Harris reported due to his golfing problem does not appear to be accurate.  (LIB 1260-71, LIB 863-865).   His pain from golfing in the summer of 2016 was described as "moderate." (LIB 1260).   His pain was described as "dull." (LIB 864).

37.

To provide Plaintiff an opportunity to review and comment on Dr. Natarajan's and Dr. Houghton's reports and Ms. Ashworth's vocational assessment, Ms. Grygiel sent copies of those materials to Plaintiff on July 24, 2019.  LIB0114.   Plaintiff responded on August 2, 2019, by calling Dr. Houghton's report a "diatribe of insults, insinuations, and defamations" and accusing Dr. Natarajan of overlooking 2018 MRI evidence contained in the file.   LIB0081.   Plaintiff subsequently submitted the

additional dermatology records mentioned above, which showed that his armpit lesion surgery was "healing well." LIB0062. In a separate letter, Plaintiff's dermatologist, Dr. Tova Rogers, said that hidradenitis suppurativa is a "chronic disease" and lamented that patients with the condition "suffer throughout their lives with episodes of these debilitating skin lesions." LIB0061. She did not identify any specific restrictions on Plaintiff's activities due to the disease or offer any opinion that he was unable to work. LIB0061.

**RESPONSE:** Objection. Under LR 56.1(B)(1) each fact shall be separate and numbered. There is more than one fact here. Undisputed that LIB 114, LIB 81, LIB 62 and LIB 61 contain the above language. Disputed that Dr. Rogers did not identify specific restrictions. (LIB 61). Dr. Rogers stated that "it can be very painful to sit, especially for prolonged periods of time." (LIB 61).

38.

After reviewing Plaintiff's reply, Dr. Houghton provided an addendum report on August 16, 2019, which contained a detailed response. LIB0074. Dr. Houghton again emphasized that the records show that Plaintiff reported "the same severity level of pain"—10/10—both before and after his last day of work. LIB0074. Thus, "[t]here is no objective evidence in the available records that [Plaintiff's] lumbar

condition has substantially worsened since he was working full-time." LIB0074. Similarly, Dr. Houghton explained, "The available MRI results have not substantially changed since before [Plaintiff] stopped working." LIB0074. Dr. Houghton also observed that the records do not show consistent neurological deficits and that Plaintiff's treatment regime has been stable for more than two years. LIB0076.

**RESPONSE:** Objection. Under LR 56.1(B)(1) each fact shall be separate and numbered. There is more than one fact here. It is undisputed that the report cited above contains the above language. The accuracy of Dr. Houghton's conclusions - that Harris worked with neck and back pain for years - is disputed because this appears to have been primarily based on a 2015 MRI that was not of the Virgil Harris in this case as is obvious from the birth date on that record. (LIB 491).

39.

Dr. Natarajan also prepared an addendum, dated August 22, 2019, in which she specifically addressed Plaintiff's most recent 2018 MRI and explained that "there is no information from that scan that would change my conclusions" or otherwise indicate restrictions or limitations more extensive than those identified in her prior report. LIB0056.

**RESPONSE:** Undisputed that LIB 56 so states.

40.

On the basis of the peer review reports and addendums, the vocational assessment, and the entirety of the record before Lincoln, Ms. Grygiel concluded on August 23, 2019, that Plaintiff had again failed to prove his entitlement to LTD benefits under the Group Policy. LIB0047. In her letter notifying Plaintiff of the decision, she explained that "the existence of a medical condition/diagnosis in and of itself does not equate to eligibility for long term disability benefits.' LIB0053. Rather, the "focus" of the assessment is "whether or not [an] impairment exists that would preclude you from performing the duties of your own occupation or any occupation." LIB0053. After discussing the medical peer reviews at length, Ms. Grygiel acknowledged that the medical evidence reasonably supported certain physical restrictions and limitations. But despite such restrictions and limitations, as she explained, the evidence submitted failed to prove that Plaintiff would be unable to perform the duties of his own sedentary occupation, let alone the duties of other sedentary occupations also identified by Ms. Ashworth's analysis. LIB0053.

**RESPONSE:** Objection. Under LR 56.1(B)(1) each fact shall be separate and numbered. There is more than one fact here. Under LR 56.1(B)(1) each material fact must be supported by a citation to the evidence and the fourth sentence is without

citation and is thus disputed.  Undisputed that LIB 47 and LIB 53 contain the above quoted language.

Respectfully submitted this __4th__ day of December, 2020.

ROGERS,  HOFRICHTER & KARRH, LLC

*s/Heather K. Karrh*

225 S. Glynn St., Ste. A          Heather K. Karrh
Fayetteville, GA 30214           Attorney for Plaintiff
(770) 460-1118                      Ga. State Bar No. 408379

# CERTIFICATE OF COMPLIANCE AND

# CERTIFICATE OF SERVICE

I do hereby certify that this brief complies with the paper requirements in Local Rules.  I hereby certify that I have this day attached a copy of the within and foregoing Plaintiff's Response to Defendant's Statement Of Undisputed Material Facts upon all parties to this matter by the ECF system with service to:

Amy E. Jensen

Scott K. Pomeroy

This 4th  day of December, 2020.

ROGERS, HOFRICHTER & KARRH, LLC

*s/Heather K.Karrh*

225 S. Glynn St., Ste. A               Heather K. Karrh
Fayetteville, GA 30214               Attorney for Plaintiff
(770) 460-1118                        Ga. State Bar No. 408379

41