IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| VIRGIL HARRIS | ) |
| | ) |
|    Plaintiff | ) |
| | ) CIVIL ACTION |
| v. | ) |
| | ) FILE NO. 1:19-cv-04257-CC |
| LINCOLN LIFE ASSURANCE | ) |
| COMPANY OF BOSTON | ) |
| | ) |
|    Defendant | ) |

**PLAINTIFFS' BRIEF IN REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Comes now the Plaintiff, Virgil Harris (hereinafter "Harris") and files this Brief in Reply to Lincoln Life Assurance Company of Boston's (hereinafter "Defendant") Opposition to Plaintiff's Motion for Summary Judgment.

## I.   ARGUMENT AND CITATION OF AUTHORITY

### A.   Harris is disabled.

Defendant opens its brief stating that Harris has focused on the wrong time period, the period in which it agreed that Defendant was disabled namely October 2016 through April 13, 2019. This is a mis-characterization of Harris' argument as Harris has plenty of evidence that he remained disabled after April 13, 2019. However, in this case, Harris' past medical evidence is particularly significant and

1

worthy of in depth examination. When the past evidence is compared with the more recent evidence it is obvious that nothing changed from the time in which Defendant agreed that Harris was disabled to the current date. Defendant has no evidence that Harris improved in anyway which would justify its termination of benefits. Harris still needs both neck and back surgery.[1] Harris still cannot sit long enough to perform sedentary work, the lowest level of work. Throughout this litigation, Harris submitted updated medical records to Defendant as suggested by the Eleventh Circuit. Harris attaches a redacted copy of those records here. See Attachment B.[2] Even a quick perusal reveals that Harris is still in a great deal of pain and is still limited by that pain. (See B p. 64 - back pain continues, p. 444 still awaiting approval for surgery).

Defendant has no evidence that Harris has improved and had none on April 13, 2019 when it terminated benefits. Many Courts have found that administrators made the wrong decision to terminate benefits when there was no significant change in the

---

[1]Harris' health insurance will not cover his surgeries see Attachment A because it believes that a third party (the person who hit Harris) is responsible. Ironically the person who hit Harris is insured at least in part by Defendant, see previously attached Harris Affidavit. So in effect, Defendant is prohibiting Harris' recovery.

[2]Harris notes that the claims file filed by Defendant does not appear to have been redacted in violation of this Court's local rules. While Harris' birthday has proved important to this case the un-redacted file still presents a problem.

claimants' condition.  McOsker v. Paul Revere Life Ins. Co., 279 F.3d 586, 589 (8th Cir.2002) ("We are not suggesting that paying benefits operates forever as an estoppel so that an insurer can never change its mind; but unless information available to an insurer alters in some significant way, the previous payment of benefits is a circumstance that must weigh against the propriety of an insurer's decision to discontinue those payments."). Bledsoe v. Metro. Life Ins., 90 F. Supp. 3d 901, 910–11 (C.D. Cal. 2015)("This Court would expect MetLife to provide some evidence of Plaintiff's medical progression at the time of MetLife's termination of LTD benefits.");  Barnes v. Hartford Life & Accident Ins. Co., No. 4:04CV01114 JLH, 2005 WL 8164557, at *8 (E.D. Ark. Oct. 7, 2005)(Hartford must show some significant change in the information available to it to terminate benefits); Connelly v. Reliance Standard Life Ins. Co., No. CIV.A. 13-5934, 2014 WL 2452217, at *8 (E.D. Pa. June 2, 2014) (Court found that there was no new medical evidence to support Reliance's change in position regarding Connelly's ability to work).

Defendant may argue that the definition of disability changed from own occupation to any occupation at the time it terminated benefits.  However, as stated above, Harris had a sedentary job which is the lowest level of physical work so the change in definition has no significance.  Since Harris cannot not perform sedentary work he cannot perform, "with reasonable continuity, the Substantial and Material

Acts of any occupation, ... in which he could reasonably be expected to perform satisfactorily in light of his age, education, training, experience, station in life, and physical and mental capacity." (LIB 1465).[3]

