**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

VIRGIL HARRIS,
     Plaintiff,

v.

LINCOLN LIFE ASSURANCE
COMPANY OF BOSTON,
     Defendant.

CIVIL ACTION NO.:
1:19-cv-4257-CC

## DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD

# Table of Contents

Table of Authorities  ...................................................................................... ii

Argument  ...................................................................................................  1

I.    Plaintiff has grossly misstated the proper scope and method
      of review in this case.  Kirwan v. Marriott Corp., upon which
      he relies, is no longer good law.  ............................................................  1

II.   Plaintiff is the one who "cherry-picks" the record by focusing
      on subjective self-reported symptoms and overlooking the
      weight of repeated examination evidence and reliable medical
      opinions that show his functional limitations are not as severe
      as he claims.  ........................................................................................  7

III.  Plaintiff continues to erroneously reverse his burden to prove
      his claim, focus on the wrong time period, and make other
      fallacious arguments.  It was never Lincoln's burden to prove
      that Plaintiff could work.  ......................................................................  11

Conclusion  ................................................................................................  15

**Table of Authorities**

**Cases**

Acree v. Hartford Life & Accident Ins. Co., 917 F. Supp. 2d 1296
(M.D. Ga. 2013) ...................................................................... 4

Blankenship v. Metropolitan Life Ins. Co., 644 F.3d 1350 (11th
Cir. 2011) ........................................................................... 4, 6

Buckley v. Metropolitan Life, 115 F.3d 936 (11th Cir. 1997) ........................... 2

Castanon v. UPS/IBT Full-Time Employee Pension Plan, 2017
WL 48632338 (N.D. Ga. August 4, 2017) .............................................. 4

Conkright v. Frommert, 559 U.S. 506 (2010) ..................................................... 13

Doyle v. Liberty Life Assurance Co., 542 F.3d 1352 (11th Cir.
2008) .......................................................................... 3, 4, 6

Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101 (1989) ........................... 1

Glazer v. Reliance Standard Life Ins. Co., 524 F.3d 1241 (11th
Cir. 2008) ........................................................................ 4–6

HCA Health Servs. v. Employers Health Ins. Co., 240 F.3d 982
(11th Cir. 2001) ................................................................. 1–4, 6

Heimeshoff v. Hartford Life & Accident Ins. Co., 571 U.S. 99
(2013) ................................................................................ 10

Hill v. Employee Benefits Admin. Comm., 971 F.3d 1321 (11th
Cir. 2020) ........................................................................ 4, 6

Howard v. Hartford Life & Accident Ins. Co., 929 F. Supp. 2d
1294 (M.D. Fla. 2013), aff'd 563 Fed App'x 658 (11th
Cir. 2014) ...................................................................... 10, 14

Kirwan v. Marriott Corp., 10 F.3d 784 (11th Cir. 1994) ................................. 1–4

Lee v. BellSouth Telecomms., Inc., 318 Fed App'x 829 (11th
    Cir. 2009) ...................................................................................... 14

Metropolitan Life Ins. Co. v. Glenn, 554 U.S. 105 (2008) ................................. 3

Myers v. Hercules, Inc., 253 F.3d 761 (4th Cir. 2001) ....................................... 9

Richey v. Hartford Life & Accident Co., 608 F. Supp. 2d 1306
    (M.D. Fla. 2009) .......................................................................... 10

Ruple v. Hartford Life & Accident Ins. Co., 340 Fed. App'x 604
    (11th Cir. 2009) ........................................................................... 11

Rush Prudential HMO, Inc. v. Moran, 536 U.S. 355 (2002) ............................ 13

Smith v. Cox Enters., Inc., 81 F. Supp. 3d 1366 (N.D. Ga. 2015) ..................... 4

Taylor v. Broadspire Servicing, Ltd., 314 Fed. App'x 187 (11th
    Cir. 2008) ...................................................................................... 10

Varity Corp. v. Howe, 516 U.S. 489 (1996) .................................................. 13