### B.   Harris is relying on more than a "Diagnosis."

Defendant cites Howard v. Hartford Life & Accident Ins. Co., 929 F. Supp. 2d 1264, 1295 (M.D. Fla. 2013) for that proposition that a mere diagnosis is not a disability.  This may be a truism, however, Harris has more than a mere diagnosis. Multiple doctors have examined Harris and found him to be disabled.  Moreover, the law and the facts of Howard are so dissimilar to this case that it is completely unhelpful to Defendant's argument.  First and foremost, in Howard there was "no dispute that Hartford had full discretion and authority to determine eligibility of benefits and to construe and interpret all terms and provisions of the Plan." Id. at 1287-88.  Thus, in Howard as long as Hartford's decision was reasonable based upon the facts known to the administrator at the time the decision was made, its position would be upheld. Id. at 1288.  Here there is no discretion as Defendant admits in its briefing. (Doc. 35-1 at 4).  Defendant is not given the benefit of the doubt.  All Harris must prove is that he is disabled by a preponderance of the evidence and the record

---

[3]All LIB citations refer to the administrative record bates-labeled LIB-000001 through 001577 attached to Defendant's Motion.  Harris hereby incorporates these attachments by reference.

before the Court is not closed.  See Smith v. Cox Enterprises, Inc., 81 F. Supp. 3d 1366, 1379 (N.D. Ga. 2015)(If the Court finds, by a preponderance of the evidence, that the claimant is entitled to benefits, then the decision was *de novo* wrong.) See Kirwan v. Marriott Corp., 10 F.3d 784, 789 (11th Cir.1994) (a court conducting a *de novo* standard of review may consider any relevant evidence in existence regarding an individual's disability at the time the plan administrator's decision was made regardless of whether this evidence was made available to the administrator).[4]

Unlike in our case, in Howard, the plaintiff had to prove not only Hartford was *de novo* wrong, but also that Hartford's decision was unreasonable.  Id.  This is a far more difficult standard than the one in this case.  Furthermore, the insurance company in Howard had much stronger evidence than the Defendant in our case.  In Howard the Defendant had six days of surveillance showing the plaintiff running errands for extended periods of time up to 7 hours and driving a total of 248 miles in one day. Id. at 1278. Defendant has no such evidence here.  Defendant's surveillance showed nothing and the great majority of the activities in which Defendant claimed Harris participated (through its social media investigation) occurred well before Harris was injured in his disabling car accident.  Therefore those activities are largely irrelevant.

---

[4]Normally, Harris' counsel would not spend a great deal of time on the standard of review but here Defendant does not seem to grasp the concept behind long settled Eleventh Circuit law.

In this case, Harris could prove that Defendant made an unreasonable decision because it did not fully investigate Harris' claims.  However, again, Harris does not have to do so.   All Harris must do is prove is that Defendant made the "wrong" decision.

> ### C.   Defendant's reviewing doctors' reports do not constitute reliable or persuasive evidence.

None of Defendant's "experts" examined Harris or even made contact with Harris' doctors.  Indeed, Dr. Houghton did not even try to make contact with Harris' doctors.  (LIB 122-128).   The fact that none of these doctors examined Harris makes their reports less persuasive.  In its brief, Defendant cites numerous cases that state that ERISA does not mandate that insurers order in person examinations.  First,  the large majority of these cases were not decided under the *de novo* standard of review.  See, Killen v. Reliance Standard Life Ins. Co., 776 F.3d 303, 307 (5th Cir. 2015) (the "plan gave Reliance Standard discretion to determine benefit eligibility"); Hobson v. Metro. Life Ins. Co., 574 F.3d 75, 82 (2d Cir. 2009) (where, as here, written plan documents confer upon a plan administrator the discretionary authority to determine eligibility, we will not disturb the administrator's ultimate conclusion unless it is arbitrary and capricious); Williams v. Aetna Life Ins. Co., 509 F.3d 317, 321 (7th Cir. 2007) (Here, because the Plan's administrator does have discretionary authority, the

court reviews Williams's denial of benefits under the arbitrary and capricious standard.); Rutledge v. Liberty Life Assur. Co. of Bos., 481 F.3d 655, 659 (8th Cir. 2007) (Court considered whether Liberty Life abused its discretion); Calvert v. Firstar Fin., Inc., 409 F.3d 286, 292 (6th Cir. 2005) (Court applied the arbitrary and capricious standard); Cusson v. Liberty Life Assur. Co. of Bos., 592 F.3d 215, 224 (1st Cir. 2010), abrogated by Montanile v. Bd. of Trustees of Nat. Elevator Indus. Health Benefit Plan, 577 U.S. 136, 136 S. Ct. 651, 193 L. Ed. 2d 556 (2016) (Abuse of discretion standard applied).