Vaughn v. Aetna Life Ins. Co., 2018 WL 2266909 (N.D. Ga. May
    17, 2018) ..................................................................................... 4, 5

Williams v. BellSouth Telecoms., Inc., 373 F.3d 1132 (11th Cir.
    2004) ....................................................................................... 2–5, 6

iii

**Statutes and Regulations**

Employee Retirement Income Security Act of 1974 ("ERISA"),
29 U.S.C. § 1001, *et seq.* ................................................................. *passim*

29 U.S.C. § 1104 ........................................................................... 13

29 U.S.C. §1132 ........................................................................... 6

## Argument

**I.    Plaintiff has grossly misstated the proper scope and method of review in this case.  <u>Kirwan v. Marriott Corp.</u>, upon which he relies, is no longer good law.**

Plaintiff contends, contrary to extensive Eleventh Circuit precedent governing the scope and method of review in ERISA benefits cases such as this, that under *de novo* review, this Court must treat the case as if it was a normal insurance contract dispute, accept all extra-record evidence that Plaintiff seeks to introduce, and deny summary judgment if any factual dispute exists.  Plaintiff has grossly misstated the proper scope and method of review.  He relies solely on <u>Kirwan v. Marriott Corp.</u>, 10 F.3d 784 (11th Cir. 1994), but on the points Plaintiff raises, Eleventh Circuit law has evolved over the past two decades into a unified, multi-step framework that applies to all ERISA benefits cases.

Following the Supreme Court's decision in <u>Firestone Tire & Rubber Co. v. Bruch</u>, 489 U.S. 101 (1989), the Eleventh Circuit recognized three potentially applicable standards for reviewing an ERISA administrator's benefit determination: "(1) *de novo* where the plan does not grant the administrator discretion; (2) arbitrary and capricious where the plan grants the administrator discretion; and (3) heightened arbitrary and capricious where there is a conflict of interest."  <u>HCA Health Servs. v. Employers Health Ins. Co.</u>, 240 F.3d 982, 993

1

(11th Cir. 2001) (quoting <u>Buckley v. Metropolitan Life</u>, 115 F.3d 936, 939 (11th

Cir. 1997); *see also*, *e.g*., <u>Williams v. BellSouth Telecoms., Inc.</u>, 373 F.3d 1132,

1137 (11th Cir. 2004) (discussing the three standards).  Thus, to properly evaluate

an administrator's determination under this multi-standard framework, the Court in

<u>HCA</u> also held that district courts must follow a series of analytical steps so as to

determine and apply the correct standard in each case.  <u>Id.</u>, 240 F.3d at 993.  "At

each step, the court makes a determination that results in either the progression to

the next step or the end of the inquiry."  <u>Id</u>.

After significant confusion developed in the lower courts regarding the

proper application of <u>HCA</u>'s multi-step ERISA framework, the Eleventh Court

revisited the issue in <u>Williams</u>, 373 F.3d at 1137.  In <u>Williams</u>, the Court distilled a

"simpler version" of the framework "for use in judicially reviewing virtually ***all***

ERISA-plan benefit denials." <u>Id.</u> at 1137 (emphasis in original).  The first two

steps in that simplified framework pertain to benefit determinations that are subject

to *de novo* review:

(1) Apply the *de novo* standard to determine whether the claim
administrator's benefits-denial decision is "wrong" (*i.e*., the court
disagrees with the administrator's decision); if it is not, then end
the inquiry and affirm the decision.

(2) If the administrator's decision is fact is "*de novo* wrong," then
determine whether [it] was vested with discretion in reviewing
claims; if not, end judicial inquiry and reverse the decision.

2

*Id.* at 1138 (footnotes omitted).  As is clear from Williams, a reviewing court only proceeds to the subsequent steps in the progression *if* the administrator's determination is "*de novo* wrong" *and* the administrator is vested with discretion. *Id.*  Said another way, the court begins at step one regardless of whether the administrator is vested with discretion.