Thus, these cases merely found that it was not unreasonable for the insurer to rely on record reviews alone. Again, in this case the question is not whether Defendant acted reasonably or abused its discretion, but whether Defendant made the wrong decision under a *de novo* standard. Second, it is simply a fact that in person examinations are more credible than record reviews. In Nord, the Supreme Court recognized that "treating physicians, as a rule, have a greater opportunity than consultants to know and observe the patient." Id. at 832. Moreover Courts in this Circuit have recognized that "[c]ommon sense and a stream of legal precedent suggest... factual determinations of a treating physician are objectively more reliable." Burt v. Metropolitan Life Ins. Co., 2005 WL 4712457, *11 (N.D.Ga. September 16, 2005) (emphasis in original); Johnson v. Metropolitan Life Ins. Co., 2008 WL

7

2302693, *12 (N.D.Ga. May 30, 2008). Harris' treating doctors factually determined that he was disabled in part based upon their repeated examinations of him and therefore their opinions are more reliable than Defendant's doctors on this basis alone.

In a footnote, Defendant makes a strange argument that claimants' treating physicians are often hired by the claimant's attorney and thus are disposed to find the claimant disabled. (Doc. 30, p.11, n. 1). This would be a better argument if Harris actually had an attorney during the administrative level. At that time, Harris was not represented as is obvious from the claims file and his appeal letters. (See LIB 86, for example). Indeed, none of Harris' doctors were hired by the attorney representing him in his disability lawsuit. Indeed, the only practitioner that appears not to be a treating physician is Dr. Capoferri, the IME chiropractor hired in conjunction with his car wreck case presumably by the firm representing him in that case. (LIB 175-199). The other flaw in such an argument is that the reasoning would apply equally to Defendant's experts who were hired by the insurer and are thus likely disposed to find against the claimant.

Defendant then attempts to rehabilitate its reviewing doctors' reports. With regard to Dr. Grattan, Defendant does not deny in its brief that there was no reasoning explaining his conclusions. (Doc. 39 p. 13- 15). Again this report is not persuasive

evidence because it is an opinion without any reasoning. With regard to Dr. Natarajan, Defendant misrepresents Dr. Natarajan's two reports glossing over the fact that she undermined her own reasoning for finding Harris to be capable of work. (Doc. 39 p. 15-17). In her first report, Dr. Natarajan reasoned that the 2017 MRIs were somewhat dated/older and that Harris could have improved by this time. In her addendum she reviewed the 2018 MRI that she had missed previously. She noted that the 2018 MRI revealed that the herniations were still present, but stated that it did not change her mind. In other words, she decided that it did not matter that Harris had not actually improved despite that being the central reason she did not originally find him to be totally disabled. Inconsistency in reasoning is unpersuasive.

With regard to Dr. Howard, Defendant incredibly argues that it does not matter that he based his opinion in large part on an MRI that was of a different person than Harris because the MRI was contained in Harris' medical records. (Doc. 39 p. 21). Again, Dr. Howard performed one act for Defendant, he reviewed the medical records. By not noticing that the MRI was of a different person in either of his two reports, he failed to perform his one action competently. In its brief, Defendant makes a factually and legally wrong argument stating that Harris cannot point out that the MRI was of a different person because he failed to state this at the administrative level. This is simply not true factually. On August 2, 2019 during the administrative

process, Harris wrote Defendant clearly questioning the existence of a 2015 MRI. (LIB 86). He stated "What cervical MRI is he referring to? Who ordered it? Who conducted it?" (LIB 86). Dr. Houghton was clearly alerted to the fact that this may have not been an MRI of the Virgil Harris in this case. Indeed, Dr. Houghton stated "the claimant's statement questions whether or not an MRI of the cervical spine was done on 2/17/15." (LIB 86). Thus, the issue that there was something wrong with this MRI was clearly raised at the administrative level, but Dr. Houghton simply failed to notice this key fact. Legally, again, Defendant fails to understand the concept of a *de novo* review. In the Eleventh Circuit on *de novo* review, Harris may make any argument at any time.[5]

Defendant also attempts to rehabilitate Dr. Houghton's opinion by pointing out that Harris did on one date prior to the October 2016 accident state that he was suffering "10-worst pain" to his dermatologist. (LIB 129). This does appear to be an accurate statement and Harris' attorney had not noticed this record prior to this brief since she did not think to look in his dermatologist's records for a description

---

[5]Indeed, even if this case were to be decided under the arbitrary and capricious standard, there is no Eleventh Circuit authority which limits a claimant's arguments. Administrators are the entities under the arbitrary and capricious standard that cannot make *post hoc* arguments. Castanon v. UPS/IBT Full-Time Employee Pension Plan, No. 1:16-CV-0621-AT, 2017 WL 4863238, at *4 (N.D. Ga. Aug. 4, 2017).

of his back pain. (LIB 1236).  However, one day of reporting serious pain provides little support for Dr. Houghton's incorrect opinion that Harris had the same level of pain for years but had worked with it.  (LIB 128).