In 2008, the Supreme Court decided Metropolitan Life Ins. Co. v. Glenn, 554 U.S. 105 (2008), in which it held that the existence of an ERISA administrator's so-called structural conflict does not give rise to the so-called "heightened" arbitrary and capricious standard of review. *Id.* at 115–116.  Per Glenn, there are only two potentially applicable ERISA standards of review: (1) *de novo*; and (2) arbitrary and capricious.  Not three.

Following the Supreme Court's decision in Glenn, the Eleventh Circuit modified the sixth step of its HCA-Williams framework in Doyle v. Liberty Life Assurance Co., 542 F.3d 1352 (11th Cir. 2008), to bring the framework into compliance with Glenn.  But to be clear, neither Glenn nor Doyle altered the first two steps in the framework.  And as the overwhelming weight of subsequent Eleventh Circuit authority confirms, HCA's multi-step framework—as modified by Williams and Doyle—continues to be the proper standard of review in this Circuit for all ERISA benefit determinations *regardless of whether the*

3

*administrator is vested with discretion or not*.  *See*, *e.g*., Hill v. Employee Benefits

Admin. Comm., 971 F.3d 1321, 1325–26 (11th Cir. 2020); Blankenship v.

Metropolitan Life Ins. Co., 644 F.3d 1350, 1354–55 (11th Cir. 2011); Glazer v.

Reliance Standard Life Ins. Co., 524 F.3d 1241, 1246 (11th Cir. 2008).[1]

Simply put, the HCA-Williams-Doyle-Blankenship multi-step framework

applies to all claims for ERISA benefits under 29 U.S.C. § 1132(a)(1)(B).  Under

that framework, this is a review proceeding "limited to consideration of the

material available to the administrator at the time it made its decision."

Blankenship, 644 F.3d at 1354.  As an ERISA review proceeding, the

commonplace occurrence that the Administrative Record may contain conflicting

evidence as to Plaintiff's alleged medical condition and functional capacity is not

grounds to deny summary judgment or convene trial to resolve such alleged factual

---

[1] *See also*, *e.g*., Vaughn v. Aetna Life Ins. Co., 2018 WL 2266909 at *5 (N.D. Ga. May 17, 2018) (administrator's determination held to be *de novo* correct without inquiring into whether administrator was vested with discretion); Smith v. Cox Enters., Inc., 81 F. Supp. 3d 1366, 1378–81 (N.D. Ga. 2015) (determination held to be neither *de novo* wrong nor arbitrary and capricious); Acree v. Hartford Life & Accident Ins. Co., 917 F. Supp. 2d 1296, 1304–06 (N.D. Ga. 2013) (reaching arbitrary and capricious review only after determining that the administrator's determination was *de novo* wrong); *see also*, *e.g*., Castanon v. UPS/IBT Full-Time Employee Pension Plan, 2017 WL 48632338 at *5 n.5 (N.D. Ga. August 4, 2017) (acknowledging earlier cases like Kirwan, but opting to follow the Eleventh Circuit's more recent teaching in Blankenship and Glazer).

disputes. *Id.*, 644 F.3d at 1354 ("Whether the administrator's decision was either

*de novo* correct or reasonable under this Court's <u>Williams</u> framework is a question

of law.").

Before Lincoln, Plaintiff had the burden to prove his claim by a

preponderance of the evidence; but in this Court, his burden is to prove not simply

that he was disabled at the relevant time, but that based on the evidence he

submitted, Lincoln's determination was "wrong"—meaning contrary to the

preponderance of that evidence. *See*, *e.g.*, <u>Glazer</u>, 524 F.3d at 1247 (claimant

bears burden to prove his claim); <u>Vaughn</u>, 2018 WL 2266909 at *8 ("When the

court reviews a plan administrator's decision under the *de novo* standard of review,

the burden of proof is placed on the claimant to show, by a preponderance of the

evidence, that he was entitled to the benefits he sought under the plan."); <u>Smith</u>, 81

F. Supp. 3d at 1379 (explaining that to be *de novo* wrong, the administrator's

determination must be contradicted by a preponderance of the evidence.).