### D.    Harris' affidavit is admissible.

Defendant argues that Harris cannot submit an affidavit as to his past and current activities.  Again, Defendant does not understand the concept of a *de novo* review.  Moon v. Am. Home Assur. Co., 888 F.2d 86, 89 (11th Cir. 1989) ("American Home's contention that a court conducting a *de novo* review must examine only such facts as were available to the plan administrator at the time of the benefits denial is contrary to the concept of a *de novo* review." ).

### E.    Harris' Hidradenitis contributes to his disability.

Defendant argues that Harris "attempts to shift the basis of his claim" to his skin condition and Dr. Rogers' letter regarding his skin problems.  (Doc. 39 p. 24). This is not true.  From the beginning Harris has claimed that he is disabled due to back and neck pain for which he needs two surgeries.  However, Harris' skin condition is part of his overall condition and must be considered because it too limits him.  There does not seem to be any evidence that Defendant's doctors seriously considered Harris' skin problems.  Indeed, in her first report, Dr. Natarajan deferred comment on the hidradenitis to a more appropriate specialist. (LIB 118).  Further,

none of Defendant's reviewers appear to comment on Dr. Rogers' August 19, 2019 supportive letter at all. Dr. Grattan's report and Dr. Houghton's two reports were made prior to the date of Dr. Rogers' letter. (LIB 360-366) (LIB 122-128) (LIB 74-76). Dr. Natarajan's addendum report was made after the letter, but she does not appear to mention it in her second report. (LIB 56). If Harris had to prove that Defendant acted unreasonably in this case, he could do so by pointing out that Defendant failed to consider the effect his skin problems have on his overall ability to work. Harris does not have to do so however.

## II.   CONCLUSION

This is not a complicated case. Harris has overwhelming support from his doctors. Dr. Blake, Dr. Feeman and Dr. Bendiks have made repeated and detailed statements supporting Harris' disability. Harris has objective evidence of his back problems and his skin problems which are shown through repeated MRIs and other tests. These problems are known to cause pain. Harris has been recommended to have both neck and back surgery. Harris' skin condition interferes with his ability to sit. Harris has the results of his PCE with Dr. Feeman and the results of his IME with Dr. Capoferri. Harris has medical records showing that short of surgery (which is not covered by his health insurance), he has undergone every possible treatment for his pain. Harris' medical records also show consistent reports of pain since October

2016. Harris' records show that he has to take narcotic medications. Finally, one of Defendant's own doctors, Dr. Kalman, reviewed the file and agreed that Harris was totally disabled. (LIB 659-666). Indeed, Defendant itself found that Harris was disabled from a sedentary job for two years and has no evidence whatsoever that Harris' condition has improved since it made that finding. Defendant's evidence consists of the record reviews of three doctors who never even spoke with Harris' treating physicians much less actually examined Harris himself. Further each of their reports were flawed. One report was so flawed as to be incompetent since that doctor based his opinion in large part on an MRI that was of a different person. To summarize, Harris' evidence is substantial and Defendant's evidence is very weak.

For the reasons stated above, Harris respectfully moves this Court to GRANT his Motion For Summary Judgment and AWARD benefits to date and grant any further relief available including attorney fees and interest.

Respectfully submitted this 18th day of December, 2020.

ROGERS, HOFRICHTER & KARRH, LLC

*s/Heather K. Karrh*

225 S. Glynn St., Ste. A          Heather K. Karrh
Fayetteville, GA 30214           Attorney for Plaintiff
(770) 460-1118                      Ga. State Bar No. 408379

13

## <u>CERTIFICATE OF COMPLIANCE AND</u>
## <u>CERTIFICATE OF SERVICE</u>

I do hereby certify that this brief complies with the paper requirements in Local

Rules.  I hereby certify that I have this day attached a copy of the within and

foregoing Plaintiff's Brief in Reply to Defendant's Opposition to Plaintiff's Motion

for Summary Judgment upon all parties to this matter by the ECF system with service

to:

   Amy E. Jensen

   Scott Pomeroy

   This <u>18th</u> day of December, 2020.


                              ROGERS, HOFRICHTER & KARRH, LLC


                              *s/Heather K.Karrh*
225 S. Glynn St., Ste. A      Heather K. Karrh
Fayetteville, GA 30214        Attorney for Plaintiff
(770) 460-1118                Ga. State Bar No. 408379