Indeed, the Eleventh Circuit's decision in <u>Glazer</u> squarely rejects the very

arguments that Plaintiff makes here. In <u>Glazer</u>, the claimant "argue[d] that the

district court erred when it granted summary judgment because there were factual

disputes about whether [the claimant] was disabled." *Id.*, 524 F.3d at 1246. In

rejecting that argument, the Eleventh Circuit explained that the claimant

5

"misunderstands our standard of review."  *Id.*  The Court reiterated that it had

created "a well-defined series of steps" in reviewing ERISA benefit denials, and it

applied those steps, resolving the case under the first step's *de novo* standard

without ever reaching the question of whether the administrator was vested with

discretion.  *Id.*  Applying the *de novo* standard, the Court explained,

> A decision is "wrong" if, after a review of the decision of the
> administrator from a *de novo* perspective, the court disagrees with
> the administrator's decision.  The court must consider, based on
> the record before the administrator at the time its decision was
> made, whether the court would reach the same decision as the
> administrator.
>
> * * *
>
> Although there was a dispute about whether [the claimant] was
> disabled, there was no dispute about what was in the record when
> [the administrator] made its decision.  The district court had to
> review that record and decide whether the resolution of the dispute
> by [the administrator] was wrong.

*Id.* at 1246–47 (internal citations omitted).

Most recently, in Hill, 971 F.3d 1321, the Eleventh Circuit again reaffirmed

its approach to resolving all 29 U.S.C. §1132(a)(1)(B) benefit claims under the

unified six-step framework.  There, it affirmed an administrator's determination as

*de novo* correct at step one of the framework, and then stopped.  Hill, 971 F.3d at

1326.  In light of some two decades of settled Eleventh Circuit precedent, it would

be error for this Court to disregard the HCA-Williams-Doyle-Blankenship multi-

6

step framework and instead apply the traditional non-ERISA summary judgment scope of review as Plaintiff urges.

## II.     Plaintiff is the one who "cherry-picks" the record by focusing on subjective self-reported symptoms and overlooking the weight of repeated examination evidence and reliable medical opinions that show his functional limitations are not as severe as he claims.

Plaintiff accuses Lincoln of "cherry-picking" the record, *see*, *e.g*., Pl.'s Br. in Opp. at 21 (ECF Doc. #37-1), but the reverse is true.  The record does not contain evidence showing functional limitations of such severity that they would preclude sedentary-level work.

Plaintiff attacks Lincoln for highlighting examination records which consistently show no acute distress, unlabored breathing, normal muscle strength and tone, normal neck and thoracic ranges of motion, and normal mental status. *See*, *e.g*., LIB433–34; LIB387–88; LIB384–85; LIB327–28; LIB262–64.  Such medical evidence, which Plaintiff contends to be irrelevant, actually provides the essential context for Plaintiff's self-reports of chronic pain.  These examination findings—made by multiple medical practitioners over a span of months leading up to and continuing after Lincoln's termination of benefits—must be considered in evaluating Plaintiff's overall functionality and whether he proved his claim.  As explained in Lincoln's opening brief, *see*, *e.g*., Def.'s Memo. in Supp. at 28–29 (ECF Doc. #35-1), Plaintiff's absence of acute distress and unlabored breathing are

inconsistent with debilitating levels of pain; his retention of strength, muscle tone, and coordination are inconsistent with pain levels that would preclude sedentary activity; and Plaintiff's ability to converse appropriately, respond to commands, and follow instructions is likewise inconsistent with his self-report of pain of such severity that he could not concentrate or interact with co-workers.

The independent consulting physicians reviewed and specifically cited these contemporaneous examination records because they provide the most accurate picture of Plaintiff's true condition and limitations during the relevant time period. *See*, *e.g*., LIB361–63 (summarizing progress notes); LIB117–18 ("Dr. Blake . . . indicated within his note dated 5/14/19 the following findings which are relatively benign: normal range of motion, no tenderness or deformity, normal reflexes, normal muscle tone, normal coordination, and normal range of motion of the neck."); LIB143–44 (also summarizing progress notes).  In its memoranda, Lincoln discusses the results of the Plaintiff's physical examinations leading up to the termination decision in order to provide the Court with a complete picture of the Plaintiff's medical condition.

Plaintiff, by contrast, wants the Court to focus narrowly on his subjective complaints of pain.  Plaintiff reported "10/10" back pain both before and after his October 2016 motor vehicle accident—*i.e*., both before and after he stopped work.

8

*Compare*, *e.g.*, LIB1236 ("10 - Worst pain ever"), *with* LIB433 ("The severity of the pain without pain medicine is 10/10.  The severity of the pain with pain medicine is 10/10.")  Oddly, Plaintiff now argues that his reports of chronic pain varied at certain times, sometimes ranging as low as "6/10" or "8/10."  *See* Pl.'s Br. in Opp. at 20 (ECF Doc. #37-1).  Such arguments do not provide greater support for Plaintiff's claim, rather they merely highlight the subjective nature of his symptoms and undercut his own prior arguments based on the subjective severity of his chronic pain.  Moreover, by focusing on Plaintiff's subjective pain scores and ignoring the balance of the Administrative Record's extensive examination evidence, it is the Plaintiff who has improperly taken "bits of evidence out of context."  Myers v. Hercules, Inc., 253 F.3d 761, 768 (4th Cir. 2001).

As the consulting physicians found, on consideration of the whole record, Plaintiff's MRI studies and examination evidence do show some reduced range of neck and lower back motion and thus support certain restrictions.  *See*, *e.g.*, LIB364 (identifying medically necessary restrictions); LIB117–18 (same).  But such restrictions simply do not rise to the level of precluding Plaintiff from being able to perform the main duties of Plaintiff's own sedentary occupation.  *See*, *e.g.*, LIB117 ("The available medical records support impairment significant enough to require the detailed permanent restrictions and limitations outlined above.  The

9

medical records, however, do not contain sufficient evidence to support restrictions of 'no workability.'").

Again, it was the Plaintiff's burden to prove functional limitations precluding sedentary work, and he did not provide objective evidence of such limitations. Such evidence of functional limitation—and not just of a diagnosis or subjective symptoms—is necessary to support a claim for benefits. Plaintiff attempts to distinguish authorities such as Taylor v. Broadspire Servicing, Ltd., 314 Fed. App'x 187, 192 (11th Cir. 2008), Howard v. Hartford Life & Accident Ins. Co., 929 F. Supp. 2d 1294, 1295 (M.D. Fla. 2013), *aff'd* 563 Fed App'x 658 (11th Cir. 2014), and Richey v. Hartford Life & Accident Co., 608 F. Supp. 2d 1306, 1310 (M.D. Fla. 2009), on the basis of specific differences in the record evidence presented here and in those cases. But Plaintiff misses the big picture. In each of those cases, the Court upheld the administrator's determination because the claimants all failed—albeit in varying ways—to furnish proof of their claimed *functional limitations*. Absent proof of functional limitation, Plaintiff has not proven disability under the terms of the Group Policy. *See*, *e.g*., LIB1465 (defining "Disability"); LIB1471 (defining "Proof"); and Heimeshoff v. Hartford Life & Accident Ins. Co., 571 U.S. 99, 108 (2013) ("The plan, in short, is at the center of ERISA.").

10

**III.    Plaintiff continues to erroneously reverse his burden to prove his claim, focus on the wrong time period, and make other fallacious arguments. It was never Lincoln's burden to prove that Plaintiff could work.**

Throughout Plaintiff's Opposition Brief, he repeatedly reverses the burden of proof. For example he says, "In reality, [Lincoln] has no actual evidence that [Plaintiff's] spine did not worsen after October 2016." Pl.'s Br. in Opp. at 22 (ECF Doc. #37-1). But it was Plaintiff's burden to show that his back condition worsened—if that is his claim—and not Lincoln's burden to prove that it did not. *See*, *e.g.*, Ruple v. Hartford Life & Accident Ins. Co., 340 Fed. App'x 604, 613 (11th Cir. 2009) (rejecting argument that the burden shifts to the administrator to disprove disability once the administrator begins paying benefits). The evidence that Plaintiff submitted in connection with his claim did not show that his condition worsened.

Plaintiff says, "[Lincoln] has no evidence indicating that Dr. Bendick or Dr. Feeman have changed their opinions regarding [Plaintiff's] functionality." Pl.'s Br. in Opp. at 22 (ECF Doc. #37-1). But the burden is Plaintiff's, so the applicable observation would be that Plaintiff has no evidence—having submitted none—that either physician continued to support his claim during the relevant time frame.[2]

---

[2] Moreover, Dr. Capoferri's report did not provide objective evidence of any specific functional limitations, only assertions of causation. *See* LIB0182; *see also*, *e.g.*, Pl.'s Br. at 12 (ECF Doc. #37-1). Dr. Rogers's April 30, 2019 advocacy

11

Plaintiff says, "Dr. Grattan did not provide and actual explanation of why he believed [Plaintiff] was able to work." Pl.'s Br. in Opp. at 23 (ECF Doc. #37-1). Again, Plaintiff misunderstands the burden allocation in this case and the substance of Dr. Grattan's analysis, which simply explains why, in his medical opinion, the record evidence was insufficient to prove Plaintiff's claimed inability to work. *See* LIB0364–66. Similarly, it was never the role of Dr. Natarajan or Dr. Houghton to prove Plaintiff's ability to work. Rather, they examined the medical evidence Plaintiff submitted and offered their medical opinions as to what restrictions that evidence supported. *See*, *e.g*., LIB0117 (discussing reasonably supported restrictions); LIB0134 (same). Neither consulting physician concluded that Plaintiff was entirely free of restrictions as Plaintiff seems to imply.

Plaintiff urges that Lincoln has no duty to preserve fund assets because the plan is funded by an insurance policy, rather than being self-funded. Pl.'s Br. in

---

letter merely described the general difficulties a hidradenitis patient might have and speculated about what might happen in the future "when new lesions come up." LIB0061. Dr. Rogers did not say, at the time of her letter, that Plaintiff actually had any lesions that limited his sitting ability. LIB0061. Other contemporaneous records show that Plaintiff did not have any such lesions at the relevant time. *See*, *e.g*., LIB0434 ("no gross lesions noted"); LIB0388 ("no gross skin lesions noted upon observation"); LIB0385 ("no gross skin lesions noted"); LIB0328 (dermatologist visit for new lesion in "right axilla"); LIB0264 ("Skin is warm and dry. No rash noted. No erythema. No pallor.").

Opp. at 23 (ECF Doc. #37-1).  ERISA explicitly imposes fiduciary duties on plan

administrators—whether they are insurance companies or not.  *See*, *e.g*., 29 U.S.C.

§ 1104.  There is no "insurance company" exception to those fiduciary duties,

which require administrators, like Lincoln here, to protect fund assets and pay only

beneficiaries who are entitled to benefits.  *See*, *e.g*., Conkright v. Frommert, 559

U.S. 506, 520 (2010); Varity Corp. v. Howe, 516 U.S. 489, 514 (1996).[3]

Plaintiff argues that Dr. Feeman's opinions are reliable because he "appears

to have" reviewed other physician's records before making his conclusions.  Pl.'s

Br. in Opp. at 25 (ECF Doc. #37-1).  But Plaintiff overlooks the fact that Dr.

Feeman's report, dated January 24, 2017, predates the relevant time period of

Lincoln's review by more than two years.  *See* LIB0254–55.  So Dr. Feeman

clearly did not review the most relevant medical evidence that was available at the

time that matters.  Moreover, in his report, Dr. Feeman nowhere explains or

attempts to reconcile even his own contemporaneous examination results which

showed that Plaintiff "denied back pain" and had "normal" strength, "normal"

---

[3] The fiduciary duties imposed by ERISA aim at "inducing employers to offer benefits by assuring a predictable set of liabilities under uniform standards."  Rush Prudential HMO, Inc. v. Moran, 536 U.S. 355, 379 (2002).  Where, as here, a plan is funded by an insurance policy, the payment of undeserving claims would predictably drive up premiums, thereby increasing plan costs and undercutting ERISA's goals just as if the plan were self-funded.

13

muscle tone, "normal" reflexes, "intact" memory, and "normal" concentration. *See*, *e.g*., LIB0251–52.

Finally, Plaintiff contends that MRI imaging studies are "objective" evidence. *See* Pl.'s Br. in Opp. at 25 (ECF Doc. #37-1). While the MRI studies here confirm the existence of the Plaintiff's degenerative back condition, a mere diagnosis or proof of a medical condition does not automatically translate into proof of a functional limitation that is occupationally limiting. *See*, *e.g*., Howard, 929 F. Supp. 2d at 1294 ("Indeed, doctors' diagnoses do not in and of themselves, establish a disability and inability to work."). In Lee v. BellSouth Telecomms., Inc., 318 Fed App'x 829 (11th Cir. 2009), upon which Plaintiff relies, the claimant submitted "a completed functional impairment test documenting her muscle strength and abilities" as well as the partial results of another functional impairment test that she was unable to complete. *See id.* at 838. In Lee, such evidence showed that the claimant could "sit for no more than 15 minutes," had "an impaired ability to talk and breathe smoothly," and was otherwise "virtually immobile." *Id.* That kind of objective evidence simply does not appear in the record here. Indeed, repeated examination evidence confirms that Plaintiff was not similarly limited at the time of Lincoln's determination.

Notwithstanding the MRIs, Plaintiff failed to ever submit real, quantitative, or measureable evidence of ***functional limitations*** sufficient to foreclose sedentary-level work.  He could have submitted such evidence in the form of a detailed functional capacity examination or otherwise, as was his burden, but he did not.

### Conclusion

For the foregoing reasons, and those contained in Lincoln initial Memorandum (ECF Doc. #35-1) and Opposition (ECF Doc. #39), the Court should grant Lincoln's Motion for Judgment on the Administrative Record and dismiss Plaintiff's claims.

Respectfully Submitted,
LINCOLN LIFE ASSURANCE
COMPANY OF BOSTON,
By its Attorneys,

/s/  Scott K. Pomeroy
Scott K. Pomeroy
Georgia Bar No. 583296
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
One Boston Place, Suite 3500
Boston, MA 02108
207-387-2961 direct
207-387-2986 fax
Email: scott.pomeroy@ogletree.com

/s/  Amy E. Jensen
Amy E. Jensen

15

Georgia Bar No. 874759
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
191 Peachtree Street, N.E., Ste. 4800
Atlanta, Georgia 30303
404-870-1796 direct
404-870-1732 fax
Email: amy.jensen@ogletree.com

Dated: December 18, 2020

16

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

VIRGIL HARRIS,
    Plaintiff,

v.

LINCOLN LIFE ASSURANCE
COMPANY OF BOSTON,
    Defendant.

CIVIL ACTION NO.:
1:19-cv-4257-CC

## CERTIFICATE OF SERVICE

I hereby certify that on this the 18th day of December 2020, the foregoing **Defendant's Reply in Support of Its Motion for Judgment on the Administrative Record** was filed electronically with the Clerk of Court using the CM/ECF system, which will automatically serve an electronic copy on the following attorney(s) of record:

Heather K. Karrh
Rogers, Hofrichter & Karrh, LLC
225 South Glynn Street, Suite A
Fayetteville, GA 30214
hkarrh@rhkpc.com

/s/  Scott K. Pomeroy
Scott K. Pomeroy
Georgia Bar No. 583296

45281030.3

17